## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

TRI-STATE ENERGY SOLUTIONS, LLP a    :   Civil Action No.
Delaware Limited Liability Partnership;    :
   :
      Plaintiff,    :   **JURY TRIAL DEMANDED**
   :
vs.    :
   :
KVAR ENERGY SAVINGS, INC.,    :
   :
      Defendant.    :
   :
   :

### NOTICE OF REMOVAL

## TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE:

PLEASE TAKE NOTICE that, pursuant to the provisions of 28 U.S.C. §§ 1332, 1441, and 1446, Defendant KVAR ENERGY SAVINGS, INC. ("Defendant" or "KVAR") gives notice of removal of the above-captioned action to the United States District Court for the District of Delaware from the Court of Chancery of the State of Delaware. In support of its Notice of Removal, Defendant represent as follows:

1.     On or about November 19, 2007, Plaintiff Tri-State Energy Solutions, LLP ("Plaintiff") commenced an action against Defendant, entitled *"Tri-State Energy Solutions, LLP v. KVAR Energy Savings, Inc.,"* Civil Action No. 3361-VCP, in the Court of Chancery of the State of Delaware.

2.     Plaintiff served a summons on the Delaware Secretary of State pursuant to 10 *Del. C.* § 3104 on or about February 15, 2008. Thereafter, Plaintiff sent KVAR a copy of the Complaint and service papers via registered mail dated March 5, 2008 which

KVAR received on March 18, 2008.  No other proceedings have been held in this action, and the Summons and Complaint constitute all processes and pleadings served upon Defendants in this action.  A copy of the Summons and Complaint are attached hereto as Exhibit A.

3.      This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as it was filed within thirty (30) days of the March 18, 2008 receipt of the Complaint and service papers by KVAR.

4.      Upon formal receipt of the Complaint and service papers, counsel for KVAR contacted counsel for Plaintiff and obtained an extension until April 11, 2008 to respond to the Complaint.

5.      Plaintiff's Complaint purports to assert state law claims including, unfair competition, misappropriation of testimonials, deceptive trade practices, and breach of contract. (Complaint ¶¶ 16-32).

6.      Plaintiff is a limited liability partnership formed and existing under the laws of the State of Delaware with its principal place of business in Delaware. (Complaint ¶ 2).  Upon information and belief, the partners of Tri-State are all Delaware residents, or at the very least, residents of states other than Florida, and therefore Plaintiff is not a resident of the State of Florida.  Defendant is a corporation formed and existing under the laws of the State of Florida with its principal place of business in Florida. (Complaint ¶ 3).  Accordingly, diversity of citizenship exists between the parties.

7.      Plaintiff claims at least $100,000 in damages.   (Complaint ¶ 13). Accordingly, the amount in controversy exceeds $75,000.

8.     This Court has subject matter jurisdiction over this controversy pursuant to 28 *U.S.C.* § 1332 because the amount in controversy exceeds $75,000 and the action arises between citizens of different states. *See* 28 *U.S.C.* § 1332. Accordingly, this action is removable from the Court of Chancery of the State of Delaware to this Court pursuant to 28 *U.S.C.* § 1441. *See* 28 *U.S.C.* § 1441.

9.     Pursuant to 28 *U.S.C.* § 1446(d), written notice of the filing of this Notice of Removal will be given to counsel for Plaintiff, and a copy of the Notice of Removal will be filed immediately with the Court of Chancery of the State of Delaware.

**WHEREFORE,** Defendant respectfully requests that the above-referenced action be removed from the Court of Chancery of the State of Delaware to the United States District Court for the District of Delaware.

**McCarter & English, LLP**

/s/ Daniel M. Silver
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
(302) 984-6300

*Attorneys for KVAR Energy Savings, Inc.*

Dated: April 11, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TRI-STATE ENERGY SOLUTIONS, LLP a Delaware Limited Liability Partnership; | : : : | Civil Action No. |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| vs. | : : | |
| KVAR ENERGY SAVINGS, INC., | : : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on **April 11, 2008,** I electronically filed the <u>Notice of Removal</u> with

the Clerk of Court using CM/ECF.  I hereby certify that on **April 11, 2008,** I have mailed by

United States Postal Service, the document(s) to the following non-registered participants:

> Leo John Ramunno, Esq. (# 2003)
> 1205 N. King Street
> Wilmington, Delaware 19801
> (302) 654-0660
> Attorney for Tri-State Energy Solutions, LLP

**McCarter & English, LLP**

/s/ Daniel M. Silver
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
405 N. King Street
Wilmington, DE 19801
(302) 984-6300
Attorneys for KVAR Energy Savings, Inc.

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

TRI-STATE ENERGY SOLUTIONS, LLP

## DEFENDANTS

KVAR ENERGY SAVINGS, INC.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    New Castle, Delaware

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Port Orange, Florida

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY'S (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
McCarter & English LLP, Renaissance Centre
405 N. King Street,
Wilmington DE 19801, (302) 984-6300

ATTORNEYS (IF KNOWN)
Leo John Ramunno, Esq. (# 2003)
1205 N. King Street
Wilmington, Delaware 19801, (302) 654-0660

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
28 *U.S.C.* § 1332

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  Original Proceeding

☒ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multi-District Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury Med. Malpractice
☐ 365 Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

Personal property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
HABEAS CORPUS:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt Relations
☐ 730 Labor/Mgmt Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl Ret Inc Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)))

FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/ etc
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Breach of contract/tort action arising among diversity citizens in excess of $100,000 - 28 *U.S.C.* § 1332

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ 100,000 +

CHECK YES only if demanded in complaint
JURY DEMAND ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE  Judge Patricia c. Fawcett

DOCKET NUMBER  08-CV-85 M.D. FLA.

DATE

SIGNATURE OF ATTORNEY OF RECORD
/s/ Daniel M. Silver

**FOR OFFICE USE ONLY**

ME1 7285052v.1

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other pages as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.      (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.      Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suites by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked the citizen ship of the different parties must be checked. (See Section III below: federal question actions take precedence over diversity cases.)

**III.      Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.      Origin.** Place an "X" is one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under the authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**V.      Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suite. If the cause fits more than one nature of suit, select the most definitive.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.      Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

## Date and Attorney Signature. Date and sign the civil cover sheet.

# EXHIBIT A

# LEO JOHN RAMUNNO

ATTORNEY AT LAW

1205 N. KING STREET
WILMINGTON, DELAWARE 19801

Telephone 302-654-0660
Fax 302-425-5044

March 5, 2008

**VIA REGISTERED MAIL/**
**RETURN RECEIPT REQUESTED**

KVAR Energy Savings, Inc.
413 Oak Place; Building 4, Unit 5
Port Orange, FL 32127

Re: <u>Tri State Energy Solutions, LLP v. KVAR Energy Savings</u>

Dear Sir or Madam:

Please be advised that I represent the above-captioned plaintiff. On their behalf, I have filed suit against you as a result of the partnership assets and dissolution of the partnership.

As you are a non-resident of the State of Delaware, suit was commenced according to Title 10, in this state by statute appoint the Secretary of State as their agent to accept service of legal process pursuant to the long arm statute.

Enclosed please find a copy of the process and Complaint served upon the Secretary of State of the State of Delaware which, pursuant to the above mentioned statute, is effective for all intents and purposes as if it had been served upon you personally.

I would suggest that you notify your insurance company immediately of this suit. I would also suggest that you contact your attorney immediately if your insurance company does not provide one for you.

Very truly yours,

Leo John Ramunno

Enclosure

LJR\adl

SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(A)
OF THE RULES OF THE COURT OF CHANCERY

    The information contained herein is for the use by the Court for statistical and administrative purposes only. Nothing stated herein shall be deemed an admission by or binding upon any party.

1. Caption of Case:

    **TRI-State Energy Solutions, LLP, a Delaware Limited Company,**
                      **v.**
    **KVAR Energy Savings, Inc., a Florida Corporation**

2. Dated Filed:

        **November 19, 2007**

3. Name and address of counsel for plaintiff:

    **Leo John Ramunno, Esquire**
    **1205 N. King Street**
    **Wilmington, DE 19801**

4. Short statement and nature of claim asserted:

    **The action involves enforcing an exclusive distributor agreement and enjoining Defendant from selling non-exclusive agreements with Plaintiff's territory and for damages.**

5. Substantive field of law involved (check one):

| | |
|---|---|
| _____ Administrative law | _____ Trade secrets/trade mark/ |
| _____ Commercial law |     or other intellectual |
| _____ Constitutional law |     property |
| _____ Corporation law | _____ Trusts |
| _____ Guardianships | _____ Wills and estates |
| _____ Labor law | _____ Zoning |
| _____ Real property | **X** Other |

6. Related case(s):

    **N/A**

7. Basis of court's jurisdiction (including the citation of any statute conferring jurisdiction):

    **10 Del. C. Section 341; and no adequate remedy of law.**

8. If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought:

    **To enjoining Defendant from selling non-exclusive agreements within Plaintiff's territory.**

9. If the complaint seeks summary or expedited proceedings, check here **X** _____.

                        _____
                       Signature of Attorney of Record
    **Leo John Ramunno, Esquire, Bar ID No. 2003**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

TRI-STATE ENERGY SOLUTIONS, LLP,    :
a Delaware Limited Company,             :

                              :

            **Plaintiff,**             :

                              :    **C.A. No. _____**

     **v.**                           :

                              :

KVAR ENERGY SAVINGS, INC.,       :
a Florida Corporation,                 :

                              :

            **Defendant.**           :

## VERIFIED COMPLAINT

1.     Defendant entered into an exclusive regional distributions agreement with Plaintiff on May 5, 2006 and have breached that agreement in violation of the Plaintiff's exclusive regional distribution agreement, from violating their exclusive distribution agreement and from libel and slander and to recover damages.

2.     Plaintiff's, Tri-State Energy Solutions, LLP is a limited liability company formed and existing under the laws of Delaware. (Any denial to these allegations shall be by affidavit as required by 10 Del. C. § 3918).

3.     Defendant KVAR Energy Savings, Inc. is a Florida Corporation with its principal address at 413 Oak Place, Building 4, Unit 5, Port Orange, FL 32127 and doing business in the State of Delaware and subject to Delaware jurisdiction through the long arm statute and its mailing address is 610 Moon Penny Circle, Port Orange, Florida 32127.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 10 Del. C. §341.

5.    The conduct charged in the complaint was carried out in whole or part within the State of Delaware. Tri-State Energy Solutions, LLC has its principle place of business in New Castle County. Venue is therefore appropriate in New Castle County.

## FACTS COMMON TO ALL COURTS

6.    Tri-State Energy Solutions, LLP (hereinafter referred to as Tri-State) entered into a regional distributor agreement on May 5, 2006 with KVAR Energy Savings, Inc. (hereinafter referred to as KVAR) and on May 10, 2006 entered into an exclusive right to sell, distribute KVAR products and to set up distribution as non-exclusive for the same products within the State of Delaware.

7.    The above agreement was extended into adjoining States of Pennsylvania and Maryland.

8.    On or about July 19, 2007, KVAR through its agent Steve Fish, asked Tri-State to terminate a non-exclusive vender agreement it had with Alton Holt and Darrell Atkins to try to put pressure on Ecco Quest, a multilevel marketing company, that they could no longer have access to KVAR products.

9.    KVAR through Steve Fish, wanted Tri-State to allow Ecco Quest to sell residential unit in their territory and wanted Tri-State to agree on compensation for letting Ecco Quest sell products in their territory.

10.    On September 1, 2007, Tri-State discovered that Darrell Atkins and Ecco Quest was selling KVAR products in their territory mainly Delaware, Maryland and Pennsylvania. Tri-State notified KVAR that there was a violation of the exclusive agreement and was told by KVAR's agent Steve Fish and Greg Taylor, that they were no longer having Tri-State exclusive distributors agreement and that they were going to sell non-exclusive agreements in Tri-State's territory to use Tri-State testimonials and document on the other distributor's website.

11.    On September 12, 2007, Tri-State through its attorney wrote to KVAR for them to remove Tri-State testimonials from their web site. Again, KVAR responded that Tri-State was no longer an exclusive dealer in their territory since they were no longer honoring the agreement.

12.    KVAR has knowingly violated these exclusive distributor agreements with Tri-State and have sold non-exclusive vendors in Tri-State's territory causing excess monetary damages to Plaintiff. KVAR has also, on their web site, has put the "Kilowatt nanny" Tri-State name for the KVAR product on their Imposture list as well as "Power sava" on their imposture list.

13.    Tri-State has over $100,000.00 in product it can no longer sell due to KVAR illegal action and violation of its exclusive distributor agreement. KVAR has also sold numerous non-exclusive agreements in Tri-State's territory, a direct violation of the exclusive distributor agreement.

14.    KVAR through its agent Steve Fish is attempting to destroy Tri-State's business and has taken the position that Tri-State is no longer a vendor and has defamed Tri-State on numerous web sites claiming Plaintiff's product are impostures and are no longer vendors for their territory.

15.    Tri-State has a valid exclusive distributor agreement with KVAR that they have knowing breached their agreement and have entered into a whole series of non-exclusive agreements in Tri-State's territory and have libel and slandered Tri-State with the false information placed on numerous web sites that Tri-State products are impostures causing excessive loss of income.

## COUNT I
## UNFAIR COMPETITION

16.    The allegations of all foregoing paragraphs are incorporated and are realleged is if set forth at length herein.

17.    Defendants have intentionally appropriated the testimonials of Tri-State offering for sale and selling goods and service with intent of causing confusion, mistakes and deception as to the source of the goods and services, and with the intent to palm off these goods and services as those of Tri-State, and, as such, defendants have committed unfair competition under the common law and dilution of Tri-State distinctive trade rights.

18.    The unfair competition as aforesaid has caused and continues to cause damage and irreparable injury to Tri-State.

19.    Tri-State is without an adequate remedy of law.

## COUNT II
## MISAPPROPRIATION OF TESTIMONIALS

20.    The allegations of all foregoing paragraphs are incorporated and are realleged as if set forth at length herein.

21.    Tri-State constitutes valuable testimonial information that derives independent economic value from not being readily ascertainable by proper means or use.

22.    As a result of Defendant's misappropriate and improper utilization of Tri-State has lost customers, business, profits and sales. Unless enjoined by this Court, Defendant's may continue to improperly use Tri-State testimonials.

23.    The losses sustained by Tri-State as a result of Defendant's misappropriation and improper utilization testimonials cannot be remedied adequately by compensatory damages; accordingly, Tri-State has no adequate remedy at law.

24.    An Order enjoining Defendant's from engaging in any further use of testimonials is necessary to protect the legitimate interest of Tri-State in preserving its

good will, assets and existing relationships with customers and franchises and to prevent any further violations.

## COUNT III
## DECEPTIVE TRADE PRACTICES

25.     The allegations of all foregoing paragraphs are incorporated and are realleged as if set forth at length herein.

26.     The actions of the defendant as set forth above constitutes deceptive trade practices under Del. C. 6 §2532, to wit:

i)      Passing off goods or services as those of another;

ii)     Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

iii)    Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by another.

iv)     Representing that goods or services have sponsorship, approval characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation or connection that t he person does not have; and,

v)      Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

27.     KVAR has willfully engaged in the deceptive trade practices as aforesaid.

28.     The deceptive trade practices as aforesaid have caused and continue to cause damage and irreparable injury Tri-State.

29.     Tri-State is without an adequate remedy at law.

## COUNT IV
## BREACH OF CONTRACT

30.    The allegations of all foregoing paragraphs are incorporated and are realleged as if set forth at length herein.

31.    Defendants have breached their exclusive distributor agreement with Tri-State by no longer knowing that agreement and selling numerous non exclusive agreement in Tri-State territory and by shipping products in the State in violation of agreement.

32.    These breaches have caused injury and damages to Tri-State.

## PRAYER FOR RELIEF

**WHEREFORE,** Tri-State demanded judgment against the defendant and respectfully request this Court to award the following relief:

a.    Enjoining the Defendant from selling non-exclusive distributor agreement in Tri-State territory and order Defendant to honor the valid exclusive distributor agreement.

b.    Award expectations, compensating and restitutionary damage to Tri-State for Defendant's conduct.

c.    Attorney fees, pre judgment interest, post judgment interest, cost of the action and such other and further relief as the Court deems just.

**LEO JOHN RAMUNNO, ESQUIRE**
**BAR ID NO. 2003**
1205 N. King Street
Wilmington, DE 19801
302-654-0660
Attorney for Tri-State Energy Solutions, LLP

# AFFIDAVIT

**BE IT REMEMBERED** this ___*16*___ day of ___*Nral*___, 2007 that Lawrence Gillen did appear before a notary public and state that under oath that the information contained in the attached Verified Complaint is true and correct to the best of his knowledge.

_____
Lawrence Gillen

**SWORN and SUBSCRIBED** this ___*16*___ day of ___*Nral*___ 2007.

_____
**Notary Public**

LEO JOHN RAMUNNO, ESQ.
Notarial Officer - Delaware
29 Del. C. §4323(a)(3) Notarial Act

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| TRI-STATE ENERGY SOLUTIONS, LLP,<br>a Delaware Limited Company,<br><br>    Plaintiff,<br><br>  v.<br><br>KVAR ENERGY SAVINGS, INC.,<br>a Florida Corporation,<br><br>    Defendant. | :<br>:<br>:<br>:<br>: C.A. No. _____<br>:<br>:<br>:<br>:<br>:<br>: |

## CERTIFICATE OF SERVICE

I, Leo John Ramunno, Esq. do hereby certify that on this ⟨19th⟩ day of November 2007, I have caused the *Verified Complaint* to be served upon the Defendant KVAR Energy Savings, Inc., by serving the Secretary of State Pursuant to 10 Del.C. §3104 at 610 Moon Penny Circle, Port Orange, FL 32127 and by First Class Mail.

**LEO JOHN RAMUNNO, ESQUIRE**
**BAR ID NO. 2003**
1205 N. King Street
Wilmington, DE 19801
302-654-0660
Attorney for Tri-State Energy Solutions, LLP

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

TRI-STATE ENERGY SOLUTIONS, LLP,       :
a Delaware Limited Company,            :
                                       :
            Plaintiff,                 :
                                       :        C.A. No. 3361-VCP
      v.                               :
                                       :
KVAR ENERGY SAVINGS, INC.,             :
a Florida Corporation,                 :
                                       :
            Defendant.                 :

### PRAECIPE

PLEASE ISSUE A SUMMONS AND COMPLAINT by the Sheriff of Kent County, State of Delaware, upon the Defendant KVAR Energy Savings, Inc. by serving the Secretary of State Pursuant to 10 Del.C. §3104 at KVAR Energy Savings, Inc., 413 Oak Place, Building 4, Unit 5, Port Orange, FL 32127.


LEO JOHN RAMUNNO, ESQUIRE
1205 N. King Street
Wilmington, DE 19801
302-654-0660
Attorney for Plaintiff
Bar ID #2003


Dated: Jan. 4. 2008

EFiled: Mar 18 2008 1:14PM EST
Transaction ID 18828051
Case No. 3361-VCP
SUMMONS

FILED

2008 FEB 12 A 8 24

NCC RIC

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

TRI-STATE ENERGY SOLUTIONS, LLC.,
a Delaware Limited Company,

                    Plaintiff,

v.

KVAR ENERGY SAVINGS, INC.,
a Florida Corporation,

                    Defendant.

CIVIL ACTION NO.    3361-VCP

SUMMONS

RECEIVED

FEB 1 5 2008

**TO THE**  KENT COUNTY SHERIFF:

**YOU ARE COMMANDED:**

To Summon the above named defendants so that, within 20 days after service hereof upon defendants, exclusive of the day of service, defendants shall serve upon

Leo John Ramunno, Esquire _____, plaintiff's attorney whose address is
1205 King Street
Wilmington, Delaware  19801 _____ an answer to the complaint.

To serve upon defendants a copy hereof and of the complaint.

**TO THE ABOVE NAMED DEFENDANTS:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

*Patricia W. Randolph*

Dated  February 1, 2008 _____

                    _____
                    Register in Chancery
                    Wilmington, Delaware

CIVIL ACTION NO.    3361-VCP

TRI-STATE ENERGY SOLUTIONS, LLP,

                        Plaintiff

            VS.

KVAR ENERGY SAVINGS, INC.,

                        Defendant

            SUMMONS

Please effectuate service upon:

1. KVAR Energy Savings, Inc.
   413 Oak Place, Building 4, Unit 5
   Port Orange, FL  32127

   by serving the Delaware Secretary of State

   pursuant to 10 Del.C. § 3104

SERVICE TO BE COMPLETED BY
KENT COUNTY SHERIFF

FILED
2008 FEB 32 A 8:29
NCC RIC

   Leo John Ramunno, Esquire
Attorney for Plaintiff

# Sheriff's Return

Served the within Summons and copy of the following complaint:

SUMMONS/COMPLAINT

this day, Friday, February 15, 2008, personally upon HARRIET SMITH WINDSOR, Secretary of State of the State of Delaware, by leaving with her a true and correct copy of the said Summons for the defendant:

KVAR ENERGY SAVINGS, INC.



and a copy of the Complaint for the said defendant, together with the sum of $ 2.00 Dollars, as prescribed by Section 3104 of Title 10 of the Delaware Code of 1978.

So Answers,

Jim Higdon
Sheriff of Kent County

**IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | : | |
| TRI-STATE ENERGY SOLUTIONS, LLP a | : | Civil Action No. |
| Delaware Limited Liability Partnership; | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| vs. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**DEFENDANT KVAR ENERGY SAVINGS, INC.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE,
MOTION TO TRANSFER THIS ACTION TO THE MIDDLE DISTRICT OF FLORIDA**

Defendant KVAR Energy Savings, Inc. ("KVAR"), by and through its undersigned counsel, hereby respectfully moves this Court to dismiss this action for lack of personal jurisdiction, or in the alternative, transfer this action to the United States District Court for the Middle District of Florida. KVAR respectfully refers the Court to its Opening Brief filed herewith for the basis of the relief sought.

**McCarter & English, LLP**

/s/ Daniel M. Silver
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
(302) 984-6300

**McCarter & English, LLP**
William J. Heller
wheller@mccarter.com
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
*Attorneys for KVAR Energy Savings, Inc.*

Dated: April 11, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | : | |
| TRI-STATE ENERGY SOLUTIONS, LLP a | : | Civil Action No. |
| Delaware Limited Liability Partnership; | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| vs. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **April 11, 2008,** I electronically filed the <u>Defendant KVAR</u>

<u>Energy Savings, Inc.'s Motion to Dismiss Defendant KVAR Energy Savings, Inc.'s Motion to</u>

<u>Dismiss for Lack of Personal Jurisdiction, Or In The Alternative, Motion to Transfer This Action</u>

<u>to the Middle District of Florida</u> with the Clerk of Court using CM/ECF.  I hereby certify that on

**April 11, 2008,** I have mailed by United States Postal Service, the document(s) to the following

non-registered participants:

> Leo John Ramunno, Esq. (# 2003)
> 1205 N. King Street
> Wilmington, Delaware 19801
> (302) 654-0660
> Attorney for Tri-State Energy Solutions, LLP

**McCarter & English, LLP**

/s/ Daniel M. Silver
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
405 N. King Street
Wilmington, DE 19801
(302) 984-6300
Attorneys for KVAR Energy Savings, Inc.

ME1 7285596v.1

## N THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| TRI-STATE ENERGY SOLUTIONS, LLP a | : | Civil Action No. |
| Delaware Limited Liability Partnership; | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| vs. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## [PROPOSED] ORDER

IT IS HEREBY ORDERED this _____ day of _____, 2008, that

upon consideration of Defendant KVAR Energy's Savings, Inc.'s Motion to Dismiss for Lack of

Personal Jurisdiction, this action is dismissed for lack of personal jurisdiction.


_____
UNITED STATES DISTRICT JUDGE

v.

# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| TRI-STATE ENERGY SOLUTIONS, LLP a | : | Civil Action No. |
| Delaware Limited Liability Partnership; | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| vs. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## [PROPOSED] ORDER

IT IS HEREBY ORDERED this _____ day of _____, 2008, that upon consideration of Defendant KVAR Energy's Savings, Inc.'s Motion to Transfer This Action to the Middle District of Florida, this action is transferred to the United States District Court for the Middle District of Florida.

_____
UNITED STATES DISTRICT JUDGE

v.

# IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | : | |
| TRI-STATE ENERGY SOLUTIONS, LLP a | : | Civil Action No. |
| Delaware Limited Liability Partnership; | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| vs. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

## OPENING BRIEF IN SUPPORT OF
## DEFENDANT KVAR ENERGY SAVINGS, INC.'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE,
## MOTION TO TRANSFER THIS ACTION TO THE MIDDLE DISTRICT OF FLORIDA

**McCarter & English, LLP**
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
(302) 984-6300

**McCarter & English, LLP**
William J. Heller
wheller@mccarter.com
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444

April 11, 2008                     *Attorneys for KVAR Energy Savings, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

SUMMARY OF ARGUMENT ..................................................................................... v

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

 A. Parties to the Delaware Litigation .............................................. 3

  1. KVAR Energy Savings, Inc. ............................................ 3

  2. Tri-State Energy Solutions, LLP ..................................... 4

 B. Additional Parties In Interest Not Named in the Delaware Litigation ........ 4

 C. The Formation of a Relationship Between KVAR and Tri-State ............... 5

  1. The Confidentiality and Non-Disclosure Agreement ..... 5

  2. The Exclusive Distributor Agreement ............................. 6

  3. The Regional Distributor Agreement .............................. 6

 D. The Relationship Between KVAR and Tri-State Deteriorates ................... 8

  1. Tri-State and the Tri-State Partners' Wrongful Conduct ............... 8

  2. Tri-State Files the Delaware Action ................................ 9

  3. KVAR's Florida Action Was Commenced and Prosecuted Promptly ........ 10

ARGUMENT .............................................................................................................. 12

 I. KVAR IS NOT SUBJECT TO IN PERSONAM JURISDICTION IN THIS COURT ........ 12

 A. Standard of Review .................................................................... 12

 B. The Delaware Long Arm Statute Does Not Confer Jurisdiction Over KVAR ........ 13

  1. KVAR Does Not Transact Any Business or Perform Any Character of Work In Delaware ........ 13

  2. KVAR Has Not Contracted to Supply Services or Things In Delaware ........ 14

3.    KVAR Has Not Caused Tortious Injury In Delaware by an Act or Omission In Delaware.................................................................15

4.    KVAR Has Not Caused Tortious Injury In Delaware by an Act or Omission Outside of Delaware .....................................................16

II.    ASSUMING ARGUENDO THAT THIS COURT FINDS KVAR SUBJECT TO IN PERSONAM JURISDICTION, KVAR REQUESTS THAT THIS ACTION BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 U.S.C. 1404(A) 17

A.    Standard of Review...................................................................17

B.    Both Private and Public Interest Facts Favor Transfer to Florida .............18

1.    Private Interest Factors Favor Transfer to Florida........................18

2.    Public Interest Factors Favor Transfer to Florida.........................25

C.    Transfer to the Middle District of Florida is Appropriate.........................26

CONCLUSION.................................................................................................27

ME1 7277216v.1

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*Bank of America, N.A. (USA) v. U.S. Airways, Inc.*,
  2005 WL. 3525680 (D. Del. Dec. 21, 2005)..........................................................25, 26

*Bank of America, N.A. v. S.I.P. Assets, LLC, et al.*,
  2007 WL. 2698192 (D. Del. Sept. 11, 2007)..............................................17, 18, 25, 26

*Cancer Genetics Inc. v. Kreatech Biotech. B.V.*,
  2007 WL. 4365328 (D. N.J. Dec. 11, 2007).................................................................19

*Equal Employment Opportunity Commission v. University of Pa.*,
  850 F.2d 969 (3d Cir. 1988)....................................................................................22, 23

*Jumara v. State Farm Insurance Co.*,
  55 F.3d 873 (3d Cir. 1995)..................................................................................17, 18, 25

*Kim v. Kim*,
  324 F. Supp. 2d 628 (E.D. Pa. 2004) .....................................................................22, 23

*Kloth v. Southern Christian University*,
  494 F. Supp. 2d 273 (D. Del. 2007)...........................................................................16

*M&M Tech. v. Gurtler Chemical, Inc.*,
  2005 WL. 293509 (D. Del. Feb. 8, 2005) ..............................................................12, 17

*Marino v. Cross Country Bank*,
  2007 WL. 1946533 (E.D. Pa. June 29, 2007)............................................................18

*Moore v. Little Giant Industries, Inc.*,
  513 F. Supp. 1043 (D. Del. 1981)..............................................................................14

*Motorola Inc. v. PC-Telegraph*,
  58 F. Supp. 2d 349 (D. Del. 1999).............................................................................17

*Schering Corp. v. First Databank, Inc.*,
  479 F. Supp. 2d 468 (D. N.J. 2007) ....................................................................... 19- 21

*Sears, Roebuck & Co. v. Sears plc.*,
  744 F. Supp. 1289 (D. Del. 1990)..............................................................................15

*The Source Buying Group, Inc. v. Block Vision, Inc.*,
  2000 WL. 62972 (E.D. Pa. Jan. 14, 2000).................................................................20

ME1 7277216v.1

*Wyeth & Brother Ltd. v. CIGNA International Corp.*,
  119 F.3d 1070 (3d Cir. 1997)................................................................................. 19-22

## STATE CASES

*Abajian v. Kennedy*,
  1992 WL. 8794 (Del. Ch. Jan. 17, 1992) ............................................................. 13-15

*Boone v. Oy Partek AB*,
  724 A.2d 1150 (Del. Super. 1997) ....................................................................... 13-16

*Carlton Investments v. TLC Beatrice International Holdings, Inc.*,
  1995 WL. 694397 (Del. Ch. Nov. 21, 1995) ............................................................13

*Rapoport v. Litigation Trust of MDIP, Inc.*,
  2005 WL. 3277911 (Del. Ch. Nov. 23, 2005) ......................................................22, 23

*Red Sail Easter Limited Partners, L.P. v.*
  *Radio City Music Hall Productions, Inc.*,
  1991 WL. 129174 (Del. Ch. July 10, 1991)......................................................... 15-17

*Sheer Beauty, Inc. v. Mediderm Pharm. & Laboratories*,
  2005 WL. 3073670 (Del. Super. Oct. 27, 2005).......................................................16

*Waters v. Deutz Corp.*,
  479 A.2d 273 (Del. 1984) .........................................................................................16

## FEDERAL STATUTES

28 U.S.C. § 1404(a) .........................................................................................................1

## STATE STATUES

*10 Del. C.* § 3104 ...........................................................................................1, 12, 17, 23

## OTHER AUTHORITIES

Donald J. Wofle, Jr. and Michael A. Pittenger, CORPORATE AND COMMERCIAL
  PRACTICE IN THE DELAWARE COURT OF CHANCERY, § 3-5[a] at 3-34 (2007) ...........13

iv

## SUMMARY OF ARGUMENT

I.    **DEFENDANT KVAR IS NOT SUBJECT TO PERSONAL JURISDICTION UNDER THE DELAWARE LONG ARM STATUTE, 10 *DEL. C.* § 3104.**

II.    **ASSUMING *ARGUENDO* THAT KVAR IS SUBJECT TO PERSONAL JURISDICTION IN DELAWARE, KVAR REQUESTS THIS ACTION BE TRANSFERRED TO THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 *U.S.C.* § 1404(a).**

## NATURE AND STAGE OF PROCEEDINGS

The plaintiff, Tri-State, filed this action in the Delaware Court of Chancery not for the purpose of litigating, but for the dual purposes of: (1) pre-empting a lawsuit in the parties' agreed upon forum (Florida); and (2) using the filed Delaware action to defame the defendant in the trade. The defendant, KVAR, removed this action to this Court and hereby moves for dismissal because Delaware lacks personal jurisdiction over KVAR, or in the alternative, upon the finding of personal jurisdiction, seeks transfer to the Middle District of Florida pursuant to 28 *U.S.C.* § 1404(a).

As set forth in more detail below, KVAR has none of the requisite contacts with the State of Delaware to give rise to long arm jurisdiction under the Delaware long arm statute, 10 *Del. C.* § 3104. In the event the Court finds that KVAR is subject to personal jurisdiction in Delaware, KVAR respectfully requests that this action be transferred to the Middle District of Florida, where the parties can then litigate and resolve their entire dispute in the agreed-upon forum -- Florida -- which the parties agreed to in a *mandatory* forum selection clause at the outset of their dealings. KVAR instituted the Florida case on or about January 18, 2008, and unlike the Tri-State in this case, KVAR promptly effected service on all defendants in the Florida case and has sought to move that case forward.

What is more, even if the forum selection clause does not control, this Delaware action is not entitled to "first-filed" status because it was commenced for improper purposes; defeating KVAR's choice of forum in Florida and securing an improper competitive advantage in the trade. The real "plaintiff" in the dispute between Tri-State and KVAR is KVAR, not Tri-State. Tri-State's decision to file the Delaware action was purely tactical and intended to pre-empt KVAR's filing of an action in Florida. One of the many facts which support this conclusion is

1

that Tri-State waited **four months** to serve KVAR with the Complaint in this action, and such service came only *after* Tri-State received service of KVAR's complaint in Florida.

KVAR respectfully refers this Court to its own Complaint against Tri-State in the United States District Court for the District of Florida,[1] a copy of which is attached hereto is Exhibit A, and referred to herein as the "Florida Complaint." In sharp contrast to Tri-State's "bare bones" Complaint in Delaware, KVAR sued Tri-State, and other indispensable parties (Tri-State's principals), for trademark infringement, unfair competition, interference with contract and with prospective economic advantage, breach of contract and other causes of action in the United States District Court for the Middle District of Florida. Thus, the action currently pending in Florida is much broader than the present action, and already involves all of the indispensable parties necessary to resolve this dispute.

In light of the foregoing, and as set forth in much greater detail *infra*, KVAR respectfully requests that the Court determine that it is not subject to personal jurisdiction in Delaware. In the alternative, if the Court concludes that KVAR's *di minimus* contacts to Delaware subject it to personal jurisdiction here, KVAR respectfully requests the Court transfer this action to the Middle District of Florida so that the complete dispute between KVAR, Tri-State, and other indispensable parties, can be resolved in one action.

---

[1] The Florida litigation is captioned as *KVAR Energy Savings, Inc. v. Tri-State Energy Solutions, et al.,* 08-CV-0085-PCF-KRS (M.D. Fla.) (the "Florida Action").

## STATEMENT OF FACTS

A.    **Parties To the Delaware Litigation**

1.    **KVAR Energy Savings, Inc**.

Defendant KVAR Energy Savings, Inc. ("KVAR" or "Defendant") is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 413 Oak Place, Building 4-S, Port Orange, Florida 32127. Plaintiff's Verified Complaint ("Complaint") ¶ 2.

KVAR does not maintain any offices or business operations in the State of Delaware, and no KVAR personnel regularly work or reside in the State of Delaware. Declaration of Gregory Taylor, ¶ 2 filed herewith (hereinafter, "Taylor Decl."). KVAR has no connection with the State of Delaware, except this most insignificant contacts through Tri-State and others affiliated with Tri-State, in whom KVAR mistakenly misplaced its trust and confidence when it contracted with Tri-State to sell KVAR products in Delaware.

KVAR is a well-known manufacturer of products that improve the energy efficiency of residential and commercial buildings. Florida Complaint ¶ 21.[2] Individuals and entities who use KVAR products reduce their energy costs. *Id.* KVAR has built a nationwide reputation as a source for quality KVAR™ brand products that allow individuals and entities to save money on energy costs. *Id.*

Since at least 1995, KVAR has manufactured and/or sold KVAR Energy Controller Units under the distinctive trademark KVAR™ (the "KVAR™ Mark") (collectively, "KVAR™ Products"). *Id.* at ¶ 22. The KVAR™ Mark is displayed prominently on all KVAR™ Products

---

[2]   As exhibits "A" and "B" to the Florida Complaint are attached hereto as separate exhibits for ease of reference, they have been omitted from Exhibit A, but exhibit "C" to the Florida Complaint is included with the Florida Complaint, attached as Exhibit A. Exhibits "A" and "B" to the Florida Complaint are attached hereto as Exhibits D and B, respectively.

3

as well as KVAR's website, http://kvarnrg.com.  *Id.* at ¶ 23.  Each KVAR™ Product bears the

KVAR™ Mark and model and serial numbers that correlate to the use of the particular KVAR™

product, whether for a residence, commercial or industrial building.  *Id.* at ¶ 24.

KVAR™ Products have been tested and certified by leading third parties for their quality

and effectiveness.  *Id.* at ¶ 25.  KVAR™ Products bear the UL® certification mark that is unique

to KVAR™ Products.  *Id.*  KVAR™ Products also have received certifications from and/or the

approvals of the National Aeronautics and Space Administration (NASA) and by CSA

International.  *Id.* at ¶ 26.

### 2.      Tri-State Energy Solutions, LLP

Defendant Tri-State Energy Solutions, LLP ("Tri-State") is a limited liability partnership

organized and existing under the laws of the State of Delaware, with its principal place of

business, upon information and belief, in Delaware.  Complaint ¶ 3; Florida Complaint ¶ 2.  It is

believed that Tri-State is the alter ego of, or mere instrumentality of, Lawrence Gillen (identified

in the following section).[3]

### B.      Additional Parties In Interest Not Named in the Delaware Litigation

Lawrence Gillen ("Gillen") owns Tri-State, is its co-president, and is a Delaware

resident.  Florida Complaint ¶ 7.

Chieffo Electric, Inc. ("Chieffo Electric") is a Delaware corporation with its principal

place of business, upon information and belief in Delaware.   Its owner, Joseph Chieffo

("Chieffo"), likewise is a Delaware resident and is Tri-State's other co-president.  One or both of

Chieffo Electric and/or Chieffo are partners Tri-State.  Florida Complaint ¶¶3-13.   KVAR refers

---

[3]   Tri-State was formed on/about March 29, 2006 -- only after Gillen sought to become a KVAR distributor -- for
the sole purpose of distributing KVAR products in Delaware.  "Tri-State" paid for all KVAR products with a credit
card belonging to Summit Liquors, another business owned and/or operated by Gillen, and all products shipped to
"Tri-State" were shipped to Summit Liquors.  Taylor Decl. ¶ 12.

to Lawrence Gillen, Chieffo Electric and Joseph Chieffo, collectively, as the "Tri-State Partners" herein.  All of the Tri-State Partners are parties to the Florida Complaint.

### C.    The Formation of a Relationship Between KVAR and Tri-State

#### 1.    The Confidentiality and Non-Disclosure Agreement

KVAR sells KVAR™ Products directly and through distributors.  Florida Complaint ¶ 29.  To facilitate discussions between KVAR and Gillen, Gillen entered into a Confidentiality and Non-Disclosure Agreement ("NDA") to govern and protect KVAR's trade secret, confidential and proprietary information that KVAR disclosed to one or more of the Tri-State Partners.  Florida Complaint ¶ 39.  The NDA is attached as hereto as Exhibit B.

The NDA contains a combined choice of law and forum selection provision which provides as follows:

> **GOVERNING LAW.**    This Agreement shall in all respects be interpreted, enforced and governed under the laws of the United States and the State of Florida, without reference to the principles of conflicts of law otherwise applicable therein.  Recipient agrees that jurisdiction and venue for any legal action, suit or proceeding arising out of or relating to this Agreement shall rest solely with the federal or state court having jurisdiction over Volusia County, Florida.

Exhibit B ¶ 9.  Gillen signed the NDA.  Florida Complaint ¶ 40.[4]  Likewise, Chieffo executed the NDA during a trip to Florida to meet with KVAR representatives (a copy of which is attached hereto as Exhibit B as well).

---

[4]   To the extent the Tri-State Partners and/or Tri-State argue that only Gillen and Chieffo, as individuals -- and not Tri-State -- are bound by the NDA because Gillen and Chieffo signed the NDA in their individual capacities, such argument should be summarily dismissed.  As set forth below, in Section II.B. *infra*, this cause of action is at the very least "related to" the NDA, and therefore any action related to the NDA must be brought in Volusia County, Florida.  Assuming *arguendo* that Gillen and Chieffo signed the NDA in their individual capacities, they cannot shed the effect of the forum selection clause by acting through an entity which they jointly own and control.

ME1 7277216v.1

### 2.    The Exclusive Distributor Agreement

After the execution of the NDA, KVAR and Tri-State entered into an Exclusive Distribution Agreement (the "Exclusive Agreement"), attached hereto as Exhibit C, under which Tri-State, and (as alleged in the Florida Complaint) the Tri-State Partners, agreed to distribute KVAR products in Delaware.

Before signing into the Exclusive Agreement, Larry Gillen and Joe Chieffo traveled to Florida to meet with KVAR representatives.  Taylor Decl. ¶ 8.  While in Florida, all parties negotiated and signed the Exclusive Agreement.  *Id*. ¶ 10.  No negotiations regarding the Exclusive Agreement occurred in Delaware.  *Id*.

Pursuant to the Exclusive Agreement, all KVAR products were priced and shipped F.O.B. KVAR plant.  Exhibit C ¶ 5.  Therefore title to all goods passed in Florida, and "[r]isk of loss due to damage or destruction of KVAR Products [was] borne by [Tri-State] after delivery to the carrier for shipment."  *Id*.

Importantly, the Exclusive Agreement made clear that the relationship between KVAR and Tri-State was a vendor-vendee relationship, and that Tri-State was **not** KVAR's agent.  *Id*. ¶ 14 ("[Tri-State], its agents and employees shall, under on [sic] circumstances be deemed employees, agents, or representatives of KVAR.").  Further, the Exclusive Agreement contained a Florida choice of law provision.  *Id*. ¶ 24.

### 3.    The Regional Distributor Agreement

Two months after signing the Exclusive Distributor Agreement, whose territory was limited to Delaware, KVAR and Tri-State expanded their relationship in a May 5, 2006 Regional Distributor Agreement ("Distributor Agreement"), under which KVAR extended Tri-State's territory to include Pennsylvania and Maryland in addition to Delaware.  Florida Complaint ¶ 30;

6

Complaint ¶¶ 6-7.  A true and correct copy of the Distributor Agreement is attached hereto as Exhibit D.  Chieffo and Gillen each executed the Distributor Agreement as the co-presidents of Tri-State, and/or in their individual capacities.  Florida Complaint ¶ 31.

The Regional Distributor Agreement was negotiated by the parties via telephone, and was then executed by Tri-State in Delaware and by KVAR in Florida in separate counterparts.  Taylor Decl. ¶ 11.  The Distributor Agreement contained the same F.O.B. KVAR plant and Florida choice of law provisions as contained in the Exclusive Agreement.  Exhibit D ¶¶ 5, 24.  Other than expanding the Tri-State's exclusive distribution territory and enlarging Tri-State's mandatory minimum order, the Exclusive Agreement and the Distributor Agreement were the same in all material respects.  *Compare generally* Exhibit C *with* Exhibit D.

As would be expected in a distribution agreement, the Distributor Agreement provided KVAR with certain rights regarding Tri-State's sales efforts, including a minimum quota.  Pursuant to paragraph 8 of the Distributor Agreement, KVAR was permitted to establish sales quotas, and Tri-State agreed to employ and monitor sales personnel to reach such quotas.  Florida Complaint ¶ 34; Exhibit D ¶ 8.  Pursuant to paragraph 9.C. of the Distributor Agreement, Tri-State, "as a minimum, shall make orders of KVAR in net wholesale value of $75,000 (Seventy-five thousand dollars) in every three-month period during the first two years . . . of the Distributor's appointment."  Florida Complaint ¶ 36; Exhibit D ¶ 9.C.

Similarly, Tri-State agreed to certain restrictions upon entry into the Distributor Agreement.  Pursuant to paragraph 9.B. of the Distributor Agreement, Tri-State agreed "not to engage in the distribution promotion, marketing or sale of any goods or products that compete or conflict with KVAR Products."  Florida Complaint ¶ 35; Exhibit D ¶ 9.B.  Pursuant to paragraph 13 of the Distributor Agreement, Tri-State could "not use, authorize or permit the use of the

7

name 'KVAR' or any other trademark or trade name owned by KVAR as part of its firm, corporate or business name in any way…[but] Tri-State may, subject to KVAR's written prior approval, utilize KVAR's name, trademarks or logo in advertising on stationery, business card or other medium." Florida Complaint ¶ 38; Exhibit D ¶ 13. Tri-State never submitted any such materials to KVAR for review. Taylor Decl. ¶ 14.

### D.    The Relationship Between KVAR and Tri-State Deteriorates

#### 1.    Tri-State and the Tri-State Partners' Wrongful Conduct

KVAR has learned that Tri-State and the Tri-State Partners committed trademark infringement, unfair competition, false advertising, misappropriation of confidential information, and other wrongful acts by using the relationship with KVAR under the Distributor Agreement to gain access to KVAR™ Products and KVAR Confidential Information, and to use them outside the scope of any rights granted by KVAR, and in violation of KVAR's rights. Florida Complaint ¶ 44.

As alleged in the Florida Complaint, the Tri-State and the Tri-State Partners have purchased genuine KVAR™ Products, have removed the KVAR™ Marks, and have re-labeled these genuine KVAR™ Products under Tri-State's own brand, "Kilowatt Nanny." *Id*. at ¶ 45. Tri-State Partners, through Tri-State, are passing off the genuine KVAR™ Products as their own, and are falsely representing the source or origin of their products. *Id*. KVAR never authorized Tri-State to re-brand genuine KVAR™ Products as "Kilowatt Nanny." *Id*.

Among other things alleged in the Florida Complaint, Tri-State and the Tri-State Partners are leaving the KVAR Underwriters Laboratories (UL) certification label on the genuine KVAR™ Products that they are re-labeling and passing off as their own. *Id*. Tri-State thus falsely represents that its "Kilowatt Nanny" products are covered by the UL warranties given

8

only to genuine KVAR™ Products.  *Id.*  As further alleged in the Florida Complaint, Tri-State never sought UL certification for the "Kilowatt Nanny," and is falsely claiming KVAR's UL certification as its own.  *Id.*

The Florida Complaint also alleges that Tri-State and the Tri-State Partners are engaging in false advertising, by referencing the false statements about third party certifications (UL and others), by falsely claiming association with a United States Patent owned by KVAR, and in other ways as alleged in the Florida Complaint.  Florida Complaint ¶ 50; i*d.* at Ex. "C."

As further alleged in the Florida Complaint, Defendants' actions have caused actual confusion in the marketplace.  KVAR employees have received telephone inquiries from consumers as to whether the "Kilowatt Nanny" is a KVAR™ Product.  Florida Complaint ¶ 57.  KVAR employees have also been asked which KVAR distributor distributes the "Kilowatt Nanny" product and for KVAR to explain pricing discrepancies in different states associated with the promotion and offering for sale of the Kilowatt Nanny.  *Id.* at ¶ 58.  Significantly, the Florida Complaint alleges that Tri-State and the Tri-State Partners also have engaged in a pattern of activity that interferes with KVAR's existing and prospective customer relationships and contracts -- in a manner relating directly to this Delaware case.  *Id.* at ¶ 61.

## 2.     Tri-State Files the Delaware Action

On November 19, 2007, Tri-State filed the Complaint in this case against KVAR in the Court of Chancery of the State of Delaware.  In that Complaint, which KVAR removed to this Court, Tri-State makes only two limited allegations:  unspecified breach of contract and a generalized complaint that KVAR used certain "testimonials" without permission.  As contrasted with the wide-ranging facts, claims, causes of action and wrongs that KVAR alleges in the

9

Florida Complaint, Tri-State's Delaware Complaint is narrow and limited.  *Compare generally* Complaint *with* Florida Complaint.

Even more significant, it is clear that Tri-State filed the Delaware action for illegitimate reasons -- reasons unrelated to the prosecution of litigation.  Both before and after filing the Delaware Complaint, Tri-State sent the Complaint to existing and potential KVAR customers. Florida Complaint ¶ 61.  In the Florida complaint, KVAR has alleged that this publication of the libelous and false information contained in the Delaware Complaint was an effort by Tri-State and its principals to interfere with KVAR's business and customers, their contracts with or their prospective dealings with KVAR, and otherwise to unfairly compete with KVAR.  *Id.*

Despite circulating copies of the Delaware Complaint to non-parties who have no interest in the outcome of the Delaware Action, Tri-State waited four (4) months to serve the Complaint on KVAR.  The docket sheet from the Delaware Court of Chancery, attached hereto as Exhibit E, reflects that Tri-Stated waited from November 19, 2007 until February 15, 2008 to even commence service of process on KVAR by serving the Delaware Secretary of State.  KVAR did not receive formal service of process for the first time until March 18, 2008 -- **four months after Tri-State filed this action**, and perhaps even more significant, **only two days** before the Answer of Tri-State and the Tri-State Partners was due in the Florida case, which KVAR filed and promptly served while Tri-State sat on its hands.

