**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PJM INTERCONNECTION, LLC, directly and derivatively on behalf of Power Edge, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>MARK GORTON, TOWER RESEARCH CAPITAL LLC, TOWER RESEARCH CAPITAL INVESTMENTS, LLC, ACCORD ENERGY, LLC, BJ ENERGY, LLC, FRANKLIN POWER, LLC, GLE TRADING, LLC, OCEAN POWER, LLC, PILLAR FUND, LLC, and POWER EDGE LLC,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>CIVIL ACTION<br>No.: _____<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff PJM Interconnection, LLC ("PJM"), directly and derivatively on behalf of the creditors of Power Edge, LLC, by and through its attorneys, as and for its Complaint against Mark Gorton ("Gorton"), Tower Research Capital LLC ("TRC"), Tower Research Capital Investments, LLC ("TRCI"), Accord Energy, LLC ("Accord"), BJ Energy LLC ("BJ Energy"), Franklin Power, LLC ("Franklin"), GLE Trading, LLC ("GLE"), Ocean Power, LLC ("Ocean"), Pillar Fund, LLC ("Pillar") and Power Edge LLC ("Power Edge"), states as follows:

## NATURE OF THE ACTION

1.       Gorton, through the companies he controls, concocted a fraudulent scheme to extract money from the energy markets in thirteen (13) states and the District of Columbia. In furtherance of this scheme, Gorton and his companies created numerous sham entities to house extraordinarily risky investment schemes to be deployed in PJM's energy and related markets, which were developed solely through mathematical modeling. In other words, Gorton and his

companies did not try to make sound investments in a business they understood. They instead sought to squeeze out any profit opportunity based on abstract trading algorithms.

2.    One of Gorton's investment schemes went horribly wrong, leaving the sham entity owing PJM nearly $50 million as of March 31, 2008, and up to $61 million by May 31, 2008. But, as per Gorton's plan, the entity was insolvent, leaving PJM's other members and energy consumers to foot the bill.

3.    PJM, individually, as agent for its members and derivatively on behalf of Power Edge, now brings this action seeking to recover damages due to Gorton's and the other Defendants': (a) violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"); (b) Breaches of Fiduciary Duty; (c) Aiding and Abetting of Breaches of Fiduciary Duty; (d) Fraudulent Transfer; and/or (e) Breach of Contract. Additionally, PJM seeks to have this Court pierce the corporate veil of Gorton's sham entities.

## PARTIES

4.    Plaintiff PJM is a Delaware limited liability company with its principal place of business in Norristown, Pennsylvania. PJM is the regional transmission organization that operates the bulk energy transmission system for all, or portions of, Delaware, Illinois, Indiana, Kentucky, Maryland, Michigan, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia and the District of Columbia. Additionally, PJM operates several related markets: a day-ahead energy market, a real-time energy market, markets for ancillary services, and markets for the sale and purchase of financial rights and obligations, including markets for what are known as a financial transmission rights or "FTRs."

2

5.      Defendant Mark Gorton is an individual residing in the State of New York. Gorton owns the Lime Group, a conglomerate of several high-tech business entities headquartered in New York, New York.  Among other things, Gorton and the Lime Group own Defendants TRC and TRCI (collectively, the "Tower Companies").

6.      Gorton is also the founder of all of the other corporate Defendants:  Accord, BJ Energy, Franklin Power, GLE Trading, Ocean Power, Pillar Fund and Power Edge (collectively, the "Trading Companies").  Gorton, directly and through the Tower Companies, has managed and controlled the Trading Companies since their inception.

7.      TRCI is a Delaware limited liability company.  TRC is a New York limited liability company that is the managing member of several Delaware limited liability companies, including one or more of the Trading Companies, as defined herein.  The Tower Companies are hedge funds that engage in technically sophisticated trading and investing on the basis of quantitative, statistical and mathematical modeling.  Using this strategy, the Tower Companies purportedly attempt to identify patterns in various markets, and have engaged in extremely risky investments in an effort to exploit those patterns for profit.

8.      The Trading Companies are all Delaware limited liability companies.  They were formed by Gorton and the Tower Companies to separately house the extremely risky investment strategies developed by the Tower Companies.  Each of the Trading Companies is part of the overall trading scheme of Gorton and the Tower Companies.  The Trading Companies were deliberately structured by Gorton so that when one of the mathematical strategies housed by a Trading Company goes awry -- as happened in this case -- Gorton and the Tower Companies

3

could allow it to default on its obligations and shelter the remainder of Gorton's and the Tower Companies' investments.

9.      The Tower Companies have common management and ownership, except that TRC and another of its affiliates -- Tower Research Capital Holdings, Inc. ("TRCH") -- own a portion of TRCI.

10.     Gorton is the managing member of the Tower Companies and, in that position, maintains control over all the various sham companies that utilize the trading strategies that the Tower Companies devise.   Gorton is also the Managing Director of each of the Trading Companies.

11.     Non-party George Lee ("Lee") was a participant in and part of the RICO enterprise alleged herein.  Lee is the Risk Manager for the Tower Companies and each of the Trading Companies.  Lee was also an officer in some or all of the Trading Companies, and acted as the PJM Customer Account Manager or "CAM" for each of the Trading Companies.  At the direction of Gorton and the Tower Companies, Lee appeared (in person and/or by phone) at meetings of the members of PJM in Delaware as a representative of the Trading Companies.

12.     Non-party Bing J. Ni ("Bing Ni") was a participant in and part of the RICO enterprise alleged herein.  Bing Ni was employed by Gorton and the Tower Companies as a trader to conduct trades of energy and financial products in the markets operated by PJM on behalf of the Trading Companies.  Bing Ni was also the representative of certain of the Trading Companies to PJM's committees.  At the direction of Gorton and the Tower Companies, Bing Ni appeared (in person and/or by phone) at meetings of the members of PJM in Delaware as a representative of the Trading Companies.

4

13.    All of the Trading Companies participate in PJM's markets.

## JURISDICTION AND VENUE

14.    This Court has original jurisdiction over Plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 28 U.S.C. § 1331, because such claim arises under the laws of the United States.  This Court has jurisdiction over the remainder of Plaintiff's claims pursuant to 28 U.S.C. § 1367(a) because all such claims are so related to the claim giving rise to the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

15.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

## I.    INTRODUCTION TO THE PJM ENERGY MARKETS

### A.    What Is PJM?

16.    PJM is the independent Regional Transmission Organization -- or "RTO" -- that operates and manages the high voltage energy transmission system in all or parts of Delaware, Illinois, Indiana, Kentucky, Maryland, Michigan, New Jersey, North Carolina, Ohio, Pennsylvania, Tennessee, Virginia, West Virginia and the District of Columbia.  The energy lines, transformers, substations and related facilities under PJM's control will be referred to herein as the "Grid."

17.    The Grid does not include the local, typically lower-voltage distribution lines that deliver energy directly to retail, end use consumers.

18.     The retail delivery lines that provide energy to consumers are generally owned and operated by regional or local utility companies, also known as Local Distribution Companies or "LDCs." When a consumer turns on a light switch or a piece of machinery, energy is drawn from the Grid, through the local distribution lines owned by the LDC, and is delivered to the consumer.

19.     While the LDC meters the amount of electricity sold to each of its consumers at the retail level, PJM manages in real time the total amount of energy drawn off the Grid by the Local Distribution Companies with the amount of energy injected onto the Grid by power generating companies, so as to keep supply and demand continuously in balance.

### B.     Load Versus Generation

20.     The amount of energy drawn off the Grid is referred to as "load." For example, if a Local Distribution Company provides energy to 20,000 consumers, the amount of energy drawn off of the Grid for that group of consumers is the Local Distribution Company's load. The term load is also used more generally to refer to the total amount, or some specific portion, of the energy being withdrawn from the Grid.

21.     Some PJM market participants, like utilities, have the right to sell energy to specific groups of customers and, correspondingly, have the obligation to provide sufficient energy to meet the load of those customers. Such entities are sometimes called "load serving entities."

22.     The converse of load is "generation." The amount of load being withdrawn from an energy grid must be balanced in real time against the amount of generation that is being

6

delivered to the energy grid.  To ensure reliability, adjustments in the balance must be made nearly constantly.

### C.    The PJM Energy Markets

23.    Energy is bought and sold in energy markets.  PJM operates a centralized energy marketplace and administers for buyers and sellers of energy two energy markets on the Grid: (a) the day-ahead energy market; and (b) the real-time energy market.

24.    Typically, a load serving entity can predict generally how much energy it will need to serve its loads at least 24 hours in advance.  Likewise, generators typically want to know in advance when they are going to have to provide power to the Grid, and the amount they will be called upon to deliver.

25.    The day-ahead market allows energy buyers and sellers to lock in the prices for the energy that they will deliver or use the following day.  The day-ahead market is a forward market, where prices are calculated for each hour of the next operating day, and cleared (or settled) by PJM.  The results of the day-ahead market are binding financial commitments of the market participants.

26.    The real-time energy market is a spot market.  It is generally used by load serving entities either:  (a) to purchase energy when a participant has greater load to serve than was expected the day before (and thus bought too little generation in the day-ahead market); or (b) to sell energy when the participant has less load to serve than was expected the day before (and thus purchased more generation than was actually necessary).  It is also used by generators to make up shortfalls in the amount of generation they promised to deliver, or to sell extra generation at the real-time price.

27.    In both energy markets, investor participants also may submit bids to buy or sell energy unrelated to their generation and loads. In the day-ahead market, the bids are called "decrement bids" and "increment bids." Decrement bids are bids to purchase energy at a specified location and price. Increment bids are bids to sell energy at a specified location and price.

**D.    Transmission Constraints And Congestion Charges**

28.    Generally, PJM operates the energy markets in a manner that allows participants to obtain energy at the lowest possible price based on the bids PJM receives, regardless of their location on the Grid. That is because, in theory, the Grid allows energy purchased anywhere on the Grid to be consumed anywhere on the Grid.

29.    In reality, however, certain limitations of the transmission equipment, such as transmission lines, substations and transformers, restrict how much energy can flow across the Grid, and the directions in which it can flow. Such limitations are called "transmission constraints."

30.    Sometimes, due to transmission constraints, PJM may determine that the energy needed to serve a load cannot be supplied by the lowest-bidding generator because the energy cannot get from the generator to the load without overloading or compromising the reliability of the transmission equipment. For example, all transmission wires have an upper limit on the amount of energy that they can safely transmit at one time. If that limit is met or exceeded, it can cause a failure in the wire, perhaps leading to loss of load or "blackout."

31.    To prevent failures, and ensure the stability of the Grid, PJM sometimes directs a generator other than the lowest-bidding generator to provide the power necessary to meet load

requirements. When such action is taken due to transmission constraints, the difference between the energy price on the lower side of the transmission constraint and the energy price based on the bid of the generators that are actually called upon to provide energy, is deemed a "congestion cost."

###### E.      **Locational Marginal Price**

32.      The ultimate price of energy in the day-ahead energy market is determined by PJM based on all of the generation and load bids, including increment and decrement bids. The ultimate price of energy in the real-time energy market is determined by PJM based on the actual bids of the generators that are called upon to provide power (or are "dispatched") and the actual load requirements of the Grid.

33.      Additionally, for both the day-ahead and real-time markets, PJM calculates the impact of congestion costs on a location-specific basis. The results are day-ahead and real-time "Locational Marginal Prices" -- or "LMP" -- comprised of both energy and congestion components.

###### F.      **Financial Transmission Rights**

34.      If load serving entities must provide energy to loads that are located in areas subject to congestion, they may wish to protect themselves from the risk of unexpected congestion costs. To facilitate this hedging activity, the participants can purchase "financial transmission rights" -- or "FTRs" -- in PJM's FTR market.

35.      An FTR corresponds to both: (a) a particular time period; and (b) a particular energy transmission pathway. The transmission pathways are defined geographically by their beginning (source) and ending (sink) nodes.

36.     Generally, the holder of an FTR has the right to receive a credit based on the amount of congestion costs along the transmission pathway for the period of time of the FTR. Thus, a participant with an obligation to serve load in Baltimore could hedge its risk of high congestion costs in Baltimore by purchasing an FTR with a source node near the participant's source of generation, and a sink node in Baltimore. If there were congestion costs in Baltimore, then the participant would be obligated to pay the congestion costs as part of the LMP price for the energy necessary to serve its load, but would be entitled to an offsetting congestion credit arising from its FTR.

37.     PJM holds annual, quarterly, and monthly auctions where participants can buy and sell FTRs. The annual market corresponds to PJM's annual planning period, which runs from June through May.

38.     There are two types of FTRs available in PJM. The typical FTR is commonly known as a "prevailing flow FTR" -- or, simply, an FTR. The other type of FTR is commonly known as a "counterflow FTR."

39.     There are also generally two types of participants in PJM's FTR auctions: (a) load-serving entities, which buy and sell FTRs to offset or hedge against anticipated actual congestion costs associated with power delivery; and (b) participants, like the Trading Companies, that use the auction solely for investment or trading purposes, often decoupled from any obligation to deliver actual energy to consumers.

40.     For an FTR trader, the purchase of a prevailing flow FTR is a bet that actual congestion costs will be higher than expected congestion costs over the specified transmission pathway during the period of the FTR. It is akin to purchasing a call option on a stock, where

10

one is betting that the future value of the stock will be greater than the market expects; however, in the case of a prevailing flow FTR, the bet is that actual congestion costs will exceed expected congestion costs.

41.    The holder of a prevailing flow FTR makes a positive bid in one of PJM's FTR auctions, representing the amount that it is willing to pay for the FTR over the specified time period. That amount is then charged to the participant on a monthly basis during the term of the FTR. The holder of the prevailing flow FTR then receives congestion credits from PJM throughout the time period of the FTR based on the amount of congestion on the corresponding transmission pathway. As a result, the more congested the pathway, the higher the payments to the holder of the prevailing flow FTR.

42.    For an FTR trader, the purchase of a counterflow FTR is, conversely, a bet that there will be lower than expected congestion costs over the specified transmission pathway during the period of the FTR. It is akin to selling a call on a stock, where one is betting that the stock value will fall. This is because the holder of a counterflow FTR is paid a fixed payment by PJM determined in the auction and reflecting expected congestion over the period while paying to PJM the actual congestion costs on the path over the period. If actual congestion costs are lower than expected, the holder of the counterflow FTR will profit.

43.    The holder of a counterflow FTR makes a bid in one of PJM's FTR auctions, representing the amount it is willing to take to accept the payment obligations of the counterflow FTR. If this bid is accepted and cleared in the auction, this price is then paid by PJM to the counterflow FTR holder on a monthly basis during the term of the counterflow FTR. The holder of the counterflow FTR then pays actual congestion charges to PJM throughout the time period

11

of the FTR based on the amount of actual congestion on the corresponding transmission pathway. As a result, the more congested the pathway, the higher the charges to the holder.

### G. Default Allocation Under The PJM Operating Agreement

44. Because FTRs may result in a net loss for the holders, there is, of course, the possibility that a holder may default. In order to ensure that the participants in the PJM markets can count on other participants' FTR obligations, the Amended and Restated Operating Agreement of PJM Interconnection, LLC (the "PJM Operating Agreement") provides that, if the holder of an FTR obligation defaults, then the amount of that default can be allocated to all other PJM members, according to a formula contained therein. Thus, when a FTR holder defaults, all of the other participants have to pick up the bill as part of what is called a "Default Allocation Assessment."

45. The PJM Operating Agreement further provides that when a Default Allocation Assessment occurs, PJM may be authorized by the participants to pursue the entity or entities responsible for such default on their behalf.

## II. GORTON AND THE TOWER COMPANIES' ENTERPRISE

46. The Tower Companies are investment firms that Gorton runs and controls. They claim to be primarily engaged in the development of quantitative trading and investment strategies. To this end, Gorton and the Tower Companies purportedly design trading algorithms using statistical methodologies to identify supposed non-random patterns in the behavior of various markets.

47. Other than their efforts to identify patterns in the various financial products available in the PJM markets in which they participate, Gorton and the Tower Companies never

attempted to understand the underlying business or industries involved, or to inform themselves of the reason for the supposed non-random patterns they identified mathematically. This made their PJM investment strategies extremely risky.

48.    In order to protect themselves against the high risk of their PJM investment strategies, when Gorton and the Tower Companies developed new quantitative trading strategies, they created companies in which to house each strategy – namely, the Trading Companies -- all of which are managed and controlled by Gorton and one of the Tower Companies.

49.    Then, if one of the strategies does not prevail, the Tower Companies simply abandon the losing company or companies, allowing them to default on any obligations they undertook in the market, foisting the losses on the other PJM participants, while simultaneously reaping the profits of the strategies used by the other Trading Companies they control.

## III.    THE POWER EDGE DEFAULT

50.    Gorton and the Tower Companies used the Trading Companies to extract millions of dollars from PJM's FTR markets, while at the same time allowing one of the Trading Companies -- Power Edge -- to incur an enormous default in its obligations to PJM and its members. Gorton and the Tower Companies further used another of the Trading Companies -- BJ Energy -- to place bids in PJM's day-ahead energy market to exacerbate the default of Power Edge, while concomitantly increasing the profits of the other Trading Companies.

51.    Power Edge's default is currently almost $50 million. Further, the default has grown each month since November, 2007 because Power Edge holds positions extending through May, 2008. Based on Power Edge's positions, and expressed intention not to cure its

13

default, PJM estimates that the total amount of Power Edge's default will be between $50 million and $61 million.

52.    Moreover, due to the provisions of the PJM Operating Agreement and the operation of the PJM markets, Power Edge's default will have to be paid by the remaining members of PJM.

53.    Pursuant to the PJM Operating Agreement, PJM has been authorized to institute this action and pursue the claims asserted herein.

## IV.    DEFENDANTS' FRAUDULENT SCHEME

54.    In order to accomplish their fraudulent scheme, Gorton and the Tower Companies had to create the Trading Companies as if they were separate entities, and then arrange for each of them to be authorized to trade in PJM's markets.

### A.    BJ Energy

55.    On or about April 27, 2005, Gorton and the Tower Companies filed a Certificate of Incorporation with the Secretary of State for the State of Delaware, creating BJ Energy. Gorton and the Tower Companies submitted this Certificate of Incorporation via interstate mail or wire communication.

56.    Gorton is the Managing Director of BJ Energy.  TRCI was the managing member of BJ Energy until about October 1, 2005.  Since on or about October 1, 2005, TRC has been the managing member of BJ Energy.

57.    Lee was an officer of BJ Energy.  Bing Ni was employed by BJ Energy as the person responsible for placing trades in the PJM markets.  Indeed, the "BJ" in BJ Energy stands for "Bing J." Ni.

58.     On or about June 7, 2005, at the direction of Gorton and TRCI, BJ Energy submitted a Power Marketer Application to the Federal Energy Regulatory Commission ("FERC") in Washington, D.C., requesting authorization to sell energy at market rates in the PJM energy markets.   The Power Marketer Application was submitted through the use of interstate mail or wire communications.   FERC approved the application.

59.     On or about June 14, 2005, BJ Energy, at the direction of Gorton and TRCI, submitted a PJM membership application to PJM through interstate mail or wire communication (the "BJ Energy Application").   The BJ Energy Application and all of the required disclosures and undertakings were signed by Gorton as the Managing Director of BJ Energy.   A copy of the BJ Energy Application and related materials is attached collectively as Exhibit A hereto.

60.     TRC paid the application fee on behalf of BJ Energy via check, which was signed by Gorton.

61.     On or about August 9, 2005, Gorton, on behalf of BJ Energy, signed and submitted to PJM a Customer Account Manager Authorization to Use PJM Internet Business Tools (a "CAM Authorization"), naming Gorton, Lee and Dhiren Patel as authorized persons, entitled to utilize PJM's internet-based trading programs, including, without limitation, PJM's day-ahead energy market and its FTR market.   BJ Energy's CAM Authorization was submitted to PJM by Gorton through the use of interstate mail or wire communications.   A copy of BJ Energy's CAM Authorization is attached as Exhibit B hereto.

62.     The address for BJ Energy is identical to the Tower Companies' New York, New York office (the "New York Office").   Additionally, the authorized persons listed in BJ Energy's CAM Authorization all have email addresses at "tower-research.com."

**B.**  **GLE Trading**

63.    On or about August 30, 2006, Gorton and the Tower Companies filed a Limited Liability Company Certificate of Incorporation with the Secretary of State for the State of Delaware, creating GLE Trading.  Gorton and the Tower Companies submitted this Limited Liability Company Certificate of Incorporation via interstate mail or wire communication.

64.    Gorton is the Managing Director of GLE Trading.  TRCI was the original managing member of GLE Trading, and it or TRC is the current managing member of GLE Trading.

65.    Lee was an officer of GLE Trading.  Indeed, the "GLE" in GLE Trading stands for "George Lee." Lee was also employed by GLE Trading as the person responsible for placing trades in the PJM markets.