### 3.    KVAR's Florida Action Was Commenced and Prosecuted Promptly

KVAR filed the Florida Complaint on January 17, 2008.  The Florida Complaint names Tri-State and the Tri-State Partners as defendants.  In the Florida Action, KVAR alleges three violations of the Lanham Act, misappropriation of confidential information, trade libel, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference

with contract, prospective economic advantage and advantageous business relationships, and violation of the Florida Deceptive and Unfair Trade Practices Act.  Thus, it is readily apparent that KVAR is the real injured party in this dispute, not Tri-State.

The fourth count of the Florida Complaint, misappropriation of confidential information, alleges, *inter alia*, breaches of the NDA.  Florida Complaint ¶¶ 101-106.  As set forth *supra*, the NDA contains a forum selection clause which mandates that claims "arising out of or relating to this [NDA] shall rest solely with the federal or state court having jurisdiction over Volusia County, Florida."  Exhibit B ¶ 9.  Accordingly, by contractual agreement of the parties, KVAR had to file the Florida Action in either a state or federal court located in Volusia County, Florida.  Further, pursuant to the choice of law clauses set forth in the NDA and the Distributor Agreement, any dispute between the parties is to be governed by Florida law.  *Id*.; Exhibit D ¶ 24.

For the reasons set forth below, KVAR respectfully requests that this Court dismiss this action for lack of *in personam* jurisdiction over KVAR, or in the alternative, transfer this action to the Middle District of Florida.

**ARGUMENT**

**I.    KVAR IS NOT SUBJECT TO *IN PERSONAM* JURISDICTION IN THIS COURT**

**A.    Standard of Review**

The Court engages in a two step analysis when determining whether personal jurisdiction exists over a nonresident defendant.    First, the Court must decide whether jurisdiction is authorized by Delaware's long arm statute, 10 *Del. C.* § 3104 ("Section 3104").    Only if jurisdiction is proper under Section 3104 will the Court then have to engage in the second step of the analysis, which is determining whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *M&M Tech. v. Gurtler Chem., Inc.*, 2005 WL 293509, at *2 (D. Del. Feb. 8, 2005).

Section 3104 provides in pertinent part:

(c) As to cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1)    Transacts any business or performs any character of work or service in the State;

(2)    Contracts to supply services or things in this State;

(3)    Causes tortious injury in the State by an act or omission in this State;

(4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State[.][5]

---

[5]    It is anticipated that Tri-State will not attempt to assert jurisdiction over KVAR under Sections 3104(c)(5) or (c)(6) as KVAR does not use, possess or have in interest in any real property in Delaware, nor has KVAR contracted to insure or act as a surety.  Therefore, Sections 3104(c)(5) and (6) will not be addressed herein.

ME1 7277216v.1

In harmony with "modern *in personam* jurisdiction philosophies," the subsections of Section 3104 have been separated into two categories – specific and general jurisdiction. *Boone v. Oy Partek AB*, 724 A.2d 1150, 1155 (Del. Super. 1997). Sections 3104(c)(1) through (c)(3) have been designated specific jurisdiction provisions, or "single act" provisions, and are at issue when the plaintiff's claims arise out of acts or omissions that take place in Delaware. *Id.* Conversely, Section 3104(c)(4) is a general jurisdiction provision, and is at issue when the plaintiff's claims are not connected with the nonresident defendant's activities in this State – that is, Delaware's connection with the controversy is immaterial. *Id.*

Assessing whether Section 3104 serves as a basis for personal jurisdiction "requires the parties and the court to undertake a 'metaphysical assessment of whether various acts … qualify as contacts with this state and if they do, whose contacts are they." Donald J. Wofle, Jr. and Michael A. Pittenger, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY, § 3-5[a] at 3-34 (2007) (quoting *Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.*, 1995 WL 694397 (Del. Ch. Nov. 21, 1995)).

**B.    The Delaware Long Arm Statute Does Not Confer Jurisdiction Over KVAR**

**1.    KVAR Does Not Transact Any Business or Perform Any Character of Work In Delaware**

Section 3104(c)(1) "requires that some act on the part of the defendant must have occurred *in* Delaware[.]" *Boone*, 724 A.2d at 1156 (emphasis supplied). It is well established that the mere contracting with an entity that is incorporated in Delaware does not provide the necessary nexus between the contract and the forum to support a finding of jurisdiction. *Abajian v. Kennedy*, 1992 WL 8794, at *10 (Del. Ch. Jan. 17, 1992). Further, if a manufacturer passes title to goods to a third party outside of Delaware, it is not deemed to have performed an act in this State. *Boone*, 724 A.2d at 1156. The mere shipment of goods into Delaware by common

13

carrier, without more, does not constitute "transaction of business." *Moore v. Little Giant Industries, Inc.*, 513 F. Supp. 1043, 1046 (D. Del. 1981).

The act of simply signing the Exclusive Agreement and the Distributor Agreement is not sufficient to establish jurisdiction over KVAR. *Abajian*, 1992 WL 8794, at *10. Nor can KVAR's shipment of goods to Tri-State in Delaware serve as a sufficient basis for jurisdiction. Section 5 of both the Exclusive Agreement and the Distributor Agreement expressly provides that KVAR's products will be shipped "F.O.B. KVAR plant" (Port Orange, Florida). Exhibit C ¶ 5; Exhibit D ¶ 5. Therefore, title to KVAR's products passed to Tri-State in Florida, once KVAR placed its products in the possession of the commercial carrier. *Sheer Beauty, Inc. v. Mediderm Pharm. & Lab.*, 2005 WL 3073670, at *2 (Del. Super. Oct. 27, 2005) (citing 6 *Del. C.* § 2-319). By virtue of passing title to Tri-State outside of Delaware, KVAR did not commit an act in Delaware and, as such, did not transact business in this State. Accordingly, Section 3104(c)(1) cannot serve as a basis for jurisdiction over KVAR.

### 2. KVAR Has Not Contracted to Supply Services or Things In Delaware

Much like Section 3104(c)(2), Section 3104(c)(2) also "requires that the defendant perform the act in this State … Again, when a manufacturer passes title of goods to a third party outside of this jurisdiction it cannot be said the manufacturer has acted in Delaware[,]" and, as such, Section 3104(c)(2) cannot serve as a basis for personal jurisdiction over a nonresident defendant in that context alone. *Boone*, 724 A.2d at 1156.

Once again, Tri-State cannot dispute that the shipping terms between the parties was F.O.B. Port Orange, Florida, as that is expressly stated in Sections 5 of the Exclusive Agreement and the Distributor Agreement. Exhibit C ¶ 5; Exhibit D ¶ 5. Because title passed to Tri-State in Florida, when KVAR's products were placed in the possession of the commercial carrier, and

14

such transfer occurred outside of Delaware, KVAR cannot be deemed to have acted in Delaware. *See Boone*, 724 A.2d at 1156. Further, nor does KVAR's contracting with Tri-State give rise to an act by KVAR in Delaware. *Abajian*, 1992 WL 8794, at *10. In all, the mere contracting with Tri-State and the shipment of goods F.O.B. Florida does not provide the necessary nexus between the contract and the forum to support a finding of jurisdiction under Section 3102(c)(2).

### 3.    KVAR Has Not Caused Tortious Injury In Delaware by an Act or Omission In Delaware

To find jurisdiction under Section 3104(c)(3), the defendant must have caused a tortious injury *in Delaware* by its acts or omissions *in Delaware*. *Abajian*, 1992 WL 8794, at *10. The mere fact that the effect of a tortious act is felt in Delaware is not sufficient. *Sears, Roebuck & Co. v. Sears plc.*, 744 F. Supp. 1289, 1294 (D. Del. 1990). The issue of whether an adverse financial impact upon a Delaware entity constitutes a tortious injury in Delaware remains unanswered by the Courts. As stated in *Abajian*, 1992 WL 8794, at *10: "The fictive nature of corporations and the abstract character of some financial injuries makes application of subsection (c)(3)'s language problematic in this setting." *Red Sail Easter Limited Partners, L.P. v. Radio City Music Hall Productions, Inc.,* 1991 WL 129174, at *5 n. 3 (Del. Ch. July 10, 1991) (leaving open the question of whether a financial impact on a Delaware corporation arising from an alleged misappropriation of trade secrets would constitute tortious injury in Delaware under Section 3104(c)(3)).

Nonetheless, even if the requirement that Tri-State must have been tortiously injured in Delaware is ignored, Section 3104(c)(3) cannot serve as a basis for jurisdiction over KVAR because none of the alleged acts or omissions asserted by Tri-State in its Complaint occurred in Delaware. Tri-State's Complaint is replete with allegations that KVAR has inappropriately used Tri-State's testimonials on its own website, and has defamed Tri-State on various other websites,

15

in an effort to support its claims of unfair competition, misappropriation of testimonials, and deceptive trade practices.  However, the use of KVAR's website, which is maintained outside Delaware, and various other websites to commit an alleged tort does not give rise to an act or omission in Delaware. *See, e.g., Kloth v. Southern Christian Univ.*, 494 F.Supp.2d 273, 279 (D. Del. 2007) (stating "[c]ourts within the Third Circuit have traditionally required 'something more' than the knowledge that their website could be viewed…in a forum state before considering whether personal jurisdiction is proper.").  Therefore, even assuming that KVAR caused a tortious injury to Tri-State in Delaware, KVAR has not caused the alleged injuries by an act or omission in this State.

### 4. KVAR Has Not Caused Tortious Injury In Delaware by an Act or Omission Outside of Delaware

As previously noted, Section 3104(c)(4) is a general jurisdiction provision, which permits the Court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action.  *Boone*, 724 A.2d at 1155.  That is, Section 3104(c)(4) "will apply when a defendant has had contacts with this state that are *so extensive and continuing* that it is fair and consistent with state policy to require that the defendant appear here and defend a claim even when that claim arose outside of this state and causes injury outside of this state." *Red Sail*, 1991 WL 129174, at *3 (emphasis supplied).

Jurisdiction under Section 3104(c)(4) is established only when there has been tortious injury to the plaintiff and either the nonresident defendant regularly does or solicits business in Delaware, carries on some other continuous course of activity in Delaware, or derives substantial revenue from goods used or consumed or from services rendered in Delaware. *Waters v. Deutz Corp.*, 479 A.2d 273, 275 (Del. 1984).

ME1 7277216v.1

Even assuming that Tri-State has sufficiently alleged a tortious injury, KVAR's contacts with this state are in no way "extensive and continuing." Tri-State has failed to allege, much less make a showing, that KVAR generates substantial revenue from services or things used or consumed in Delaware. *Red Sail*, 1991 WL 129174, at *3.

KVAR is a Florida entity, with its principal place of business in Florida, and no office or employees in Delaware. KVAR does not regularly solicit business or advertise in Delaware, and it has never commenced any legal action in Delaware. Nor has KVAR ever been named as a defendant in any action in Delaware prior to this litigation. Although KVAR does maintain a commercial website, the existence of such a website is not considered regularly soliciting business in Delaware. *Motorola Inc. v. PC-Tel,* 58 F. Supp.2d 349, 352 (D. Del. 1999). Therefore, because KVAR does not have "extensive and continuing" contacts with Delaware, Section 3104(c)(4) cannot provide a basis for jurisdiction over KVAR.

\*    \*    \*

As set forth above, KVAR is not subject to *in personam* jurisdiction pursuant to the Delaware long arm statute, 10 *Del. C.* § 3104(c). As Tri-State cannot establish jurisdiction under any of the enumerated provisions of 10 *Del. C.* § 3104(c), the jurisdictional analysis ends without the need to analyze the Due Process component. *M&M Tech.*, 2005 WL 293509, at *2. In the absence of *in personam* jurisdiction, KVAR respectfully requests that this action be dismissed.

II.    **ASSUMING *ARGUENDO* THAT THIS COURT FINDS KVAR SUBJECT TO *IN PERSONAM* JURISDICTION, KVAR REQUESTS THAT THIS ACTION BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA PURSUANT TO 28 *U.S.C.* 1404(a)**

A.    **Standard of Review**

On a motion to transfer, the Court evaluates whether the action, in the interests of convenience and justice, should proceed in a different forum. *Bank of America, N.A. v. S.I.P.*

17

*Assets, LLC, et al.*, 2007 WL 2698192, at *2 (D. Del. Sept. 11, 2007) (citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995)).  The inquiry causes the court to balance a number of factors "embracing not only the statutory criteria of the interests of justice and the convenience of the parties and witnesses, but all relevant factors, including certain private and public interests." *Bank of America, N.A. v. S.I.P. Assets, LLC, et al.*, 2007 WL 2698192, at *2 (D.Del. Sept. 11, 2007) (quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 875 (3d Cir. 1995)).

**B.      Both Private and Public Interest Facts Favor Transfer to Florida**

**1.      Private Interest Factors Favor Transfer to Florida**

This Court has previously held that private interests -- *i.e.* the personal interests of the litigants -- to be considered in the context of a motion to transfer include the plaintiff's choice of forum; the defendant's preference to litigate elsewhere; the forum where the claim arose; and the proximity of the parties, witnesses and evidence to the presiding court. *See Bank of America, N.A.,* 2007 WL 2698192, at *2 (citation omitted); *see also Marino v. Cross Country Bank*, 2007 WL 1946533, at * 4 (E.D. Pa. June 29, 2007) (identifying private interest factors as plaintiff's choice of forum, defendant's preferred forum, whether the claim arose elsewhere, convenience to the parties based on their physical and financial conditions, convenience to the witnesses, the location of evidence and whether it can be produced in either forum) (citation omitted).  As set forth below, all of the foregoing personal or private interest factors either strongly favor transfer to the Middle District of Florida, or are at the very least neutral, while none of the factors favor keeping this action in Delaware.

**(a)      Tri-State's Choice of Forum Favors Florida**

**i.      Tri-State is Contractually Bound to Litigate in Florida**

As evidenced by Tri-State's filing of the Delaware Action, Tri-State *now* prefers to litigate in Delaware.  However, Tri-State's decision to file this action in Delaware is not entitled to any deference, and despite Tri-State's choice to file in Delaware, Tri-State is contractually bound to litigate this dispute in Florida.[6]

First and foremost, KVAR and Tri-State contractually agreed that "jurisdiction and venue for any legal action, suit or proceeding arising out of or relating to this [NDA] shall rest solely with the federal or state court having jurisdiction over Volusia County, Florida."  Exhibit D ¶ 9. Paragraph 9 of the NDA is a *mandatory* forum selection clause which requires disputes to be brought in Volusia County, Florida.  *See Cancer Genetics Inc. v. Kreatech Biotech. B.V.*, 2007 WL 4365328, at *4 (D. N.J. Dec. 11, 2007) (distinguishing between a *permissive* forum selection clause in which "parties consent to jurisdiction in a particular forum" and a *mandatory* forum selection clause which "designates an exclusive forum to resolve disputes").

Though Tri-State's Delaware Complaint does not refer to the NDA expressly, the dispute between the parties arises out of, and is related to, the NDA.  "'Whether or not a forum selection clause applies depends on what the specific clause at issue says'...[a] clause governing claims 'related to' or 'concerning' the parties' agreement applies to a broader range of claims than a clause governing claims 'arising under' the agreement."  *Schering Corp. v. First Databank, Inc.*, 479 F. Supp.2d 468, 470-71 (D. N.J. 2007) (citing and quoting *Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997)).

---

[6]   As noted in footnote 4 *supra*, even if Gillen and Chieffo executed the NDA in their individual capacities, they cannot escape the operation of the forum selection clause by forming an entity and then bringing a related lawsuit through that entity.  KVAR maintains that Tri-State is a successor-in-interest to the NDA, and/or the alter-ego of Lawrence Gillen and Joseph Chieffo, and is therefore bound by all of the NDA provisions, including the forum selection clause.  For ease of reference, Gillen, Chieffo and Tri-State will be referred to collectively as "Tri-State" in Section II.B.1.

In the *Wyeth & Brother* case, then-Circuit Judge Alito, writing for the Court, held that "[t]o say that a dispute 'arises…in relation to' the [agreement] is to say that the origin of the dispute is related to that agreement, *i.e.*, that the origin of the dispute has some 'logical or casual connection' to the [agreement]."  *Wyeth & Brother Ltd.*, 119 F.3d at 1074 (emphasis original). The *Wyeth & Brother* Court decision then held that the forum selection clause's application to "disputes" rather than simply "claims" meant that even if the agreement containing the forum selection clause was raised only as a defense, that the forum selection clause would still operate to dictate the forum for the parties' dispute.  *Id*. at 1076 (holding the language "any dispute 'arising…in relation to'…easily encompasses a dispute in which the [agreement] is raised as a defense."); *see also Schering Corp.*, 479 F. Supp.2d at 471 (citing *Wyeth & Brother Ltd.* for the foregoing proposition).

Viewing Tri-State's Complaint in isolation, it is clear that the dispute between the parties is at least "related to" the NDA, as that agreement formed the basis of the KVAR-Tri-State relationship, and that the forum selection clause applies to disputes "arising out of or **relating to**" the NDA.  Exhibit B ¶ 9.  Stated another way, Tri-State cannot fairly say that its Complaint is entirely "unrelated" to the NDA.  However, and perhaps more importantly, the entire dispute between KVAR and Tri-State (and the Tri-State Partners) is "related to" the NDA, as evidenced by KVAR's allegations of Tri-State and the Tri-State Partner's breach of the NDA in the Florida Action.  *E.g.*, Florida Complaint ¶¶ 106-109.  If KVAR were to assert its claims in the Florida Action here as counter-claims, and bring in the indispensable parties (Gillen, Chieffo, and Chieffo Electric) necessary to resolve this dispute completely, there could be no doubt that the "dispute" between the parties was "related to" the NDA.  *See Wyeth & Brother Ltd.*, 119 F.3d at

1074; *see also generally The Source Buying Group, Inc. v. Block Vision, Inc.*, 2000 WL 62972 (E.D. Pa. Jan. 14, 2000).

In *Block Vision*, the plaintiff brought suit in the Eastern District of Pennsylvania alleging breach of a promissory note. *Block Vision, Inc.*, 2000 WL 62972, at *1. The defendant sought to transfer the action to the Southern District of Florida pursuant to the forum selection clause contained in the note. *Id*. The plaintiff challenged the validity of the forum selection clause contained in the note. *Id*. Rather than address the plaintiff's challenge to the validity of the forum selection clause contained in the note, the Court examined the dispute as a whole and determined that the dispute implicated not only the note, but also the asset purchase agreement pursuant to which the parties executed the note. *Id*. at *2. The asset purchase agreement contained an unquestionably valid forum selection clause designating the Southern District of Florida as the venue for disputes "related" to the asset purchase agreement. *Id*. The Court found that "both the [note] and the [asset purchase agreement] are inseparably implicated in the current controversy" and that transfer to the Southern District of Florida was appropriate because that is where the "parties [can] fully litigate this action." *Id*. The same result is appropriate here. *See generally Wyeth & Brother Ltd.*, 119 F.3d 1070; *Schering Corp.*, 479 F. Supp.2d 468.

Tri-State brought suit alleging breach of the Distributor Agreement and three common law tort causes of action. *See generally* Delaware Complaint. In reality though, KVAR is the real "plaintiff" -- the truly injured party -- based on the facts set forth above and as alleged in the Florida Complaint. KVAR has alleged violations of both the NDA and the Distributor Agreement, as well as several statutory and common law claims, and thus, as in *Block Vision*, "both the [NDA] and the [Distributor Agreement] are inseparably implicated in the current controversy." *Block Vision, Inc.*, 2000 WL 62972, at *2.

Based on the foregoing, this action should be transferred to the Middle District of Florida because Tri-State is bound by a forum selection clause to litigate this dispute in Florida.  The broad forum selection clause contained in the NDA encompasses disputes "related to" the NDA which includes the present dispute.   Even assuming *arguendo* that Tri-State's Delaware Complaint does not implicate the NDA, the entire dispute between the parties does, and Third Circuit precedent instructs that transfer to the Middle District of Florida is appropriate.  *See generally Wyeth & Brother Ltd.*, 119 F.3d 1070.

> ii.   **Tri-State's Delaware Filing is not Entitled to "First-Filed" Status and Therefore Transfer to Florida is Appropriate.**

Second, separate and apart from the fact that Tri-State has already agreed to litigate this dispute in Florida, Tri-State's Delaware filing is not entitled to "first-filed" status.  At the time Tri-State filed this action, the relationship between Tri-State and KVAR had deteriorated, and it was evident that litigation between the two entities was imminent.  Accordingly, Tri-State made a tactical decision to file this action in Delaware.  A tactical decision to pre-empt another party from filing suit in a less convenient jurisdiction, or the decision to file an action for non-adjudicatory purposes, will not be afforded the deference of a "first-filed" action -- the court may depart from the first-filed rule where there is evidence of "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping."  *Kim v. Kim,* 324 F.Supp.2d 628, 635 (E.D. Pa. 2004) (quoting *Equal Employment Opportunity Comm'n v. Univ. of Pa.,* 850 F.2d 969, 972 (3d Cir. 1988).  Tri-State's conduct in filing the Delaware Action dictates that the Delaware Action not be treated as a "first-filed" action.[7]  Given the foregoing discussion on the forum

---

[7] The Delaware Court of Chancery would likely look with skepticism on Tri-State's decision to file a suit in Delaware as well.  "It is also well known that this Court takes a rather dim view of 'tactical maneuvers and improper manipulation of the litigation process by parties who seek to invoke the principles of comity and efficiency

selection clause, and the imminent likelihood that KVAR -- the real "plaintiff" in this dispute -- was going to be filing suit in Florida, there can be no doubt that Tri-State filed the Delaware Action as a pre-emptive measure.

Tri-State's unexplained and unreasonable delay in commencing and completing service of process evidences Tri-State's race to the courthouse in an effort to obtain "first-filed" status. The first-filed rule does not apply in instances in which "the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum." *Kim,* 324 F.Supp.2d at 635 (quoting *Equal Employment Opportunity Comm'n v. Univ. of Pa.,* 850 F.2d 969, 976 (3d Cir. 1988)). Tri-State was clearly not ready to litigate this dispute when it filed the Delaware Complaint.[8]

Rather, it is evident that Tri-State filed the Complaint for dual purposes: (1) to under-cut the parties' agreed upon (and KVAR's preferred) forum -- Florida; and (2) to use the Complaint for libelous purposes. *See, e.g.,* Florida Complaint ¶ 61 (describing Tri-States libelous conduct). The unexplained four month delay in serving KVAR with a copy of the Complaint further highlights that Tri-State filed this action for purposes other than litigating.

Comparatively, KVAR filed the Florida Complaint against Tri-State and the Tri-State Partners and immediately commenced service of process. Tri-State and the Tri-State Partners were served with process in January 2008 (Florida Action [D.I. ## 9-11]), except for Tri-State Partner Lawrence Gillen who was served with process on February 24, 2008 (*Id.* [D.I. ## 20-21]). Counsel for Tri-State and the Tri-State Partners entered his appearance on February 15, 2008 (*Id.* [D.I. # 12]), the *very same day* Tri-State *commenced* service of the process in the

---

underlying the *McWane* doctrine.'" *Rapoport v. Litigation Trust of MDIP, Inc.,* 2005 WL 3277911, at *3 (Del. Ch. Nov. 23, 2005) (citation omitted).
[8]As the Court of Chancery has noted, that Court will consider the parties' intention to litigate the claims. *Rapoport,* 2005 WL 3277911, at *3.

Delaware Action by serving the Delaware Secretary of State with a summons for KVAR pursuant to 10 *Del. C.* § 3104.

Put simply, Tri-State should not be rewarded for its pre-emptive bad faith race to the courthouse. Tri-State was aware of the likelihood of litigation in Florida, and took steps to pre-empt that filing. It is evident from the facts as set forth above, and as alleged in the Florida Complaint, that KVAR, and not Tri-State, is the real "plaintiff" to the parties' dispute. It is also evident that Tri-State was not prepared to litigate when it filed the Delaware Action, and that but for the Florida litigation, Tri-State would not have commenced service of process in Delaware. Finally, it is evident from Tri-State's conduct that Tri-State's ulterior motive in filing the Complaint was to use the Complaint for libelous purposes. Accordingly, even assuming *arguendo* that the Court does not find the binding forum selection clause to weigh in favor of transfer, Tri-State's conduct in the commencement of the Delaware litigation precludes the Delaware litigation from being afforded the deference of a "first-filed" action. The parties' contractual choice of forum, Florida, and the same choice of forum by the real "plaintiff" -- KVAR -- weighs strongly in favor of transfer to Florida.