66.    On or about October 25, 2006, GLE Trading, at the direction of Gorton and the Tower Companies, submitted a PJM membership application to PJM through interstate mail or wire communication (the "GLE Trading Application").  The GLE Trading Application and all of the required disclosures and undertakings were signed by Gorton as the Managing Director of GLE Trading.  A copy of the GLE Trading Application and related materials is attached collectively as Exhibit C hereto.

67.    On or about October 31, 2006, Gorton, on behalf of GLE Trading, signed and submitted to PJM a CAM Authorization for GLE Trading, naming Lee as the authorized person, entitled to utilize PJM's internet-based trading programs, including, without limitation, PJM's day-ahead energy market and its FTR market.  GLE Trading's CAM Authorization was

16

submitted to PJM by Gorton through the use of interstate mail or wire communications. A copy of GLE Trading's CAM Authorization is attached as Exhibit D hereto.

68.    On or about December 20, 2006, Gorton, on behalf of GLE Trading, executed agreements with PJM, to arrange for GLE Trading to become a transmission customer of PJM.

69.    The address for GLE Trading is identical to the Tower Companies' New York Office.  Additionally, Lee's email address listed in GLE Trading's CAM Authorization is at "tower-research.com."

### C.    Franklin Power

70.    On or about January 11, 2007, Gorton filed a Certificate of Formation with the Secretary of State for the State of Delaware, creating Franklin Power.  Gorton submitted this Certificate of Formation via interstate mail or wire communication.

71.    Gorton is the Managing Director of Franklin Power.   One of the Tower Companies is the managing member of Franklin Power.

72.    Lee was an officer of Franklin Power.  Lee was also employed by Franklin Power as the person responsible for placing trades in the PJM markets.

73.    On or about January 30, 2007, Franklin Power, at the direction of Gorton and the Tower Companies, submitted a PJM membership application to PJM through interstate mail or wire communication (the "Franklin Power Application").  The Franklin Power Application and all of the required disclosures and undertakings were signed by Gorton as the Managing Director of Franklin Power.  A copy of the Franklin Power Application and related materials is attached collectively as Exhibit E hereto.

17

74.    On or about January 30, 2007, Gorton, on behalf of Franklin Power, signed and submitted to PJM a CAM Authorization for Franklin Power, naming Lee as the authorized person entitled to utilize PJM's internet-based trading programs, including, without limitation, PJM's day-ahead energy market and its FTR market. Franklin Power's CAM Authorization was submitted to PJM by Gorton through the use of interstate mail or wire communications. A copy of Franklin Power's CAM Authorization is attached as Exhibit F hereto.

75.    On or about February 13, 2007, Gorton, on behalf of Franklin Power, executed agreements with PJM, to arrange for Franklin Power to become a transmission customer of PJM.

76.    The original address submitted to PJM for Franklin Power was located in New Jersey, just across the Hudson River from the Tower Companies' New York Office (the "New Jersey Office"). However, Lee's email address listed in GLE Trading's CAM Authorization is at "tower-research.com," and his listed telephone number is the same as that for the Tower Companies' New York Office.

77.    After being approved as a member of PJM, Franklin Power changed its office address on file with PJM to the New York Office.

**D.    Power Edge**

78.    On or about March 13, 2007, Gorton filed a Certificate of Formation with the Secretary of State for the State of Delaware, creating Power Edge. Gorton submitted this Certificate of Formation via interstate mail or wire communication.

79.    Gorton is the Managing Director of Power Edge. One of the Tower Companies is the managing member of Power Edge.

18

80.    Lee was an officer of Power Edge.  Bing Ni was employed by or provided services to Power Edge as the person responsible for placing trades in the PJM markets.

81.    On or about March 19, 2007, Power Edge, at the direction of Gorton and the Tower Companies, submitted a PJM membership application to PJM through interstate mail or wire communication (the "Power Edge Application").  The Power Edge Application and all of the required disclosures and undertakings were signed by Gorton as the Managing Director of Power Edge.  A copy of the Power Edge Application and related materials is attached collectively as Exhibit G hereto.

82.    Also on or about March 19, 2007, Gorton, on behalf of Power Edge, executed agreements with PJM, to arrange for Power Edge to become a transmission customer of PJM.

83.    On or about March 19, 2007, Gorton, on behalf of Power Edge, submitted to PJM a CAM Authorization for Power Edge, naming Lee as the authorized person entitled to utilize PJM's internet-based trading programs, including, without limitation, PJM's day-ahead energy market and its FTR market.  Power Edge's CAM Authorization was submitted to PJM by Gorton through the use of interstate mail or wire communications. A copy of Power Edge's CAM Authorization is attached as Exhibit H hereto.

84.    On or about May 15, 2007, Lee submitted a second CAM Authorization form for Power Edge, to create a Power Edge "Subaccount" for "FTR" trades.  Power Edge's second CAM Authorization was submitted to PJM by Lee through the use of interstate mail or wire communications. A copy of the second Power Edge CAM Authorization is attached hereto as Exhibit I hereto.

85.    The address for Power Edge first submitted to PJM was the Tower Companies'
New Jersey Office.    However, the phone number listed for Lee in Power Edge's CAM
Authorization is the same as that for the Tower Companies' New York Office.

86.    After being approved as a member of PJM, Power Edge changed its office address
on file with PJM to the New York Office.

### E.    Ocean Power

87.    On or about May 14, 2007, Gorton filed a Certificate of Formation with the
Secretary of State for the State of Delaware, creating Ocean Power.    Gorton submitted this
Certificate of Formation via interstate mail or wire communication.

88.    Gorton is the Managing Director of Ocean Power.    One of the Tower Companies
is the managing member of Ocean Power.

89.    Lee was an officer of Ocean Power.    Bing Ni was employed by Ocean Power as
the person responsible for placing trades in the PJM markets.

90.    On or about May 15, 2007, Ocean Power, at the direction of Gorton and the
Tower Companies, submitted a PJM membership application to PJM through interstate mail or
wire communication (the "Ocean Power Application").    The Ocean Power Application and all of
the required disclosures and undertakings were signed by Gorton as the Managing Director of
Ocean Power.    A copy of the Ocean Power Application and related materials is attached
collectively as Exhibit J here.

91.    Also on or about May 15, 2007, Gorton, on behalf of Ocean Power, executed
agreements with PJM, to arrange for Ocean Power to become a transmission customer of PJM.

92.     Further, on or about May 15, 2007, Gorton, on behalf of Ocean Power, submitted to PJM a CAM Authorization for Ocean Power, naming Lee as the authorized person entitled to utilize PJM's internet-based trading programs, including, without limitation, PJM's day-ahead energy market and its FTR market.  Ocean Power's CAM Authorization was submitted to PJM by Gorton through the use of interstate mail or wire communications. A copy of Ocean Power's CAM Authorization is attached as Exhibit K hereto.

93.     The original address submitted to PJM for Ocean Power is the Tower Companies' New Jersey Office.   However, the phone number listed for Lee in Ocean Power's CAM Authorization is the same as that for the Tower Companies' New York Office.

94.     After being approved as a member of PJM, Ocean Power changed its office address on file with PJM to the New York Office.

**F.     Accord Energy**

95.     On or about July 13, 2007, Gorton filed a Certificate of Formation with the Secretary of State for the State of Delaware, creating Accord Energy.  Gorton submitted this Certificate of Formation via interstate mail or wire communication.

96.     Gorton is the Managing Director of Accord Energy.   One of the Tower Companies is the managing member of Accord Energy.

97.     Lee was an officer of Accord Energy.  Bing Ni was employed by or provided services to Accord Energy as the person responsible for placing trades in the PJM markets.

98.     On or about July 26, 2007, Accord Energy, at the direction of Gorton and the Tower Companies, submitted a PJM membership application to PJM through interstate mail or wire communication (the "Accord Energy Application").  The Accord Energy Application and

21

all of the required disclosures and undertakings were signed by Gorton as the Managing Director of Accord Energy. A copy of the Accord Energy Application and related materials is attached collectively as Exhibit L hereto.

99.    Also on or about July 26, 2007, Gorton, on behalf of Accord Energy, executed agreements with PJM, to arrange for Accord Energy to become a transmission customer of PJM.

100.    Further, on or about July 26, 2007, Gorton, on behalf of Accord Energy, submitted to PJM a CAM Authorization for Accord Energy, naming Lee as the authorized person entitled to utilize PJM's internet-based trading programs, including, without limitation, PJM's day-ahead energy market and its FTR market. Accord Energy's CAM Authorization was submitted to PJM by Gorton through the use of interstate mail or wire communications. A copy of Accord Energy's CAM Authorization is attached as Exhibit M hereto.

101.    The original address submitted to PJM for Accord Energy was the Tower Companies' New Jersey Office. Nevertheless, the phone number listed for Lee in the Accord Energy Application is the same as that for the Tower Companies' New York Office.

102.    After being approved as a member of PJM, Accord Energy changed its office address on file with PJM to the New York Office.

**G.    Pillar Fund**

103.    On or about July 19, 2007, Gorton filed a Certificate of Formation with the Secretary of State for the State of Delaware, creating Pillar Fund. Gorton submitted this Certificate of Formation via interstate mail or wire communication.

104.    Gorton is the Managing Director of Pillar Fund. One of the Tower Companies is the managing member of Pillar Fund.

105.    Lee was an officer of Pillar Fund.  Lee was also employed by or provided services to Pillar Fund as the person responsible for placing trades in the PJM markets.

106.    On or about July 26, 2007, Pillar Fund, at the direction of Gorton and the Tower Companies, submitted a PJM membership application to PJM through interstate mail or wire communication (the "Pillar Fund Application").  The Pillar Fund Application and all of the required disclosures and undertakings were signed by Gorton as the Managing Director of Pillar Fund.  A copy of the Pillar Fund Application and related materials is attached collectively as Exhibit N hereto.

107.    Also on or about July 26, 2007, Gorton, on behalf of Pillar Fund, executed agreements with PJM, to arrange for Pillar Fund to become a transmission customer of PJM.  Gorton signed the transmission agreements for Pillar Fund.

108.    Further, on or about July 26, 2007, Gorton, on behalf of Pillar Fund, submitted to PJM a CAM Authorization for Pillar Fund, naming Lee as the authorized person entitled to utilize PJM's internet-based trading programs, including, without limitation, PJM's day-ahead energy market and its FTR market.  Pillar Fund's CAM Authorization was submitted to PJM by Gorton through the use of interstate mail or wire communications.  A copy of Pillar Fund's CAM Authorization is attached as Exhibit O hereto.

109.    The address and telephone numbers for Pillar Fund are those for the Tower Companies' New York Office.  Additionally, Lee's email address for Pillar Fund is at "tower-research.com," and Bing Ni's email address is at "limegroup.com."  The Lime Group is Gorton's conglomerate corporation, and is the parent of the Tower Companies.

**H.**    **Gorton And The Tower Companies Misrepresented The Trading Companies**

110.    By submitting the separate applications for each of the Trading Companies, as set forth above, Gorton and the Tower Companies represented to PJM that each was a separate entity that would trade on its own behalf in PJM's markets.

111.    To further this appearance, Gorton and the Tower Companies used different addresses and email domain names for several of the Trading Companies, even though all were actually operated by Gorton out of the Tower Companies' New York Office.

112.    In fact, each of the Trading Companies was merely a sham corporation set up by Gorton and the Tower Companies to house what they knew were extremely risky investments, including, in the case of Power Edge, large quantities of unbalanced counterflow FTRs.

113.    At the time Gorton and the Tower Companies represented to the Secretary of State for the State of Delaware and to PJM that the Trading Companies were distinct entities, they actually knew that the Trading Companies were, in fact, sham corporations, and that they had been established to further Gorton and the Tower Companies' scheme to manipulate PJM's markets, or they made such statements with reckless disregard for the truth despite their knowledge and understanding of the purpose of the Trading Companies.

114.    Thus, contrary to Gorton and the Tower Companies' representations, the Trading Companies were actually mere instrumentalities of Gorton and the Tower Companies.

115.    PJM reasonably relied upon the misrepresentations made by Gorton and the Tower Companies in the names of Power Edge and the other Trading Companies. Among other things, PJM relied on these representations when it made the Trading Companies affiliate members of PJM, extended them credit, and enabled them to trade in PJM's markets, including

24

the FTR market. Had PJM known the truth, it would not have allowed the Trading Companies to participate in PJM's FTR markets, or any of its other markets.

### I.    Power Edge Acquires Massive Counterflow FTR Obligations

116.    Power Edge participated in PJM's 2007/2008 annual FTR auction, which was conducted in several rounds from April 10, 2007 through May 7, 2007 (the "Annual FTR Auction"). Power Edge also participated in several of PJM's monthly FTR auctions in 2007 (the "Monthly FTR Auctions").

117.    Pursuant to the quantitative trading scheme developed for Power Edge by Gorton and the Tower Companies, in the Annual FTR Auction and the Monthly FTR Auctions, Power Edge bid on, and acquired, an unusually high number of counterflow FTR positions.

118.    Power Edge also acquired a small amount of prevailing flow FTRs in the Annual FTR Auction and the Monthly FTR Auctions.  Nevertheless, in the auctions, Power Edge acquired an astoundingly risky portfolio of "short" counterflow FTR positions.

119.    Moreover, Power Edge exacerbated its risk by acquiring by private contract additional counterflow FTR positions directly from another PJM participant.

### J.    The Other Trading Companies Acquire Prevailing Flow FTRs

120.    Typically, a participant in PJM's FTR markets would not take on the extremely high risk, out-of-balance portfolio that Power Edge did.  They would also purchase prevailing flow FTRs, or take on other positions that would offset the risk of increased congestion.

121.    In fact, the Tower Companies did just that -- but not in Power Edge.  Instead, they used several of the other Trading Companies to acquire prevailing flow FTRs in PJM's monthly auction, knowing that, if the counterflow FTR positions in Power Edge did not pay off, they

would cause Power Edge to default, and would pass their obligations off to PJM's other participants. Meanwhile, they would reap the benefits of the prevailing flow FTR positions held by the other Trading Companies.

122.    All of the FTR positions in all of the Trading Companies were acquired under the direction and control of Gorton (the Trading Companies' managing director), Lee (the Trading Companies' Risk Manager and PJM Customer Account Manager) and the Tower Companies (the Trading Companies managing members). Moreover, the individual trader who purchased the counterflow FTRs for Power Edge, Bing Ni, is the same trader who purchased the prevailing flow FTRs for Accord Energy, BJ Energy and Ocean Power.

### K.    Power Edge Fails To Meet Its Payment Obligations

123.    Because, to an investor participant, counterflow FTR positions are a bet on low congestion, and congestion is generally lower in the fall, winter and spring, it is expected that counterflow FTR positions will generate profits in cooler months. However, Power Edge's counterflow FTR positions were a colossal bust.

124.    In February, 2007 -- before the Annual FTR Auction or any of the Monthly FTR Auctions in which Power Edge participated, it had been announced that a specific transmission line would be taken out of service for planned maintenance.

125.    This information was available to all of PJM's market participants before the FTR auctions. Yet, Gorton and the Tower Companies placed their trust solely in abstract trading strategies, which set Power Edge on its doomed course. Indeed, Gorton and the Tower Companies turned a blind eye to the real world, and recklessly failed to consider the prospect of transmission outages, both planned and unplanned, that could (and indeed did) radically alter

expected congestion costs, when they made Power Edge's "all or nothing" bet on low congestion.

126.    When a particular planned transmission outage occurred in late November 2007, it decreased transfer capability over the transmission pathway related to Power Edge's counterflow FTRs. As a result, congestion dramatically increased even though the weather turned cooler, and Power Edge's counterflow FTRs continued to lose millions of dollars, even during the cooler months.

127.    In November, 2007, Power Edge suffered a net loss on its positions in the amount of approximately $2.3 million, and had a cumulative loss of $18.3 million since May, 2007. Pursuant to the PJM Operating Agreement, Power Edge was required to make a payment in the amount of $2.3 million in December, 2007. Power Edge refused. Instead, Bing Ni told PJM that Power Edge was going to use the small amount of money it had left for legal expenses to fight its obligations, rather than to make any payments on the bill.

**L.      The Tower Companies' Manipulative Energy Bids**

128.    Once Power Edge was completely underwater, with no hope of recovery, Gorton and the Tower Companies decided they would manipulate PJM's markets to benefit the offsetting positions held by the other Trading Companies at the expense of increasing the defaults of Power Edge.

129.    Starting in December, 2007, Bing Ni, at the direction of Gorton and the Tower Companies, deliberately began submitting bids in PJM's day-ahead energy market that were intended to, and did, materially increase the congestion component of the day-ahead Locational Marginal Prices along the transmission pathways covered by Power Edge's counterflow FTRs.

By increasing congestion costs in this manner, Gorton and the Tower Companies knew that the amount of Power Edge's counterflow FTR obligations, which it would not and could not pay, would thereby increase.

130.    But some, if not all, of the other Trading Companies, including BJ Energy, held offsetting prevailing flow FTR positions. Therefore, by submitting bids to increase congestion costs, Gorton and the Tower Companies reaped more profits on the prevailing flow FTRs held by those other Trading Companies, while further injuring the failed Power Edge portfolio.

131.    Gorton and the Tower Companies thus intentionally increased Power Edge's default, knowing that Power Edge would never be able to pay it anyway, at the expense of PJM and its participants, while simultaneously increasing the profits of the other Trading Companies at the expense of PJM and its participants.

132.    In fact, by manipulating Locational Marginal Prices, Gorton and the Tower Companies artificially manipulated and distorted the cost of energy on the Grid for everyone serving load in the locations of the impacted transmission pathways. Based upon its preliminary analysis, PJM estimates that Gorton and the Tower Companies' manipulative trading in the day-ahead energy market increased the price of energy by over $4 million per month in the affected areas in December, 2007 and January, 2008.

## M.    **Power Edge's Increasing Defaults**

133.    As a result of the transmission outage and transactional activity of the Tower Companies, in December, 2007, Power Edge suffered a net loss of $19.9 million. When this payment came due in January, 2008, Power Edge again defaulted.

134.    In January, 2008, Power Edge suffered a net loss of $16.0 million.  Power Edge again defaulted when this payment came due in February, 2008.

135.    In February 2008, Power Edge suffered a net loss of $9.4 million.  Power Edge defaulted again when this payment came due in March, 2008.

136.    Through March 2008, Power Edge has defaulted on approximately $47.6 million in FTR obligations.

137.    Further, the Tower Companies have informed PJM that Power Edge will not make any further payments on its counterflow FTR positions, which run through May 31, 2008.

138.    Based on currently available information, PJM estimates that Power Edge's ongoing obligations (and expressed intention to default) will result in a total default of between $50 million and $61 million.

**N.    The Ongoing RICO Enterprise**

139.    The Trading Companies still hold open positions in PJM's markets.  Gorton and the Tower Companies have taken the position that, despite PJM's discovery of their scheme, PJM must still pay to them any further profits on those positions.  Thus, Gorton and the Tower Companies' enterprise may still cause additional harm to PJM, its members and the consumers of energy on the PJM Grid.

140.    Further, three of the Trading Companies – BJ Energy, GLE Trading and Franklin Power – are all participants in the New England Power Pool, operated by ISO New England ("ISO-NE").  ISO-NE, like PJM, is an RTO that operates energy and related financial markets, including an FTR market.  GLE Trading and Franklin Power became participants in ISO-NE on or about January 1, 2008 – about the same time that PJM first discovered Gorton and the Tower

Companies' fraudulent scheme in the PJM markets. Thus, it appears that Gorton and the Tower Companies are continuing their scheme of criminal conduct by moving their enterprise to another energy market.

## COUNT I

### *Racketeer Influenced And Corrupt Organization Act 18 U.S.C. § 1962(c)*

### Defendants Gorton And The Tower Companies

141.   PJM incorporates by reference Paragraphs 1 through 140 above, as if set forth herein at length.

142.   The Racketeer Influenced and Corrupt Organization Act prohibits companies from engaging in racketeering or criminal activities. 18 U.S.C. § 1961, *et seq.* RICO provides that it is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt. 18 U.S.C. § 1962(c).

143.   As detailed above and herein, Gorton, Lee, Bing Ni, the Tower Companies and the Trading Companies each worked in association for the purpose of creating and operating an enterprise to manipulate PJM's interstate wholesale energy markets and related markets, in an effort to extract huge sums of money from the PJM markets at the expense of PJM, its participants and the public as a whole.

144.   Gorton, Lee, Bing Ni, the Tower Companies and the Trading Companies' association constitutes an "enterprise" as that term is defined in 18 U.S.C. § 1961(4).

30

145.    While Gorton and the Tower Companies participated in the common enterprise, they also have an existence separate and distinct from the enterprise.

146.    Gorton and the Tower Companies are each "persons" as defined in 18 U.S.C. § 1961(3).

147.    Gorton's and the Tower Companies' acts in furtherance of their racketeering enterprise include several predicate acts that constitute "racketeering activity" for purposes of 18 U.S.C. § 1961(1). These predicate acts, which are detailed above and herein, include mail fraud and wire fraud.