**(b)      KVAR Strongly Prefers The Middle District of Florida**

For the reasons indicated *supra*, KVAR strongly prefers to litigate in the Middle District of Florida. In addition to the forum selection and choice law provision favoring Florida, KVAR is a corporation organized and existing pursuant to the laws of the State of Florida, with its principal place of business located in Florida. This factor weighs strongly in favor of transfer to Florida.

**(c)      The Dispute Arose in Both Delaware and Florida and Therefore Favors Each Jurisdiction Equally**

ME1 7277216v.1

Viewing the allegations in each of the Florida Complaint and Delaware Complaint, it is evident that the dispute arose in both Delaware and Florida. Accordingly, this factor favors both Florida and Delaware equally.

> **(d)      The Proximity of the Witnesses and Evidence to the Presiding Court Favors Each Jurisdiction Equally**

Viewing the dispute against the parties as a whole, it is evident that the witnesses, evidence, documents, etc. are located in both Delaware and Florida. Accordingly, these factors favors both Florida and Delaware equally.

> **(e)      Based on the Foregoing Analysis, the Private Interest Factors Favor Transfer to Florida**

As set forth *supra*, the first two factors strongly favor transfer to Florida, and the remainder of the factors are neutral. Accordingly, transfer to the Middle District of Florida is appropriate.

> **2.      Public Interest Factors Favor Transfer to Florida**

"Among the relevant public interests are: 'the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora.'" *Bank of America,* 2007 WL 2698192, at *2 (quoting *Jumara,* 55 F.3d at 879-80).

The aforementioned public interest factors favor both Delaware and Florida equally, except that Middle District of Florida, with due deference to this Court, is more apt to be familiar with Florida law which governs the dispute between the parties pursuant to both the NDA and the Distributor Agreement. Exhibit B ¶ 9; Exhibit D ¶ 24. The familiarity of the trial judge with

ME1 7277216v.1

the governing law is an appropriate factor for consideration. *See, e.g., Bank of America, N.A. (USA) v. U.S. Airways, Inc.*, 2005 WL 3525680, at *2 (D. Del. Dec. 21, 2005). Accordingly, though the public interest factors are largely neutral, the scales tip in favor of transfer to Florida because the Middle District of Florida is likely more familiar with Florida law which governs the parties dispute. *See id.*

Practical considerations favor transfer as well. KVAR presently intends to proceed with the Florida Action regardless of whether this action is transferred to Florida, because KVAR has sued both Tri-State and the Tri-State Partners individually, filed a very comprehensive Complaint in the Middle District of Florida, and served all defendants in the Florida Action with process already. Thus, if this action is not transferred, the parties will have to litigate in two fora, while the dispute could easily be resolved *in toto* in the Middle District of Florida. This practical consideration weighs in favor of transfer to Florida. *See id.* (transferring the action based "largely on…practical considerations"). Like the private interest factors, these public interest factors further militate in favor of a transfer to the Middle District of Florida.

C.    **Transfer to the Middle District of Florida is Appropriate**

As set forth above, the private interest factors heavily weigh in favor of transfer to Florida, and the public interest factors also weigh in favor of transfer to Florida. Accordingly, transfer to Florida is appropriate under these circumstances, and KVAR respectfully requests that this Court transfer this action to the Middle District of Florida for complete adjudication. *See, e.g., generally Bank of America, N.A. v. S.I.P. Assets, LLC, et al.*, 2007 WL 2698192 (D. Del. Sept. 11, 2007); *Bank of America, N.A. (USA) v. U.S. Airways, Inc.*, 2005 WL 3525680, at *2 (D. Del. Dec. 21, 2005).

## CONCLUSION

For the reasons set forth herein, KVAR respectfully requests the Court dismiss this action for lack of personal jurisdiction over KVAR, or in the alternative, transfer this action to the Middle District of Florida.

**McCarter & English, LLP**

/s/ Daniel M. Silver
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
Renaissance Centre
405 N. King Street
Wilmington, DE 19801
(302) 984-6300

**McCarter & English, LLP**
William J. Heller
wheller@mccarter.com
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 622-4444
*Attorneys for KVAR Energy Savings, Inc.*

Dated: April 11, 2008

27

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TRI-STATE ENERGY SOLUTIONS, LLP a Delaware Limited Liability Partnership; | : : : | Civil Action No. |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| vs. | : : | |
| KVAR ENERGY SAVINGS, INC., | : : | |
| Defendant. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **April 11, 2008,** I electronically filed the <u>Opening Brief In</u>

<u>Support of Defendant KVAR Energy Savings, Inc.'s Motion to Dismiss Defendant KVAR</u>

<u>Energy Savings, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Or In The</u>

<u>Alternative, Motion to Transfer This Action to the Middle District of Florida</u> with the Clerk of

Court using CM/ECF.  I hereby certify that on **April 11, 2008,** I have mailed by United States

Postal Service, the document(s) to the following non-registered participants:

> Leo John Ramunno, Esq. (# 2003)
> 1205 N. King Street
> Wilmington, Delaware 19801
> (302) 654-0660
> Attorney for Tri-State Energy Solutions, LLP

> **McCarter & English, LLP**
>
> /s/ Daniel M. Silver
> A. Richard Winchester (#2641)
> awinchester@mccarter.com
> Daniel M. Silver (#4758)
> dsilver@mccarter.com
> 405 N. King Street
> Wilmington, DE 19801
> (302) 984-6300
> Attorneys for KVAR Energy Savings, Inc.

ME1 7285564v.1

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | | |
|---|---|---|
| KVAR ENERGY SAVINGS, INC., | : | Civil Action No. |
| | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| TRI-STATE ENERGY SOLUTIONS, LLP a | : | |
| Delaware Limited Liability Partnership; | : | |
| | : | |
| CHIEFFO ELECTRIC, INC., a Delaware | : | |
| corporation; | : | |
| | : | |
| LAWRENCE GILLEN, an individual; | : | |
| | : | |
| and | : | |
| | : | |
| JOSEPH J. CHIEFFO, an individual; | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT AND JURY DEMAND

Plaintiff KVAR Energy Savings, Inc. ("KVAR"), by way of this Complaint against

Defendants hereby states:

### PARTIES

1.     KVAR is a corporation organized and existing under the laws of the State of

Florida with its principal place of business at 413 Oak Place, Building 4-S, Port Orange, Florida

32127.

2.     Defendant Tri-State Energy Solutions, LLP ("Tri-State") is a limited liability

company or partnership organized and existing under the laws of the State of Delaware, with its

principal place of business in Delaware or a state other than the State of Florida.

3.    Defendant Chieffo Electric, Inc. ("Chieffo Electric") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Delaware or a state other than the State of Florida.

4.    Upon information and belief, Chieffo Electric is a partner in Defendant Tri-State.

5.    Chieffo Electric has acted for, in concert with, and has conspired with Tri-State and the other Defendants to commit the acts complained of herein.

6.    Chieffo Electric, alone and/or with the other defendants, controls the activities of Tri-State. Chieffo Electric has directed the wrongful acts complained of herein.

7.    Defendant Lawrence Gillen ("Gillen") is an individual residing in and who is a citizen of the State of Delaware or a state other than the State of Florida.

8.    Upon information and belief, Gillen is a partner in Tri-State.

9.    Gillen is a co-president of Tri-State as shown by his signature on Exhibit A.

10.    Gillen, alone and/or with the other defendants, controls the activities of Tri-State. Gillen, alone and/or with the other defendants, has personally directed the wrongful acts complained of herein.

11.    Gillen has acted for, in concert with, and has conspired with Tri-State and the other Defendants to commit the acts complained of herein.

12.    Defendant Joseph J. Chieffo ("Chieffo") is an individual residing in and who is a citizen of the State of Delaware or a state other than the State of Florida.

13.    Upon information and belief, Chieffo is a partner in Tri-State.

14.    Chieffo is a co-president of Tri-State as shown by his signature on Exhibit A.

15.    Chieffo, alone and/or with the other defendants, controls the activities of Tri-State. Chieffo, alone and/or with the other defendants, has personally directed the wrongful acts complained of herein.

16.    Chieffo has acted for, in concert with, and has conspired with Tri-State and the other Defendants to commit the acts complained of herein.

## JURISDICTION AND VENUE

17.    This case arises under the Trademark Laws of the United States, 15 U.S.C. §§1051, *et seq*. This Court has jurisdiction over this matter pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1338. This Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that there is diversity of citizenship as between Plaintiff KVAR and all Defendants, and the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000). This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

18.    Venue is proper in this district pursuant to 28 U.S.C. §1391.

19.    Tri-State and the other Defendants conduct business within the State of Florida, generally and specifically with respect to the transactions or occurrences that form the basis for this Complaint. At all times herein material, the Defendants are subject to the jurisdiction of this Court pursuant to § 48.193 in that they: (i.) are engaged in substantial, not isolated activity within the state of Florida; (ii.) operate, conduct, engage in, and carry on a business in the state of Florida; (iii.) maintain an office in the state of Florida; and/or (iv.) are alleged to have breached a contract in the state of Florida by failing to perform acts required by the contract to be performed in the state of Florida.

20.    Under the Confidentiality and Non-Disclosure Agreement that Tri-State and/or Gillen entered into with KVAR, Tri-State and/or Gillen agreed "that jurisdiction and venue for

3

any legal action, suit or proceeding arising out of or relating to this Agreement shall rest solely with the federal or state court having jurisdiction over Volusia County, Florida."

**FACTS COMMON TO ALL COUNTS**

A.    **KVAR Products and the Distinctive KVAR™ Mark**

21.    KVAR is a well-known manufacturer of products that improve the energy efficiency of residential and commercial buildings.  Individuals and entities who use KVAR products reduce their energy costs.  KVAR has built a nationwide reputation as a source for quality KVAR™ brand products that allow individuals and entities to save money on energy costs.

22.    Since at least 1995, KVAR has manufactured and/or sold KVAR Energy Controller Units under the distinctive trademark KVAR™ (the "KVAR™ Mark") (collectively, "KVAR™ Products").

23.    The KVAR™ Mark is displayed prominently on all KVAR™ Products.  The KVAR™ Mark is also prominently displayed on KVAR's website, http://kvarnrg.com.

24.    Each KVAR™ Product bears the KVAR™ Mark and model and serial numbers that correlate to the use of the particular KVAR™ product, whether for a residence, commercial or industrial building.

25.    KVAR™ Products have been tested and certified by Underwriters Laboratories, Inc. ("UL").  KVAR™ Products bear the UL® certification mark that is unique to KVAR™ Products.

26.    KVAR™ Products also have received certifications from and/or the approvals of the National Aeronautics and Space Administration (NASA) and by CSA International.

4

27.    KVAR has sold in excess of sixty thousand (60,000) units of KVAR™ Products. Annual net sales of all KVAR™ Products for the past five years alone exceeds one million dollars ($1,000,000).  KVAR has also invested close to two million dollars ($2,000,000) in advertising and promoting KVAR™ Products; in the past five years alone, KVAR has spent in excess of one million dollars ($1,000,000) to advertise and promote KVAR™ Products. KVAR's advertising and promotion include approximately one hundred thousand ($100,000) dollars annually for marketing and for trade and retail advertising.

28.    As a result of the extensive advertising, promotion and sales of KVAR™ Products, the KVAR™ Mark has achieved widespread recognition and has become distinctive of KVAR's goods and services in commerce, and it acquired this status long before the acts of Defendants as alleged herein.  KVAR owns valuable goodwill in the KVAR™ Mark and, as a result, the use thereof substantially increases the salability of KVAR™ Products.


**B.    The Regional Distributor Agreement Between KVAR and Tri-State.**

29.    KVAR sells KVAR™ Products directly and through distributors.

30.    On or about May 5, 2006, Tri-State entered into a Regional Distributor Agreement ("Distributor Agreement") with KVAR.  A true and correct copy of the Agreement is attached as Exhibit A.

31.    Chieffo and Gillen each executed the Distributor Agreement as the co-presidents of Tri-State, and/or in their individual capacities.

32.    Pursuant to paragraph 2 of the Distributor Agreement, KVAR granted:

> [A]n exclusive right on the terms and conditions contained below
> to purchase, inventory, promote and resell "KVAR SAVING INC.
> [sic] Products" . . . for single-motor applications in [Maryland,
> Delaware and Pennsylvania] (the "Exclusive Rights Granted");

5

except [Tri-State] shall have an exclusive right to purchase, inventory, promote and resell Panel Units (the "Exclusive Rights Granted"). **Nothing herein shall prevent or prohibit KVAR from selling any of KVAR Products directly to the customers. In order to protect the goodwill of KVAR and [Tri-State's] accounts, if [Tri-State] is unwilling or unable to service its accounts, then KVAR reserves the right to service the accounts** (emphasis added).

33.    Under the Distributor Agreement, Tri-State was permitted to purchase, inventory, promote and resell the following KVAR™ Products as a KVAR distributor: US1 single phase sizers, US2 three phase sizers, US3 three phase sizers, power quality meters, certain capacitance assemblies for single-motor applications, certain capacitance assemblies for residential and commercial electrical panels and demonstration kits.

34.    Pursuant to paragraph 8 of the Distributor Agreement, KVAR was permitted to establish sales quotas, and Tri-State agreed to employ and monitor sales personnel to reach such quotas.

35.    Pursuant to paragraph 9.B. of the Distributor Agreement, Tri-State agreed "not to engage in the distribution promotion, marketing or sale of any goods or products that compete or conflict with KVAR Products."

36.    Pursuant to paragraph 9.C. of the Distributor Agreement, Tri-State, "as a minimum, shall make orders of KVAR in net wholesale value of $75,000 (Seventy-five thousand dollars) in every three-month period during the first two years . . . of the Distributor's appointment."

37.    Pursuant to paragraph 10 of the Distributor Agreement, Tri-State was permitted to advertise the KVAR™ Products if "the form and content of the advertising, promoting or marketing materials and/or activities are approved by KVAR in advance."

6

38.    Pursuant to paragraph 13 of the Distributor Agreement, Tri-State could "not use, authorize or permit the use of the name 'KVAR' or any other trademark or trade name owned by KVAR as part of its firm, corporate or business name in any way.  Tri-State may, subject to KVAR's written prior approval, utilize KVAR's name, trademarks or logo in advertising on stationery, business card or other medium."

## C.    The Confidentiality Agreement Between KVAR and Tri-State.

39.    Prior to entering into the Distributor Agreement, KVAR, Tri-State and Gillen entered into a Confidentiality and Non-Disclosure Agreement ("NDA") to govern and protect all trade secret, confidential and proprietary information that KVAR would disclose, and did disclose, to one or more of the Defendants, including, but not limited to, KVAR's energy-saving ideas, procedures and equipment, KVAR's prospective customer list, and KVAR's marketing concepts, techniques and contracts (collectively, the "KVAR Confidential Information").  A true and accurate copy of the NDA is attached as Exhibit B.

40.    Gillen executed the NDA for Tri-State and/or in his individual capacity.

41.    KVAR also provided training to some or all of the Defendants, including Tri-State personnel, Larry Gillen and Joe Chieffo, in the use of KVAR Confidential Information.

42.    Under the NDA, and in reliance on the agreement to protect the confidentiality thereof, KVAR disclosed KVAR Confidential Information to Tri-State and the other Defendants, including information pertaining to the functionality of KVAR™ Products, the technology that is related to the subject matter of U.S. Patent No. 5,440,442 owned by Gregory Taylor, a principal of KVAR, KVAR's sizing equipment, and specifications for installing the KVAR™ Products, including the required binary combinations.

7

43.    Pursuant to the NDA, Defendants were obligated to use KVAR Confidential Information only for the purposes of business with KVAR.

## D.    Defendants' Wrongful Acts

44.    Defendants, in concert and conspiracy with each other, and the individual Defendants through their control of Tri-State and the other entity Defendant, have engaged in trademark infringement, unfair competition, false advertising, misappropriation of confidential information, and other wrongful acts by using the relationship with KVAR under the Distributor Agreement to gain access to KVAR™ Products and KVAR Confidential Information, and to use them outside the scope of any rights granted by KVAR, and in violation of KVAR's rights.

45.    Defendants, through Tri-State, have purchased genuine KVAR™ Products, have removed the KVAR™ Marks, and have re-labeled these genuine KVAR™ Products under Tri-State's own brand, "Kilowatt Nanny." Defendants, through Tri-State, are passing off the genuine KVAR™ Products as their own, and are falsely representing the source or origin of their products. KVAR never authorized Tri-State to re-brand genuine KVAR™ Products as "Kilowatt Nanny."

46.    Upon information and belief, Defendants are also manufacturing, or having manufactured, copies of the genuine KVAR™ Products, and are passing off these counterfeit and infringing products as associated with, sponsored by, or manufactured by KVAR, and as certified by Underwriters Laboratories under the UL® certification given solely to genuine KVAR™ Products, as further alleged herein.

47.    Defendants' "Kilowatt Nanny" products are listed on the website of Chieffo Electric as a "KVAR Unit", http://www.chieffoelectric.com/kvar.html.    Chieffo Electric represents itself as a partner company of Tri-State.

48.    Defendants, through Tri-State, are passing off and selling "Kilowatt Nanny" products with the UL-certification granted to KVAR for genuine KVAR™ Products, and not to Tri-State.    Defendants are leaving the UL label and certification granted to KVAR on the genuine KVAR™ Products that they are re-labeling and passing off as their own.    Upon information and belief, Defendants are placing unauthorized copies of KVAR's UL certification on "Kilowatt Nanny" products that they are manufacturing or having manufactured.    Defendants, through Tri-State, thus falsely represent that they have received certification from Underwriters Laboratories and that their "Kilowatt Nanny" products are covered by the UL warranties given only to genuine KVAR™ Products.    Upon information and belief, Defendants never sought UL certification for the "Kilowatt Nanny," and are falsely claiming KVAR's UL certification as their own.    Upon information and belief, Defendants' acts void UL warranties, and the misrepresentation of UL coverage is falsely advertising the nature and quality of Defendants' products and is misleading to buyers.

49.    In or about November 2007, KVAR filed a formal complaint with UL regarding Tri-State's unauthorized use of KVAR's UL® certification on the Kilowatt Nanny.    UL is currently investigating this matter.

50.    Defendants are advertising their "Kilowatt Nanny" product with the following additional literally false and misleading statements (See Exhibit C):

9

A.   Defendants falsely advertise and represent that "Kilowatt Nanny" is UL certified, when it is not. UL certification has been granted only to KVAR for genuine KVAR™ Products.

B.   Defendants falsely advertise and represent that "Kilowatt Nanny" is NASA tested and is CSA certified, when it is not. Only genuine KVAR™ Products have been so tested and/or certified.

C.   Defendants falsely advertise and represent that "Kilowatt Nanny" is protected by United States Patent No. 5,440,442, that they are expressly or impliedly authorized to sell "Kilowatt Nanny" under that patent, and/or that they are legitimately associated with the owner of that patent. Gregory Taylor, is the owner of United States Patent No. 5,440,442 and has not granted any license under the patent to Defendants. In addition, United States Patent No, 5,440,442 does not cover "Kilowatt Nanny;" the patent covers a separate device used to size and configure genuine KVAR™ Products, and is not sold to end users.

D.   Defendants falsely advertise and represent that Summit Liquors of Middletown, Delaware is a satisfied user of "Kilowatt Nanny" products and that Summit Liquors is an objective third party. Summit Liquors is owned and controlled by Defendant Gillen, who is a co-president of Tri-State.

51.   Defendants, through the foregoing conduct, give buyers the false impression that they are sponsored or approved by KVAR, that they are authorized by KVAR to sell "Kilowatt

10

Nanny" products as KVAR™ Products or to sell modified products as originally manufactured by KVAR, and that such products have been certified by UL and other certifying organizations.

52.    KVAR has not authorized or otherwise assented to Defendants' re-labeling of KVAR™ Products, or Defendants' development, manufacture, or sale of modified KVAR™ Products, including the "Kilowatt Nanny."

53.    KVAR has not authorized or otherwise assented to Defendants' advertisements of an express or implied association with KVAR, or to the touting and use of KVAR's UL or CSA certifications or testing by NASA.

54.    KVAR has not licensed, authorized or assented to Defendants' use or advertisement of United States Patent No. 5,440,442.

55.    Defendants have made unauthorized use of the KVAR™ Mark in the sale of and/or offer to sell products held out by Defendants to be genuine KVAR™ Products in interstate commerce, and thereby have created a false association between Defendants and KVAR.

56.    Defendants have competed unfairly with KVAR and have misappropriated and traded upon KVAR's goodwill and business reputation by purposefully and knowingly re-labeling genuine KVAR™ Products as their own, and by advertising and associating themselves with KVAR, the KVAR™ Mark and KVAR™ Products, when Defendants and Defendants' products are not sponsored by, approved by, or connected with KVAR, and by falsely representing that Defendants' products have received the certification or approval of Underwriters Laboratories and other certifying bodies, and are warranted as UL-compliant when they are not.

57.    Defendants' actions have caused actual confusion in the marketplace. KVAR employees have received telephone inquiries from consumers as to whether the "Kilowatt Nanny" is a KVAR™ Product.

58.    KVAR employees have also been asked which KVAR distributor distributes the "Kilowatt Nanny" product and for KVAR to explain pricing discrepancies in different states associated with the promotion and offering for sale of the Kilowatt Nanny.

59.    Tri-State has breached (and the other Defendants have caused and/or induced Tri-State to breach) the Distributor Agreement by failing to meet contractually agreed minimums, by engaging in the distribution, promotion, marketing or sale of any goods or products that compete or conflict with KVAR™ Products, by advertising and promoting products without KVAR's prior approval as to the form and content of the advertisements, by seeking to appoint sub-distributors in the State of Florida using the KVAR form of distributor agreement, all without authorization, and by using, authorizing or permitting the use of the KVAR™ Mark and other marks, designations and certifications owned by KVAR other than for the benefit of KVAR, and without KVAR's authorization. As a result of Tri-State's breach of the Distributor Agreement and other wrongful acts, the Distributor Agreement is terminated and of no further force and effect.

60.    Tri-State has breached (and the other Defendants have caused and/or induced Tri-State to breach) the NDA by using KVAR Confidential Information in the development, sale, installation and/or servicing of the Kilowatt Nanny product as well as disclosing to third parties, including sub-distributors engaged by Tri-State without KVAR's authorization, KVAR Confidential Information concerning the technology and associated with the functionality of KVAR's products.

12

61.    Defendants also have engaged in a pattern of activity that interferes with KVAR's existing and prospective customer relationships and contracts. On or about November 19, 2007, Tri-State filed a complaint against KVAR in the Court of Chancery of the State of Delaware in and for New Castle County, entitled *Tri-State Energy Solutions, LLP v. KVAR Energy Savings, Inc.* and bearing case number 3361-VCP. Tri-State allegedly claims, among other things, that KVAR breached the Distributor Agreement. Prior to and after filing that complaint, Tri-State sent that pleading to existing and potential KVAR customers in an effort to interfere with those customers, their contracts with or their prospective dealings with KVAR, and otherwise to unfairly compete with KVAR. The statements made in the Delaware complaint, and other statements made by Tri-State to customers and potential customers of KVAR are false, were known to be false when made, and were material factual misrepresentations intended to wrongfully secure business to which Tri-State was not entitled.

62.    Tri-State, through the foregoing conduct, gives and gave buyers of the Kilowatt Nanny product the false impression that the Kilowatt Nanny is associated with or endorsed or authorized by KVAR, and that such product has been certified by UL, but instead is a counterfeit and infringing product.

63.    KVAR has requested on multiple occasions that Defendants cease marketing and selling the Kilowatt Nanny branded product as a KVAR product, and to cease its other wrongful acts. Defendants have refused to comply with KVAR's requests.

64.    Defendants' products, including, but not limited to, the "Kilowatt Nanny," are likely to cause consumer confusion and to dilute and injure the reputation and good will that KVAR enjoys through the KVAR™ Mark.

65.    As a result of Tri-State's wrongful conduct, KVAR has suffered damage to its goodwill and business reputation, which is incalculable and which constitutes irreparable harm which will continue unless enjoined by this Court, as well as monetary damages.