148.    Gorton and the Tower Companies formed a common scheme and enterprise to defraud PJM and its participants.

149.    In furtherance of their scheme, Gorton and the Tower Companies sent documents through the U.S. mail with the intent to defraud in violation of 18 U.S.C. § 1341. The acts of mail fraud include Gorton and the Tower Companies' acts of mailing documents to the Secretary of State for the State of Delaware to create the Trading Companies, and the acts of mailing each of the Trading Companies' Applications, CAM Authorizations and related materials to PJM, as detailed above.

150.    In furtherance of their scheme, Gorton and the Tower Companies transmitted to PJM fraudulent and manipulative bids through the means of wire communication in violation of 18 U.S.C. § 1343. The acts of wire fraud include Gorton and the Tower Companies' acts of electronically submitting documents to the Secretary of State for the State of Delaware to create the Trading Companies, and the acts of using electronic and fax communications to submit the Trading Companies' Applications, CAM Authorizations and related materials to PJM, as

detailed above. Additionally, the acts of wire fraud include the Trading Companies' bids in PJM's annual and monthly FTR auctions, BJ Energy's manipulative bids in the day-ahead energy market, and the Trading Companies' monthly wire transfers of funds to and from PJM.

151.    As detailed above and herein, Gorton and the Tower Companies engaged in interstate commerce to facilitate, manage, establish and carry on their fraudulent scheme discussed above.

152.    Gorton's and the Tower Companies' acts formed a pattern of racketeering as defined in 18 U.S.C. § 1961(5). Gorton and the Tower Companies have committed at least two acts of racketeering. These acts represent a common course of conduct used by Gorton and the Tower Companies to manipulate PJM's energy and financial markets for their own gain, at the expense of PJM, its participants and all of the public consumers of energy that are served by the Grid.

153.    Gorton's and the Tower Companies' enterprise engages in interstate commerce, and their activities affect interstate commerce.

154.    Gorton's and the Tower Companies' racketeering activities have directly and proximately resulted in tens of millions of dollars of damages to PJM and its participants, and have caused substantial injuries to all of the public consumers of energy that are served by the Grid.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Gorton and the Tower Companies as follows:

A.    Awarding Plaintiff damages in an amount to be determined at trial;

B.   Awarding Plaintiff statutory treble and punitive damages awardable under RICO, 18 U.S.C. §§ 1961 and 1964(c);

C.   Awarding Plaintiff its recoverable attorneys' fees and costs;

D.   Awarding Plaintiff pre- and post-judgment interest; and

E.   Awarding Plaintiff such other and further relief as is appropriate.

## COUNT II

### *Racketeer Influenced And Corrupt Organization Act 18 U.S.C. § 1962(d)*

### Defendants Gorton And The Tower Companies

155.   PJM incorporates by reference Paragraphs 1 through 140 above, as if set forth herein at length.

156.   The Racketeer Influenced and Corrupt Organization Act prohibits companies from conspiring to engage in racketeering or criminal activities.   RICO provides that it is unlawful for any person employed by, or associated with, any enterprise to conspire to violate 18 U.S.C. § 1962(c).  18 U.S.C. § 1962(d).

157.   As detailed above and herein, Gorton, Lee, Bing Ni, the Tower Companies and the Trading Companies each worked in association for the purpose of conspiring to create and operate an enterprise to manipulate PJM's interstate wholesale energy markets and related markets, in an effort to extract huge sums of money from the PJM markets at the expense of PJM, its participants and the public as a whole.

158.   Gorton, Lee, Bing Ni, the Tower Companies and the Trading Companies' association constitutes an "enterprise" as that term is defined in 18 U.S.C. § 1961(4).

159.   While Gorton and the Tower Companies participated in the common enterprise, they also have an existence separate and distinct from the enterprise.

160.   Gorton and the Tower Companies are each "persons" as defined in 18 U.S.C. § 1961(3).

161.   Gorton's and the Tower Companies' acts in furtherance of their conspiracy to conduct a racketeering enterprise include several predicate acts that constitute "racketeering activity" for purposes of 18 U.S.C. § 1961(1).   These predicate acts, which are detailed above and herein, include mail fraud and wire fraud.

162.   Gorton and the Tower Companies formed a common scheme and enterprise to defraud PJM and its participants.

163.   In furtherance of their scheme, Gorton and the Tower Companies conspired to send documents through the U.S. mail with the intent to defraud in violation of 18 U.S.C. § 1341.   The conspiracy to commit acts of mail fraud include Gorton and the Tower Companies' acts of mailing documents to the Secretary of State for the State of Delaware to create the Trading Companies, and the acts of mailing each of the Trading Companies' Applications, CAM Authorizations and related materials to PJM, as detailed above.

164.   In furtherance of their scheme, Gorton and the Tower Companies conspired to transmit to PJM fraudulent and manipulative bids through the means of wire communication in violation of 18 U.S.C. § 1343.   The conspiracy to commit acts of wire fraud include Gorton and the Tower Companies' acts of electronically submitting documents to the Secretary of State for the State of Delaware to create the Trading Companies, and the acts of using electronic and fax communications to submit the Trading Companies' Applications, CAM Authorizations and

related materials to PJM, as detailed above. Additionally, the conspiracy to commit acts of wire fraud include the Trading Companies' bids in PJM's annual and monthly FTR auctions, BJ Energy's manipulative bids in the day-ahead energy market, and the Trading Companies' monthly wire transfers of funds to and from PJM.

165.    Further necessary information regarding Gorton and the Tower Companies' conspiracy lies solely within the defendants' control.

166.    As detailed above and herein, Gorton and the Tower Companies engaged in interstate commerce to facilitate, manage, establish and carry on their fraudulent scheme discussed above.

167.    Gorton's and the Tower Companies' acts formed a pattern of racketeering as defined in 18 U.S.C. § 1961(5). Gorton and the Tower Companies have conspired to commit at least two acts of racketeering. These acts represent a common course of conduct used by Gorton and the Tower Companies to manipulate PJM's energy and financial markets for their own gain, at the expense of PJM, its participants and all of the public consumers of energy that are served by the Grid.

168.    Gorton's and the Tower Companies' enterprise engages in interstate commerce, and their activities affect interstate commerce.

169.    Gorton's and the Tower Companies' conspiracy to commit racketeering activities have directly and proximately resulted in millions of dollars of damages to PJM and its participants, and have caused substantial injuries to all of the public consumers of energy that are served by the Grid.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Gorton and the Tower Companies as follows:

A.    Awarding Plaintiff damages in an amount to be determined at trial;

B.    Awarding Plaintiff statutory treble and punitive damages awardable under RICO, 18 U.S.C. §§ 1961 and 1964(c);

C.    Awarding Plaintiff its recoverable attorneys' fees and costs;

D.    Awarding Plaintiff pre- and post-judgment interest; and

E.    Awarding Plaintiff such other and further relief as is appropriate.

## COUNT III

### *Breach of Fiduciary Duty*

### Defendants Gorton And TRC

170.    PJM incorporates by reference Paragraphs 1 through 140 above, as if set forth herein at length.

171.    This Count is brought derivatively by PJM on behalf of Power Edge against Gorton and TRC.

172.    As the managers of Power Edge, Gorton and TRC owed fiduciary obligations to Power Edge to exercise the utmost good faith, act with due care, and conduct themselves with absolute loyalty to Power Edge.

173.    Gorton and TRC breached their fiduciary obligations to Power Edge by, among other things, the following acts and omissions:

(a)    Committing Power Edge to an extremely risky unbalanced counterflow FTR position, despite having failed to adequately inform themselves of

36

even the most basic information concerning the actual publicly announced future state of the transmission facilities on the Grid;

(b)     Intentionally investing Power Edge's money in extremely risky investments, while simultaneously protecting themselves and their own self-interest -- but not Power Edge -- from the risks by using other Trading Companies that they controlled to take the offsetting positions that Power Edge should have taken to protect itself from the catastrophic default Power Edge eventually incurred;

(c)     Knowingly usurping Power Edge's opportunities to take positions that would have offset Power Edge's losses by, instead, directing other companies in which they were interested to take those positions, to the detriment of Power Edge;

(d)     Willfully causing Power Edge to breach its obligations pursuant to the PJM Operating Agreement, subjecting it to enormous liabilities and destroying its ability to continue to participate in PJM's markets, thus thwarting its ability to carry on its business;

(e)     Abandoning and effecting further harm to Power Edge in favor of the other Trading Companies;

(f)     Failing to make necessary capital calls to enable Power Edge to purchase prevailing flow FTRs that could have saved Power Edge from default;

(g)     Distributing $4 million of Power Edge's capital to one or more of its investors at a time when Power Edge needed all available capital to address the failure of its investment strategy; and

(h)     Placing their own self-interest above the interests of Power Edge by directing another of the Trading Companies -- BJ Energy -- to place bids in PJM's day-ahead energy market that would benefit Gorton and TRC's other companies, while exacerbating the amount of Power Edge's losses and defaults.

174.    By favoring the interests of Gorton and TRC over those of Power Edge and by breaching their fiduciary duties to Power Edge as described herein, Gorton and TRC caused Power Edge to suffer massive losses and other damages in a total amount to be determined at

trial, Gorton, TRC, and the entities they control have been unjustly enriched by their unlawful conduct in an amount to be determined at trial.

175.    By breaching their fiduciary duties to Power Edge, Gorton and TRC further prevented Power Edge from making payments to its creditors, including PJM.

176.    Power Edge is insolvent.  Accordingly, pursuant to Delaware law, PJM has standing to bring this claim derivatively on behalf of Power Edge.  Because Gorton has complete and exclusive control over Power Edge, and because Gorton intentionally embarked upon the course of conduct alleged herein to benefit himself and the other companies he controls, efforts to cause Power Edge to bring this action for redress of Gorton and TRC's conduct are not likely to succeed.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against the Gorton and TRC as follows:

A.    Awarding rescissory damages, disgorgement of ill-gotten profits and compensatory damages in an amount to be determined at trial;

B.    Awarding Plaintiff its reasonable attorneys' fees and costs;

C.    Awarding pre- and post-judgment interest; and

D.    Awarding such other and further relief as is appropriate.

## COUNT IV

### *Aiding And Abetting Breach Of Fiduciary Duty*

### Defendants TRCI, Accord Energy, BJ Energy,
### Franklin Power, GLE Trading, Ocean Power And Pillar Fund

177.    PJM incorporates by reference Paragraphs 170 through 176 above, as if set forth herein at length.

178.    TRCI, Accord Energy, BJ Energy, Franklin Power, GLE Trading, Ocean Power and Pillar Fund (collectively, the "Abetting Defendants") each knowingly participated in Gorton and TRC's breaches of their fiduciary duties to Power Edge, which are described above.

179.    TRCI participated in committing Power Edge to its extremely risky unbalanced counterflow FTR position.

180.    TRCI also participated in obtaining offsetting prevailing flow FTR positions on behalf of Accord Energy, BJ Energy, Franklin Power, GLE Trading and Ocean Power, instead of doing so on behalf of Power Edge.

181.    Accord Energy, BJ Energy, Franklin Power, GLE Trading and Ocean Power knowingly made trades and participated in PJM's FTR market in order to obtain the offsetting prevailing flow FTR positions, and they knowingly received and held the funds obtained thereby.

182.    Additionally, TRCI, with Gorton and TRC, directed Bing Ni to place the manipulative trades in the day-ahead energy market in the name of BJ Energy. The Abetting Defendants all received additional profits as a result of the manipulative bids.

39

183.    Power Edge has suffered damages as a result of the Abetting Defendants knowing participation in the breaches of fiduciary duty by Gorton and TRC, including, without limitation, the increased losses on Power Edge's counterflow FTR positions.

184.    By aiding and abetting Gorton and TRC to breach their fiduciary duties owed to Power Edge, the Abetting Defendants further prevented Power Edge from making payments to its creditors, including PJM.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against TRCI, Accord Energy, BJ Energy, Franklin Power, GLE Trading, Ocean Power and Pillar Fund as follows:

A.    Awarding rescissory damages, disgorgement of ill-gotten profits and compensatory damages in an amount to be determined at trial;

B.    Awarding Plaintiff its reasonable attorneys' fees and costs;

C.    Awarding pre- and post-judgment interest; and

D.    Awarding such other and further relief as is appropriate.

## COUNT V

### *Fraudulent Conveyance*

### Defendants Power Edge, Gorton, TRC And TRCI

185.    PJM incorporates by reference Paragraphs 1 through 140 above, as if set forth herein at length.

186.    In or around June, 2007, Power Edge transferred $4,000,000 out of Power Edge's accounts as a capital withdrawal to Gorton, TRC, TRCI and/or one or more of Power Edge's other members.

40

187.    Power Edge did not receive a reasonably equivalent value in exchange for the June, 2007 transfer.

188.    As of the date of the transfer, Power Edge was engaged in a business for which the remaining assets of Power Edge were unreasonably small in relation to Power Edge's business and transactions.  Specifically, Power Edge had entered into long term counterflow FTR transactions that Power Edge knew would require it to make substantial payments to PJM.

189.    Further, as of the date of the transfer, Power Edge intended to incur, or reasonably should have believed that it would incur, debts beyond the ability of Power Edge to pay when they came due.

190.    Thus, the $4,000,000 transfer was fraudulent pursuant to 6 Del. C. § 1304(a).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Power Edge, Gorton, TRC and TRCI as follows:

A.    Awarding Plaintiff damages in an amount to be determined at trial;

B.    Awarding Plaintiff its costs;

C.    Awarding Plaintiff pre- and post-judgment interest; and

D.    Awarding Plaintiff such other and further relief as is appropriate.

## COUNT VI

### *Breach Of Contract*

### Defendant Power Edge

191.    PJM incorporates by reference Paragraphs 1 through 140 above, as if set forth herein at length.

41

192.    PJM and Power Edge are parties to the PJM Operating Agreement, which is a valid and enforceable agreement.

193.    Pursuant to the PJM Operating Agreement, Power Edge agreed to make payments on all of the FTR positions that it holds.

194.    Power Edge has breached the PJM Operating Agreement by failing to make all FTR payments when due.

195.    PJM's members have suffered tens of millions of dollars in damages as a result of Power Edge's breach of the PJM Operating Agreement.

196.    PJM has complied with all conditions precedent to its right to recover under the PJM Operating Agreement and/or such conditions have been waived or excused.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Power Edge as follows:

A.    Awarding Plaintiff damages in an amount to be determined at trial;

B.    Awarding Plaintiff its costs;

C.    Awarding Plaintiff pre- and post-judgment interest; and

D.    Awarding Plaintiff such other and further relief as is appropriate.

## COUNT VII

### *Piercing The Corporate Veil*

### All Defendants

197.    PJM incorporates by reference Paragraphs 191 through 196 above, as if set forth herein at length.

198.   Gorton and the Tower Companies operated the Trading Companies as sham entities, in order to facilitate Gorton and the Tower Companies' fraudulent schemes.

199.   Gorton and the Tower Companies have not treated the Trading Companies as distinct legal entities.  Instead, they used the nominally separate Trading Companies to house separate portions of a single business enterprise and, therefore, used the Trading Companies as the mere instrumentalities of their own business.

200.   Further, Gorton and the Tower Companies have completely dominated and controlled Power Edge and the other Trading Companies, and have misused them to increase their profits in some of the Trading Companies, while abandoning another utterly without the ability to meet its obligations, and passing those obligations off onto the remaining PJM members.

201.   In addition, Gorton and the Tower Companies used some of the Trading Companies as pawns against another when it suited them.  For example, Gorton and the Tower Companies used BJ Energy to benefit the prevailing flow FTRs held by some Trading Companies at the direct expense of Power Edge.

202.   By reason of the foregoing, the Court should ignore the purported corporate distinctions among Gorton, the Tower Companies and the Trading Companies, and hold them all accountable for Power Edge's liability to PJM.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Defendants as follows:

A.     Awarding Plaintiff damages in an amount to be determined at trial;

B.     Awarding Plaintiff its costs;

43

C.     Awarding Plaintiff pre- and post-judgment interest; and

D.     Awarding Plaintiff such other and further relief as is appropriate.

CONNOLLY BOVE LODGE & HUTZ LLP

_____

Collins J. Seitz, Jr. (Bar No. 2237) (cseitz@cblh.com)
Max B. Walton (Bar No. 3876) (mwalton@cblh.com)
The Nemours Building
1007 North Orange Street, 8th Floor
P.O. Box 2207
Wilmington, DE 19899
Tel: (302) 658-9141
Fax: (302) 656-0116

*Attorneys for Plaintiff,*
*PJM Interconnection, LLC*

OF COUNSEL:

Eric N. Macey, Esquire
Richard G. Douglass, Esquire
Molly S. DiRago, Esquire
Novack & Macey LLP
100 North Riverside Plaza
Chicago, IL 60606-1501
(312) 419-6900

Dated: April 16, 2008

# EXHIBIT A

**Attachment A**

Application for Membership
Between
The PJM Interconnection, L.L.C.
and

BJ Energy LLC
(Company's Name)

This Application for Membership Agreement ("Agreement") is entered into between PJM Interconnection, L.L.C. ("PJM") and ("Applicant"). The purpose of this Agreement is to apply to become a member of the PJM and to participate under the PJM Agreement which was accepted by the Federal Energy Regulatory Commission (FERC) on November 25, 1997 as amended and became effective on January 1, 1998. The Applicant has read and understands the terms and conditions of the Agreement. The Applicant agrees to accept the concepts and obligations set forth in the Agreement.

The Applicant also commits to supply data required for coordination of planning and operating, including data for capacity accounting, and agrees to pay all costs and expenses in accordance with Schedule 3 of the PJM Agreement and all other applicable costs under the Tariff.

The Applicant will pay the annual fee of $5,000 for the remainder of the year of application upon notification of PJM OI application approval per Schedule 3.

The Applicant recognizes that it shall become a member of the PJM Agreement effective as of the date that FERC notifies the parties of approval of Schedule 4 submitted by the Applicant to PJM.

This Agreement will remain in effect until notice of termination is given in writing by the authorized representative of either the Applicant or PJM. Any financial obligations must be satisfied prior to termination of the Applicant's obligations and responsibilities under the PJM Agreement.

Applicant:

By: _____

Name: Mark Gorton    Title: Managing Director    Date: May 24, 2005

PJM Interconnection, L.L.C.

By: _____

Name: Phillip G. Harris    Title: President & CEO    Date: 8/1/05

**Attachment B**

Operating Agreement of the PJM Interconnection, L.L.C.
Eligible Customer Qualification Form

Identification

    Name of Company: BJ Energy LLC

    Address: c/o Natalie Banas

               377 Broadway, 11th Floor

               New York, NY 10013

Eligible Customer Qualification(s):

    PJM Open Access Tariff Section 1.11:

        An Eligible Customer is: (i) any electric utility (including any Regional Transmission Owner [RTO] and any power marketer), Federal power marketing agency, or any person generating electric energy for sale for resale; electric energy sold or produced by such entity may be electric energy produced in the United States, Canada, or Mexico; however, such entity is not eligible for transmission service that would be prohibited by Section 212(h) of the Federal Power Act; and (ii) any retail customer taking unbundled transmission service pursuant to a state retail access program or pursuant to a voluntary offer of unbundled retail transmission service by an RTO.

    Please check all categories that apply.

        1. Electric Utility                    _____

    ✓    2. FERC Approved Power Marketer    currently applying for FERC membership

        3. Federal Power Marketing Agency         _____

        4. Generator for Sale for Resale          _____

            Location of generation: _____

        5. Retail Customer                  _____

            State and Transmission Service tariff designation: _____

        6. Other: _____

            Please explain: _____

PJM Interconnection, L.L.C.                                    Second Revised Sheet No. 171
Third Revised Rate Schedule FERC No. 24                       Superseding Original Sheet No. 171

## SCHEDULE 4

## STANDARD FORM OF AGREEMENT TO BECOME A MEMBER OF THE LLC

Any entity which wishes to become a Member of the LLC shall, pursuant to Section 11.6 of this Agreement, tender to the President an application, upon the acceptance of which it shall execute a supplement to this Agreement in the following form:

### Additional Member Agreement

1.    This Additional Member Agreement (the "Supplemental Agreement"), dated as of _June 8, 2005_, is entered into among _BJ Energy LLC_ and the President of the LLC acting on behalf of its Members.

2. _BJ Energy LLC_ has demonstrated that it meets all of the qualifications required of a Member to the Operating Agreement.    If expansion of the PJM Region is required to integrate _BJ Energy LLC_ 's facilities, a copy of Attachment J from the PJM Tariff marked to show changes in the PJM Region boundaries is attached hereto. _BJ Energy LLC_ agrees to pay for all required metering, telemetering and hardware and software appropriate for it to become a member.

3. _BJ Energy LLC_ agrees to be bound by and accepts all the terms of the Operating Agreement as of the above date.

4. _BJ Energy LLC_ hereby gives notice that the name and address of its initial representative to the Members Committee under the Operating Agreement shall be:

_Natalie Banas, 377 Broadway 11th Floor New York, NY 10013_

5.    The President of the LLC is authorized under the Operating Agreement to execute this Supplemental Agreement on behalf of the Members.