## FIRST COUNT

### (Trademark Infringement under Section 43(a) of the Lanham Act)

66.    KVAR repeats the allegations contained in the preceding paragraphs as if fully set forth herein.

67.    KVAR is the owner of the distinctive KVAR™ Mark.

68.    KVAR has continuously used the KVAR™ Mark to identify the KVAR™ Products in commerce throughout the United States since 1995.

69.    Defendants' use of marks on their products that are identical and/or confusingly similar to the KVAR™ Mark on or in connection with the manufacture, sale, offering for sale and distribution of competing energy-related products is not authorized by KVAR.

70.    Defendants' use of the "Kilowatt Nanny" brand as a source identifier for KVAR™ Products is not authorized by KVAR.

71.    Defendants' passing off of genuine KVAR™ Products as "Kilowatt Nanny" products is not authorized by KVAR.

72.    Defendants have used in commerce words, terms, names, symbols or devices that constitute false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact which are likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of Defendants with KVAR, and/or as to the origin, sponsorship or approval of or by KVAR of the business or products of Tri-State.

73.     Defendants' acts cause a likelihood of confusion, deception and mistake by buyers, the consuming public and the trade, and a false and unfair association will be made between Tri-State and KVAR, so that buyers in the trade and the purchasing public are likely to believe that Tri-State is authorized by KVAR to sell and/or distribute modified KVAR™ Products and/or that KVAR authorizes, sponsors or otherwise approves the manufacture, distribution, promotion and sale of the Kilowatt Nanny.

74.     Defendants' acts misrepresent the nature, characteristics, qualities or origin of Tri-State's products.

75.     Defendants' actions have also caused actual confusion in the marketplace. Consumers have contacted KVAR employees and inquired whether the Kilowatt Nanny is a KVAR™ Product and from which KVAR distributor they could obtain it.  Tri-State's actions also have injured the reputation of KVAR by creating the false impression that KVAR™ Products are more expensive than they are in fact.

76.     Defendants' acts constitute trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the laws of the State of Florida and the common law.

77.     Defendants' acts have been committed intentionally, maliciously, fraudulently, and willfully for the purposes of deceiving buyers into purchasing products from Tri-State based on the false belief that Tri-State is authorized by KVAR to sell modified KVAR™ Products, including the "Kilowatt Nanny," and with the specific intent to appropriate to Tri-State and to employ for its own benefit the valuable goodwill and business reputation represented by the KVAR™ Mark.

78.    Defendants' acts have caused and, if allowed to continue, will continue to cause KVAR to suffer substantial irreparable damage and injury. KVAR has no adequate remedy at law.

79.    As a result of the foregoing, KVAR has been damaged and has lost profits, and Tri-State has been unjustly enriched. In addition, Tri-State's actions have been extraordinary, entitling KVAR to costs, treble damages, attorneys' fees, and to such other and further relief as the Court shall deem appropriate in the circumstances.

**WHEREFORE**, plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.    That Defendants and their agents, servants, employees, attorneys, successors and assignees, and all persons in active concert or participation with any of them, jointly and severally, be temporarily, preliminarily and permanently enjoined and restrained from:

(1)    Modifying or re-labeling genuine KVAR™ Products;

(2)    Using in any manner the KVAR™ Mark, alone or in combination with any other words, or symbols, or any other designations or marks confusingly similar to the KVAR™ Mark, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products in connection with the KVAR™ Mark, or otherwise unfairly competing with KVAR;

(3)    Passing off, inducing or enabling others to sell or pass off any products that do not emanate from KVAR or that are not distributed under the control and supervision of KVAR and approved by KVAR for sale under the KVAR™ Mark or the Kilowatt Nanny brand or any other unauthorized brand, as products distributed by or with the approval of KVAR;

(4)    Falsely advertising the nature, quality, source, sponsorship or certification by third parties of Defendants' products;

16

(5)     Committing any act calculated to cause purchasers to falsely believe that products sold by Defendants are those sold under the control and supervision of KVAR or were sponsored, approved or connected with or guaranteed, warranted or produced under the control and supervision of KVAR;

(6)     Further infringing the KVAR™ Mark and damaging KVAR's goodwill and business reputation; and

(7)     Otherwise competing unfairly with KVAR in any manner.

B.     That Defendants be required to file with the Court and serve on KVAR's counsel within fifteen (15) days after service of any injunction issued here, or within such reasonable time as the Court shall direct, a report in writing and under oath setting forth, in detail, the manner and form in which Defendants have complied with such injunction;

C.     That Defendants be required to account and pay over to KVAR all wrongful profits;

D.     That KVAR be awarded judgment against Defendants for compensatory and punitive damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

E.     That KVAR be awarded such other and further relief as the Court deems just and proper.

## SECOND COUNT

### (Certification Mark Infringement under Section 43(a) of the Lanham Act)

80.     KVAR repeats the allegations contained in paragraphs 1-65 as if fully set forth herein.

81.     KVAR has obtained UL certification for the KVAR™ Products and, thus, has been authorized by UL to use the UL® certification mark on and in connection with the KVAR™ Products.

82.     KVAR has obtained CSA certification for the KVAR™ Products and, thus, has been authorized by CSA to use the CSA® certification mark on and in connection with the KVAR™ Products.

83.     The certifications granted to KVAR are specific only to the KVAR™ Products, and all KVAR™ Products contain the UL® certification mark.

84.     Upon information and belief, Defendants have neither sought nor obtained certification for their products from UL or CSA.

85.     Defendants have used KVAR's UL® certification on the Kilowatt Nanny.

86.     Defendants have advertised certification by UL and CSA for "Kilowatt Nanny" products.

87.     Defendants' use of KVAR's UL® certification and its advertisement of CSA certification on or in connection with the promotion, sale, offering for sale and distribution of its products, including, but not limited to, the "Kilowatt Nanny," is not authorized by KVAR or the certifying bodies.

88.     Defendants have used in commerce words, terms, names, symbols or devices that constitute false designations of origin, false or misleading descriptions of fact, and/or false or

18

misleading representations of fact which are likely to cause confusion, mistake or to deceive as to the affiliation, connection or association of Defendants with KVAR, and/or the approval, sponsorship, or certification by UL and/or CSA.

89.     Defendants' acts cause a likelihood of confusion, deception and mistake by buyers, the consuming public and the trade, and a false and unfair association will be made between Defendants and KVAR, and between Defendants and the certifying bodies, so that buyers in the trade and the purchasing public are likely to believe that Tri-State is authorized to use the KVAR UL® and other certifications on or in connection with the promotion, sale and/or distribution of their products, including the "Kilowatt Nanny."

90.     Defendants' acts misrepresent the nature, characteristics, qualities or origin of Tri-State's products.

91.     Defendants' actions have also caused actual confusion in the marketplace. Consumers have contacted KVAR employees and inquired whether the Kilowatt Nanny is a KVAR™ Product and from which KVAR distributor they could obtain it. Tri-State's actions also have injured the reputation of KVAR by creating the false impression that KVAR™ Products are more expensive than they are in fact.

92.     Defendants' acts have caused and, if allowed to continue, will continue to cause KVAR to suffer substantial irreparable damage and injury. KVAR has no adequate remedy at law.

93.     Defendants' acts constitute certification mark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the laws of the State of Florida and the common law.

94.     Defendants' acts have been committed intentionally, maliciously, fraudulently, and willfully for the purposes of deceiving buyers into purchasing products from Tri-State based on the false belief that Tri-State is authorized to use the KVAR UL® and other certification marks on the "Kilowatt Nanny," and with the specific intent to appropriate to Defendants and to employ for their own benefit the valuable goodwill and business reputation represented by the use of the UL® and other certifications on the KVAR™ Products.

95.     As a result of the foregoing, KVAR has been damaged and has lost profits, and Defendants have been unjustly enriched.     In addition, Defendants' actions have been extraordinary, entitling KVAR to costs, treble damages, attorneys' fees, and to such other and further relief as the Court shall deem appropriate in the circumstances.

**WHEREFORE,** plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.     That Defendants and their agents, servants, employees, attorneys, successors and assignees, and all persons in active concert or participation with any of them, jointly and severally, be temporarily, preliminarily and permanently enjoined and restrained from:

(1)     Modifying or re-labeling genuine KVAR™ Products;

(2)     Using in any manner the KVAR™ Mark, alone or in combination with any other words, or symbols, or any other designations or marks confusingly similar to the KVAR™ Mark, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products in connection with the KVAR™ Mark, or otherwise unfairly competing with KVAR;

(3)     Passing off, inducing or enabling others to sell or pass off any products that do not emanate from KVAR or that are not distributed under the control and supervision of

KVAR and approved by KVAR for sale under the KVAR™ Mark or the Kilowatt Nanny brand or any other unauthorized brand, as products distributed by or with the approval of KVAR;

   (4) Falsely advertising the nature, quality, source, sponsorship or certification by third parties of Defendants' products;

   (5) Committing any act calculated to cause purchasers to falsely believe that products sold by Defendants are those sold under the control and supervision of KVAR or were sponsored, approved or connected with or guaranteed, warranted or produced under the control and supervision of KVAR;

   (6) Further infringing the KVAR™ Mark and damaging KVAR's goodwill and business reputation; and

   (7) Otherwise competing unfairly with KVAR in any manner.

  B. That Defendants be required to file with the Court and serve on KVAR's counsel within fifteen (15) days after service of any injunction issued here, or within such reasonable time as the Court shall direct, a report in writing and under oath setting forth, in detail, the manner and form in which Defendants have complied with such injunction;

  C. That Defendants be required to account and pay over to KVAR all wrongful profits;

  D. That KVAR be awarded judgment against Defendants for compensatory and punitive damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

  E. That KVAR be awarded such other and further relief as the Court deems just and proper.

## THIRD COUNT

### (False Advertising and Unfair Competition in
### Violation of Section 43(a) of the Lanham Act)

96.    KVAR repeats the allegations contained in paragraphs 1-65 as if fully set forth herein.

97.    Defendants' acts constitute false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the laws of the State of Florida and the common law.

98.    Defendants' acts have been committed intentionally, maliciously, fraudulently, and willfully for the purposes of deceiving buyers into purchasing products from Defendants.

99.    Defendants' acts have caused and, if allowed to continue, will continue to cause KVAR to suffer substantial irreparable damage and injury.  KVAR has no adequate remedy at law.

100.    As a result of the foregoing, KVAR has been damaged and has lost profits, and Defendants have been unjustly enriched.   In addition, Defendants' actions have been extraordinary, entitling KVAR to costs, treble damages, attorneys' fees, and to such other and further relief as the Court shall deem appropriate in the circumstances.

**WHEREFORE**, plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.    That Defendants and their agents, servants, employees, attorneys, successors and assignees, and all persons in active concert or participation with any of them, jointly and severally, be temporarily, preliminarily and permanently enjoined and restrained from:

(1)    Modifying or re-labeling genuine KVAR™ Products;

22

(2)    Using in any manner the KVAR™ Mark, alone or in combination with any other words, or symbols, or any other designations or marks confusingly similar to the KVAR™ Mark, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products in connection with the KVAR™ Mark, or otherwise unfairly competing with KVAR;

(3)    Passing off, inducing or enabling others to sell or pass off any products that do not emanate from KVAR or that are not distributed under the control and supervision of KVAR and approved by KVAR for sale under the KVAR™ Mark or the Kilowatt Nanny brand or any other unauthorized brand, as products distributed by or with the approval of KVAR;

(4)    Falsely advertising the nature, quality, source, sponsorship or certification by third parties of Defendants' products;

(5)    Committing any act calculated to cause purchasers to falsely believe that products sold by Defendants are those sold under the control and supervision of KVAR or were sponsored, approved or connected with or guaranteed, warranted or produced under the control and supervision of KVAR;

(6)    Further infringing the KVAR™ Mark and damaging KVAR's goodwill and business reputation; and

(7)    Otherwise competing unfairly with KVAR in any manner.

B.    That Defendants be required to file with the Court and serve on KVAR's counsel within fifteen (15) days after service of any injunction issued here, or within such reasonable time as the Court shall direct, a report in writing and under oath setting forth, in detail, the manner and form in which Defendants have complied with such injunction;

23

C.      That Defendants be required to account and pay over to KVAR all wrongful profits;

D.      That KVAR be awarded judgment against Defendants for compensatory and punitive damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

E.      That KVAR be awarded such other and further relief as the Court deems just and proper.

## FOURTH COUNT

### (Misappropriation of Confidential Information)

101.    KVAR repeats the allegations contained in paragraphs 1-65 as if fully set forth herein.

102.    KVAR owns the KVAR Confidential Information. KVAR has taken reasonable steps to protect KVAR Confidential Information, including, without limitation, entering into the NDA with one or more Defendants.

103.    KVAR communicated KVAR Confidential Information to Defendants under the NDA in reliance on their promises and representations to maintain the secrecy of KVAR Confidential Information and not to disclose or use it except for the benefit of KVAR.

104.    Defendants have breached the NDA, and have breached their obligations of confidentiality to KVAR, by the unauthorized disclosure and/or use of KVAR Confidential Information in competition with KVAR.

105.    Defendants' acts have caused and, if allowed to continue, will continue to cause KVAR to suffer substantial irreparable damage and injury. KVAR has no adequate remedy at law.

24

106.    As a result of the foregoing, KVAR has been damaged and has lost profits, and Defendants have been unjustly enriched.    In addition, Defendants' actions have been extraordinary, entitling KVAR to costs, treble damages, attorneys' fees, and to such other and further relief as the Court shall deem appropriate in the circumstances.

**WHEREFORE**, plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.    That Defendants and their agents, servants, employees, attorneys, successors and assignees, and all persons in active concert or participation with any of them, jointly and severally, be temporarily, preliminarily and permanently enjoined and restrained from:

(1)    Modifying or re-labeling genuine KVAR™ Products;

(2)    Using in any manner the KVAR™ Mark, alone or in combination with any other words, or symbols, or any other designations or marks confusingly similar to the KVAR™ Mark, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products in connection with the KVAR™ Mark, or otherwise unfairly competing with KVAR;

(3)    Passing off, inducing or enabling others to sell or pass off any products that do not emanate from KVAR or that are not distributed under the control and supervision of KVAR and approved by KVAR for sale under the KVAR™ Mark or the Kilowatt Nanny brand or any other unauthorized brand, as products distributed by or with the approval of KVAR;

(4)    Falsely advertising the nature, quality, source, sponsorship or certification by third parties of Defendants' products;

(5)    Committing any act calculated to cause purchasers to falsely believe that products sold by Defendants are those sold under the control and supervision of KVAR or were

sponsored, approved or connected with or guaranteed, warranted or produced under the control and supervision of KVAR;

      (6)    Further infringing the KVAR™ Mark and damaging KVAR's goodwill and business reputation; and

      (7)    Otherwise competing unfairly with KVAR in any manner.

      B.    That Defendants be required to file with the Court and serve on KVAR's counsel within fifteen (15) days after service of any injunction issued here, or within such reasonable time as the Court shall direct, a report in writing and under oath setting forth, in detail, the manner and form in which Defendants have complied with such injunction;

      C.    That Defendants be required to account and pay over to KVAR all wrongful profits;

      D.    That KVAR be awarded judgment against Defendants for compensatory and punitive damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

      E.    That KVAR be awarded such other and further relief as the Court deems just and proper.

## FIFTH COUNT

### (Trade Libel)

107.    KVAR repeats the allegations contained in paragraphs 1-65 as if fully set forth herein.

108.    The statements Defendants made in the Delaware complaint and other statements made by Defendants about KVAR to customers and potential customers of KVAR are false and were known to be false when made.

109.    Defendants have made such statements willfully, maliciously, and with the intent to disparage KVAR and the KVAR™ Products and, therefore, harm the salability of KVAR™ Products.

110.    Defendants' acts have caused and, if allowed to continue, will continue to cause KVAR to suffer substantial irreparable damage and injury.  KVAR has no adequate remedy at law.

111.    As a result of the foregoing, KVAR has been damaged and has lost profits, and Defendants have been unjustly enriched.    In addition, Defendants' actions have been extraordinary, entitling KVAR to punitive damages, costs, treble damages, attorneys' fees, and to such other and further relief as the Court shall deem appropriate in the circumstances.

WHEREFORE, plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.    That Defendants and their agents, servants, employees, attorneys, successors and assignees, and all persons in active concert or participation with any of them, jointly and severally, be temporarily, preliminarily and permanently enjoined and restrained from:

(1)    Modifying or re-labeling genuine KVAR™ Products;

(2)    Using in any manner the KVAR™ Mark, alone or in combination with any other words, or symbols, or any other designations or marks confusingly similar to the KVAR™ Mark, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products in connection with the KVAR™ Mark, or otherwise unfairly competing with KVAR;

(3)    Passing off, inducing or enabling others to sell or pass off any products that do not emanate from KVAR or that are not distributed under the control and supervision of

27

KVAR and approved by KVAR for sale under the KVAR™ Mark or the Kilowatt Nanny brand or any other unauthorized brand, as products distributed by or with the approval of KVAR;

      (4)    Falsely advertising the nature, quality, source, sponsorship or certification by third parties of Defendants' products;

      (5)    Committing any act calculated to cause purchasers to falsely believe that products sold by Defendants are those sold under the control and supervision of KVAR or were sponsored, approved or connected with or guaranteed, warranted or produced under the control and supervision of KVAR;

      (6)    Further infringing the KVAR™ Mark and damaging KVAR's goodwill and business reputation; and

      (7)    Otherwise competing unfairly with KVAR in any manner.

B.    That Defendants be required to file with the Court and serve on KVAR's counsel within fifteen (15) days after service of any injunction issued here, or within such reasonable time as the Court shall direct, a report in writing and under oath setting forth, in detail, the manner and form in which Defendants have complied with such injunction;

C.    That Defendants be required to account and pay over to KVAR all wrongful profits;

D.    That KVAR be awarded judgment against Defendants for compensatory and punitive damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

E.    That KVAR be awarded such other and further relief as the Court deems just and proper.

## SIXTH COUNT

### (Breach of Contract)

112.    KVAR repeats the allegations contained in paragraphs 1-65 as if fully set forth herein.

113.    The Distributor Agreement is a valid and enforceable contract that existed between KVAR, on the one hand, and Tri-State, Chieffo and Gillen on the other hand.

114.    KVAR has performed the Distributor Agreement and all conditions precedent.

115.    Defendants have breached the Distributor Agreement.

116.    KVAR has suffered and will continue to sustain damages as a direct and proximate result of Defendants' breach of the Distributor Agreement.

**WHEREFORE**, plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.    That KVAR be awarded judgment against Defendants for damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

B.    That KVAR be awarded such other and further relief as the Court deems just and proper.

## SEVENTH COUNT

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

117.    KVAR repeats the allegations contained in paragraphs 1-65 as if fully set forth herein.

118.    An implied covenant of good faith and fair dealing exists in the Distributor Agreement and in the NDA.  The covenant is not being invoked by KVAR to override any express terms of the Distributor Agreement or the NDA.

119.    Defendants have breached the implied covenant of good faith and fair dealing in the Distributor Agreement and in the NDA.

120.    KVAR has suffered damages as a direct and proximate result of Tri-State's breach of the implied covenant of good faith and fair dealing in the Distributor Agreement and in the NDA.

**WHEREFORE**, plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.    That KVAR be awarded judgment against Defendants for damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

B.    That KVAR be awarded such other and further relief as the Court deems just and proper.

### EIGHTH COUNT

### (Intentional Interference with Contract, Prospective Economic Advantage and Advantageous Business Relationships)

121.    KVAR repeats the allegations contained in paragraphs 1-65 as if fully set forth herein.

122.    KVAR has contracts and prospective and advantageous economic relationships with actual and potential users and distributors of the KVAR™ Products.

123.    Defendants have knowledge of KVAR's contracts and prospective and advantageous economic relationships with actual and potential users and distributors of the KVAR™ Products.

124.    Defendants have contacted KVAR's clients and prospective clients, have made false and misleading statements to KVAR's customers and prospective customers, have falsely

criticized KVAR to such customers and prospective customers and have otherwise sought to disrupt KVAR's contractual relationships with its customers and KVAR's potential business relationships with prospective customers.

125.    Defendants have distributed the complaint (before it was filed and, upon information belief, thereafter) filed in the Delaware Action to known KVAR clients and potential clients.

126.    Defendants' actions have been committed maliciously, intentionally and with the specific intent to injure KVAR.

127.    Defendants were unjustified in their interference.

128.    Defendants' acts have caused and, if allowed to continue, will continue to cause KVAR to suffer substantial irreparable damage and injury.  KVAR has no adequate remedy at law.

129.    As a result of the foregoing, KVAR has been damaged and has lost profits, and Defendants have been unjustly enriched.  In addition, Defendants' actions have been extraordinary, entitling KVAR to costs, punitive damages, attorneys' fees, and to such other and further relief as the Court shall deem appropriate in the circumstances.

**WHEREFORE**, plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.    That KVAR be awarded judgment against Defendants for damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

B.    That KVAR be awarded such other and further relief as the Court deems just and proper.

31

## NINTH COUNT

### (Violation of Florida Deceptive and Unfair Trade Practices Act)

130.    KVAR repeats the allegations contained in paragraphs 1-65 as if fully set forth herein.

131.    The aforesaid acts of Defendants violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

132.    Defendants directly and/or proximately caused significant irreparable injury to KVAR, for which there is no adequate remedy at law, and has caused and will continue to cause Tri-State to sustain damages.

**WHEREFORE,** plaintiff KVAR Energy Savings, Inc. respectfully demands judgment:

A.    That Defendants and their agents, servants, employees, attorneys, successors and assignees, and all persons in active concert or participation with any of them, jointly and severally, be temporarily, preliminarily and permanently enjoined and restrained from:

(1)    Modifying or re-labeling genuine KVAR™ Products;

(2)    Using in any manner the KVAR™ Mark, alone or in combination with any other words, or symbols, or any other designations or marks confusingly similar to the KVAR™ Mark, including, but not limited to, selling, offering for sale, displaying, promoting or advertising products in connection with the KVAR™ Mark, or otherwise unfairly competing with KVAR;

(3)    Passing off, inducing or enabling others to sell or pass off any products that do not emanate from KVAR or that are not distributed under the control and supervision of KVAR and approved by KVAR for sale under the KVAR™ Mark or the Kilowatt Nanny brand or any other unauthorized brand, as products distributed by or with the approval of KVAR;

(4)    Falsely advertising the nature, quality, source, sponsorship or certification by third parties of Defendants' products;

(5)    Committing any act calculated to cause purchasers to falsely believe that products sold by Defendants are those sold under the control and supervision of KVAR or were sponsored, approved or connected with or guaranteed, warranted or produced under the control and supervision of KVAR;

(6)    Otherwise competing unfairly with KVAR in any manner.

B.    That KVAR be awarded judgment against Defendants for compensatory and punitive damages, pre-judgment interest, post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

C.    That KVAR be awarded such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff KVAR Energy Savings, Inc. hereby demands a jury trial for all issues so triable.

Dated January _17_, 2008.

Respectfully submitted,

_____
Jeffrey M. Garber
FL Bar No. 102776
CASEY CIKLIN LUBITZ MARTENS &
O'CONNELL
Attorney for Plaintiff
515 North Flagler Drive, 18th Floor
West Palm Beach, FL  33401
Phone:        561-832-5900
Fax:          561-820-0389
Email:        jgarber@caseyciklin.com

33

# Tri-State Energy Solutions, LLP

presents the

## Kilowatt Nanny



PUT THE BRAKES ON RISING ENERGY COSTS

**COMMERCIAL
RESIDENTIAL
INDUSTRIAL**

*For more information contact:*

**302.449.5652
302.764.5000
302.645.0550**



## SAVING ENERGY isn't a new idea....

### The Kilowatt Nanny

*energy savings device simply gives you the power to do it!!!*

## Chieffo Electric

*Preferred Installer*

www.chieffoelectric.com

---

# Tri-State Energy Solutions, LLP

## COMPREHENSIVE FIVE YEAR WARRANTY

Kilowatt Nanny provides that, if within five (5) years from installation date, this product fails due to a defect in material or workmanship or damage by lightning, Tri-State Energy Solutions, LLP, will repair or replace the affected unit free of charge.

The warranty does not apply to damage caused by
(A) Accidental mishandling, dropping or other types of physical abuse.
(B) Units which have been opened, taken apart or subjected to unauthorized repair.
(C) Units which have not been installed or used in accordance with instructions.
(D) Riots, civil disturbances, war or other related acts of God.

This warranty does not apply to damages claimed in excess of the cost of the installed units, and although this warranty specific legal rights, your actual rights may vary from state to state.