6.    The Operating Agreement is hereby amended to include _BJ Energy LLC_ as a Member of the LLC thereto, effective as of _____, _____, the date the President of the LLC countersigned this Agreement.

IN WITNESS WHEREOF, _BJ Energy LLC_ and the Members of the LLC have caused this Supplemental Agreement to be executed by their duly authorized representatives.

Members of the LLC

By:    _Phillip B. Harris_    _8/1/05_
Name:
Title:    President

By:    _Mark Gorton_
Name:    _Mark Gorton_
Title:    _Managing Director, BJ Energy LLC_

Issued By:    Craig Glazer                              Effective: May 1, 2004
              Vice President, Government Policy
Issued On:    April 30, 2004

Operating Agreement of the PJM Interconnection, L.L.C.

## Sector Selection Form
## Members Committee

BJ Energy LLC selection

Please seal this preference nomination in an envelope marked "Members Committee – Sector Selection Request Form" for ("Company Name") and enclose with your application for membership in the PJM Interconnection. The sector selection will be held in confidence by PJM Interconnection until announced publicly at the next meeting of the Members Committee.

---

Select the initial sector preference for eligible sector(s), First preference = 1, Second preference =2, etc.

### Generation Owner (GO): _____
"Generation Owner" shall mean a Member that owns or leases with rights equivalent to ownership facilities for the generation of electric energy that are located within the PJM Control Zone or within the PJM West Region. Purchasing all or a portion of the output of a generation facility shall not be sufficient to qualify a Member as a Generation Owner.

### Other Supplier (OS): __1__ (only eligible sector)
"Other Supplier" shall mean a Member that is (i) engaged in buying, selling or transmitting electric energy in or through the Interconnection or has a good faith intent to do so, and (ii) is not a Generation Owner, Electric Distributor, Transmission Owner or End-Use Customer.

### Transmission Owner (TO): _____
"Transmission Owner" shall mean a Member that owns or leases with rights equivalent to ownership Transmission Facilities. Taking transmission service shall not be sufficient to qualify a Member as a Transmission Owner.

### Electric Distributor (ED): _____
"Electric Distributor" shall mean a Member that owns or leases with rights equivalent to ownership electric distribution facilities that are used to provide electric distribution service to electric load within the PJM Control Zone or within he PJM West Region.

### End-Use Customer (EUC): _____
"End-Use Customer" shall mean a Member that is a retail end-user of electricity within the PJM Control Area or within the PJM West Region.

Attachment C

Operating Agreement of the PJM Interconnection, L.L.C.
Members Committee
Member and Alternate

Please list the following information for your Members Committee Member and Alternate.

Company Name: BJ Energy LLC

| Members Committee Representative: | Members Committee Alternate: |
|---|---|
| Name: | |
| Natalie Banas | Nick Underwood |
| Title: | |
| CFO | Secretary |
| Address: | |
| 377 Broadway | 377 Broadway |
| 11th Floor | 11th Floor |
| New York, NY | New York, NY |
| 10013 | 10013 |
| Phone: | |
| 212-219-6023 | 212-219-6024 |
| FAX: | |
| 212-219-6007 | 212-219-6007 |
| email: | |
| natalie.banas@tower-research.com | nick.underwood@tower-research.com |

## Affiliate Disclosure

The information requested below is required by PJM Interconnection, L.L.C. (PJM) to properly administer the PJM Operating Agreement, including, but not limited to, the proper listing of Member voting status in the PJM Members Committee, and to facilitate PJM employee compliance with the securities divestiture requirements of the PJM Code of Conduct. This form must be completed when applying for Membership in PJM. Disclosure of changes in affiliate status is a continuing obligation of Members, requiring confirmation by each Member's Members Committee representative annually.

Name of Member (or Applicant)        Name: **BJ Energy LLC**
                                     EIN or Stock Symbol: **52 - 245 8877**

Web Site of Member (or Applicant)    _____

Ultimate Corporate Parent(s)
of Member (or Applicant):            Name: _____
                                     EIN or Stock Symbol: _____

Non-publicly Traded Affiliates of Member (or Applicant)  Name: _____
                                     EIN: _____
(include more names below if necessary)

Publicly Traded Affiliates of Member  Name: _____
                                     Stock Symbol: _____
(include more names below if necessary)

The managing member of BJ Energy LLC is Tower Research Capital Investments LLC (TRCI) (TIN: 13-4146932). Neither BJ Energy nor TRCI has any affiliates that belong to or conduct business with PJM LLC.

Please note: For the purposes herein, if a PJM Member (or Applicant) controls another PJM Member (or Applicant), or they are under common control, the two are considered Affiliates. "Control" of an entity means the ownership, either directly or indirectly, in aggregate, of 10% or more of the voting shares of the entity, or representation on its Board of Directors (or equivalent), or influence over day-to-day management decisions of the entity. Please see PJM Operating Agreement §1.2 for more detail.

Also note: In the case of multiple ownership of a PJM Member (or Applicant) – such as with a joint venture - please indicate names and stock symbols (or Federal Tax ID numbers) of all companies that own, in aggregate, directly or indirectly, 10% or more of the PJM Member (or Applicant).

The above information is true and correct to the best of my knowledge, information and belief.

_____        Date  **June, 2, 2005**
[Signature]

**Mark Gorton**                Title  **Managing Director BJ Energy LLC**
[Printed Name]

DMS 204098v1

# EXHIBIT B



955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403-2497

## Customer Account Manager Authorization to Use PJM Internet Business Tools

"I am an Officer of the below-named company. I hereby authorize the individual(s) named below as Customer Account Manager(s) (CAM) for the designated PJM Internet business tools. I understand that the named CAM and their assignees have the authority to transact business with PJM in the name of:

_BJ Energy LLC_ "
Please fill in Account Name: Primary Company Account OR Subaccount

Company Address:  _377 Broadway 11th Floor_
_New York, NY 10013_

Please check one:

☐ New CAM    ☐ Replacing another CAM    ☒ Additional CAM    ☐ Additional Application

| PJM Business Tools<br>Please check applicable Business Tools | Authorized Customer<br>Account Manager(s) (CAM) | e-Mail Address | Phone |
|---|---|---|---|
| **eSuite Applications:**<br><br>*Include Sandbox Environment* ☒<br><br>☒ *eData* - for market/system information<br>☒ *eSchedules* - for internal energy transactions<br>☐ *eCapacity* - for capacity credit markets<br>    and transactions<br>☒ *eMKT* - for day-ahead energy markets<br>☒ *eFTR* - for FTR auctions and transactions<br>☒ *OASIS* - for transmission reservations<br>☒ *EES* - for external energy transactions<br>☐ *eMTR* - for revenue meter data<br>☒ *eDataFeed* - for web stream of market/<br>    system data (Terms Of Use also required)<br>___ *Load Response* - for registering in load<br>    response programs | Mark Gorton<br><br>George Lee<br><br>Dhiren Patel | mark.gorton@<br>tower-research.com<br><br>glee@tower-research.com<br><br>d.patel@tower-research.com | 212-219-6060<br><br>212-219-6026<br><br>212-219-6036 |
| **Non-eSuite Applications:** | | | |
| ☒ *eDart Gen* -to submit / view Gen outages | ------------- | ------------- | ------------- |
| ☒ *eDart Trans* - to submit / view Trans outages | ------------- | ------------- | ------------- |
| *eDart (Generic)* - to view Generation / Transmission<br>outage reports. Authorization is not required. | | | |
| ___ *eGADS* - to submit generator outage<br>    and performance data | | ------------- | ------------- |
| ___ *eFuel* - to submit generator and plant<br>    fuel information | | | |

Name (Officer of Company):

(Print or type):  _Mark Gorton_
Title:  _Managing Director_
Signature:  _[signature]_
Date:  _August 9 2005_

Send completed authorization form to:

PJM Business Tools Administrator (WMJ)
955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403

3/21/2005
PJM © 2005

# EXHIBIT C

**Attachment A**

Application for Membership
Between
The PJM Interconnection, L.L.C.
and
GLE Trading LLC

This Application for Membership Agreement ("Agreement") is entered into between PJM Interconnection, L.L.C. ("PJM") and GLE Trading LLC ("Applicant"). The purpose of this Agreement is to apply to become a member of the PJM and to participate under the PJM Agreement which was accepted by the Federal Energy Regulatory Commission (FERC) on November 25, 1997 as amended and became effective on January 1, 1998. The Applicant has read and understands the terms and conditions of the Agreement. The Applicant agrees to accept the concepts and obligations set forth in the Agreement.

The Applicant also commits to supply data required for coordination of planning and operating, including data for capacity accounting, and agrees to pay all costs and expenses in accordance with Schedule 3 of the PJM Agreement and all other applicable costs under the Tariff.

The Applicant will pay the annual fee of $5,000 for the remainder of the year of application upon notification of PJM OI application approval per Schedule 3.

The Applicant recognizes that it shall become a member of the PJM Agreement effective as of the date that FERC notifies the parties of approval of Schedule 4 submitted by the Applicant to PJM.

This Agreement will remain in effect until notice of termination is given in writing by the authorized representative of either the Applicant or PJM. Any financial obligations must be satisfied prior to termination of the Applicant's obligations and responsibilities under the PJM Agreement.

Applicant: GLE Trading LLC

By: _____

Name: Mark Gorton        Title: Managing Director        Date: October 19, 2006

PJM Interconnection, L.L.C.

By: _____

Name: Phillip G. Harris        Title: President & CEO        Date: 11/21/06

PJM Interconnection, L.L.C.
Third Revised Rate Schedule FERC No. 24

Second Revised Sheet No. 171
Superseding Original Sheet No. 171

## SCHEDULE 4

### STANDARD FORM OF AGREEMENT TO BECOME A MEMBER OF THE LLC

Any entity which wishes to become a Member of the LLC shall, pursuant to Section 11.6 of this Agreement, tender to the President an application, upon the acceptance of which it shall execute a supplement to this Agreement in the following form:

**Additional Member Agreement**

1.  This Additional Member Agreement (the "Supplemental Agreement"), dated as of _____, is entered into among GLE Trading LLC and the President of the LLC acting on behalf of its Members.

2.  GLE Trading LLC has demonstrated that it meets all of the qualifications required of a Member to the Operating Agreement. If expansion of the PJM Region is required to integrate GLE Trading LLC's facilities, a copy of Attachment J from the PJM Tariff marked to show changes in the PJM Region boundaries is attached hereto. GLE Trading LLC agrees to pay for all required metering, telemetering and hardware and software appropriate for it to become a member.

3.  GLE Trading LLC agrees to be bound by and accepts all the terms of the Operating Agreement as of the above date.

4.  GLE Trading LLC hereby gives notice that the name and address of its initial representative to the Members Committee under the Operating Agreement shall be:

    George Lee, 377 Broadway, 11th Floor, New York, NY 10013

5.  The President of the LLC is authorized under the Operating Agreement to execute this Supplemental Agreement on behalf of the Members.

6.  The Operating Agreement is hereby amended to include GLE Trading LLC as a Member of the LLC thereto, effective as of <u>November 21</u>, <u>2006</u>, the date the President of the LLC countersigned this Agreement.

IN WITNESS WHEREOF, GLE Trading LLC and the Members of the LLC have caused this Supplemental Agreement to be executed by their duly authorized representatives.

Members of the LLC

By: _____
Name: _____
Title:   President

By: _____
Name:   Mark Gorton
Title:   Managing Director

Issued By:   Craig Glazer
             Vice President, Government Policy
Issued On:   April 30, 2004

Effective:  May 1, 2004

**Sector Selection Form**
**Members Committee**

Company Name: _GLE Trading LLC_

Please seal this preference nomination in an envelope marked "Members Committee – Sector Selection Request Form" for ("Company Name") and enclose with your application for membership in the PJM Interconnection.  The sector selection will be held in confidence by PJM Interconnection until announced publicly at the next meeting of the Members Committee.

---

Select the initial sector preference for eligible sector(s), First preference = 1, Second preference =2, etc.

**Generation Owner (GO):** _____
"Generation Owner" shall mean a Member that owns or leases with rights equivalent to ownership facilities for the generation of electric energy that are located within the PJM Region.  Purchasing all or a portion of the output of a generation facility shall not be sufficient to qualify a Member as a Generation Owner.

**Transmission Owner (TO):** _____
"Transmission Owner" shall mean a Member that owns or leases with rights equivalent to ownership Transmission Facilities.  Taking transmission service shall not be sufficient to qualify a Member as a Transmission Owner.

**Electric Distributor (ED):** _____
"Electric Distributor" shall mean a Member that owns or leases with rights equivalent to ownership electric distribution facilities that are used to provide electric distribution service to electric load within the PJM Region.

**End-Use Customer (EUC):** _____
"End-Use Customer" shall mean a Member that is a retail end-user of electricity within the PJM Region.

**Other Supplier (OS):** __1__
"Other Supplier" shall mean a Member that is (i) engaged in buying, selling or transmitting electric energy in or through the Interconnection or has a good faith intent to do so, and  (ii) is not a Generation Owner, Electric Distributor, Transmission Owner or End-Use Customer.

---

PJMDOCS-#362512-v1
3/13/06

Attachment C

Operating Agreement of the PJM Interconnection, L.L.C.
Member Committee
Member and Alternates

Please list the following information for your Members Committee Member and Alternates.

Company Name: _GLE Trading LLC_____

Members Committee Representative          Members Committee Alternate #1:

| Name: | Name: |
|---|---|
| George Lee | Andy Eow |
| **Title:** | **Title:** |
| | |
| **Address:** | **Address:** |
| GLE Trading LLC | GLE Trading LLC |
| 377 Broadway, 11th Floor | 377 Broadway, 11th Floor |
| New York, NY 10013 | New York, NY 10013 |
| **Phone:** | **Phone:** |
| 212. 219. 6026 | 212. 219. 6032 |
| **Fax:** | **Fax:** |
| 212. 219. 6007 | 212. 219. 6007 |
| **Email:** | **Email:** |
| glee@tower-research.com | aeow@tower-research.com |

Docs #359781 v1

## Affiliate Disclosure

The applicable information requested below is *required* by PJM Interconnection, L.L.C. (PJM) to properly administer the PJM Operating Agreement, including, but not limited to, the proper listing of Member voting status in the PJM Members Committee, and to facilitate PJM employee compliance with the securities divestiture requirements of the PJM Code of Conduct. This form must be completed when applying for Membership in PJM. Disclosure of changes in affiliate status is a continuing obligation of Members, requiring confirmation by each Member's Members Committee representative annually.

| Name of Member (Applicant) | DUNS Number | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|---|
| GLE Trading LLC | 78-508-3705 | 35-2280928 | | | |

For the following questions, if same as above put "Same" in left column, if none, put "None" in left column. Add rows as necessary to the tables below to identify all described affiliates.

| Ultimate Corporate Parent of Member (Applicant) | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|
| Tower Research Capital Investments LLC | 13-4146932 | | | |
| **Publicly Traded Affiliates of Member (Applicant)** | | | | |
| | | | | |
| | | | | |
| **Other Affiliate entities that are PJM members.** | | | | |
| BJ Energy LLC | 52-2458877 | | | |
| | | | | |
| | | | | |

Please note: For the purposes herein, "Affiliate" means two or more entities, one of which controls the other or that are under common control. . "Control" of an entity means the ownership, either directly or indirectly, in aggregate, of 10% or more of the voting shares of the entity, or representation on its Board of Directors (or equivalent), or influence over day-to-day management decisions of the entity. Please see PJM Operating Agreement §1.2 for more detail.

Also note: In the case of multiple ownership of a PJM Member (or Applicant) – such as with a joint venture - please indicate names, stock symbols, and Federal Tax ID (EIN) numbers of all companies that own, in aggregate, directly or indirectly, 10% or more of the PJM Member (or Applicant).

The above information is true correct and complete to the best of my knowledge, information and belief.

_____    Date _October 31, 2006_
[Signature]

_Mark Gorton_    Title _Managing Director_
[Printed Name]

# EXHIBIT D



955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403-2497

## Customer Account Manager Authorization to Use PJM Internet Business Tools

"I am an Officer of the below-named company. I hereby authorize the individual(s) named below as Customer Account Manager(s) (CAM) for the designated PJM Internet business tools. I understand that the named CAM and their assignees have the authority to transact business with PJM in the name of:

_GLE Trading LLC_ "

Please fill in Account Name: Primary Company Account OR Sub Account

Company Address: _377 Broadway, 11th Floor_
_New York, NY 10013_

Please check one:

[✓] New CAM      [ ] Replacing another CAM      [ ] Additional CAM      [ ] Additional Application

| PJM Business Tools<br>Please check applicable Business Tools | Authorized Customer<br>Account Manager(s) (CAM) | e-Mail Address | Phone |
|---|---|---|---|
| **eSuite Applications:**<br><br>Include Sandbox Environment **X**<br><br>**X** eData - for market/system information<br>**X** eSchedules - for internal energy transactions<br>___ eCapacity - for capacity credit markets<br>and transactions<br>**X** eMKT - for day-ahead energy markets<br>**X** eFTR - for FTR auctions and transactions<br>**X** OASIS - for transmission reservations<br>**X** EES - for external energy transactions<br>___ eMTR - for revenue meter data<br>**X** eDataFeed - for web stream of market/<br>system data (Terms Of Use also required)<br>___ Load Response - for registering in load<br>response programs | George Lee | glee@tower-research.com | 212.219.6026 |
| **Non-eSuite Applications:** | | | |
| **X** eDart Gen - to submit / view Gen outages | George Lee | glee@tower-research.com | 212.219.6026 |
| **X** eDart Trans - to submit / view Trans outages | George Lee | glee@tower-research.com | 212.219.6026 |
| eDart (Generic) - to view Generation / Transmission<br>outage reports. Authorization is not required. | | | |
| ___ eGADS - to submit generator outage<br>and performance data | | | |
| ___ eFuel - to submit generator and plant<br>fuel information | | | |

Name (Officer of Company):

(Print or type): _Mark Gorton_
Title: _Managing Director_
Signature: _Mark Gorton_
Date: _October 31, 2006_

Send completed authorization form to:

PJM Business Tools Administrator (WMJ)
955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403

5/26/2006
PJM © 2006

610.666.8980 | www.pjm.com

# EXHIBIT E

Attachment A

Application for Membership
Between
The PJM Interconnection, L.L.C.
and
Franklin Power LLC

This Application for Membership Agreement ("Agreement") is entered into between PJM Interconnection, L.L.C. ("PJM") and ("Applicant"). The purpose of this Agreement is to apply to become a member of the PJM and to participate under the PJM Agreement which was accepted by the Federal Energy Regulatory Commission (FERC) on November 25,1997 as amended and became effective on January 1, 1998. The Applicant has read and understands the terms and conditions of the Agreement. The Applicant agrees to accept the concepts and obligations set forth in the Agreement.

The Applicant also commits to supply data required for coordination of planning and operating, including data for capacity accounting, and agrees to pay all costs and expenses in accordance with Schedule 3 of the PJM Agreement and all other applicable costs under the Tariff.

The Applicant will pay the annual fee of $5,000 for the remainder of the year of application upon notification of PJM OI application approval per Schedule 3.

The Applicant recognizes that it shall become a member of the PJM Agreement effective as of the date that FERC notifies the parties of approval of Schedule 4 submitted by the Applicant to PJM.

This Agreement will remain in effect until notice of termination is given in writing by the authorized representative of either the Applicant or PJM. Any financial obligations must be satisfied prior to termination of the Applicant's obligations and responsibilities under the PJM Agreement.

Applicant: _Franklin Power LLC_

By: _____

Name: Mark Gorton          Title:  Managing Director          Date: _January 30, 2007_

PJM Interconnection, L.L.C.

By: _Phillip B. Harris_

Name: _Phillip G. Harris_          Title: _President & CEO_          Date: _2/9/07_

PJM Interconnection, L.L.C.                          Second Revised Sheet No. 171
Third Revised Rate Schedule FERC No. 24             Superseding Original Sheet No. 171

## SCHEDULE 4

### STANDARD FORM OF AGREEMENT TO BECOME A MEMBER OF THE LLC

Any entity which wishes to become a Member of the LLC shall, pursuant to Section 11.6 of this Agreement, tender to the President an application, upon the acceptance of which it shall execute a supplement to this Agreement in the following form:

**Additional Member Agreement**

1.     This Additional Member Agreement (the "Supplemental Agreement"), dated as of _____, is entered into among Franklin Power LLC and the President of the LLC acting on behalf of its Members.

2.     Franklin Power LLC has demonstrated that it meets all of the qualifications required of a Member to the Operating Agreement. If expansion of the PJM Region is required to integrate Franklin Power LLC's facilities, a copy of Attachment J from the PJM Tariff marked to show changes in the PJM Region boundaries is attached hereto. Franklin Power LLC agrees to pay for all required metering, telemetering and hardware and software appropriate for it to become a member.

3.     Franklin Power LLC agrees to be bound by and accepts all the terms of the Operating Agreement as of the above date.