Warranty service is available by calling our customer support department at the following number to receive an authorization code and shipping instructions at:

**Tri-State Energy Solutions, LLP**
4475 Summit Bridge Road
Middletown, DE 19709
302.449.5652 or 302.764.5000

Serial No: _____

Date Mfg: _____

Sold To _____

Name: _____

Address: _____

City/State/Zip: _____

Country: _____

EXHIBIT
C

**HOW DOES THE KILOWATT-NANNY WORK?**

The Kilowatt Nanny line tunes the electrical system from the inductive load equipment back through the utility company's KVA electric meter, kilowatt hour meter or demand meter. This fine tuning slows down the operation of the electric meter.

**HOW DOES THE KILOWATT NANNY UNIT SAVE MONEY?**

The Kilowatt Nanny causes less waste of electrical energy while increasing the life of the inductive equipment. The Kilowatt Nanny protects against lightening surges and increases the capacity to the electrical panel by making it run cooler. All this means extra $$$ in your pocket.

**CUSTOMER COMMENTS**

*" I am achieving well above the projected savings of 25% and I am confident this will continue into the future...If every household in America had a Kilowatt Nanny...there would be enough electrical energy saved to eliminate any shortage for the next 5 years. Thank you Tri-State!"* — Jane Quatline, Bon, DE

*"My first month savings was an astounding 38%! I just had to write you, Thank You!"* —Rex Cole, Cole Lock & Key, Newark, DE

*"We are more than satisfied with the results from your Kilowatt Nanny...I would recommend this device to anyone concerned with saving money on their electric bill."* —Steven Lebwin

*"My electric bills show a drop of about 30 kilowatts every day since installing the Kilowatt Nanny unit. We're very impressed."* Summit Leisure, Middletown, DE

---

**FEATURES**

- Save up to 25% on your electric bill monthly; thousands of satisfied customers
- 60-day money back guarantee
- Pays for itself in under one year
- Eliminates power surges
- Increases motor and appliance life
- NASA tested, UL and ENERGYSTAR™ certified
- 5-year warranty
- U.S. Patent Number 5440442



**INSTALLS IN LESS THAN 30 MINUTES**

The Kilowatt Nanny is attached to the top 220/240 volt breaker/200 amp service (We recommend to have your local electrician install it for you.) The unit can be installed outdoors or indoors, at the main breaker panel or at a sub-panel in the home. By installing the Kilowatt Nanny unit in this location, you are hitting both sides of the bus bar in your panel insuring whole house surge protection.

---

**KILOWATT NANNY** is an electromagnetic pollution control system. The Kilowatt Nanny reduces the amount of non-productive current in your electric system which means a significant reduction in power costs. The Kilowatt Nanny will reduce demand at the meter by reducing lost and wasted power and will reduce maintenance costs while it increases equipment life. UL and CSA Listed.



**WHAT IS INDUCTIVE EQUIPMENT?**

Inductive equipment is heat pumps, air conditioners, refrigeration equipment, irrigation pumps, pool pumps, and all types of electric motors. When inductive equipment is connected to an alternating current system, it causes the current to lag behind the voltage, this causes non-productive current.



**WHAT IS NON-PRODUCTIVE CURRENT?**

The non-productive current in any electrical system is the current which heats up the motor in inductive equipment while the equipment is in use. The heat generated serves no productive purpose; it is wasted energy and also shortens the life of the equipment. The Kilowatt Nanny eliminates the wasted energy of the electrical system.

# EXHIBIT B

## Confidentiality and Non-Disclosure Agreement

This Confidentiality and Non-Disclosure Agreement ("Agreement") is made and effective the [Date] by and between KVAR(™) Energy Savings (hereinafter "KVAR") and [Recipient] (hereinafter "Recipient")

## RECITALS

**WHEREAS**, KVAR has developed certain ideas, procedures, and equipment which, when properly applied and utilized, will save electrical energy; and

**WHEREAS**, these ideas, procedures, and equipment are trade secrets, proprietary information, and the sole property of KVAR; and

**WHEREAS**, KVAR has guarded, protected, and restricted access to these ideas, procedures, and items of equipment, and will continue to do so; and

**WHEREAS**, KVAR has contracted with certain individuals, partnerships, and corporations to provide the benefits of KVAR's ideas, procedures, and items of equipment, and listed certain individuals, partnerships and corporations as prospective customers; and

**WHEREAS**, KVAR has developed certain marketing concepts and techniques, brochures, demonstration procedures, distributor contracts, and other means for placing its ideas, procedures, and equipment into the stream of commerce; and

**WHEREAS**, Recipient acknowledges and agrees that all of these ideas, procedures, and items of equipment are the sole property of KVAR, and that unauthorized use of, or disclosures concerning, these ideas, concepts, procedures and items of equipment, or any element of them, would cause irreparable injury to KVAR, for which there would be no adequate remedy at law.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are incorporated herein by reference, and of the mutual representations, warranties, covenants and agreements contained in this Agreement, and intending to be legally bound, KVAR and Recipient hereto do hereby covenant, promise, and agree as follows:

## AGREEMENT

1. **CONFIDENTIAL INFORMATION.** The certain confidential and proprietary information (the "Confidential Information") KVAR will make available to Recipient regarding its energy-saving ideas, procedures, and equipment, as well as KVAR's prospective customer list, and KVAR's marketing concepts, techniques, and its contracts and other documents, is confidential and proprietary to KVAR.

**EXHIBIT**

_B_

2. **RECIPIENT'S OBLIGATIONS.** Recipient agrees that the Confidential Information is to be considered confidential and proprietary to KVAR and Recipient shall hold the same in confidence and shall not use the Confidential Information other than for the purposes of its business with KVAR. Disclosure to Recipient is for the limited purposes of evaluating KVAR products, services, and any proposed business transaction. Recipient will not disclose, publish, or otherwise reveal any of the Confidential Information received from KVAR to any party whatsoever except with the specific prior written authorization of KVAR. Confidential Information furnished in tangible form shall not be duplicated by Recipient except for purposes of this Agreement. Upon the request of KVAR, Recipient shall return all Confidential Information received in written or tangible form, including copies, or reproductions or other media containing such Confidential Information, within ten (10) days of such request.

3. **OTHER INFORMATION.** Recipient shall have no obligation under this Agreement with respect to Confidential Information which is or becomes publicly available without breach of this Agreement by Recipient; is rightfully received by Recipient without obligations of confidentiality; or is developed by Recipient without breach of this Agreement; provided, however, such Confidential Information shall not be disclosed until thirty (30) days after written notice of intent to disclose is given to KVAR along with asserted grounds for disclosure.

4. **NO LICENSE.** Nothing contained herein shall be construed as granting or conferring any rights by license or otherwise in any Confidential Information. It is understood and agreed that the disclosure of Confidential Information shall not be construed as evidencing any intent by a party to purchase any product or services of the other party nor as an encouragement to expend funds in development or research efforts. Recipient agrees not to use any Confidential Information as a basis upon which to develop or have a third party develop a competing or similar product.

5. **NO PUBLICITY.** Recipient agrees not to disclose its participation in this undertaking, the existence or terms and conditions of the Agreement, or the fact that discussions are being held with KVAR.

6. **INJUCTIVE RELIEF.** Recipient acknowledges and agrees that any intended, threatened, or actual breach of this Agreement may cause irreparable and continuing harm to KVAR for which there will be no adequate remedy at law and which could not be adequately compensated by monetary damages. Accordingly, Recipient expressly agrees that, in addition to any other remedies that KVAR may have at law or in equity, KVAR shall be entitled to seek injunctive relief for any intended, threatened or actual breach by Recipient. Recipient agrees that KVAR shall not be required to post a bond or other security in connection with any legal action. The parties further agree that jurisdiction and venue for any legal action, suit or proceeding arising out of or relating to this Agreement shall rest solely with the federal or state court having jurisdiction over Volusia County, Florida, and each party waives any objection which such party may now or hereafter have to the laying of the venue of any such action, suit or proceedings, and

irrevocably submits to the jurisdiction of any such court. Nothing contained herein shall prevent or delay KVAR from seeking, in any court of competent jurisdiction, specific performance or other equitable remedies in the event of any intended, threatened or actual breach by Recipient of Recipient's obligation hereunder. The issuance of an injunction shall not prohibit KVAR from obtaining a judgment for damages. Damages shall be measured, in part, by actual monetary loss sustained by KVAR, but shall also be measured by the expenses incurred to enforce this Agreement, and by the time KVAR's officers and/or agents are required to devote to seeking and obtaining the relief. In such an event, KVAR would proceed through its agent Gregory G. Taylor. Gregory G. Taylor is the inventor and the most knowledgeable about KVAR's proprietary ideas, procedures and equipment, and for purposes of enforcing this Agreement, his time shall be given a value of Five Hundred Dollars ($500) per hour. KVAR shall be entitled to recover in damages for the loss of its agents' time, including all time spent investigating unauthorized disclosures to third persons, in conference with KVAR's attorneys to enforce this Agreement, in any negotiations, mediations, or conferences with Recipient concerning unauthorized disclosures, and in court, as either a witness or as a party.

8.  **ATTORNEY'S FEES.** In the event of litigation to enforce this Agreement, the prevailing party shall be entitled to recover from the other party a reasonable fee for its attorney, and the cost of the litigation. KVAR shall be considered the prevailing party if the court finds that an unauthorized disclosure has occurred and enters an injunction to prevent further unauthorized disclosures, irrespective of whether a judgment for damages is entered. Reasonable attorney's fees shall be based on the time reasonably devoted to the matter by the prevailing party's attorney, billed at the attorney's normal hourly rate for similar matters, and shall include time devoted by KVAR's attorney in attempting to obtain a judgment for damages, even if the court does not enter a judgment for damages.

9.  **GOVERNING LAW.** This Agreement shall in all respects be interpreted, enforced and governed under the laws of the United States and the State of Florida, without reference to the principles of conflicts of law otherwise applicable therein. Recipient agrees that jurisdiction and venue for any legal action, suit or proceeding arising out of or relating to this Agreement shall rest solely with the federal or state court having jurisdiction over Volusia County, Florida.

10.  **ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement and there are no other promises or conditions in any other agreement whether oral or written. This Agreement may be modified only by a further writing that is duly executed by both parties.

11.  **SEVERABILITY.** If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

12. **NOTICES.** Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, or recognized overnight delivery services.

If to KVAR:

> KVAR Energy Savings, Inc.
> 413 Oakplace Bldg. 4 Units S
> Port Orange, FL 32127
> Phone: (386) 767-0048

If to Recipient:

> [Recipient]
> [Recipient's Address]

11. **NO IMPLIED WAIVER.** The failure of KVAR to take action for any breach of this Agreement shall not be considered a waiver of the right of KVAR to insist on full and proper performance of any provision hereof. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges specifically given herein now or under any amendment, or at law, in equity or by statute.

12. **HEADINGS.** Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

    **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

[Recipient]:                                      KVAR:

By: _____                       By: _____

_Larry Cullen_

-4-

# Confidentiality and Non-Disclosure Agreement

This Confidentiality and Non-Disclosure Agreement ("Agreement") is made and effective the [Date] by and between KVAR(TM) Energy Savings (hereinafter "KVAR") and [Recipient] (hereinafter "Recipient")

# R E C I T A L S

**WHEREAS**, KVAR has developed certain ideas, procedures, and equipment which, when properly applied and utilized, will save electrical energy; and

**WHEREAS**, these ideas, procedures, and equipment are trade secrets, proprietary information, and the sole property of KVAR, and

**WHEREAS**, KVAR has guarded, protected, and restricted access to these ideas, procedures, and items of equipment, and will continue to do so; and

**WHEREAS**, KVAR has contracted with certain individuals, partnerships, and corporations to provide the benefits of KVAR's ideas, procedures, and items of equipment, and listed certain individuals, partnerships and corporations as prospective customers; and

**WHEREAS**, KVAR has developed certain marketing concepts and techniques, brochures, demonstration procedures, distributor contracts, and other means for placing its ideas, procedures, and equipment into the stream of commerce; and

**WHEREAS**, Recipient acknowledges and agrees that all of these ideas, procedures, and items of equipment are the sole property of KVAR, and that unauthorized use of, or disclosures concerning, these ideas, concepts, procedures and items of equipment, or any element of them, would cause irreparable injury to KVAR, for which there would be no adequate remedy at law.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are incorporated herein by reference, and of the mutual representations, warranties, covenants and agreements contained in this Agreement, and intending to be legally bound, KVAR and Recipient hereto do hereby covenant, promise, and agree as follows:

## AGREEMENT

1. **CONFIDENTIAL INFORMATION.** The certain confidential and proprietary information (the "Confidential Information") KVAR will make available to Recipient regarding its energy-saving ideas, procedures, and equipment, as well as KVAR's prospective customer list, and KVAR's marketing concepts, techniques, and its contracts and other documents, is confidential and proprietary to KVAR.

2. **RECIPIENT'S OBLIGATIONS.** Recipient agrees that the Confidential Information is to be considered confidential and proprietary to KVAR and Recipient shall hold the same in confidence and shall not use the Confidential Information other than for the purposes of its business with KVAR. Disclosure to Recipient is for the limited purposes of evaluating KVAR products, services, and any proposed business transaction. Recipient will not disclose, publish, or otherwise reveal any of the Confidential Information received from KVAR to any party whatsoever except with the specific prior written authorization of KVAR. Confidential Information furnished in tangible form shall not be duplicated by Recipient except for purposes of this Agreement. Upon the request of KVAR, Recipient shall return all Confidential Information received in written or tangible form, including copies, or reproductions or other media containing such Confidential Information, within ten (10) days of such request.

3. **OTHER INFORMATION.** Recipient shall have no obligation under this Agreement with respect to Confidential Information which is or becomes publicly available without breach of this Agreement by Recipient; is rightfully received by Recipient without obligations of confidentiality; or is developed by Recipient without breach of this Agreement; provided, however, such Confidential Information shall not be disclosed until thirty (30) days after written notice of intent to disclose is given to KVAR along with asserted grounds for disclosure.

4. **NO LICENSE.** Nothing contained herein shall be construed as granting or conferring any rights by license or otherwise in any Confidential Information. It is understood and agreed that the disclosure of Confidential Information shall not be construed as evidencing any intent by a party to purchase any product or services of the other party nor as an encouragement to expend funds in development or research efforts. Recipient agrees not to use any Confidential Information as a basis upon which to develop or have a third party develop a competing or similar product.

5. **NO PUBLICITY.** Recipient agrees not to disclose its participation in this undertaking, the existence or terms and conditions of the Agreement, or the fact that discussions are being held with KVAR.

6. **INJUCTIVE RELIEF.** Recipient acknowledges and agrees that any intended, threatened, or actual breach of this Agreement may cause irreparable and continuing harm to KVAR for which there will be no adequate remedy at law and which could not be adequately compensated by monetary damages. Accordingly, Recipient expressly agrees that, in addition to any other remedies that KVAR may have at law or in equity, KVAR shall be entitled to seek injunctive relief for any intended, threatened or actual breach by Recipient. Recipient agrees that KVAR shall not be required to post a bond or other security in connection with any legal action. The parties further agree that jurisdiction and venue for any legal action, suit or proceeding arising out of or relating to this Agreement shall rest solely with the federal or state court having jurisdiction over Volusia County, Florida, and each party waives any objection which such party may now or hereafter have to the laying of the venue of any such action, suit or proceedings, and

- 2 -

irrevocably submits to the jurisdiction of any such court. Nothing contained herein shall prevent or delay KVAR from seeking, in any court of competent jurisdiction, specific performance or other equitable remedies in the event of any intended, threatened or actual breach by Recipient of Recipient's obligation hereunder. The issuance of an injunction shall not prohibit KVAR from obtaining a judgment for damages. Damages shall be measured, in part, by actual monetary loss sustained by KVAR, but shall also be measured by the expenses incurred to enforce this Agreement, and by the time KVAR's officers and/or agents are required to devote to seeking and obtaining the relief. In such an event, KVAR would proceed through its agent Gregory G. Taylor. Gregory G. Taylor is the inventor and the most knowledgeable about KVAR's proprietary ideas, procedures and equipment, and for purposes of enforcing this Agreement, his time shall be given a value of Five Hundred Dollars ($500) per hour. KVAR shall be entitled to recover in damages for the loss of its agents' time, including all time spent investigating unauthorized disclosures to third persons, in conference with KVAR's attorneys to enforce this Agreement, in any negotiations, mediations, or conferences with Recipient concerning unauthorized disclosures, and in court, as either a witness or as a party.

8. **ATTORNEY'S FEES.** In the event of litigation to enforce this Agreement, the prevailing party shall be entitled to recover from the other party a reasonable fee for its attorney, and the cost of the litigation. KVAR shall be considered the prevailing party if the court finds that an unauthorized disclosure has occurred and enters an injunction to prevent further unauthorized disclosures, irrespective of whether a judgment for damages is entered. Reasonable attorney's fees shall be based on the time reasonably devoted to the matter by the prevailing party's attorney, billed at the attorney's normal hourly rate for similar matters, and shall include time devoted by KVAR's attorney in attempting to obtain a judgment for damages, even if the court does not enter a judgment for damages.

9. **GOVERNING LAW.** This Agreement shall in all respects be interpreted, enforced and governed under the laws of the United States and the State of Florida, without reference to the principles of conflicts of law otherwise applicable therein. Recipient agrees that jurisdiction and venue for any legal action, suit or proceeding arising out of or relating to this Agreement shall rest solely with the federal or state court having jurisdiction over Volusia County, Florida.

10. **ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement and there are no other promises or conditions in any other agreement whether oral or written. This Agreement may be modified only by a further writing that is duly executed by both parties.

11. **SEVERABILITY.** If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

12. **NOTICES**. Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, or recognized overnight delivery services.

If to KVAR:

> KVAR Energy Savings, Inc.
> 413 Oakplace Bldg. 4 Units S
> Port Orange, FL 32127
> Phone: (386) 767-0048

If to Recipient:

> [Recipient]
> [Recipient's Address]

11. **NO IMPLIED WAIVER**. The failure of KVAR to take action for any breach of this Agreement shall not be considered a waiver of the right of KVAR to insist on full and proper performance of any provision hereof. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges specifically given herein now or under any amendment, or at law, in equity or by statute.

12. **HEADINGS**. Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

   **IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

[Recipient]:                                    KVAR:

By: _____          By: _____

- 4 -

# EXHIBIT C

DELAWARE ONLY

## EXCLUSIVE DISTRIBUTOR AGREEMENT

This Exclusive Distributor Agreement ("Agreement") is made and effective this MARCH 22 2006 (the "Effective Date"), by and between KVAR Energy Savings, Inc., a Florida corporation with offices at 413 Oakplace Bldg. 4 Unit-S, Port Orange, Florida, 32127(hereinafter KVAR) and TRI-STATE ENERGY SOLUTIONS,LLP_____ _____(hereinafter "Distributor").

## R E C I T A L S

**WHEREAS,** KVAR is a manufacturer marketing products in the business of energy management and efficiency, worldwide under the name of KVAR$^{(TM)}$ for both residential, commercial and industrial applications; and

**WHEREAS,** KVAR holds title and sole ownership to technology relating to the optimization of electrical power of motors, as described in United States Patent Number 5,440,442, issued August 8, 1995; and

**WHEREAS,** KVAR has developed, expedited economical methods and specifications to perform the teachings of the patent, has acquired market information related to the technology, and has developed a manufacturing process all of which are proprietary to KVAR; and

**WHEREAS,** KVAR desires to appoint Distributor and Distributor desires to accept appointment, as a exclusive Distributor of KVAR's Products as set forth herein.

**NOW, THEREFORE,** in consideration of the foregoing recitals, which are incorporated herein by reference and of the mutual agreements and promises set forth herein, and intending to be legally bound, the parties do hereby covenant, promise and agree as follows:

## AGREEMENT

1. **Distributor's Fee and Initial Setup.** Distributor shall pay a one-time distributor's fee in the amount of $18,500.00 for the Rights Granted and the Initial Setup. The Initial Setup shall include: (1) one sets of sizing apparatus including a US1 single Phase, a US2 three phase and a US3 three phase; (2) one demonstration kits with each kit including an electric motor, amp meter, volt meter, kilowatt hour meter and a Panel Unit; (3) one power quality meter; and (4) one promotional DVD or Video. All shipping is to be paid by Distributor.

2. **Rights Granted.** KVAR hereby grants to Distributor a exclusive right on the terms and conditions contained below to purchase, inventory, promote and resell "KVAR Products" (as defined below) for single-motor and electrical panel applications in the

DELAWARE ONLY

Territory (the "Rights Granted"). Nothing herein shall prevent or prohibit KVAR from selling any of KVAR Products directly to the customers. In order to protect the goodwill of KVAR and Distributor's accounts, if Distributor is unwilling or unable to service its accounts, then KVAR reserves the right to service the accounts.

3. **Products**. As used in this Agreement "KVAR Products" shall mean the products, related-service parts and accessories manufactured and/or sold by KVAR as follows:

A. US1 single phase sizers;

B. US2 three phase sizers;

C. US3 three phase sizers;

D. power quality meters;

E. capacitance assemblies for single-motor applications (Single-Motor Units) as identified in **Attachment A**;

F. capacitance assemblies for residential and commercial electrical panels (Panel Units) as identified in **Attachment B**; and

G. demonstration kits.

4. . **Territory**. The intended geographical territory for the Rights Granted in the distribution of KVAR Products shall be as identified herewith in **Attachment C** (the "Territory").

5. **Terms of Sale**. All sales of KVAR Products to Distributors shall be made pursuant to this Agreement at such prices (as shown in **Attachment A** and **Attachment B** herewith attached to this Agreement) and on such terms as KVAR shall establish from time to time on at least 30 days notice. All prices are FOB KVAR plant. KVAR agrees to properly pack all items for shipment. Risk of loss due to damage or destruction of KVAR Products shall be borne by the Distributor after delivery to the carrier for shipment. The shipper will be selected by KVAR unless Distributor requests a reasonable alternative. All orders are subject to acceptance by KVAR and must be paid in full before shipping. KVAR shall attempt to fill all accepted orders within thirty (30) days of full payment or as arranged by Distributor with KVAR. Except as otherwise expressly agreed by KVAR in advance, this Agreement shall control all aspects of the dealings between KVAR and Distributor with respect to KVAR Products and any additional or different terms in any Distribution order are hereby rejected.

6. **Payment**. All payment for KVAR Products shall be paid in full by certified check, cash, cashier's check, money order, or direct deposit into KVAR's bank account:

Suntrust Bank

Acct Name: KVAR Energy Savings, Inc.

Routing Number: 063102152

Account Number: 0001613006526

7. **Technical Training and Assistance**. KVAR will undertake to train Distributor personnel in the use of the technology and trade secrets. The training will take place in _____ and shall consist of no less than 1 week or more than 2 weeks of instruction

DELAWARE ONLY

at Distributor's cost, including but not limited to room and board and a $500 per day instructor's fee.

8. **Sales Polices**. Sales quotas, giving reasonable regard to past performance and market potential of Single-motor Units and Panel Units, may be established by KVAR from time to time. Distributor agrees to employ sales personnel of demonstrated capacity to attain such quotas. Distributor agrees to monitor sales personnel to ensure compliance with policy, procedures and the terms of this Agreement. Distributor is responsible for the action of its sale personnel.

9. **Distributor's General Duties**.

A.   Distributor shall provide, if a Corporation or partnership a Federal I.D. Number or, in the case of an individual a Social Security Number. Distributor shall submit a separate Corporation/Partnership letter to KVAR certifying the Social Security Number of all corporate principals and/or each partner. In addition, Distributor must also provide its Resale Tax Number.

B. Distributor agrees not to engage in the distribution promotion, marketing or sale of any goods or products that compete or conflict with KVAR Products. Distributor agrees to supply to KVAR a list of items handled by Distributor following KVAR's request to ensure that no conflict exist.

C. Distributor, as a minimum, shall make orders of KVAR  in net wholesale value of $7,500 (Seventy-five hundred dollars) in every three-month period during the first two years and then increasing to $15,000 (Fifteen thousand dollars) in every three-month period for the remaining term of the Distributor's appointment.

In addition to any other right or remedy to which KVAR may be entitled, shipments may be suspended at KVAR's discretion in the event that Distributor fails to promptly and faithfully discharge each and every obligation in this Section.