4.     Franklin Power LLC hereby gives notice that the name and address of its initial representative to the Members Committee under the Operating Agreement shall be:

George Lee, Harborside Financial Center Plaza 10, Suite 207, Jersey City, NJ 07302

5.     The President of the LLC is authorized under the Operating Agreement to execute this Supplemental Agreement on behalf of the Members.

6.     The Operating Agreement is hereby amended to include Franklin Power LLC as a Member of the LLC thereto, effective as of _Jebruary  9_____, 2007, the date the President of the LLC countersigned this Agreement.

IN WITNESS WHEREOF, Franklin Power LLC and the Members of the LLC have caused this Supplemental Agreement to be executed by their duly authorized representatives.

Members of the LLC

By: _Phillip B. Harris_____
Name: _____
Title:    President

By: _____
Name:    Mark Gorton
Title:    Managing Director

Issued By:    Craig Glazer                          Effective: May 1, 2004
              Vice President, Government Policy
Issued On:    April 30, 2004

**Attachment B**

Operating Agreement of the PJM Interconnection, L.L.C.
Eligible Customer Qualification Form

<u>Identification</u>

Name of Company: *Franklin Power LLC*

Address: *Harborside Financial Center Plaza 10*
*Suite 207*
*Jersey City, NJ 07302*

<u>Eligible Customer Qualification(s):</u>

PJM Open Access Tariff Section 1.11:

An Eligible Customer is: (i) any electric utility (including any Regional Transmission Owner [RTO] and any power marketer), Federal power marketing agency, or any person generating electric energy for sale for resale; electric energy sold or produced by such entity may be electric energy produced in the United States, Canada, or Mexico; however, such entity is not eligible for transmission service that would be prohibited by Section 212(h) of the Federal Power Act; and (ii) any retail customer taking unbundled transmission service pursuant to a state retail access program or pursuant to a voluntary offer of unbundled retail transmission service by an RTO.

Please check all categories that apply.

1. Electric Utility                                             ———

2. FERC Approved Power Marketer                ———

3. Federal Power Marketing Agency               ———

4. Generator for Sale for Resale                      ———

   Location of generation: _____

5. Retail Customer                                            ———

   State and Transmission Service tariff designation:

6. Other: *LLC*

   Please explain: *financial participant*

**Sector Selection Form**
**Members Committee**

Company Name: Franklin Power LLC

Please seal this preference nomination in an envelope marked "Members Committee – Sector Selection Request Form" for ("Company Name") and enclose with your application for membership in the PJM Interconnection. The sector selection will be held in confidence by PJM Interconnection until announced publicly at the next meeting of the Members Committee.

Select the initial sector preference for eligible sector(s), First preference = 1, Second preference =2, etc.

**Generation Owner (GO):** _____
"Generation Owner" shall mean a Member that owns or leases with rights equivalent to ownership facilities for the generation of electric energy that are located within the PJM Region. Purchasing all or a portion of the output of a generation facility shall not be sufficient to qualify a Member as a Generation Owner.

**Transmission Owner (TO):** _____
"Transmission Owner" shall mean a Member that owns or leases with rights equivalent to ownership Transmission Facilities. Taking transmission service shall not be sufficient to qualify a Member as a Transmission Owner.

**Electric Distributor (ED):** _____
"Electric Distributor" shall mean a Member that owns or leases with rights equivalent to ownership electric distribution facilities that are used to provide electric distribution service to electric load within the PJM Region.

**End-Use Customer (EUC):** _____
"End-Use Customer" shall mean a Member that is a retail end-user of electricity within the PJM Region.

**Other Supplier (OS):** __1__
"Other Supplier" shall mean a Member that is (i) engaged in buying, selling or transmitting electric energy in or through the Interconnection or has a good faith intent to do so, and (ii) is not a Generation Owner, Electric Distributor, Transmission Owner or End-Use Customer.

'02/02/2007  09:23  2122196007                                      PAGE  03/04

Attachment C

Operating Agreement of the PJM Interconnection, L.L.C.
Member Committee
Member and Alternates

Please list the following information for your Members Committee Member and Alternates.

Company Name: _Franklin Power LLC_

| Members Committee Representative | Members Committee Alternate #1: |
|---|---|
| **Name:** George Lee | **Name:** Anna Tsui |
| **Title:** | **Title:** |
| **Address:** Franklin Power LLC Harborside Financial Center Plaza 10, Suite 207 Jersey City, NJ 07302 | **Address:** Franklin Power LLC Harborside Financial Center Plaza 10, Suite 207 Jersey City, NJ 07302 |
| **Phone:** 212.219.6026 | **Phone:** 212.219.6063 |
| **Fax:** 212.219.6007 | **Fax:** 212.219.6007 |
| **Email:** glee@tower-research.com | **Email:** atsui@tower-research.com |

Docs #359781 v1

## Affiliate Disclosure

The applicable information requested below is *required* by PJM Interconnection, L.L.C. (PJM) to properly administer the PJM Operating Agreement, including, but not limited to, the proper listing of Member voting status in the PJM Members Committee, and to facilitate PJM employee compliance with the securities divestiture requirements of the PJM Code of Conduct. This form must be completed when applying for Membership in PJM. Disclosure of changes in affiliate status is a continuing obligation of Members, requiring confirmation by each Member's Members Committee representative annually.

| Name of Member (Applicant) | DUNS Number | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|---|
| Franklin Power LLC | 79-077-8430 | 32-0192141 | | | no |

For the following questions, if same as above put "Same" in left column, if none, put "None" in left column. Add rows as necessary to the tables below to identify all described affiliates.

| Ultimate Corporate Parent of Member (Applicant) | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|
| Tower Research Capital Investments LLC | 13-4146932 | | | no |
| **Publicly Traded Affiliates of Member (Applicant)** | | | | |
| none | | | | |
| | | | | |
| **Other Affiliate entities that are PJM members.** | | | | |
| GLE Trading LLC | 35-2280928 | | | no |
| BJ Energy LLC | 52-2458877 | | | yes |
| | | | | |

Please note: For the purposes herein, "Affiliate" means two or more entities, one of which controls the other or that are under common control. . "Control" of an entity means the ownership, either directly or indirectly, in aggregate, of 10% or more of the voting shares of the entity, or representation on its Board of Directors (or equivalent), or influence over day-to-day management decisions of the entity. Please see PJM Operating Agreement §1.2 for more detail.

Also note: In the case of multiple ownership of a PJM Member (or Applicant) – such as with a joint venture - please indicate names, stock symbols, and Federal Tax ID (EIN) numbers of all companies that own, in aggregate, directly or indirectly, 10% or more of the PJM Member (or Applicant).

The above information is true correct and complete to the best of my knowledge, information and belief.

_____   Date January 30, 2007
[Signature]

Mark Gorton   Title Managing Director
[Printed Name]

# EXHIBIT F



955 Jefferson Ave.
Valley Forge Corporate Center
Norristown PA 19403-2497

## Customer Account Manager Authorization to Use PJM Internet Business Tools

"I am an Officer of the below-named company. I hereby authorize the individual(s) named below as Customer Account Manager(s) (CAM) for the designated PJM Internet business tools. I understand that the named CAM and their assignees have the authority to transact business with PJM in the name of:

_Franklin Power LLC_                                                                     ,"

Please fill in Account Name: Primary Company Account OR Sub Account

Company Address: _____

Please check one:

☑ New CAM    ☐ Replacing another CAM    ☐ Additional CAM    ☐ Additional Application

| PJM Business Tools<br>Please check applicable Business Tools | Authorized Customer<br>Account Manager(s) (CAM) | e-Mail Address | Phone |
|---|---|---|---|
| **eSuite Applications:**<br><br>*Include Sandbox Environment* ___<br>✓ **eData** - for market/system information<br>✓ **eSchedules** - for internal energy transactions<br>__ **eCapacity** - for capacity credit markets<br>and transactions<br>✓ **eMKT** - for day-ahead energy markets<br>✓ **eFTR** - for FTR auctions and transactions<br>✓ **OASIS** - for transmission reservations<br>✓ **EES** - for external energy transactions<br>__ **eMTR** - for revenue meter data<br>✓ **eDataFeed** - for web stream of market/<br>system data (Terms Of Use also required)<br>__ **Load Response** - for registering in load<br>response programs | George Lee | glee@tower-<br>research.com | 212. 219.<br>6026 |
| **Non-eSuite Applications:**<br><br>✓ **eDart Gen** -to submit / view Gen outages | George Lee | glee@tower-<br>research.com | |
| ✓ **eDart Trans** - to submit / view Trans outages | George Lee | glee@tower-<br>research.com | |
| **eDart (Generic)** - to view Generation / Transmission<br>outage reports. Authorization is not required. | | | |
| __ **eGADS** - to submit generator outage<br>and performance data | | | |
| __ **eFuel** - to submit generator and plant<br>fuel information | | | |

Name (Officer of Company):

(Print or type): _Mark Borton_
Title: _Managing Director_
Signature: _[signature]_
Date: _January 30, 2007_

Send completed authorization form to:

PJM Business Tools Administrator (WMJ)
955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403

5/26/2006
PJM © 2006

# EXHIBIT G

**Attachment A**

Application for Membership
Between
The PJM Interconnection, L.L.C.
and
Power Edge LLC

This Application for Membership Agreement ("Agreement") is entered into between PJM Interconnection, L.L.C. ("PJM") and ("Applicant"). The purpose of this Agreement is to apply to become a member of the PJM and to participate under the PJM Agreement which was accepted by the Federal Energy Regulatory Commission (FERC) on November 25,1997 as amended and became effective on January 1, 1998. The Applicant has read and understands the terms and conditions of the Agreement. The Applicant agrees to accept the concepts and obligations set forth in the Agreement.

The Applicant also commits to supply data required for coordination of planning and operating, including data for capacity accounting, and agrees to pay all costs and expenses in accordance with Schedule 3 of the PJM Agreement and all other applicable costs under the Tariff.

The Applicant will pay the annual fee of $5,000 for the remainder of the year of application upon notification of PJM OI application approval per Schedule 3.

The Applicant recognizes that it shall become a member of the PJM Agreement effective as of the date that FERC notifies the parties of approval of Schedule 4 submitted by the Applicant to PJM.

This Agreement will remain in effect until notice of termination is given in writing by the authorized representative of either the Applicant or PJM. Any financial obligations must be satisfied prior to termination of the Applicant's obligations and responsibilities under the PJM Agreement.

Applicant: Power Edge LLC

By: _____

Name: Mark Gorton        Title: Managing Director        Date: March 19, 2007

PJM Interconnection, L.L.C.

By: _____

Name: Phillip G. Harris        Title: President & CEO        Date: 3|29|07

PJM Interconnection, L.L.C.                           Second Revised Sheet No. 171
Third Revised Rate Schedule FERC No. 24            Superseding Original Sheet No. 171

## SCHEDULE 4

## STANDARD FORM OF AGREEMENT TO BECOME A MEMBER OF THE LLC

Any entity which wishes to become a Member of the LLC shall, pursuant to Section 11.6 of this Agreement, tender to the President an application, upon the acceptance of which it shall execute a supplement to this Agreement in the following form:

### Additional Member Agreement

1.     This Additional Member Agreement (the "Supplemental Agreement"), dated as of _____, is entered into among Power Edge LLC and the President of the LLC acting on behalf of its Members.

2.     Power Edge LLC has demonstrated that it meets all of the qualifications required of a Member to the Operating Agreement. If expansion of the PJM Region is required to integrate Power Edge LLC's facilities, a copy of Attachment J from the PJM Tariff marked to show changes in the PJM Region boundaries is attached hereto. Power Edge LLC agrees to pay for all required metering, telemetering and hardware and software appropriate for it to become a member.

3.     Power Edge LLC agrees to be bound by and accepts all the terms of the Operating Agreement as of the above date.

4.     Power Edge LLC hereby gives notice that the name and address of its initial representative to the Members Committee under the Operating Agreement shall be:

Bing Ni, Harborside Financial Center Plaza 10, Suite 207, Jersey City, NJ 07302

5.     The President of the LLC is authorized under the Operating Agreement to execute this Supplemental Agreement on behalf of the Members.

6.     The Operating Agreement is hereby amended to include Power Edge LLC as a Member of the LLC thereto, effective as of March 29, 2007, the date the President of the LLC countersigned this Agreement.

IN WITNESS WHEREOF, _____ and the Members of the LLC have caused this Supplemental Agreement to be executed by their duly authorized representatives.

Members of the LLC

By:     _Phillip S. Harris_
Name:   _____
Title:    President

By:     _____
Name:    Mark Gorton
Title:    Managing Director

Issued By:    Craig Glazer                              Effective: May 1, 2004
              Vice President, Government Policy
Issued On:    April 30, 2004

Attachment B

Operating Agreement of the PJM Interconnection, L.L.C.
Eligible Customer Qualification Form

<u>Identification</u>

    Name of Company:  Power Edge LLC

    Address:        Harborside Financial Center Plaza 10
                     Suite 207
                     Jersey City, NJ 07302

<u>Eligible Customer Qualification(s):</u>

    PJM Open Access Tariff Section 1.11:

        An Eligible Customer is: (i) any electric utility (including any Regional Transmission Owner [RTO] and any power marketer), Federal power marketing agency, or any person generating electric energy for sale for resale; electric energy sold or produced by such entity may be electric energy produced in the United States, Canada, or Mexico; however, such entity is not eligible for transmission service that would be prohibited by Section 212(h) of the Federal Power Act; and (ii) any retail customer taking unbundled transmission service pursuant to a state retail access program or pursuant to a voluntary offer of unbundled retail transmission service by an RTO.

    Please check all categories that apply.

        1. Electric Utility                             _____

        2. FERC Approved Power Marketer        _____

        3. Federal Power Marketing Agency       _____

        4. Generator for Sale for Resale         _____

             Location of generation: _____

        5. Retail Customer                         _____

             State and Transmission Service tariff designation:

        6. Other:

             Please explain: *Financial participant*

Attachment C

Operating Agreement of the PJM Interconnection, L.L.C.
Member Committee
Member and Alternates

Please list the following information for your Members Committee Member and Alternates.

Company Name:____Power Edge LLC_____

Members Committee Representative          Members Committee Alternate #1:

| Name: | Name: |
|---|---|
| Bing Ni | George Lee |
| Title: | Title: |
| | |
| Address: | Address: |
| Harborside Financial Center Plaza 10 Suite 207 | Harborside Financial Center Plaza 10 Suite 207 |
| Jersey City, NJ 07302 | Jersey City, NJ 07302 |
| | |
| Phone: | Phone: |
| 609.275.5686 | 212.219.6026 |
| Fax: | Fax: |
| 212.219.6007 | 212.219.6007 |
| Email: | Email: |
| bni@poweredgellc.com | glee@poweredgellc.com |

Docs #359781 v1

**Sector Selection Form**
**Members Committee**

Company Name: _Power Edge LLC_____

Please seal this preference nomination in an envelope marked "Members Committee – Sector Selection Request Form" for ("Company Name") and enclose with your application for membership in the PJM Interconnection. The sector selection will be held in confidence by PJM Interconnection until announced publicly at the next meeting of the Members Committee.

---

Select the initial sector preference for eligible sector(s), First preference = 1, Second preference =2, etc.

**Generation Owner (GO):** _____
    "Generation Owner" shall mean a Member that owns or leases with rights equivalent to ownership facilities for the generation of electric energy that are located within the PJM Region. Purchasing all or a portion of the output of a generation facility shall not be sufficient to qualify a Member as a Generation Owner.

**Transmission Owner (TO):** _____
    "Transmission Owner" shall mean a Member that owns or leases with rights equivalent to ownership Transmission Facilities. Taking transmission service shall not be sufficient to qualify a Member as a Transmission Owner.

**Electric Distributor (ED):** _____
    "Electric Distributor" shall mean a Member that owns or leases with rights equivalent to ownership electric distribution facilities that are used to provide electric distribution service to electric load within the PJM Region.

**End-Use Customer (EUC):** _____
    "End-Use Customer" shall mean a Member that is a retail end-user of electricity within the PJM Region.

**Other Supplier (OS):** __1__
    "Other Supplier" shall mean a Member that is (i) engaged in buying, selling or transmitting electric energy in or through the Interconnection or has a good faith intent to do so, and (ii) is not a Generation Owner, Electric Distributor, Transmission Owner or End-Use Customer.

---

## Affiliate Disclosure

The applicable information requested below is *required* by PJM Interconnection, L.L.C. (PJM) to properly administer the PJM Operating Agreement, including, but not limited to, the proper listing of Member voting status in the PJM Members Committee, and to facilitate PJM employee compliance with the securities divestiture requirements of the PJM Code of Conduct. This form must be completed when applying for Membership in PJM. Disclosure of changes in affiliate status is a continuing obligation of Members, requiring confirmation by each Member's Members Committee representative annually.

| Name of Member (Applicant) | DUNS Number | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|---|
| Power Edge LLC | 79-410-5531 | 30-0469172 | | | no |

For the following questions, if same as above put "Same" in left column, if none, put "None" in left column. Add rows as necessary to the tables below to identify all described affiliates.

| Ultimate Corporate Parent of Member (Applicant) | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|
| Tower Research Capital Investments LLC | 13-4146932 | | | no |
| **Publicly Traded Affiliates of Member (Applicant)** | | | | |
| none | | | | |
| | | | | |
| **Other Affiliate entities that are PJM members.** | | | | |
| GLE Trading LLC | 35-2280928 | | | no |
| BJ Energy LLC | 52-2458877 | | | yes |
| Franklin Power LLC | 32-0192141 | | | no |

Please note: For the purposes herein, "Affiliate" means two or more entities, one of which controls the other or that are under common control. . "Control" of an entity means the ownership, either directly or indirectly, in aggregate, of 10% or more of the voting shares of the entity, or representation on its Board of Directors (or equivalent), or influence over day-to-day management decisions of the entity. Please see PJM Operating Agreement §1.2 for more detail.

Also note: In the case of multiple ownership of a PJM Member (or Applicant) – such as with a joint venture - please indicate names, stock symbols, and Federal Tax ID (EIN) numbers of all companies that own, in aggregate, directly or indirectly, 10% or more of the PJM Member (or Applicant).

The above information is true correct and complete to the best of my knowledge, information and belief.

_____    Date _____ March 19, 2007
[Signature]

Mark Gorton    Title Managing Director
[Printed Name]

# EXHIBIT H



955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403-2497

## Customer Account Manager Authorization to Use PJM Internet Business Tools

"I am an Officer of the below-named company. I hereby authorize the individual(s) named below as Customer Account Manager(s) (CAM) for the designated PJM Internet business tools. I understand that the named CAM and their assignees have the authority to transact business with PJM in the name of:

_Power Edge LLC_ ."