10. **Advertising Polices**.  Distributor agrees to faithfully comply with the terms and conditions of advertising, promoting, and merchandising programs as KVAR may establish from time to time.  Nothing herein shall prevent Distributor from independently advertising, promoting and marketing KVAR Products provided the form and content of the advertising, promoting or marketing materials and/or activities are approved by KVAR in advance.

11. **Product Warranty Policies**.  In the event that any of KVAR Products are proved to KVAR satisfaction to have been defected at time of sale to Distributor, KVAR will make an appropriate adjustment in the original sales price of such product or, at KVAR's election, replace the defective product. KVAR shall provide to Distributor information with respect to KVAR's limited warranty extended to the original consumer of Single-Motor Units and Panel Units. **KVAR MAKES NO WARRANTY TO DISTRIBUTOR**

Exclusive Distributor
Revised 12/12/05

- 3 -

DELAWARE ONLY

**WITH RESPECT TO THE PRODUCTS, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

12. **Indemnification**.

A. KVAR agrees to protect Distributor and hold Distributor harmless from any loss or claim arising out of inherent defects in any of KVAR Products existing at the time such product was sold by KVAR to Distributor, provided that Distributor gives KVAR immediate notice of any such loss or claim and cooperates fully with KVAR in the handling thereof.

B. Distributor agrees to protect KVAR and hold KVAR harmless from any loss or claim arising out of the negligence of Distributor, Distributor's agents, employees or representatives in the installation, use, sale or servicing of KVAR Products or arising out of any representation or warranty made by Distributor, its agent, employees, or representatives with respect to KVAR Products that exceeds KVAR's limited warranty.

13. **Use of the KVAR(™) Name**. Distributor will not use, authorize or permit the use of the name "KVAR" or any other trademark or trade name owned by KVAR as part of its firm, corporate or business name in any way. Distributor shall not contest the right of KVAR to exclusive use of any trademark or trade name used or claimed by KVAR. Distributor may, subject to KVAR's written prior approval, utilize KVAR's name, trademarks or logo in advertising on stationery, business card or other medium.

14. **Relationship of Parties**. The relationship between KVAR and Distributor is that of vendor and vendee. Distributor, its agents and employees shall, under on circumstances, be deemed employees, agents, or representatives of KVAR. Distributor will not modify any of KVAR Products without written permission from KVAR. Neither Distributor nor KVAR shall have any right to enter into any contract or commitment in the name of, or on behalf of the other, or to bind the other in any respect whatsoever. No Distributor is guaranteed a specific income. The Distributor's success or failure depends solely on its efforts. The Distributor will obtain at its expense all necessary permits, licenses, import/export licenses or other consents for the lawful operation of Distributor's business. Distributor will pay all taxes, expenses, debits and other liabilities of the Distributor when due and agrees to operate in a lawful and ethical manner. It is the Distributor responsibility to make self-employment and tax payments, as they are required by law. Further, Distributor will not fix any liability on KVAR whatsoever, whether City, County, State and/or taxes.

15. **Term and Termination**. Unless earlier termination as provided below, the term of this Agreement shall commence on the Effective Date and shall continue for one year. At the end of the term, the Agreement shall continue until terminated by either party on at least 30 days prior notice.

DELAWARE ONLY

A. KVAR may terminate at any time by written notice given to Distributor not less than ninety (90) days prior to the effective date of such notice in the event KVAR decides to terminate all outstanding distributor agreements for KVAR Products and to offer a new or amended form of distributor agreement.

B. KVAR may terminate this Agreement upon notice to Distributor, upon any of the following events: (1) failure of Distributor to fulfill or perform any one of the duties, obligations or responsibilities of distributor in this Agreement, which is not cured within ten (10) days notice from KVAR; (2) any assignment or attempted assignment by Distributor of any interest in this agreement or delegation of Distributor's obligations without KVAR's written consent; (3) any sale, transfer or relinquishment, voluntary or involuntary, by operation of law or otherwise, of any material interest in the direct or indirect ownership or any change in the management of Distributor; (4) failure of Distributor for any reason to function in the ordinary course of business; (5) conviction in a court of competent jurisdiction of Distributor, or a manager, partner, principal officer or major stockholder of Distributor for any violation of law tending, in KVAR's opinion, to affect adversely the operation or business of Distributor or the good name, goodwill, or reputation of KVAR, products of KVAR, or Distributor; or (6) submission by Distributor to KVAR of false or fraudulent reports or statements, including, without limitation, claims for any refund, credit, rebate, incentive, allowance, discount, reimbursement or other payment by KVAR.

16. **Obligations on Termination**. On termination of this Agreement, Distributor shall cease to be an authorized distributor of KVAR and:

A. All amounts owing by Distributor to KVAR shall, notwithstanding prior terms of sale, become immediately due and payable;

B. All unshipped orders shall be cancelled without liability of either party to the other;

C. Distributor will resell and deliver to KVAR on demand, free and clear of liens and encumbrances, such of KVAR Products and materials bearing KVAR's name as KVAR shall elect to repurchase, at a mutually agree price, but not in excess of KVAR's current price to Distributor for such products and materials, provided that KVAR shall not be obligated to pay Distributor for any item originally provided free of charge; and

D. Neither party shall be liable to the other because of termination for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales, or accounts of expenditures, investments, lease or commitments in connection with the business or good will of KVAR or Distributor or for any other reason whatsoever growing out of such termination.

17. **Use of Name Prohibited**. On termination of this Agreement, Distributor will remove and not thereafter use any sign or other promotional or advertising matter containing any

DELAWARE ONLY

trade name, logo, or trademark of KVAR including, but not limited to, "KVAR", and will immediately destroy all stationery, advertising matter and other printed matter in its possession or under its control containing such name, or any of KVAR's trademark, trade names or logos. Distributor will not at any time after such termination use or permit any such trademark , trade name or logo to be used in any manner in connection with any business conducted by it or in which it may have an interest, or otherwise whatsoever as descriptive of or referring to anything other than merchandise or products of KVAR. Regardless of the cause of termination, Distributor will immediately take all appropriate steps to remove and cancel its listing in telephone books, and other directories, and public records, or elsewhere that contain KVAR's name, logo or trademark. If Distributor fails to obtain such removals or cancellations promptly, KVAR may make application for such removals or cancellations on behalf of Distributor and in Distributor's name and in such event Distributor will render complete assistance.

18. **Miscellaneous**. In the event of any dispute between the Distributor and any of KVAR's other distributors as to any of the provisions or these terms and conditions of appointment or such other distributor's agreement, then such dispute shall be referred to and determined by KVAR and the determination by KVAR shall be final and binding upon the parties.

19. **Acknowledgments**. Each party acknowledges that no representation or statement, and no understanding or agreement, has been made, or exists, and that in entering into this Agreement each party has not relied on anything done or said or on any presumption in fact or in law, (1) with respect to this Agreement, or to the duration, termination, or renewal of this Agreement, or with respect to the relationship between the parties, other than as expressly set forth in this Agreement; or (2) that in any way tends to change or modify the terms of this Agreement or prevent this Agreement becoming effective; or (3) that in any way affects or relates to the subject matter hereof. Distributor also acknowledges that the terms and conditions of this Agreement, and each of them, are reasonable and fair and equitable.

20. **Entire Agreement**. This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement, and there are no other promises or conditions in any other agreement whether oral or written. Any representation, promise, or condition not incorporated herein shall not be binding on either party. This Agreement may be modified only by a further writing that is duly executed by both parties.

21. **Assignment**. Neither this Agreement nor any interest in this Agreement may be assigned by Distributor without prior express written approval of KVAR, which may be withheld by KVAR at KVAR's absolute discretion and require a new distributor's agreement. KVAR may assign its rights and obligations in this Agreement upon written notice to the Distributor.

DELAWARE ONLY

22. **No Implied Waivers**. Except as expressly provided in this Agreement, waiver by either party, or failure by either party to claim a default, of any provision of this Agreement shall not be a waiver of any default or subsequent default.

23. **Notices**. Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, postage prepaid, or recognized overnight delivery services;

If to KVAR:                    KVAR Energy Savings, Inc.
                               413 Oakplace Bldg. 4 Unit-S
                               Port Orange, FL 33127
                               Phone: (386) 767-0048
If to Distributor:

24. **Governing Law**. This Agreement shall be construed and enforced in accordance with the laws of the State of Florida.

25. **Severability**. If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

26. **Counterparts.** This Agreement may be executed in counterparts with the same effects as if the parties had signed the same document. The counterpart shall be construed together and shall constitute one and the same Agreement. This Agreement may be executed by the parties and transmitted by facsimile transmission and if so executed and transmitted this Agreement shall be for all purposes as effective as if the parties had delivered an executed original Agreement.

27. **Force Majeure**. Notwithstanding anything herein contained to the contrary, KVAR shall not be deemed to be in breach of this Agreement nor otherwise be liable to the Distributor in damages by virtue of any failure to perform hereunder caused by any circumstances beyond its control, including, but not limited to fire, earthquake, flood, epidemic, accident, explosion, casualty, strike, lockout, labor controversy, riot, civil disturbance, act of public enemy, embargo, war, act of terrorism, act of God, any governmental ordinance or law, the issuance of any executive or judicial order, any failure or delay of any transportation agency, any failure or delay in respect to the electrical or equipment or apparatus, or by any laboratory, any failure, without fault, to obtain material, transportation, power, or any other essential thing required in the act of its business or any similar causes. If the KVAR is affected by any circumstances beyond its control, KVAR shall notify the Distributor of the nature and extent thereof; and the time for performance shall be extended accordingly. If the circumstances beyond KVAR's control prevail for a continuous period in excess of eight weeks, KVAR shall

DELAWARE ONLY

enter into bona fide discussions with the Distributor to alleviate the effects, or to agree upon such alternative arrangements as may be fair and reasonable.

In witness whereof and intending to be legally bound hereby, the parties have duly executed and delivered this Agreement as of the date first written above:

DISTRIBUTOR: (If company replace with name of the company)

Name: _TRI-STATE ENERGY SOLUTIONS LLP_
Its: _CO-PRESIDENTS_ ( If company, title of individual signing)
Print: _Larry Gillen - JOE ChieFFO_
EIN/SSN: _____

COUNTY OF _Volusia_
STATE OF _Florida_

The foregoing Agreement was acknowledged before on _March 22, 2006_ by _Lawrence Gillen,_ _Joseph Chieff_ _____ known to me to be the person who is subscribed to this Agreement, who has produced _Del. Driver's Lic._ _____ as identification.

Notary Public
Witness my hand and official seal. _Letitia J. LaMagna_
Name (Typed or Printed): _Letitia J LaMagna_
My Commission Expires: _11/29/09_

LETITIA J. LAMAGNA
Notary Public - State of Florida
My Commission Expires Nov 29, 2009
Commission # DD 494977
Bonded By National Notary Assn.

KVAR ENERGY SAVINGS, INC.:

Name: _____
Print: _Gregory G Taylor_
Its: _President_

COUNTY OF _Volusia_
STATE OF _Florida_

The foregoing Agreement was acknowledged before on _March 22, 2006_ by _Greg Taylor_ _____ known to me to be the person who is subscribed to this Agreement, who has produced _FL. Driver's Lic_ _____ as identification.

Notary Public
Witness my hand and official seal.
_Letitia J LaMagna_

LETITIA J. LAMAGNA
Notary Public - State of Florida
My Commission Expires Nov 29, 2009
Commission # DD 494977
Bonded By National Notary Assn.

Exclusive Distributor                    - 8 -
Revised 12/12/05

DELAWARE ONLY

Name (Typed or Printed):_____
My Commission Expires:_____

DELAWARE ONLY

**Attachment A**
# NON-EXCLUSIVE DISTRIBUTOR SINGLE-MOTOR UNIT PRICE LIST AND MANUFACTURER'S SUGGESTED RETAIL PRICE (MSRP)

| US1 MODEL | COST | MSRP | US2 MODEL | COST | MSRP | US3 MODEL | COST | MSRP |
|---|---|---|---|---|---|---|---|---|
| US1-1 | $162.40 | $406.00 | US2-1 | $184.80 | $462.00 | US3-1 | $258.40 | $646.00 |
| US1-2 | $178.40 | $446.00 | US2-2 | $210.40 | $526.00 | US3-2 | $363.20 | $908.00 |
| US1-3 | $210.40 | $526.00 | US2-3 | $258.40 | $646.00 | US3-3 | $395.20 | $988.00 |
| US1-4 | $279.20 | $698.00 | US2-4 | $363.20 | $908.00 | US3-4 | $395.20 | $988.00 |
| US1-5 | $304.00 | $760.00 | US2-5 | $395.20 | $988.00 | US3-5 | $395.20 | $988.00 |
| US1-12 | $225.60 | $564.00 | US2-12 | $285.60 | $714.00 | US3-12 | $507.20 | $1,268.00 |
| US1-13 | $258.40 | $646.00 | US2-13 | $331.20 | $828.00 | US3-13 | $539.20 | $1,348.00 |
| US1-14 | $326.40 | $816.00 | US2-14 | $436.80 | $1,092.00 | US3-14 | $539.20 | $1,348.00 |
| US1-15 | $352.00 | $880.00 | US2-15 | $468.80 | $1,172.00 | US3-15 | $539.20 | $1,348.00 |
| US1-123 | $322.40 | $806.00 | US2-123 | $429.60 | $1,074.00 | US3-123 | $788.00 | $1,970.00 |
| US1-124 | $391.20 | $978.00 | US2-124 | $535.20 | $1,338.00 | US3-124 | $788.00 | $1,970.00 |
| US1-125 | $416.00 | $1,040.00 | US2-125 | $548.80 | $1,372.00 | US3-125 | $788.00 | $1,970.00 |
| US1-1234 | $486.80 | $1,216.00 | US2-1234 | $679.20 | $1,698.00 | US3-1234 | $1,101.60 | $2,754.00 |
| US1-1235 | $512.00 | $1,280.00 | US2-1235 | $708.80 | $1,772.00 | US3-1235 | $1,101.60 | $2,754.00 |
| US1-12345 | $676.80 | $1,692.00 | US2-12345 | $960.00 | $2,400.00 | US3-12345 | $1,350.40 | $3,376.00 |
| US1-1245 | $580.80 | $1,452.00 | US2-1245 | $816.00 | $2,040.00 | US3-1245 | $1,101.60 | $2,754.00 |
| US1-134 | $422.40 | $1,056.00 | US2-134 | $580.80 | $1,452.00 | US3-134 | $820.80 | $2,052.00 |
| US1-135 | $448.00 | $1,120.00 | US2-135 | $612.80 | $1,532.00 | US3-135 | $820.80 | $2,052.00 |
| US1-1345 | $604.80 | $1,512.00 | US2-1345 | $861.60 | $2,154.00 | US3-1345 | $1,101.60 | $2,754.00 |
| US1-145 | $516.80 | $1,292.00 | US2-145 | $717.60 | $1,794.00 | US3-145 | $820.80 | $2,052.00 |
| US1-23 | $274.40 | $686.00 | US2-23 | $360.80 | $902.00 | US3-23 | $644.00 | $1,610.00 |
| US1-24 | $343.20 | $858.00 | US2-24 | $461.60 | $1,154.00 | US3-24 | $644.00 | $1,610.00 |
| US1-25 | $365.60 | $914.00 | US2-25 | $493.60 | $1,234.00 | US3-25 | $644.00 | $1,610.00 |
| US1-234 | $324.00 | $810.00 | US2-234 | $605.60 | $1,514.00 | US3-234 | $925.60 | $2,314.00 |
| US1-235 | $349.60 | $874.00 | US2-235 | $637.60 | $1,594.00 | US3-235 | $925.60 | $2,314.00 |
| US1-2345 | $628.80 | $1,572.00 | US2-2345 | $886.40 | $2,216.00 | US3-2345 | $1,206.40 | $3,016.00 |
| US1-245 | $532.00 | $1,330.00 | US2-245 | $742.40 | $1,856.00 | US3-245 | $925.60 | $2,314.00 |
| US1-34 | $374.40 | $936.00 | US2-34 | $507.20 | $1,268.00 | US3-34 | $676.80 | $1,692.00 |
| US1-35 | $399.20 | $998.00 | US2-35 | $539.20 | $1,348.00 | US3-35 | $676.80 | $1,692.00 |
| US1-345 | $564.80 | $1,412.00 | US2-345 | $788.00 | $1,970.00 | US3-345 | $953.60 | $2,384.00 |
| US1-45 | $468.80 | $1,172.00 | US2-45 | $644.00 | $1,610.00 | US3-45 | $676.80 | $1,692.00 |

Exclusive Distributor
Revised 12/12/05

DELAWARE ONLY

## Attachment B

## PANEL UNIT PRICE LIST AND MSRP

| AMPERAGE | MODEL | VOLTAGE | Dimensions L x W x H | Weight | PRICE/unit | MSRP |
|---|---|---|---|---|---|---|
| *Commercial Applications* | | | | | | |
| 100 | PU3100 | 240 TO 480 | 8 x 6 x 4 | 6 lbs | $ 195.00 | |
| 200 | PU3200 | 240 TO 480 | 8 x 6 x 4 | 8 lbs | $ 395.20 | |
| 400 | PU3400 | 240 TO 480 | 10 x 8 x 6 | 10 lbs | $ 820.80 | |
| *Residential Home Applications* | | | | | | |
| 50 | PU150 | 240 TO 480 | 6 x 6 x 4 | 6 lbs | $ 95.00 | |
| 100 | PU1100 | 240 TO 480 | 6 x 6 x 4 | 6 lbs | $ 95.00 | |
| 200 | PU1200 | 240 TO 480 | 6 x 6 x 4 | 6 lbs | $ 150.00 | |
| 400 | PU1400 | 240 TO 480 | 6 x 6 x 4 | 6 lbs | $ 375.00 | |

## DEMONSTRATION KITS AND SIZER SETS

| | Dimensions L x W x H | Weight | PRICE/unit |
|---|---|---|---|
| DEMOS | 25 x 18 x 13 | 40 lbs | $ 550.00 |
| SIZERS | 25 x 25 x 25 | 87 lbs | $ 18,500.00 |

## Attachment C

# EXHIBIT D

# REGIONAL DISTRIBUTOR AGREEMENT

This Regional Distributor Agreement ("Agreement") is made and effective this MAY 3,2006 (the "Effective Date"), by and between KVAR Energy Savings, Inc., a Florida corporation with offices at 413 Oakplace Bldg. 4 Unit-S, Port Orange, Florida, 32127(hereinafter KVAR) and TRI-STATE ENERGY SOLUTIONS (hereinafter "Distributor").

## RECITALS

**WHEREAS**, KVAR is a manufacturer marketing products in the business of energy management and efficiency, worldwide under the name of KVAR(™) for both residential, commercial and industrial applications; and

**WHEREAS**, KVAR holds title and sole ownership to technology relating to the optimization of electrical power of motors, as described in United States Patent Number 5,440,442, issued August 8, 1995; and

**WHEREAS**, KVAR has developed, expedited economical methods and specifications to perform the teachings of the patent, has acquired market information related to the technology, and has developed a manufacturing process all of which are proprietary to KVAR; and

**WHEREAS**, KVAR desires to appoint Distributor and Distributor desires to accept appointment, as a regional Distributor of KVAR's Products as set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are incorporated herein by reference and of the mutual agreements and promises set forth herein, and intending to be legally bound, the parties do hereby covenant, promise and agree as follows:

## AGREEMENT

1. **Distributor's Fee and Initial Setup.** Distributor shall pay a one-time distributor's fee in the amount of 25,000.00 for the Exclusive Rights Granted, Exclusive Rights Granted, and the Initial Setup. The Initial Setup shall include: (1) one sets of sizing apparatus with each set including a US1 single phase, a US2 three phase and a US3 three phase; (2)one demonstration kits with each kit including an electric motor, amp meter, volt meter, kilowatt hour meter and a Panel Unit; (3) one power quality meters; and (4) one promotional DVD or Video .All shipping is to be paid by Distributor.

2. **Rights Granted.** KVAR hereby grants to Distributor an exclusive right on the terms and conditions contained below to purchase, inventory, promote and resell "KVAR SAVING INC Products" (as defined below) for single-motor applications in the Territory (the "Exclusive Rights Granted"); except Distributor shall have a exclusive right to

Regional Distributor
Revised 12/12/05

EXHIBIT

*A*

tabbies

purchase, inventory, promote and resell Panel Units (the "Exclusive Rights Granted"). Nothing herein shall prevent or prohibit KVAR from selling any of KVAR Products directly to the customers. In order to protect the goodwill of KVAR and Distributor's accounts, if Distributor is unwilling or unable to service its accounts, then KVAR reserves the right to service the accounts.

3.  **Products**. As used in this Agreement "KVAR Products" shall mean the products, related-service parts and accessories manufactured and/or sold by KVAR as follows:

    A. US1 single phase sizers;

    B. US2 three phase sizers;

    C. US3 three phase sizers;

    D. power quality meters;

    E. capacitance assemblies for single-motor applications (Single-Motor Units) as identified in **Attachment A**;

    F. capacitance assemblies for residential and commercial electrical panels (Panel Units) as identified in **Attachment B**; and

    G. demonstration kits.

4.  **Territory**. The intended geographical territory for the Exclusive Rights Granted for the distribution of KVAR Products shall be as identified herewith in **Attachment C** (the "Territory").

5.  **Terms of Sale**. All sales of KVAR Products to Distributors shall be made pursuant to this Agreement at such prices (as shown in **Attachment A** and **Attachment B** herewith attached to this Agreement) and on such terms as KVAR shall establish from time to time on at least 30 days notice. All prices are FOB KVAR plant. KVAR agrees to properly pack all items for shipment. Risk of loss due to damage or destruction of KVAR Products shall be borne by the Distributor after delivery to the carrier for shipment. The shipper will be selected by KVAR unless Distributor requests a reasonable alternative. All orders are subject to acceptance by KVAR and must be paid in full before shipping. KVAR shall attempt to fill all accepted orders within thirty (30) days of full payment or as arranged by Distributor with KVAR. Except as otherwise expressly agreed by KVAR in advance, this Agreement shall control all aspects of the dealings between KVAR and Distributor with respect to KVAR Products and any additional or different terms in any Distribution order are hereby rejected.

6.  **Payment**. All payment for KVAR Products shall be paid in full by certified check, cash, cashier's check, money order, or direct deposit into KVAR's bank account:

    Suntrust Bank

    Acct Name: KVAR Energy Savings, Inc.

    Routing Number: 063102152

    Account Number: 0001613006526

7.  **Technical Training and Assistance**. KVAR will undertake to train Distributor personnel in the use of the technology and trade secrets. The training will take place in

_____ and shall consist of no less than 1 week or more than 2 weeks of instruction at Distributor's cost, including but not limited to room and board and a $500 per day instructor's fee.

8.  **Sales Polices**. Sales quotas, giving reasonable regard to past performance and market potential of Single-motor Units and Panel Units, may be established by KVAR from time to time.  Distributor agrees to employ sales personnel of demonstrated capacity to attain such quotas. Distributor agrees to monitor sales personnel to ensure compliance with policy, procedures and the terms of this Agreement. Distributor is responsible for the action of its sale personnel.

9.  **Distributor's General Duties**.

    A.   Distributor shall provide, if a Corporation or partnership a Federal I.D. Number or, in the case of an individual a Social Security Number. Distributor shall submit a separate Corporation/Partnership letter to KVAR certifying the Social Security Number of all corporate principals and/or each partner. In addition, Distributor must also provide its Resale Tax Number.

    B. Distributor agrees not to engage in the distribution promotion, marketing or sale of any goods or products that compete or conflict with KVAR Products.  Distributor agrees to supply to KVAR a list of items handled by Distributor following KVAR's request to ensure that no conflict exist.

    C. Distributor, as a minimum, shall make orders of KVAR in net wholesale value of $75,000 (Seventy-five thousand dollars) in every three-month period during the first two years and then increasing to $150,000 (One hundred fifty thousand dollars) in every three-month period for the remaining term of the Distributor's appointment.

In addition to any other right or remedy to which KVAR may be entitled, shipments may be suspended at KVAR's discretion in the event that Distributor fails to promptly and faithfully discharge each and every obligation in this Section.

10.  **Advertising Polices**.  Distributor agrees to faithfully comply with the terms and conditions of advertising, promoting, and merchandising programs as KVAR may establish from time to time.  Nothing herein shall prevent Distributor from independently advertising, promoting and marketing KVAR Products provided the form and content of the advertising, promoting or marketing materials and/or activities are approved by KVAR in advance.