Please fill in Account Name: Primary Company Account OR Sub Account

Company Address: _Harborside Financial Center Plaza 10, Suite 207_
_Jersey City, NJ 07302_

Please check one:

☑ New CAM    ☐ Replacing another CAM    ☐ Additional CAM    ☐ Additional Application

| PJM Business Tools<br>Please check applicable Business Tools | Authorized Customer<br>Account Manager(s) (CAM) | e-Mail Address | Phone |
|---|---|---|---|
| **eSuite Applications:**<br><br>*Include Sandbox Environment* _____<br><br>✓ **eData** - for market/system information<br>✓ **eSchedules** - for internal energy transactions<br>___ **eCapacity** - for capacity credit markets<br>and transactions<br>✓ **eMKT** - for day-ahead energy markets<br>✓ **eFTR** - for FTR auctions and transactions<br>✓ **OASIS** - for transmission reservations<br>✓ **EES** - for external energy transactions<br>___ **eMTR** - for revenue meter data<br>✓ **eDataFeed** - for web stream of market/<br>system data (Terms Of Use also required)<br>___ **Load Response** - for registering in load<br>response programs | _George Lee_ | _glee@poweredgellc.com_ | _212.219.6026_ |
| **Non-eSuite Applications:**<br><br>✓ **eDart Gen** - to submit / view Gen outages<br><br>✓ **eDart Trans** - to submit / view Trans outages<br><br>**eDart (Generic)** - to view Generation / Transmission<br>outage reports. Authorization is not required.<br><br>___ **eGADS** - to submit generator outage<br>and performance data<br><br>___ **eFuel** - to submit generator and plant<br>fuel information | _George Lee_<br><br>_George Lee_ | _212.219.6026_<br>_glee@poweredgellc.com_<br><br>_glee@poweredgellc.com_<br><br>_212.219.6026_ | |

Name (Officer of Company):

(Print or type): _____
Title: _Managing Director_
Signature: _____
Date: _March 19, 2007_

Send completed authorization form to:

PJM Business Tools Administrator (WMJ)
955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403

5/26/2006
PJM © 2006

# EXHIBIT I

05/15/2007  14:16   2122196007



955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403-2497

## Customer Account Manager Authorization to Use PJM Internet Business Tools

"I am an Officer of the below-named company. I hereby authorize the individual(s) named below as Customer Account Manager(s) (CAM) for the designated PJM Internet business tools. I understand that the named CAM and their assignees have the authority to transact business with PJM in the name of:

_Power Edge LLC / Sub Account [PWREDF]_  "

Please fill in Account Name: Primary Company Account OR Sub Account
_(FTR)_

Company Address: _____

_12143_
_PWREDG; 12113_

Please check one:

☑ New CAM    ☐ Replacing another CAM    ☐ Additional CAM    ☐ Additional Application

| PJM Business Tools Please check applicable Business Tools | Authorized Customer Account Manager(s) (CAM) | e-Mail Address | Phone |
|---|---|---|---|
| **eSuite Applications:** _Include Sandbox Environment_ ___ | _George Lee_ | _glee @ poweredglle.com_ | _212.219.6026_ |
| ☑ **eData** - for market/system information | | | |
| ☑ **eSchedules** - for internal energy transactions | | | |
| ___ **eCapacity** - for capacity credit markets and transactions | | | |
| ☑ **eMKT** - for day-ahead energy markets | | | |
| ☑ **eFTR** - for FTR auctions and transactions | | | |
| ☑ **OASIS** - for transmission reservations | | | |
| ☑ **EES** - for external energy transactions | | | |
| ___ **eMTR** - for revenue meter data | | | |
| ☑ **eDataFeed** - for web stream of market/ system data (Terms Of Use also required) | | | |
| ___ **Load Response** - for registering in load response programs | | | |
| **Non-eSuite Applications:** | | | |
| ☑ **eDart Gen** -to submit / view Gen outages | _George Lee_ | _glee @ poweredglle.com_ | _212.219.6026_ |
| ☑ **eDart Trans** - to submit / view Trans outages | _George Lee_ | _glee @ poweredglle.com_ | _212.219.6026_ |
| **eDart (Generic)** - to view Generation / Transmission outage reports. Authorization is not required. | | | |
| ___ **eGADS** - to submit generator outage and performance data | | -------------- | -------------- |
| ___ **eFuel** - to submit generator and plant fuel information | | -------------- | -------------- |

Name (Officer of Company):

(Print or type): _Power Edge LLC_
Title: _Vice President_
Signature: _[signature]_
Date: _May 15, 2007_

Send completed authorization form to:

PJM Business Tools Administrator (WMJ)
955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403

5/26/2006
PJM © 2006

# EXHIBIT J

**Attachment A**

Application for Membership
Between
The PJM Interconnection, L.L.C.
and
Ocean Power LLC

This Application for Membership Agreement ("Agreement") is entered into between PJM Interconnection, L.L.C. ("PJM") and ("Applicant"). The purpose of this Agreement is to apply to become a member of the PJM and to participate under the PJM Agreement which was accepted by the Federal Energy Regulatory Commission (FERC) on November 25, 1997 as amended and became effective on January 1, 1998. The Applicant has read and understands the terms and conditions of the Agreement. The Applicant agrees to accept the concepts and obligations set forth in the Agreement.

The Applicant also commits to supply data required for coordination of planning and operating, including data for capacity accounting, and agrees to pay all costs and expenses in accordance with Schedule 3 of the PJM Agreement and all other applicable costs under the Tariff.

The Applicant will pay the annual fee of $5,000 for the remainder of the year of application upon notification of PJM OI application approval per Schedule 3.

The Applicant recognizes that it shall become a member of the PJM Agreement effective as of the date that FERC notifies the parties of approval of Schedule 4 submitted by the Applicant to PJM.

This Agreement will remain in effect until notice of termination is given in writing by the authorized representative of either the Applicant or PJM. Any financial obligations must be satisfied prior to termination of the Applicant's obligations and responsibilities under the PJM Agreement.

Applicant: Ocean Power LLC
By: _____
Name: _Mark Corton_    Title: _Managing Director_    Date: _May 15, 2007_

PJM Interconnection, L.L.C.

By: _____
Name: _Phillip G. Harris_    Title: _President & CEO_    Date: _6|5|07_

PJM Interconnection, L.L.C.
Third Revised Rate Schedule FERC No. 24

Second Revised Sheet No. 171
Superseding Original Sheet No. 171

## SCHEDULE 4

## STANDARD FORM OF AGREEMENT TO BECOME A MEMBER OF THE LLC

Any entity which wishes to become a Member of the LLC shall, pursuant to Section 11.6 of this Agreement, tender to the President an application, upon the acceptance of which it shall execute a supplement to this Agreement in the following form:

### Additional Member Agreement

1.      This Additional Member Agreement (the "Supplemental Agreement"), dated as of _____, is entered into among Ocean Power LLC and the President of the LLC acting on behalf of its Members.

2.      Ocean Power LLC has demonstrated that it meets all of the qualifications required of a Member to the Operating Agreement. If expansion of the PJM Region is required to integrate Ocean Power LLC's facilities, a copy of Attachment J from the PJM Tariff marked to show changes in the PJM Region boundaries is attached hereto. Ocean Power LLC agrees to pay for all required metering, telemetering and hardware and software appropriate for it to become a member.

3.      Ocean Power LLC agrees to be bound by and accepts all the terms of the Operating Agreement as of the above date.

4.      Ocean Power LLC hereby gives notice that the name and address of its initial representative to the Members Committee under the Operating Agreement shall be:

Bing Ni, Harborside Financial Center Plaza 10, Suite 207, Jersey City, NJ 07302

5.      The President of the LLC is authorized under the Operating Agreement to execute this Supplemental Agreement on behalf of the Members.

6.      The Operating Agreement is hereby amended to include Ocean Power LLC as a Member of the LLC thereto, effective as of ⟨June 5⟩, 2007, the date the President of the LLC countersigned this Agreement.

IN WITNESS WHEREOF, Ocean Power LLC and the Members of the LLC have caused this Supplemental Agreement to be executed by their duly authorized representatives.

Members of the LLC

By:     Phillip S. Harris
Name:
Title:  President

By:
Name:   Mark Gorton
Title:  Managing Director

Issued By:      Craig Glazer
                Vice President, Government Policy
Issued On:      April 30, 2004

Effective: May 1, 2004

**Attachment B**

Operating Agreement of the PJM Interconnection, L.L.C.
Eligible Customer Qualification Form

Identification

Name of Company:　Ocean Power LLC

Address:　　Harborside Financial Center Plaza 10
　　　　　　Suite 207
　　　　　　Jersey City, NJ 07302

Eligible Customer Qualification(s):

PJM Open Access Tariff Section 1.11:

An Eligible Customer is: (i) any electric utility (including any Regional Transmission Owner [RTO] and any power marketer), Federal power marketing agency, or any person generating electric energy for sale for resale; electric energy sold or produced by such entity may be electric energy produced in the United States, Canada, or Mexico; however, such entity is not eligible for transmission service that would be prohibited by Section 212(h) of the Federal Power Act; and (ii) any retail customer taking unbundled transmission service pursuant to a state retail access program or pursuant to a voluntary offer of unbundled retail transmission service by an RTO.

Please check all categories that apply.

1. Electric Utility　　　　　　　　　　　　　　　　_____

2. FERC Approved Power Marketer　　　　　　　　_____

3. Federal Power Marketing Agency　　　　　　　　_____

4. Generator for Sale for Resale　　　　　　　　　_____

　　Location of generation: _____

5. Retail Customer　　　　　　　　　　　　　　　_____

　　State and Transmission Service tariff designation:

6. Other:

　　Please explain:　*financial participant*

05/17/2007  18:12    2122196007                 PAGE  03/03

Attachment C

**Operating Agreement of the PJM Interconnection, L.L.C.**
**Member Committee**
**Member and Alternates**

Please list the following information for your Members Committee Member and Alternates.

Company Name: _Ocean Power LLC_

| Members Committee Representative | Members Committee Alternate #1: |
|---|---|
| **Name:** Bing Ni | **Name:** George Lee |
| **Title:** | **Title:** |
| **Address:** Harborside Financial Center Plaza 10 | **Address:** Harborside Financial Center Plaza 10 |
| Suite 207 | Suite 207 |
| Jersey City, NJ 07302 | Jersey City, NJ 07302 |
| **Phone:** 609.275.5686 | **Phone:** 212.219.6026 |
| **Fax:** 212.219.6007 | **Fax:** 212.219.6007 |
| **Email:** bni@oceanpowerllc.com | **Email:** glee@oceanpowerllc.com |

Docs #359781 v1

**Sector Selection Form**
**Members Committee**

Company Name: _Ocean Power LLC_

Please seal this preference nomination in an envelope marked "Members Committee – Sector Selection Request Form" for ("Company Name") and enclose with your application for membership in the PJM Interconnection. The sector selection will be held in confidence by PJM Interconnection until announced publicly at the next meeting of the Members Committee.

---

Select the initial sector preference for eligible sector(s), First preference = 1, Second preference =2, etc.

**Generation Owner (GO):** _____
　　　"Generation Owner" shall mean a Member that owns or leases with rights equivalent to ownership facilities for the generation of electric energy that are located within the PJM Region. Purchasing all or a portion of the output of a generation facility shall not be sufficient to qualify a Member as a Generation Owner.

**Transmission Owner (TO):** _____
　　　"Transmission Owner" shall mean a Member that owns or leases with rights equivalent to ownership Transmission Facilities. Taking transmission service shall not be sufficient to qualify a Member as a Transmission Owner.

**Electric Distributor (ED):** _____
　　　"Electric Distributor" shall mean a Member that owns or leases with rights equivalent to ownership electric distribution facilities that are used to provide electric distribution service to electric load within the PJM Region.

**End-Use Customer (EUC):** _____
　　　"End-Use Customer" shall mean a Member that is a retail end-user of electricity within the PJM Region.

**Other Supplier (OS):** _1_
　　　"Other Supplier" shall mean a Member that is (i) engaged in buying, selling or transmitting electric energy in or through the Interconnection or has a good faith intent to do so, and (ii) is not a Generation Owner, Electric Distributor, Transmission Owner or End-Use Customer.

---

PJMDOCS-#362512-v1
3/13/06

# BILLING CONTACT INFORMATION FORM

Please provide us with the following information so
that we may ensure prompt delivery of the PJM bill.

| | |
|---|---|
| BILLING CONTACT'S NAME<br>(Mr., Ms., Mrs.)<br>(First, Middle Initial, Last and preferred nickname) | George Lee |
| YOUR TITLE | |
| FULL COMPANY NAME | OCEAN POWER LLC |
| If the company you named above is a subsidiary, please list parent company. | |
| COMPANY'S MAIN NUMBER<br>(w/ Area Code) | 212.219.6063 |
| US MAIL ADDRESS<br>(w/ P.O. Boxes, Suite, Room, Mail Stop, Floor, etc.) | Harborside Financial Center Plaza 10, Suite 207<br>Jersey City, NJ 07302 |
| FedEx ADDRESS FOR THE DELIVERY OF THE BILLING INVOICE (Overnight mail street address and zip code - no post office box) | Harborside Financial Center Plaza 10, Suite 207<br>Jersey City, NJ 07302 |
| PHONE (w/ Area Code) | 212.219.6026 |
| FAX (w/ Area Code) | 212.219.6007 |
| E-MAIL ADDRESS | GLEE@OCEANPOWERLLC.COM |
| ALTERNATE'S NAME | KELLY BARNETT |
| ALTERNATE'S PHONE NUMBER<br>(w/ Area Code) | 212.219.6077 |
| SECRETARY OR ADMINISTRATOR'S NAME | GEORGE LEE |
| SECRETARY OR ADMINISTRATOR'S PHONE NUMBER  (w/ Area Code) | 212.219.6026 |

#81190

## Affiliate Disclosure

The applicable information requested below is *required* by PJM Interconnection, L.L.C. (PJM) to properly administer the PJM Operating Agreement, including, but not limited to, the proper listing of Member voting status in the PJM Members Committee, and to facilitate PJM employee compliance with the securities divestiture requirements of the PJM Code of Conduct. This form must be completed when applying for Membership in PJM. Disclosure of changes in affiliate status is a continuing obligation of Members, requiring confirmation by each Member's Members Committee representative annually.

| Name of Member (Applicant) | DUNS Number | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|---|
| Ocean Power LLC | | 26-0158799 | | | no |

For the following questions, if same as above put "Same" in left column, if none, put "None" in left column. Add rows as necessary to the tables below to identify all described affiliates.

| Ultimate Corporate Parent of Member (Applicant) | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|
| Tower Research Capital Investments LLC | 13-4146932 | | | no |
| Publicly Traded Affiliates of Member (Applicant) | | | | |
| none | | | | |
| | | | | |
| Other Affiliate entities that are PJM members. | | | | |
| ELE Trading LLC | 35-2280928 | | | no |
| BJ Energy LLC | 52-2458877 | | | Yes |
| Franklin Power LLC | 32-0192141 | | | no |
| Power Edge LLC | 30-0409172 | | | no |

Please note: For the purposes herein, "Affiliate" means two or more entities, one of which controls the other or that are under common control. . "Control" of an entity means the ownership, either directly or indirectly, in aggregate, of 10% or more of the voting shares of the entity, or representation on its Board of Directors (or equivalent), or influence over day-to-day management decisions of the entity. Please see PJM Operating Agreement §1.2 for more detail.

Also note: In the case of multiple ownership of a PJM Member (or Applicant) – such as with a joint venture - please indicate names, stock symbols, and Federal Tax ID (EIN) numbers of all companies that own, in aggregate, directly or indirectly, 10% or more of the PJM Member (or Applicant).

The above information is true correct and complete to the best of my knowledge, information and belief.

_____     Date  May 15, 2007
[Signature]

Mark Gorton                          Title  Managing Director
[Printed Name]

# EXHIBIT K



955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403-2497

## Customer Account Manager Authorization to Use PJM Internet Business Tools

"I am an Officer of the below-named company, I hereby authorize the individual(s) named below as Customer Account Manager(s) (CAM) for the designated PJM Internet business tools. I understand that the named CAM and their assignees have the authority to transact business with PJM in the name of:

*Ocean Power LLC*                                                          ."

Please fill in Account Name: Primary Company Account OR Sub Account

Company Address: *Harborside Financial Center Plaza 10, Suite 207*
*Jersey City, NJ 07302*

Please check one:

[✓] New CAM      [ ] Replacing another CAM      [ ] Additional CAM      [ ] Additional Application

| PJM Business Tools<br>Please check applicable Business Tools | Authorized Customer<br>Account Manager(s) (CAM) | e-Mail Address | Phone |
|---|---|---|---|
| **eSuite Applications:**<br><br>*Include Sandbox Environment* ____<br><br>✓ **eData** - for market/system information<br>✓ **eSchedules** - for internal energy transactions<br>___ **eCapacity** - for capacity credit markets<br>and transactions<br>✓ **eMKT** - for day-ahead energy markets<br>✓ **eFTR** - for FTR auctions and transactions<br>✓ **OASIS** - for transmission reservations<br>✓ **EES** - for external energy transactions<br>___ **eMTR** - for revenue meter data<br>✓ **eDataFeed** - for web stream of market/<br>system data (Terms Of Use also required)<br>___ **Load Response** - for registering in load<br>response programs | *George Lee* | *glee@oceanpowerllc.com*<br>*212.219.6026* | |
| **Non-eSuite Applications:** | | | *212.219.6026* |
| ✓ **eDart Gen** - to submit / view Gen outages | *George Lee* | *glee@oceanpowerllc.com* | *212.219.6026* |
| ✓ **eDart Trans** - to submit / view Trans outages | *George Lee* | *glee@oceanpowerllc.com* | |
| **eDart (Generic)** - to view Generation / Transmission<br>outage reports. Authorization is not required. | | | |
| ___ **eGADS** - to submit generator outage<br>and performance data | | | |
| ___ **eFuel** - to submit generator and plant<br>fuel information | | | |

Name (Officer of Company):

(Print or type): *Mark Gorton*
Title: *Managing Director*
Signature: *[signature]*
Date: *May 15, 2007*

Send completed authorization form to:

PJM Business Tools Administrator (WMJ)
955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403

5/25/2006
PJM © 2006

# EXHIBIT L

**Attachment A**

Application for Membership
Between
The PJM Interconnection, L.L.C.
and
Accord Energy LLC

This Application for Membership Agreement ("Agreement") is entered into between PJM Interconnection, L.L.C. ("PJM") and ("Applicant"). The purpose of this Agreement is to apply to become a member of the PJM and to participate under the PJM Agreement which was accepted by the Federal Energy Regulatory Commission (FERC) on November 25,1997 as amended and became effective on January 1, 1998. The Applicant has read and understands the terms and conditions of the Agreement. The Applicant agrees to accept the concepts and obligations set forth in the Agreement.

The Applicant also commits to supply data required for coordination of planning and operating, including data for capacity accounting, and agrees to pay all costs and expenses in accordance with Schedule 3 of the PJM Agreement and all other applicable costs under the Tariff.

The Applicant will pay the annual fee of $5,000 for the remainder of the year of application upon notification of PJM OI application approval per Schedule 3.

The Applicant recognizes that it shall become a member of the PJM Agreement effective as of the date that FERC notifies the parties of approval of Schedule 4 submitted by the Applicant to PJM.

This Agreement will remain in effect until notice of termination is given in writing by the authorized representative of either the Applicant or PJM. Any financial obligations must be satisfied prior to termination of the Applicant's obligations and responsibilities under the PJM Agreement.

Applicant: Accord Energy LLC

By: _____

Name: Mark Gorton     Title: Managing Director     Date: July 26, 2007

PJM Interconnection, L.L.C.

By: _____

Name: Karl V. Pfirrmann   Title: President & CEO     Date: 8/8/07

PJM Interconnection, L.L.C.                                    Second Revised Sheet No. 171
Third Revised Rate Schedule FERC No. 24            Superseding Original Sheet No. 171

## SCHEDULE 4

## STANDARD FORM OF AGREEMENT TO BECOME A MEMBER OF THE LLC

Any entity which wishes to become a Member of the LLC shall, pursuant to Section 11.6 of this Agreement, tender to the President an application, upon the acceptance of which it shall execute a supplement to this Agreement in the following form:

### Additional Member Agreement

1.      This Additional Member Agreement (the "Supplemental Agreement"), dated as of _____, is entered into among Accord Energy LLC and the President of the LLC acting on behalf of its Members.

2.      Accord Energy LLC has demonstrated that it meets all of the qualifications required of a Member to the Operating Agreement. If expansion of the PJM Region is required to integrate Accord Energy LLC's facilities, a copy of Attachment J from the PJM Tariff marked to show changes in the PJM Region boundaries is attached hereto. Accord Energy LLC agrees to pay for all required metering, telemetering and hardware and software appropriate for it to become a member.

3.      Accord Energy LLC agrees to be bound by and accepts all the terms of the Operating Agreement as of the above date.

4.      Accord Energy LLC hereby gives notice that the name and address of its initial representative to the Members Committee under the Operating Agreement shall be:

Bing Ni, Accord Energy LLC, Harborside Financial Center Plaza 10, Suite 207, Jersey City, NY 07203

5.      The President of the LLC is authorized under the Operating Agreement to execute this Supplemental Agreement on behalf of the Members.

6.      The Operating Agreement is hereby amended to include Accord Energy LLC as a Member of the LLC thereto, effective as of ___August 8,___ , 2007 , the date the President of the LLC countersigned this Agreement.

IN WITNESS WHEREOF, Accord Energy LLC and the Members of the LLC have caused this Supplemental Agreement to be executed by their duly authorized representatives.

Members of the LLC

By: _____
Name: _____
Title:   President

By: _____
Name:   Mark Gorton
Title:   Managing Director

Issued By:     Craig Glazer                                     Effective: May 1, 2004
               Vice President, Government Policy
Issued On:     April 30, 2004

Attachment B

Operating Agreement of the PJM Interconnection, L.L.C.
Eligible Customer Qualification Form

Identification

Name of Company: *Accord Energy LLC*

Address: *Harborside Financial Center Plaza 10, Suite 207*
*Jersey City, NJ 07302*

Eligible Customer Qualification(s):

PJM Open Access Tariff Section 1.11:  (i) Any electric utility (including any Transmission Owner and any power marketer), Federal power marketing agency, or any person generating electric energy for sale for resale is an Eligible Customer under the Tariff. Electric energy sold or produced by such entity may be electric energy produced in the United States, Canada or Mexico. However, with respect to transmission service that the Commission is prohibited from ordering by Section 212(h) of the Federal Power Act, such entity is eligible only if the service is provided pursuant to a state requirement that the Transmission Provider or Transmission Owner offer the unbundled transmission service, or pursuant to a voluntary offer of such service by a Transmission Owner. (ii) Any retail customer taking unbundled transmission service pursuant to a state requirement that the Transmission Provider or a Transmission Owner offer the transmission service, or pursuant to a voluntary offer of such service by a Transmission Owner, is an Eligible Customer under the Tariff. As used in Part VI, Eligible Customer shall mean only those Eligible Customers that have submitted a Completed Application.

Please check all categories that apply.