11.  **Product Warranty Policies**.  In the event that any of KVAR Products are proved to KVAR satisfaction to have been defected at time of sale to Distributor, KVAR will make an appropriate adjustment in the original sales price of such product or, at KVAR's election, replace the defective product. KVAR shall provide to Distributor information with respect to KVAR's limited warranty extended to the original consumer of Single-

Motor Units and Panel Units. KVAR MAKES NO WARRANTY TO DISTRIBUTOR WITH RESPECT TO THE PRODUCTS, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

12. **Indemnification**.

A. KVAR agrees to protect Distributor and hold Distributor harmless from any loss or claim arising out of inherent defects in any of KVAR Products existing at the time such product was sold by KVAR to Distributor, provided that Distributor gives KVAR immediate notice of any such loss or claim and cooperates fully with KVAR in the handling thereof.

B. Distributor agrees to protect KVAR and hold KVAR harmless from any loss or claim arising out of the negligence of Distributor, Distributor's agents, employees or representatives in the installation, use, sale or servicing of KVAR Products or arising out of any representation or warranty made by Distributor, its agent, employees, or representatives with respect to KVAR Products that exceeds KVAR's limited warranty.

13. **Use of the KVAR(TM) Name**. Distributor will not use, authorize or permit the use of the name "KVAR" or any other trademark or trade name owned by KVAR as part of its firm, corporate or business name in any way. Distributor shall not contest the right of KVAR to exclusive use of any trademark or trade name used or claimed by KVAR. Distributor may, subject to KVAR's written prior approval, utilize KVAR's name, trademarks or logo in advertising on stationery, business card or other medium.

14. **Relationship of Parties**. The relationship between KVAR and Distributor is that of vendor and vendee. Distributor, its agents and employees shall, under on circumstances, be deemed employees, agents, or representatives of KVAR. Distributor will not modify any of KVAR Products without written permission from KVAR. Neither Distributor nor KVAR shall have any right to enter into any contract or commitment in the name of, or on behalf of the other, or to bind the other in any respect whatsoever. No Distributor is guaranteed a specific income. The Distributor's success or failure depends solely on its efforts. The Distributor will obtain at its expense all necessary permits, licenses, import/export licenses or other consents for the lawful operation of Distributor's business. Distributor will pay all taxes, expenses, debits and other liabilities of the Distributor when due and agrees to operate in a lawful and ethical manner. It is the Distributor responsibility to make self-employment and tax payments, as they are required by law. Further, Distributor will not fix any liability on KVAR whatsoever, whether City, County, State and/or taxes.

15. **Term and Termination**. Unless earlier termination as provided below, the term of this Agreement shall commence on the Effective Date and shall continue for one year. At the end of the term, the Agreement shall continue until terminated by either party on at least 30 days prior notice.

A. KVAR may terminate at any time by written notice given to Distributor not less than ninety (90) days prior to the effective date of such notice in the event KVAR decides to terminate all outstanding distributor agreements for KVAR Products and to offer a new or amended form of distributor agreement.

B. KVAR may terminate this Agreement upon notice to Distributor, upon any of the following events: (1) failure of Distributor to fulfill or perform any one of the duties, obligations or responsibilities of distributor in this Agreement, which is not cured within ten (10) days notice from KVAR; (2) any assignment or attempted assignment by Distributor of any interest in this agreement or delegation of Distributor's obligations without KVAR's written consent; (3) any sale, transfer or relinquishment, voluntary or involuntary, by operation of law or otherwise, of any material interest in the direct or indirect ownership or any change in the management of Distributor; (4) failure of Distributor for any reason to function in the ordinary course of business; (5) conviction in a court of competent jurisdiction of Distributor, or a manager, partner, principal officer or major stockholder of Distributor for any violation of law tending, in KVAR's opinion, to affect adversely the operation or business of Distributor or the good name, goodwill, or reputation of KVAR, products of KVAR, or Distributor; or (6) submission by Distributor to KVAR of false or fraudulent reports or statements, including, without limitation, claims for any refund, credit, rebate, incentive, allowance, discount, reimbursement or other payment by KVAR.

16. **Obligations on Termination**. On termination of this Agreement, Distributor shall cease to be an authorized distributor of KVAR and:

A. All amounts owing by Distributor to KVAR shall, notwithstanding prior terms of sale, become immediately due and payable;

B. All unshipped orders shall be cancelled without liability of either party to the other;

C. Distributor will resell and deliver to KVAR on demand, free and clear of liens and encumbrances, such of KVAR Products and materials bearing KVAR's name as KVAR shall elect to repurchase, at a mutually agree price, but not in excess of KVAR's current price to Distributor for such products and materials, provided that KVAR shall not be obligated to pay Distributor for any item originally provided free of charge; and

D. Neither party shall be liable to the other because of termination for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales, or accounts of expenditures, investments, lease or commitments in connection with the business or good will of KVAR or Distributor or for any other reason whatsoever growing out of such termination.

17. **Use of Name Prohibited**. On termination of this Agreement, Distributor will remove and not thereafter use any sign or other promotional or advertising matter containing any trade name, logo, or trademark of KVAR including, but not limited to, "KVAR", and will immediately destroy all stationery, advertising matter and other printed matter in its possession or under its control containing such name, or any of KVAR's trademark, trade names or logos. Distributor will not at any time after such termination use or permit any such trademark, trade name or logo to be used in any manner in connection with any business conducted by it or in which it may have an interest, or otherwise whatsoever as descriptive of or referring to anything other than merchandise or products of KVAR. Regardless of the cause of termination, Distributor will immediately take all appropriate steps to remove and cancel its listing in telephone books, and other directories, and public records, or elsewhere that contain KVAR's name, logo or trademark. If Distributor fails to obtain such removals or cancellations promptly, KVAR may make application for such removals or cancellations on behalf of Distributor and in Distributor's name and in such event Distributor will render complete assistance.

18. **Miscellaneous**. In the event of any dispute between the Distributor and any of KVAR's other distributors as to any of the provisions or these terms and conditions of appointment or such other distributor's agreement, then such dispute shall be referred to and determined by KVAR and the determination by KVAR shall be final and binding upon the parties.

19. **Acknowledgments**. Each party acknowledges that no representation or statement, and no understanding or agreement, has been made, or exists, and that in entering into this Agreement each party has not relied on anything done or said or on any presumption in fact or in law, (1) with respect to this Agreement, or to the duration, termination, or renewal of this Agreement, or with respect to the relationship between the parties, other than as expressly set forth in this Agreement; or (2) that in any way tends to change or modify the terms of this Agreement or prevent this Agreement becoming effective; or (3) that in any way affects or relates to the subject matter hereof. Distributor also acknowledges that the terms and conditions of this Agreement, and each of them, are reasonable and fair and equitable.

20. **Entire Agreement**. This Agreement contains the entire agreement of the parties regarding the subject matter of this Agreement, and there are no other promises or conditions in any other agreement whether oral or written. Any representation, promise, or condition not incorporated herein shall not be binding on either party. This Agreement may be modified only by a further writing that is duly executed by both parties.

21. **Assignment**. Neither this Agreement nor any interest in this Agreement may be assigned by Distributor without prior express written approval of KVAR, which may be withheld by KVAR at KVAR's absolute discretion and require a new distributor's agreement. KVAR may assign its rights and obligations in this Agreement upon written notice to the Distributor.

Regional Distributor                   - 6 -
Revised 12/12/05

22. **No Implied Waivers**. Except as expressly provided in this Agreement, waiver by either party, or failure by either party to claim a default, of any provision of this Agreement shall not be a waiver of any default or subsequent default.

23. **Notices**. Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, postage prepaid, or recognized overnight delivery services;

If to KVAR:          KVAR Energy Savings, Inc.
                     413 Oakplace Bldg. 4 Unit-S
                     Port Orange, FL 33127
                     Phone: (386) 767-0048


If to Distributor:


24 **Governing Law**. This Agreement shall be construed and enforced in accordance with the laws of the State of Florida.

25. **Severability**. If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

26. **Counterparts**. This Agreement may be executed in counterparts with the same effects as if the parties had signed the same document. The counterpart shall be construed together and shall constitute one and the same Agreement. This Agreement may be executed by the parties and transmitted by facsimile transmission and if so executed and transmitted this Agreement shall be for all purposes as effective as if the parties had delivered an executed original Agreement.

27. **Force Majeure**. Notwithstanding anything herein contained to the contrary, KVAR shall not be deemed to be in breach of this Agreement nor otherwise be liable to the Distributor in damages by virtue of any failure to perform hereunder caused by any circumstances beyond its control, including, but not limited to fire, earthquake, flood, epidemic, accident, explosion, casualty, strike, lockout, labor controversy, riot, civil disturbance, act of public enemy, embargo, war, act of terrorism, act of God, any governmental ordinance or law, the issuance of any executive or judicial order, any failure or delay of any transportation agency, any failure or delay in respect to the electrical or equipment or apparatus, or by any laboratory, any failure, without fault, to obtain material, transportation, power, or any other essential thing required in the act of its business or any similar causes. If the KVAR is affected by any circumstances beyond its control, KVAR shall notify the Distributor of the nature and extent thereof; and the time for performance shall be extended accordingly.  If the circumstances beyond

KVAR's control prevail for a continuous period in excess of eight weeks, KVAR shall enter into bona fide discussions with the Distributor to alleviate the effects, or to agree upon such alternative arrangements as may be fair and reasonable.

In witness whereof and intending to be legally bound hereby, the parties have duly executed and delivered this Agreement as of the date first written above:

DISTRIBUTOR: (If company replace with name of the company)
Name: _TRI - STATE Energy Solutions LLP_ Name: _____
Its: _CO - President_ (If company, title of individual signing)
Print: _Joseph Chieffo / Lawrence Gillen_
EIN/SSN: _204 557 749_

COUNTY OF _New Castle_
STATE OF _Delaware_

The foregoing Agreement was acknowledged before on _May 5, 2006_ by _Joseph Chieffo_ _Lawrence Gillen_ known to me to be the person who is subscribed to this Agreement, who has produced _Drivers License_ as identification.

Notary Public
Witness my hand and official seal.
Name (Typed or Printed): _Leo John Ramunno_
My Commission Expires: _____

LEO JOHN RAMUNNO
Attorney at Law, Delaware
29 Del. C. §4323(a)(3) Notarial Act

KVAR ENERGY SAVINGS, INC.:

Name: _____
Print: _Gregory G. Taylor_
Its: _President_

COUNTY OF _Volusia_
STATE OF _Florida_

The foregoing Agreement was acknowledged before on _May 10 2006_ by _Gregory G. Taylor_ known to me to be the person who is subscribed to this Agreement, who has produced _FDL T460-287-53-110-0_ as identification.

Notary Public
Witness my hand and official seal.

TRISTAN DAVISON
Notary Public - State of Florida
My Commission Expires Sep 6, 2007
Commission # DD 245887
Bonded By National Notary Assn.

Regional Distributor
Revised 12/12/05

- 8 -

Name (Typed or Printed): _Leo John RAmuNAO_
My Commission Expires:_____

## Attachment A
### REGIONAL DISTRIBUTOR SINGLE-MOTOR UNIT PRICE LIST AND
### MANUFACTURER'S SUGGESTED RETAIL PRICE (MSRP)

| US1 MODEL | COST | MSRP | US2 MODEL | COST | MSRP | US3 MODEL | COST | MSRP |
|---|---|---|---|---|---|---|---|---|
| US1-1 | $133.98 | $406.00 | US2-1 | $152.46 | $462.00 | US3-1 | $213.18 | $646.00 |
| US1-2 | $147.18 | $446.00 | US2-2 | $173.58 | $526.00 | US3-2 | $299.64 | $908.00 |
| US1-3 | $173.58 | $526.00 | US2-3 | $213.18 | $646.00 | US3-3 | $326.04 | $988.00 |
| US1-4 | $230.34 | $698.00 | US2-4 | $299.64 | $908.00 | US3-4 | $326.04 | $988.00 |
| US1-5 | $250.80 | $760.00 | US2-5 | $326.04 | $988.00 | US3-5 | $326.04 | $988.00 |
| US1-12 | $186.12 | $564.00 | US2-12 | $235.62 | $714.00 | US3-12 | $418.44 | $1,268.00 |
| US1-13 | $213.18 | $646.00 | US2-13 | $273.24 | $828.00 | US3-13 | $444.84 | $1,348.00 |
| US1-14 | $269.28 | $816.00 | US2-14 | $360.36 | $1,092.00 | US3-14 | $444.84 | $1,348.00 |
| US1-15 | $290.40 | $880.00 | US2-15 | $386.76 | $1,172.00 | US3-15 | $444.84 | $1,348.00 |
| US1-123 | $265.98 | $806.00 | US2-123 | $354.42 | $1,074.00 | US3-123 | $650.10 | $1,970.00 |
| US1-124 | $322.74 | $978.00 | US2-124 | $441.54 | $1,338.00 | US3-124 | $650.10 | $1,970.00 |
| US1-125 | $343.20 | $1,040.00 | US2-125 | $452.76 | $1,372.00 | US3-125 | $650.10 | $1,970.00 |
| US1-1234 | $401.28 | $1,216.00 | US2-1234 | $560.34 | $1,698.00 | US3-1234 | $908.82 | $2,754.00 |
| US1-1235 | $422.40 | $1,280.00 | US2-1235 | $584.76 | $1,772.00 | US3-1235 | $908.82 | $2,754.00 |
| US1-12345 | $558.36 | $1,692.00 | US2-12345 | $792.00 | $2,400.00 | US3-12345 | $1,114.08 | $3,376.00 |
| US1-1245 | $479.16 | $1,452.00 | US2-1245 | $673.20 | $2,040.00 | US3-1245 | $980.82 | $2,754.00 |
| US1-134 | $348.48 | $1,056.00 | US2-134 | $479.16 | $1,452.00 | US3-134 | $677.16 | $2,052.00 |
| US1-135 | $369.60 | $1,120.00 | US2-135 | $505.56 | $1,532.00 | US3-135 | $677.16 | $2,052.00 |
| US1-1345 | $498.96 | $1,512.00 | US2-1345 | $710.82 | $2,154.00 | US3-1345 | $908.82 | $2,754.00 |
| US1-145 | $426.36 | $1,292.00 | US2-145 | $592.02 | $1,794.00 | US3-145 | $677.16 | $2,052.00 |
| US1-23 | $226.38 | $686.00 | US2-23 | $297.66 | $902.00 | US3-23 | $531.30 | $1,610.00 |
| US1-24 | $283.14 | $858.00 | US2-24 | $380.82 | $1,154.00 | US3-24 | $531.30 | $1,610.00 |
| US1-25 | $301.62 | $914.00 | US2-25 | $407.22 | $1,234.00 | US3-25 | $531.30 | $1,610.00 |
| US1-234 | $267.30 | $810.00 | US2-234 | $499.62 | $1,514.00 | US3-234 | $763.62 | $2,314.00 |
| US1-235 | $288.42 | $874.00 | US2-235 | $526.02 | $1,594.00 | US3-235 | $763.62 | $2,314.00 |
| US1-2345 | $518.76 | $1,572.00 | US2-2345 | $731.28 | $2,216.00 | US3-2345 | $995.28 | $3,016.00 |
| US1-245 | $438.90 | $1,330.00 | US2-245 | $612.48 | $1,856.00 | US3-245 | $763.62 | $2,314.00 |
| US1-34 | $308.88 | $936.00 | US2-34 | $418.44 | $1,268.00 | US3-34 | $558.36 | $1,692.00 |
| US1-35 | $329.34 | $998.00 | US2-35 | $444.84 | $1,348.00 | US3-35 | $558.36 | $1,692.00 |
| US1-345 | $465.96 | $1,412.00 | US2-345 | $650.10 | $1,970.00 | US3-345 | $786.72 | $2,384.00 |
| US1-45 | $386.76 | $1,172.00 | US2-45 | $531.30 | $1,610.00 | US3-45 | $558.36 | $1,692.00 |

## EXCLUSIVE TERRITORY

Subject to the terms and conditions of this Agreement, the Distributor has the exclusive sales, distribution and marketing rights in the following territory(ies):

## TERRITORY

REGION : MARYLAND DELAWARE AND PENNSYLVANIA

# EXHIBIT E

LexisNexis File & Serve

Click to Print                                              Printed on: Friday, April 11, 2008 09:19:35 EDT

## Case History Search
Search Created:
Friday, April 11, 2008 09:19:35 EDT

| | | | | | | |
|---|---|---|---|---|---|---|
| **Court:** | DE Court of Chancery Civil Action | **Judge:** | Parsons, Donald F | | **File & Serve Live Date:** | 11/19/2007 |
| **Division:** | N/A | **Case Number:** | 3361-VCP | | **Document(s) Filed:** | 8 |
| **Case Type:** | Breach of Contract | **Case Name:** | Tri State Energy Solutions LLP vs Kvar Energy Savings Inc | | **Date Range:** | All |

1-5 of 5 transactions   <<Prev Page 1 of 1 Next>>

| Transaction | Date/Time ▽ | Option | Case Number Case Name | Authorizer Organization | # | Document Type | Document Title | Size |
|---|---|---|---|---|---|---|---|---|
| 18828051 | 3/3/2008 3:36 PM EST | File And Serve | 3361-VCP Tri State Energy Solutions LLP vs Kvar Energy Savings Inc | Patricia G Randolph, DE Court of Chancery Civil Action | 5 | Sheriffs Return | Summons returned By Shf. Kent County 3.3.2008; Served KVAR Energy Savings, Inc. by serving the Sec. of State pursuant to 10 DelC. sec. 3104 2.15.2008 | 0.1MB |
| 18401701 | 2/1/2008 1:08 PM EST | File And Serve | 3361-VCP Tri State Energy Solutions LLP vs Kvar Energy Savings Inc | Patricia G Randolph, DE Court of Chancery Civil Action | 4 | Summons | Praecipe; Issued 3104 Summons to Shf. Kent County (1 copy) | 0.1MB |
| 17905884 | 1/4/2008 3:56 PM EST | File Only | 3361-VCP Tri State Energy Solutions LLP vs Kvar Energy Savings Inc | Leo John Ramunno, Ramunno, Leo John Esq | 3 | Praecipe | Amended Praecipe to Issue Summons upon Defendant KVAR Energy Savings, Inc. (adding which sheriff is to serve it) • Linked to (1) | 0.1MB |
| 17882475 | 1/3/2008 2:29 PM EST | File Only | 3361-VCP Tri State Energy Solutions LLP vs Kvar Energy Savings Inc | Leo John Ramunno, Ramunno, Leo John Esq | 2 | Praecipe | Praecipe to Issue Summons upon Defendant -KVAR Energy Savings, Inc. • Linked to (1) | 0.1MB |
| 17290156 | 11/19/2007 11:33 AM EST | File Only | 3361-VCP Tri State Energy Solutions LLP vs Kvar Energy Savings Inc | Leo John Ramunno, Ramunno, Leo John Esq | 1 | Complaint | Verified Complaint • Linked from (1) | 0.1MB |
| | | | | | | Supplemental Information Sheet | Supplemental Case Information Sheet | 0.1MB |
| | | | | | | Verification to Complaint | Verification to Complaint • Linked from (1) | 0.1MB |
| | | | | | | Certificate of Service | Certificate of Service to Verified Complaint | 0.1MB |

1-5 of 5 transactions   <<Prev Page 1 of 1 Next>>

## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TRI-STATE ENERGY SOLUTIONS, LLP a Delaware Limited Liability Partnership; | : | Civil Action No. |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| vs. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |

## DECLARATION OF GREGORY TAYLOR
## SUBMITTED IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE,
## MOTION TO TRANSFER THIS ACTION TO THE MIDDLE DISTRICT OF FLORIDA

The declarant, Gregory Taylor, deposes and states as follows under penalty of perjury:

1. I am over the age of 21 and mentally competent to testify as to the information contained herein. I am the President and Founder of KVAR Energy Savings, Inc. ("KVAR"). I have been employed by KVAR since 1992, and I have first-hand knowledge of KVAR's dealings with Larry Gillen, Joe Chieffo, Chieffo Electric, and Tri-State Energy Solutions, LLP ("Tri-State").

2. KVAR does not maintain any offices or business operations in the State of Delaware, and no KVAR personnel regularly work or reside in the State of Delaware. KVAR does not sell products directly in the State of Delaware.

3. After discovering KVAR™ products on KVAR's website, Larry Gillen contacted KVAR to inquire about its products as well as about the possibility of becoming a KVAR distributor in Delaware. No products were offered for direct sale on that website.

4.    After discussions with Gillen, KVAR agreed to sell Gillen two KVAR™ units for his personal use at distributor prices.  In connection with Gillen's discussions with KVAR, Gillen was required to executed the Confidentiality and Non-Disclosure Agreement ("NDA") with KVAR.

5.    Gillen was so impressed by the KVAR™ products that he re-asserted his desire to become an authorized distributor of KVAR™ products.

6.    KVAR advised Gillen that it typically only permits licensed electrical contractors to serve as distributors of KVAR™ products.

7.    In an effort to become a KVAR distributor, Gillen and Joe Chieffo formed Tri-State.  Upon information and belief, Chieffo, a licensed electrician, and Gillen, are partners and principals of Tri-State.

8.    After forming Tri-State, Gillen and Chieffo, as representatives of Tri-State, traveled to Florida to meet with KVAR representatives.

9.    KVAR did not require Gillen and Chieffo to execute an NDA in their capacity as principals and partners of Tri-State because both were already subject to an NDA with KVAR — Gillen had previously signed an NDA and Chieffo signed an NDA in his individual capacity during his visit with KVAR in Florida.

10.   After the representatives of KVAR and Tri-State discussed Tri-State becoming a distributor, while in Florida, the parties executed an Exclusive Distribution Agreement, which had a distribution territory of the State of Delaware.  This Exclusive Distribution Agreement was executed by Gillen and Chieffo on behalf of Tri-State while they were in Florida meeting with KVAR representatives.  No negotiations for the Exclusive Distribution Agreement occurred in Delaware.

11.    Thereafter, KVAR and Tri-State agreed to expand Tri-State's distribution territory to include Pennsylvania and Maryland. The discussions regarding this expansion occurred over the telephone between KVAR representatives in Florida, and Tri-State representatives, presumably in Delaware. Thereafter, the parties executed the Regional Distributor Agreement in separate counterparts; KVAR executed it in Florida and Tri-State executed it in Delaware. Other than expanding the territory and increasing the minimum wholesale quarterly purchasing requirement from $7500 to $75,000, the Regional Distributor Agreement was the same as the Exclusive Distribution Agreement in all material respects.

12.    Prior to the deterioration of the KVAR-Tri-State relationship, KVAR shipped all products to Tri-State F.O.B. Florida. All orders placed by Tri-State were paid for with a Summit Liquors credit card issued to Larry Gillen and shipped to Summit Liquors, a business owned and/or operated by Gillen's family.

13.    KVAR does not conduct any direct advertising in the State of Delaware. Pursuant to the Exclusive Distribution Agreement and Regional Distributor Agreement, Tri-State was permitted to advertise using the KVAR name, trademarks, symbols, etc. only after submitting proofs to KVAR for review and approval. Tri-State never submitted any such proofs to KVAR to review and approve.

Date: 4-9-2008

Gregory Taylor / PRESiDENT

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| TRI-STATE ENERGY SOLUTIONS, LLP a | : | Civil Action No. |
| Delaware Limited Liability Partnership; | : | |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| vs. | : | |
| | : | |
| KVAR ENERGY SAVINGS, INC., | : | |
| | : | |
| Defendant. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **April 11, 2008,** I electronically filed the <u>Declaration of Gregory</u>

<u>Taylor Submitted in Support of Defendant KVAR Energy Savings, Inc.'s Motion to Dismiss</u>

<u>Defendant KVAR Energy Savings, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction,</u>

<u>Or In The Alternative, Motion to Transfer This Action to the Middle District of Florida</u> with the

Clerk of Court using CM/ECF.  I hereby certify that on **April 11, 2008,** I have mailed by United

States Postal Service, the document(s) to the following non-registered participants:

Leo John Ramunno, Esq. (# 2003)
1205 N. King Street
Wilmington, Delaware 19801
(302) 654-0660
Attorney for Tri-State Energy Solutions, LLP

**McCarter & English, LLP**

/s/ Daniel M. Silver
A. Richard Winchester (#2641)
awinchester@mccarter.com
Daniel M. Silver (#4758)
dsilver@mccarter.com
405 N. King Street
Wilmington, DE 19801
(302) 984-6300
Attorneys for KVAR Energy Savings, Inc.

ME1 7285596v.1