1. Electric Utility                                                      ............

2. FERC Approved Power Marketer                           ............

3. Federal Power Marketing Agency                         ............

4. Generator for Sale for Resale                              ............

   Location of generation: _____

5. Retail Customer                                                 ............

   State and Transmission Service tariff designation:

6. Other:

   Please explain: *financial participant*

Attachment C

Operating Agreement of the PJM Interconnection, L.L.C.
Member Committee
Member and Alternates

Please list the following information for your Members Committee Member and Alternates.

Company Name: *Accord Energy LLC*

Members Committee Representative          Members Committee Alternate #1:

| Name: | Name: |
|---|---|
| Bing Ni | George Lee |
| Title: | Title: |
| | |
| Address: | Address: |
| Harborside Financial Center Plaza 10 | Harborside Financial Center Plaza 10 |
| Suite 207 | Suite 207 |
| Jersey City, NJ 07302 | Jersey City, NJ 07302 |
| Phone: | Phone: |
| 609.275.5686 | 212.219.6026 |
| Fax: | Fax: |
| 212.219.6007 | 212.219.6007 |
| Email: | Email: |
| bni@accord-energy.com | glee@accord-energy.com |

Docs #359781 v1

Attachment C

Operating Agreement of the PJM Interconnection, L.L.C.
**Markets and Reliability Committee**
Member and Alternates

Please <u>type or clearly print</u> the following information for your Markets and Reliability
Committee Member and Alternates.

Company Name:_____Accord Energy LLC_____

Markets and Reliability Committee          Markets and Reliability Committee
Representative:                            Alternate #1:

| Name:                                  | Name:                                  |
|----------------------------------------|----------------------------------------|
| Bing Ni                                | George Lee                             |
| Title:                                 | Title:                                 |
|                                        |                                        |
| Address:                               | Address:                               |
| Harborside Financial Center Plaza 10   | Harborside Financial Center Plaza 10   |
| Suite 207                              | Suite 207                              |
| Jersey City, NJ 07302                  | Jersey City, NJ 07302                  |
| Phone:                                 | Phone:                                 |
| 609.275.5686                           | 212.219.6026                           |
| Fax:                                   | Fax:                                   |
| 609.219.6007                           | 212.219.6007                           |
| Email:                                 | Email:                                 |
| bni@accord-energy.com                  | glee@accord-energy.com                 |

Docs #359783
V2

## Sector Selection Form
## Members Committee

Company Name: *Accord Energy LLC*

Please seal this preference nomination in an envelope marked "Members Committee – Sector Selection Request Form" for ("Company Name") and enclose with your application for membership in the PJM Interconnection. The sector selection will be held in confidence by PJM Interconnection until announced publicly at the next meeting of the Members Committee.

---

Select the initial sector preference for eligible sector(s), First preference = 1, Second preference =2, etc.

**Generation Owner (GO):** _____
"Generation Owner" shall mean a Member that owns or leases with rights equivalent to ownership facilities for the generation of electric energy that are located within the PJM Region. Purchasing all or a portion of the output of a generation facility shall not be sufficient to qualify a Member as a Generation Owner.

**Transmission Owner (TO):** _____
"Transmission Owner" shall mean a Member that owns or leases with rights equivalent to ownership Transmission Facilities. Taking transmission service shall not be sufficient to qualify a Member as a Transmission Owner.

**Electric Distributor (ED):** _____
"Electric Distributor" shall mean a Member that owns or leases with rights equivalent to ownership electric distribution facilities that are used to provide electric distribution service to electric load within the PJM Region.

**End-Use Customer (EUC):** _____
"End-Use Customer" shall mean a Member that is a retail end-user of electricity within the PJM Region.

**Other Supplier (OS):** ✓ *1*
"Other Supplier" shall mean a Member that is (i) engaged in buying, selling or transmitting electric energy in or through the Interconnection or has a good faith intent to do so, and (ii) is not a Generation Owner, Electric Distributor, Transmission Owner or End-Use Customer.

---

PJMDOCS-#362512-v1
3/13/06

## Affiliate Disclosure

The applicable information requested below is *required* by PJM Interconnection, L.L.C. (PJM) to properly administer the PJM Operating Agreement, including, but not limited to, the proper listing of Member voting status in the PJM Members Committee, and to facilitate PJM employee compliance with the securities divestiture requirements of the PJM Code of Conduct. This form must be completed when applying for Membership in PJM. Disclosure of changes in affiliate status is a continuing obligation of Members, requiring confirmation by each Member's Members Committee representative annually.

| Name of Member (Applicant) | DUNS Number | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|---|
| Accord Energy LLC | 80-360-0589 | 26-0523502 | | | no |

For the following questions, if same as above put "Same" in left column, if none, put "None" in left column. Add rows as necessary to the tables below to identify all described affiliates.

| Ultimate Corporate Parent of Member (Applicant) | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|
| Tower Research Capital Investments LLC | 13-4146932 | | | no |
| **Publicly Traded  Affiliates of Member (Applicant)** | | | | |
| none | | | | |
| **Other Affiliate entities that are PJM members.** | | | | |
| BJ Energy LLC | 52-2458877 | | | Yes |
| GLE Trading LLC | 35-2280928 | | | No |
| Franklin Power LLC | 32-0192141 | | | No |
| Ocean Power LLC | 26-0158799 | | | No |
| Power Edge LLC | 30-0409172 | | | No |

**Please note:** For the purposes herein, "Affiliate" means two or more entities, one of which controls the other or that are under common control. .  "Control" of an entity means the ownership, either directly or indirectly, in aggregate, of 10% or more of the voting shares of the entity, or representation on its Board of Directors (or equivalent), or influence over day-to-day management decisions of the entity.  Please see PJM Operating Agreement §1.2 for more detail.

**Also note:** In the case of multiple ownership of a PJM Member (or Applicant) – such as with a joint venture - please indicate names, stock symbols, and  Federal Tax ID (EIN) numbers  of all companies that own, in aggregate, directly or indirectly, 10% or more of the PJM Member (or Applicant).

The above information is true correct and complete to the best of my knowledge, information and belief.

_[Signature]_    Date _July 26, 2007_

_Mark Gorton_    Title _Managing Director_
_[Printed Name]_

# EXHIBIT M



955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403-2497

## Customer Account Manager Authorization to Use PJM Internet Business Tools

"I am an Officer of the below-named company. I hereby authorize the individual(s) named below as Customer Account Manager(s) (CAM) for the designated PJM Internet business tools. I understand that the named CAM and their assignees have the authority to transact business with PJM in the name of:

_Accord Energy LLC_ ,"

Please list Account Name(s): (Primary Company Account AND/OR Sub Account)

Company Address: _Harborside Financial Center Plaza 10, Suite 207_
_Jersey City, NJ 07302_

Please check one:

☑ New CAM     ☐ Replacing another CAM     ☐ Additional CAM     ☐ Additional Application

| PJM Business Tools<br>Please check applicable Business Tools | Provide Name(s) of<br>Designated CAM(s)<br>[Customer Account Manager] | Provide<br>e-Mail Address<br>for all CAMs | Provide<br>Phone Number<br>For all CAMs |
|---|---|---|---|
| **eSuite Applications:**<br>*Add Account to Sandbox Environment* ___ | List below name(s) of designated CAM(s) for eSuite:<br>_glee @ accord-energy.com_ | | |
| ☑ *eData* - for market/system information | | | |
| ☑ *eSchedules* - for internal energy transactions | | | |
| ☑ *eSchedules/MSRS* - for settlement reports | | | |
| ___ *eCapacity/eRPM* - for capacity markets | | | |
| ☑ *eMKT* - for day-ahead energy markets | | | |
| ☑ *eFTR* - for FTR auctions and transactions | | | |
| ☑ *OASIS* - for transmission reservations | | | |
| ☑ *EES* - for external energy transactions | | | |
| ___ *eMTR* - for revenue meter data | | | |
| ☑ *eDataFeed* - for web stream of market/<br>system data (Terms Of Use required) | | | |
| ___ *Load Response* - for registering in load<br>response programs | | | |
| **Non-eSuite Applications:** | List below name(s) of designated CAM(s) for Non-eSuite Applications: | | |
| ☑ *eDart Gen* -to submit / view Gen outages | _glee @ accord-energy.com_ | | |
| ☑ *eDart Trans* - to submit / view Trans outages | | | |
| *eDart (Generic)* - to view Generation / Transmission<br>outage reports. Authorization is not required. | | | |
| ___ *eGADS* - to submit generator outage<br>and performance data | | | |
| ___ *eFuel* - to submit generator and plant<br>fuel information | | | |

Name (Officer of Company):

(Print or type): _Mark Gorton_
Title: _Managing Director_
Signature: _[signature]_
Date: _July 26, 2007_

Send completed authorization form to:

PJM Business Tools Administrator (WMJ)
955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403

6/1/2007
PJM © 2007

# EXHIBIT N

**Attachment A**

Application for Membership
Between
The PJM Interconnection, L.L.C.
and
Pillar Fund LLC

This Application for Membership Agreement ("Agreement") is entered into between PJM Interconnection, L.L.C. ("PJM") and ("Applicant"). The purpose of this Agreement is to apply to become a member of the PJM and to participate under the PJM Agreement which was accepted by the Federal Energy Regulatory Commission (FERC) on November 25,1997 as amended and became effective on January 1, 1998. The Applicant has read and understands the terms and conditions of the Agreement. The Applicant agrees to accept the concepts and obligations set forth in the Agreement.

The Applicant also commits to supply data required for coordination of planning and operating, including data for capacity accounting, and agrees to pay all costs and expenses in accordance with Schedule 3 of the PJM Agreement and all other applicable costs under the Tariff.

The Applicant will pay the annual fee of $5,000 for the remainder of the year of application upon notification of PJM OI application approval per Schedule 3.

The Applicant recognizes that it shall become a member of the PJM Agreement effective as of the date that FERC notifies the parties of approval of Schedule 4 submitted by the Applicant to PJM.

This Agreement will remain in effect until notice of termination is given in writing by the authorized representative of either the Applicant or PJM. Any financial obligations must be satisfied prior to termination of the Applicant's obligations and responsibilities under the PJM Agreement.

Applicant: Pillar Fund LLC

By: _____

Name: Mark Gorton    Title: Managing Director    Date: July 26, 2007

PJM Interconnection, L.L.C.

By: _____

Name: Karl V. Phirmann    Title: President & CEO    Date: 8/14/07

PJM Interconnection, L.L.C.
Third Revised Rate Schedule FERC No. 24

Second Revised Sheet No. 171
Superseding Original Sheet No. 171

## SCHEDULE 4

### STANDARD FORM OF AGREEMENT TO BECOME A MEMBER OF THE LLC

Any entity which wishes to become a Member of the LLC shall, pursuant to Section 11.6 of this Agreement, tender to the President an application, upon the acceptance of which it shall execute a supplement to this Agreement in the following form:

**Additional Member Agreement**

1.      This Additional Member Agreement (the "Supplemental Agreement"), dated as of _____, is entered into among Pillar Fund LLC and the President of the LLC acting on behalf of its Members.

2.      Pillar Fund LLC has demonstrated that it meets all of the qualifications required of a Member to the Operating Agreement. If expansion of the PJM Region is required to integrate Pillar Fund LLC's facilities, a copy of Attachment J from the PJM Tariff marked to show changes in the PJM Region boundaries is attached hereto. Pillar Fund LLC agrees to pay for all required metering, telemetering and hardware and software appropriate for it to become a member.

3.      Pillar Fund LLC agrees to be bound by and accepts all the terms of the Operating Agreement as of the above date.

4.      Pillar Fund LLC hereby gives notice that the name and address of its initial representative to the Members Committee under the Operating Agreement shall be:

Bing Ni, Pillar Fund LLC, 377 Broadway, 11th Floor, New York, NY 10013

5.      The President of the LLC is authorized under the Operating Agreement to execute this Supplemental Agreement on behalf of the Members.

6.      The Operating Agreement is hereby amended to include Pillar Fund LLC as a Member of the LLC thereto, effective as of _August 14_, _2007_, the date the President of the LLC countersigned this Agreement.

IN WITNESS WHEREOF, Pillar Fund LLC and the Members of the LLC have caused this Supplemental Agreement to be executed by their duly authorized representatives.

Members of the LLC

By: _____

Name:

Title:     President

By: _____

Name:     Mark Gorton

Title:     Managing Director

Issued By:    Craig Glazer                                        Effective: May 1, 2004
              Vice President, Government Policy
Issued On:    April 30, 2004

**Attachment B**

Operating Agreement of the PJM Interconnection, L.L.C.
Eligible Customer Qualification Form

<u>Identification</u>

Name of Company: *Pillar Fund LLC*

Address: *377 Broadway, 11th Floor*
*New York, NY 10013*

<u>Eligible Customer Qualification(s):</u>

PJM Open Access Tariff Section 1.11: (i) Any electric utility (including any Transmission Owner and any power marketer), Federal power marketing agency, or any person generating electric energy for sale for resale is an Eligible Customer under the Tariff. Electric energy sold or produced by such entity may be electric energy produced in the United States, Canada or Mexico. However, with respect to transmission service that the Commission is prohibited from ordering by Section 212(h) of the Federal Power Act, such entity is eligible only if the service is provided pursuant to a state requirement that the Transmission Provider or Transmission Owner offer the unbundled transmission service, or pursuant to a voluntary offer of such service by a Transmission Owner. (ii) Any retail customer taking unbundled transmission service pursuant to a state requirement that the Transmission Provider or a Transmission Owner offer the transmission service, or pursuant to a voluntary offer of such service by a Transmission Owner, is an Eligible Customer under the Tariff. As used in Part VI, Eligible Customer shall mean only those Eligible Customers that have submitted a Completed Application.

Please check all categories that apply.

1. Electric Utility                                              ——

2. FERC Approved Power Marketer                    ——

3. Federal Power Marketing Agency                    ——

4. Generator for Sale for Resale                         ——

     Location of generation: _____

5. Retail Customer                                           ——

     State and Transmission Service tariff designation:

6. Other:

     Please explain: *Financial participant*

Attachment C

Operating Agreement of the PJM Interconnection, L.L.C.
**Markets and Reliability Committee**
Member and Alternates

Please <u>type or clearly print</u> the following information for your Markets and Reliability
Committee Member and Alternates.

Company Name: *Pillar Fund LLC*

Markets and Reliability Committee          Markets and Reliability Committee
Representative:                            Alternate #1:

| Name:                          | Name:                          |
|--------------------------------|--------------------------------|
| Xiaohui Gu                     | George Lee                     |
| Title:                         | Title:                         |
|                                |                                |
| Address:                       | Address:                       |
| 377 Broadway, 11th Floor | 377 Broadway, 11th Floor |
| New York, NY 10013             | New York, NY 10013             |
|                                |                                |
| Phone:                         | Phone:                         |
| 212.219.8977                   | 212.219.6026                   |
| Fax:                           | Fax:                           |
| 212.219.6007                   | 212.219.6007                   |
| Email:                         | Email:                         |
| xgu@tower-research.com         | glee@tower-research.com        |

**Sector Selection Form**
**Members Committee**

Company Name: _Pillar Fund LLC_

Please seal this preference nomination in an envelope marked "Members Committee – Sector Selection Request Form" for ("Company Name") and enclose with your application for membership in the PJM Interconnection. The sector selection will be held in confidence by PJM Interconnection until announced publicly at the next meeting of the Members Committee.

---

Select the initial sector preference for eligible sector(s), First preference = 1, Second preference =2, etc.

**Generation Owner (GO):** _____
    "Generation Owner" shall mean a Member that owns or leases with rights equivalent to ownership facilities for the generation of electric energy that are located within the PJM Region. Purchasing all or a portion of the output of a generation facility shall not be sufficient to qualify a Member as a Generation Owner.

**Transmission Owner (TO):** _____
    "Transmission Owner" shall mean a Member that owns or leases with rights equivalent to ownership Transmission Facilities. Taking transmission service shall not be sufficient to qualify a Member as a Transmission Owner.

**Electric Distributor (ED):** _____
    "Electric Distributor" shall mean a Member that owns or leases with rights equivalent to ownership electric distribution facilities that are used to provide electric distribution service to electric load within the PJM Region.

**End-Use Customer (EUC):** _____
    "End-Use Customer" shall mean a Member that is a retail end-user of electricity within the PJM Region.

**Other Supplier (OS):** _1_
    "Other Supplier" shall mean a Member that is (i) engaged in buying, selling or transmitting electric energy in or through the Interconnection or has a good faith intent to do so, and (ii) is not a Generation Owner, Electric Distributor, Transmission Owner or End-Use Customer.

---

PJMDOCS-#362512-v1
3/13/06

# BILLING CONTACT INFORMATION FORM

Please provide us with the following information so
that we may ensure prompt delivery of the PJM bill.

| | |
|---|---|
| BILLING CONTACT'S NAME<br>(Mr., Ms., Mrs.)<br>(First, Middle Initial, Last and preferred nickname) | George Lee |
| YOUR TITLE | |
| FULL COMPANY NAME | PILLAR FUND LLC |
| If the company you named above is a subsidiary, please list parent company. | |
| COMPANY'S MAIN NUMBER<br>(w/ Area Code) | 212.219.6000 |
| US MAIL ADDRESS<br>(w/ P.O. Boxes, Suite, Room, Mail Stop, Floor, etc.) | 377 Broadway<br>11th Floor<br>New York, NY 10013 |
| FedEx ADDRESS FOR THE DELIVERY OF THE BILLING INVOICE (Overnight mail street address and zip code - no post office box) | |
| PHONE (w/ Area Code) | 212.219.6026 |
| FAX (w/ Area Code) | 212.219.6007 |
| E-MAIL ADDRESS | GLEE@TOWER-RESEARCH.COM |
| ALTERNATE'S NAME | MARCI WESSELS |
| ALTERNATE'S PHONE NUMBER<br>(w/ Area Code) | 212.219.6069 |
| SECRETARY OR ADMINISTRATOR'S NAME | GEORGE LEE |
| SECRETARY OR ADMINISTRATOR'S PHONE NUMBER (w/ Area Code) | 212.219.6026 |

#81190

# Affiliate Disclosure

The applicable information requested below is *required* by PJM Interconnection, L.L.C. (PJM) to properly administer the PJM Operating Agreement, including, but not limited to, the proper listing of Member voting status in the PJM Members Committee, and to facilitate PJM employee compliance with the securities divestiture requirements of the PJM Code of Conduct. This form must be completed when applying for Membership in PJM. Disclosure of changes in affiliate status is a continuing obligation of Members, requiring confirmation by each Member's Members Committee representative annually.

| Name of Member (Applicant) | DUNS Number | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|---|
| Pillar Fund LLC | 80-442-2 | 26-0560723 | | | no |

For the following questions, if same as above put "Same" in left column, if none, put "None" in left column. Add rows as necessary to the tables below to identify all described affiliates.

| Ultimate Corporate Parent of Member (Applicant) | EIN Number | Stock Symbol | Web Site | PJM Voting Member? |
|---|---|---|---|---|
| Tower Research Capital Investments LLC | 13-4146932 | | | no |
| **Publicly Traded Affiliates of Member (Applicant)** | | | | |
| none | | | | |
| **Other Affiliate entities that are PJM members.** | | | | |
| BJ Energy LLC | 52-2458877 | | | Yes |
| GLE Trading LLC | 35-2280928 | | | No |
| Franklin Power LLC | 32-0192141 | | | No |
| Ocean Power LLC | 26-0158799 | | | No |
| Power Edge LLC | 30-0409172 | | | No |

Please note: For the purposes herein, "Affiliate" means two or more entities, one of which controls the other or that are under common control. . "Control" of an entity means the ownership, either directly or indirectly, in aggregate, of 10% or more of the voting shares of the entity, or representation on its Board of Directors (or equivalent), or influence over day-to-day management decisions of the entity. Please see PJM Operating Agreement §1.2 for more detail.

Also note: In the case of multiple ownership of a PJM Member (or Applicant) – such as with a joint venture - please indicate names, stock symbols, and Federal Tax ID (EIN) numbers of all companies that own, in aggregate, directly or indirectly, 10% or more of the PJM Member (or Applicant).

The above information is true correct and complete to the best of my knowledge, information and belief.

[Signature]    Date _July 26, 2007_

Mark Gorton
[Printed Name]    Title _Managing Director_

# EXHIBIT O



955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403-2497

## Customer Account Manager Authorization to Use PJM Internet Business Tools

"I am an Officer of the below-named company. I hereby authorize the individual(s) named below as Customer Account Manager(s) (CAM) for the designated PJM Internet business tools. I understand that the named CAM and their assignees have the authority to transact business with PJM in the name of:

_Pillar Fund LLC_                                                                 ."

Please list Account Name(s): (Primary Company Account AND/OR Sub Account)

Company Address:   _377 Broadway, 11th Floor_
_New York, NY 10013_

Please check one:
[✓] New CAM     [ ] Replacing another CAM     [ ] Additional CAM     [ ] Additional Application

| PJM Business Tools<br>Please check applicable Business Tools | Provide Name(s) of<br>Designated CAM(s)<br>[Customer Account Manager] | Provide<br>e-Mail Address<br>for all CAMs | Provide<br>Phone Number<br>For all CAMs |
|---|---|---|---|
| **eSuite Applications:** | List below name(s) of designated CAM(s) for eSuite: | | |
| *Add Account to Sandbox Environment* ____ | | | |
| [✓] **eData** - for market/system information | George Lee | | |
| [✓] **eSchedules** - for internal energy transactions | | | |
| [✓] **eSchedules/MSRS** - for settlement reports | | | |
| **eCapacity/eRPM** - for capacity markets | | | |
| [✓] **eMKT** - for day-ahead energy markets | | | |
| [✓] **eFTR** - for FTR auctions and transactions | | | |
| [✓] **OASIS** - for transmission reservations | | | |
| [✓] **EES** - for external energy transactions | | | |
| **eMTR** - for revenue meter data | | | |
| [✓] **eDataFeed** - for web stream of market/<br>system data (**Terms Of Use required**) | | | |
| ____ **Load Response** - for registering in load<br>response programs | | | |
| **Non-eSuite Applications:** | List below name(s) of designated CAM(s) for Non-eSuite Applications: | | |
| [✓] **eDart Gen** - to submit / view Gen outages | George Lee | | |
| [✓] **eDart Trans** - to submit / view Trans outages | George Lee | | |
| **eDart (Generic)** - to view Generation / Transmission<br>outage reports. Authorization is not required. | | | |
| ____ **eGADS** - to submit generator outage<br>and performance data | | | |
| ____ **eFuel** - to submit generator and plant<br>fuel information | | | |

Name (Officer of Company): _Pillar Fund LLC_

(Print or type): _Mark Gorton_
Title: _Managing Director_
Signature: _[signature]_
Date: _July 26, 2007_

Send completed authorization form to:

PJM Business Tools Administrator (WMJ)
955 Jefferson Ave.
Valley Forge Corporate Center
Norristown, PA 19403

6/1/2007
PJM © 2007

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**
PJM INTERCONNECTION, LLC, directly and derivatively on behalf of Power Edge LLC

**DEFENDANTS**
MARK GORTON, TOWER RESEARCH CAPITAL LLC, TOWER RESEARCH CAPITAL INVESTMENTS, LLC, ACCORD ENERGY LLC, BJ ENERGY, LLC, FRANKLIN POWER, LLC, GLE TRADING, LLC, OCEAN POWER, LLC, PILLAR FUND, LLC, and POWER EDGE LLC

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: <u>New Castle County</u>

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: <u>New Castle County</u>

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
**Collins J. Seitz, Jr. (#2237)**
**Max B. Walton (#3876)**
**Connolly Bove Lodge & Hutz LLP**
**P.O. Box 2207, 1007 North Orange Street**
**Wilmington, Delaware 19899-2207**
**(302) 658-9141**

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN 'X' IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN 'X' IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN 'X' IN ONE BOX ONLY)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault. Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence

HABEAS CORPUS:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor Mgmt Relations
☐ 730 Labor Mgmt Reporting & Disclosure Act
☐ 740 Labor Railway Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☒ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/CC Rates/etc
☐ 460 Deportation
☒ 470 Racketeer Influenced an Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

18 U.S.C. §1961 et seq.; Civil RICO; Breach of Fiduciary Duty; Breach of Contract; Fraudulent Conveyance

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
DEMAND: Amount to be determined
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY:** (See instructions): n/a

DATE **April 16, 2008**   SIGNATURE OF ATTORNEY OF RECORD   _Walton (#3876)_

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT

For the District of Delaware

| | | |
|---|---|---|
| **PJM INTERCONNECTION, LLC,** | ) | |
| **directly and derivatively on behalf** | ) | |
| **of Power Edge, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **V.** | ) | **Civil Action No.:** |
| | ) | |
| **MARK GORTON; TOWER RESEARCH** | ) | |
| **CAPITAL LLC; TOWER RESEARCH CAPITAL** | ) | |
| **INVESTMENTS, LLC; ACCORD ENERGY, LLC;** | ) | |
| **BJ ENERGY, LLC; FRANKLIN POWER, LLC;** | ) | |
| **GLE TRADING, LLC; OCEAN POWER, LLC;** | ) | |
| **PILLAR FUND, LLC; and POWER EDGE LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## Summons in a Civil Action

TO:   ACCORD ENERGY, LLC
      c/o The Corporation Trust Company
      CORPORATION TRUST CENTER
      1209 ORANGE STREET
      WILMINGTON, DE 19801

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

> Collins J. Seitz, Jr. (Bar No. 2237)
> Max B. Walton (Bar No. 3876)
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

_____

Name of clerk of court

DATE: _____        _____

Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

(1)  personally delivering a copy of each to the individual at this place,_____

_____; or

(2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____
who resides there and is of suitable age and discretion; or

(3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

_____; or

(4)  returning the summons unexecuted to the court clerk on _____.


My fees are $_____for travel and $ _____for services, for a total of _____.



Date:_____            _____
                                                    Signature of Server


                                        _____
                                                    Printed name and title

                                        _____
                                                    Address of Server

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT
## For the District of Delaware

| | |
|---|---|
| **PJM INTERCONNECTION, LLC,**<br>**directly and derivatively on behalf**<br>**of Power Edge, LLC,**<br><br>**Plaintiff,**<br>**V.**<br><br>**MARK GORTON; TOWER RESEARCH**<br>**CAPITAL LLC; TOWER RESEARCH CAPITAL**<br>**INVESTMENTS, LLC; ACCORD ENERGY, LLC;**<br>**BJ ENERGY, LLC; FRANKLIN POWER, LLC;**<br>**GLE TRADING, LLC; OCEAN POWER, LLC;**<br>**PILLAR FUND, LLC; and POWER EDGE LLC,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     **Civil Action No.:** |

### Summons in a Civil Action

To:    MARK GORTON
       c/o The Delaware Secretary Of State
       LIME GROUP
       377 BROADWAY, 11TH FL.
       NEW YORK, NY 10013

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

> Collins J. Seitz, Jr. (Bar No. 2237)
> Max B. Walton (Bar No. 3876)
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

_____

Name of clerk of court

DATE: _____

_____

Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

## Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on _____, by:

      (1)  personally delivering a copy of each to the individual at this place,_____

      _____; or

      (2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____ who resides there and is of suitable age and discretion; or

      (3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

      _____; or

      (4)  returning the summons unexecuted to the court clerk on _____.

My fees are $_____for travel and $ _____for services, for a total of _____.

Date:_____

                           _____
                                  Signature of Server

                           _____
                                  Printed name and title

                           _____
                                  Address of Server

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT

For the District of Delaware

| | | |
|---|---|---|
| **PJM INTERCONNECTION, LLC,** | ) | |
| **directly and derivatively on behalf** | ) | |
| **of Power Edge, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **V.** | ) | **Civil Action No.:** |
| | ) | |
| **MARK GORTON; TOWER RESEARCH** | ) | |
| **CAPITAL LLC; TOWER RESEARCH CAPITAL** | ) | |
| **INVESTMENTS, LLC; ACCORD ENERGY, LLC;** | ) | |
| **BJ ENERGY, LLC; FRANKLIN POWER, LLC;** | ) | |
| **GLE TRADING, LLC; OCEAN POWER, LLC;** | ) | |
| **PILLAR FUND, LLC; and POWER EDGE LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## Summons in a Civil Action

TO:    TOWER RESEARCH CAPITAL INVESTEMENTS, LLC
        c/o The Corporation Trust Company
        CORPORATION TRUST CENTER
        1209 ORANGE STREET
        WILMINGTON, DE 19801

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

>Collins J. Seitz, Jr. (Bar No. 2237)
>Max B. Walton (Bar No. 3876)
>Connolly Bove Lodge & Hutz LLP
>The Nemours Building
>1007 North Orange Street
>P.O. Box 2207
>Wilmington, DE  19899

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_____
Name of clerk of court

DATE: _____        _____
                              Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____, by:

      (1)  personally delivering a copy of each to the individual at this place,_____

      _____; or

      (2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____
      who resides there and is of suitable age and discretion; or

      (3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

      _____; or

      (4)  returning the summons unexecuted to the court clerk on _____.

My fees are $_____for travel and $ _____for services, for a total of _____.

Date:_____

                                            Signature of Server

                                            Printed name and title

                                            Address of Server

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT
For the District of Delaware

| | | |
|---|---|---|
| PJM INTERCONNECTION, LLC,<br>directly and derivatively on behalf<br>of Power Edge, LLC, | ) ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **V.** | ) | Civil Action No.: |
| | ) | |
| MARK GORTON; TOWER RESEARCH<br>CAPITAL LLC; TOWER RESEARCH CAPITAL<br>INVESTMENTS, LLC; ACCORD ENERGY, LLC;<br>BJ ENERGY, LLC; FRANKLIN POWER, LLC;<br>GLE TRADING, LLC; OCEAN POWER, LLC;<br>PILLAR FUND, LLC; and POWER EDGE LLC, | ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

### Summons in a Civil Action

To:     TOWER RESEARCH CAPITAL LLC
         c/o the Delaware Secretary of State
         CT CORPORATION SYSTEM
         111 EIGHTH AVENUE
         NEW YORK, NEW YORK, 10011


A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

> Collins J. Seitz, Jr. (Bar No. 2237)
> Max B. Walton (Bar No. 3876)
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899


If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.


_____
Name of clerk of court


DATE: _____          _____
                                         Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

      (1)  personally delivering a copy of each to the individual at this place,_____

      _____; or

      (2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____
      who resides there and is of suitable age and discretion; or

      (3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

      _____; or

      (4)  returning the summons unexecuted to the court clerk on _____.

My fees are $_____for travel and $ _____for services, for a total of _____.

Date:_____

                            _____
                                      Signature of Server

                            _____
                                      Printed name and title

                            _____
                                      Address of Server

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT
### For the District of Delaware

| | |
|---|---|
| **PJM INTERCONNECTION, LLC,** ) <br> **directly and derivatively on behalf** ) <br> **of Power Edge, LLC,** ) <br> ) <br>        **Plaintiff,** ) <br>    **V.** ) <br> ) <br> **MARK GORTON; TOWER RESEARCH** ) <br> **CAPITAL LLC; TOWER RESEARCH CAPITAL** ) <br> **INVESTMENTS, LLC; ACCORD ENERGY, LLC;** ) <br> **BJ ENERGY, LLC; FRANKLIN POWER, LLC;** ) <br> **GLE TRADING, LLC; OCEAN POWER, LLC;** ) <br> **PILLAR FUND, LLC; and POWER EDGE LLC,** ) <br> ) <br>       **Defendants.** ) | **Civil Action No.:** |

### Summons in a Civil Action

TO:    GLE TRADING, LLC
          c/o The Corporation Trust Company
          CORPORATION TRUST CENTER
          1209 ORANGE STREET
          WILMINGTON, DE 19801

A lawsuit has been filed against you.

      Within 20 days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

            Collins J. Seitz, Jr. (Bar No. 2237)
            Max B. Walton (Bar No. 3876)
            Connolly Bove Lodge & Hutz LLP
            The Nemours Building
            1007 North Orange Street
            P.O. Box 2207
            Wilmington, DE  19899

      If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                    _____
                            Name of clerk of court

DATE: _____        _____
                            Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

## Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

      (1)  personally delivering a copy of each to the individual at this place,_____

_____; or

      (2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____
who resides there and is of suitable age and discretion; or

      (3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

_____; or

      (4)  returning the summons unexecuted to the court clerk on _____.

My fees are $_____for travel and $ _____for services, for a total of _____.

Date:_____

_____
Signature of Server

_____
Printed name and title

_____
Address of Server

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT
### For the District of Delaware

| | |
|---|---|
| **PJM INTERCONNECTION, LLC,**<br>**directly and derivatively on behalf**<br>**of Power Edge, LLC,**<br><br>**Plaintiff,**<br>**V.**<br><br>**MARK GORTON; TOWER RESEARCH**<br>**CAPITAL LLC; TOWER RESEARCH CAPITAL**<br>**INVESTMENTS, LLC; ACCORD ENERGY, LLC;**<br>**BJ ENERGY, LLC; FRANKLIN POWER, LLC;**<br>**GLE TRADING, LLC; OCEAN POWER, LLC;**<br>**PILLAR FUND, LLC; and POWER EDGE LLC,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Civil Action No.:** |

### Summons in a Civil Action

TO:    BJ ENERGY, LLC
        c/o The Corporation Trust Company
        CORPORATION TRUST CENTER
        1209 ORANGE STREET
        WILMINGTON, DE 19801

A lawsuit has been filed against you.

       Within 20 days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

            Collins J. Seitz, Jr. (Bar No. 2237)
            Max B. Walton (Bar No. 3876)
            Connolly Bove Lodge & Hutz LLP
            The Nemours Building
            1007 North Orange Street
            P.O. Box 2207
            Wilmington, DE  19899

       If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

                       _____
                       Name of clerk of court

DATE: _____             _____
                       Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____, by:

      (1)  personally delivering a copy of each to the individual at this place,_____

      _____; or

      (2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____ who resides there and is of suitable age and discretion; or

      (3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

      _____; or

      (4)  returning the summons unexecuted to the court clerk on _____.

My fees are $_____for travel and $ _____for services, for a total of _____.

Date:_____

                                _____
                                      Signature of Server

                                _____
                                      Printed name and title

                                _____
                                      Address of Server

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT
### For the District of Delaware

| | |
|---|---|
| **PJM INTERCONNECTION, LLC,** <br> **directly and derivatively on behalf** <br> **of Power Edge, LLC,** <br><br>                  **Plaintiff,** <br> **V.** <br><br> **MARK GORTON; TOWER RESEARCH** <br> **CAPITAL LLC; TOWER RESEARCH CAPITAL** <br> **INVESTMENTS, LLC; ACCORD ENERGY, LLC;** <br> **BJ ENERGY, LLC; FRANKLIN POWER, LLC;** <br> **GLE TRADING, LLC; OCEAN POWER, LLC;** <br> **PILLAR FUND, LLC; and POWER EDGE LLC,** <br><br>                  **Defendants.** | )<br>)<br>)<br>)<br>)<br>)     **Civil Action No.:**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### Summons in a Civil Action

TO:    FRANKLIN POWER, LLC
          c/o The Corporation Trust Company
          CORPORATION TRUST CENTER
          1209 ORANGE STREET
          WILMINGTON, DE 19801

A lawsuit has been filed against you.

      Within 20 days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

                Collins J. Seitz, Jr. (Bar No. 2237)
                Max B. Walton (Bar No. 3876)
                Connolly Bove Lodge & Hutz LLP
                The Nemours Building
                1007 North Orange Street
                P.O. Box 2207
                Wilmington, DE  19899

      If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                               _____
                                Name of clerk of court

DATE: _____          _____
                                Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

      (1)  personally delivering a copy of each to the individual at this place,_____

      _____; or

      (2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____
      who resides there and is of suitable age and discretion; or

      (3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

      _____; or

      (4)  returning the summons unexecuted to the court clerk on _____.

My fees are $_____for travel and $ _____for services, for a total of _____.

Date:_____

                                _____
                                      Signature of Server

                                _____
                                        Printed name and title

                                _____
                                        Address of Server

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT
### For the District of Delaware

| | |
|---|---|
| **PJM INTERCONNECTION, LLC,**<br>**directly and derivatively on behalf**<br>**of Power Edge, LLC,** | ) <br> ) <br> ) <br> ) |
| **Plaintiff,** | ) |
| **V.** | )     **Civil Action No.:** |
| | ) |
| **MARK GORTON; TOWER RESEARCH**<br>**CAPITAL LLC; TOWER RESEARCH CAPITAL**<br>**INVESTMENTS, LLC; ACCORD ENERGY, LLC;**<br>**BJ ENERGY, LLC; FRANKLIN POWER, LLC;**<br>**GLE TRADING, LLC; OCEAN POWER, LLC;**<br>**PILLAR FUND, LLC; and POWER EDGE LLC,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **Defendants.** | ) |

### Summons in a Civil Action

TO:    POWER EDGE LLC
        c/o The Corporation Trust Company
        CORPORATION TRUST CENTER
        1209 ORANGE STREET
        WILMINGTON, DE 19801

A lawsuit has been filed against you.

     Within 20 days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

            Collins J. Seitz, Jr. (Bar No. 2237)
            Max B. Walton (Bar No. 3876)
            Connolly Bove Lodge & Hutz LLP
            The Nemours Building
            1007 North Orange Street
            P.O. Box 2207
            Wilmington, DE  19899

     If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

                 _____
                     Name of clerk of court

DATE: _____         _____
                     Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

(1)  personally delivering a copy of each to the individual at this place,_____

_____; or

(2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____
who resides there and is of suitable age and discretion; or

(3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

_____; or

(4)  returning the summons unexecuted to the court clerk on _____.


My fees are $_____for travel and $ _____for services, for a total of _____.




Date:_____          _____
                                                    Signature of Server


                                         _____
                                                    Printed name and title


                                         _____
                                                    Address of Server

# UNITED STATES DISTRICT COURT
### For the District of Delaware

| | |
|---|---|
| **PJM INTERCONNECTION, LLC,** | ) |
| **directly and derivatively on behalf** | ) |
| **of Power Edge, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **V.** | )    **Civil Action No.:** |
| | ) |
| **MARK GORTON; TOWER RESEARCH** | ) |
| **CAPITAL LLC; TOWER RESEARCH CAPITAL** | ) |
| **INVESTMENTS, LLC; ACCORD ENERGY, LLC;** | ) |
| **BJ ENERGY, LLC; FRANKLIN POWER, LLC;** | ) |
| **GLE TRADING, LLC; OCEAN POWER, LLC;** | ) |
| **PILLAR FUND, LLC; and POWER EDGE LLC,** | ) |
| | ) |
| **Defendants.** | ) |

### Summons in a Civil Action

TO:    PILLAR FUND, LLC
      c/o The Corporation Trust Company
      CORPORATION TRUST CENTER
      1209 ORANGE STREET
      WILMINGTON, DE 19801

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not continuing the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

      Collins J. Seitz, Jr. (Bar No. 2237)
      Max B. Walton (Bar No. 3876)
      Connolly Bove Lodge & Hutz LLP
      The Nemours Building
      1007 North Orange Street
      P.O. Box 2207
      Wilmington, DE  19899

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

_____

Name of clerk of court

DATE: _____    _____

Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

## Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

      (1)  personally delivering a copy of each to the individual at this place,_____

      _____ ; or

      (2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____
      who resides there and is of suitable age and discretion; or

      (3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

      _____ ; or

      (4)  returning the summons unexecuted to the court clerk on _____.


My fees are $_____for travel and $ _____for services, for a total of _____.



Date:_____

                                _____
                                        Signature of Server


                                _____
                                        Printed name and title


                                _____
                                        Address of Server

AO 440 (Rev. 03/08) Civil Summons (Page 1)

# UNITED STATES DISTRICT COURT
## For the District of Delaware

| | |
|---|---|
| **PJM INTERCONNECTION, LLC,** <br> **directly and derivatively on behalf** <br> **of Power Edge, LLC,** <br><br> **Plaintiff,** <br> **V.** <br><br> **MARK GORTON; TOWER RESEARCH** <br> **CAPITAL LLC; TOWER RESEARCH CAPITAL** <br> **INVESTMENTS, LLC; ACCORD ENERGY, LLC;** <br> **BJ ENERGY, LLC; FRANKLIN POWER, LLC;** <br> **GLE TRADING, LLC; OCEAN POWER, LLC;** <br> **PILLAR FUND, LLC; and POWER EDGE LLC,** <br><br> **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   **Civil Action No.:** |

### Summons in a Civil Action

TO:  OCEAN POWER, LLC
     c/o The Corporation Trust Company
     CORPORATION TRUST CENTER
     1209 ORANGE STREET
     WILMINGTON, DE 19801

  **YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEYS (name and address)
A lawsuit has been filed against you.

  Within <u>20</u> days after service of this summons on you (not continuing the day you received it), you must
serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil
Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

  Collins J. Seitz, Jr. (Bar No. 2237)
  Max B. Walton (Bar No. 3876)
  Connolly Bove Lodge & Hutz LLP
  The Nemours Building
  1007 North Orange Street
  P.O. Box 2207
  Wilmington, DE  19899

  If you fail to do so, judgment by default will be entered against you for the relief demanded in the
complaint.  You also must file your answer or motion with the court.

_____

Name of clerk of court

DATE: _____

_____

Deputy clerk's signature

AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

      (1)  personally delivering a copy of each to the individual at this place,_____

      _____; or

      (2)  leaving a copy of each at the individual's dwelling or usual place of abode with _____
      who resides there and is of suitable age and discretion; or

      (3)  delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is

      _____; or

      (4)  returning the summons unexecuted to the court clerk on _____.

My fees are $_____for travel and $ _____for services, for a total of _____.

Date:_____

                                  _____
                                       Signature of Server

                                  _____
                                       Printed name and title

                                  _____
                                       Address of Server