## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| GLORIA M. HARRISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) C.A. No. |
| v. | ) |
| | ) |
| RENATA J. HENRY, individually and in her official | ) JURY TRIAL DEMANDED |
| capacity as Director of the Division of Alcoholism, | ) |
| Drug Abuse and Mental Health of the Delaware | ) |
| Department Health and Social Services, SUSAN | ) |
| WATSON ROBINSON, individually and in her | ) |
| official capacity as Hospital Director of the Delaware | ) |
| Department of Health and Social Services, PHILIP | ) |
| THOMPSON, individually and in his capacity as | ) |
| Unit Director of the Delaware Department of Health | ) |
| and Social Services, DELAWARE DEPARTMENT | ) |
| OF HEALTH & SOCIAL SERVICES and THE | ) |
| DELAWARE PSYCHIATRIC CENTER, and John | ) |
| Does 1-20, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## VERIFIED COMPLAINT

Plaintiff Gloria Harrison (the "Plaintiff") for her Complaint hereinafter alleges the following:

1.     This is a civil action for compensatory and punitive damages for retaliatory violations including violations of the Family and Medical Leave Act ("FMLA"), and the Delaware Whistleblowers' Protection Act.

## PARTIES

2.     The Plaintiff is resident of the State of Delaware. The Plaintiff became employed by Defendant Delaware Department of Health and Social Services (hereinafter, the "DHSS") in or about May 2005 as a Nurse Consultant. The Plaintiff worked at the Delaware Psychiatric

Center (the "DPC"), which is a hospital and mental health facility located in New Castle County, Delaware. The Plaintiff was promoted to the position of Director of Nursing in or about October 2005, and served in that capacity until her termination on June 6, 2007.

3.    Defendant Renata J. Henry is the director of the Division of Alcoholism, Drug Abuse and Mental Health of the Department of Health and Social Services of the State of Delaware. Defendant Henry is also a chairperson of the "Governing Body" of the DPC.

4.    Defendant Susan Watson Robinson at all relevant times was the Hospital Director for the DHSS. Based on information and belief, Defendant Robinson recently resigned her position as Hospital Director in favor of a position as Assistant Director to the Hospital Director of the DHSS. She was the Hospital Director from December 9, 2006 until June 6, 2007.

5.    Defendant Philip Thompson was at all relevant times a Unit Director for the DHSS. Based on information and belief, Defendant Thompson was also at all relevant times a clinician at Meadowood Hospital in Delaware.

6.    Defendant DHSS is a cabinet department of the State of Delaware.

## JURISDICTION AND VENUE

7.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 29 U.S.C. § 2617.

8.    This Court has pendent jurisdiction over Plaintiff's State law claim(s) pursuant to 28 U.S.C. § 1367.

9.    Venue for all causes of action stated herein lies in the District of Delaware, as the acts alleged as the bases for these claims took place within the boundaries of this District.

## **BACKGROUND**

10.    On or about November 2, 2006, DHSS Nurse Karen Stoppel while in the course of her duties witnessed five male employees placing a female patient in four-point restraints. One of the employees held the patient's head down by holding a rolled up towel firmly over the patient's mouth with his fists anchored on the bed. The other four individuals placed the patient in restraints that among other things left black and blue marks on one or more of the patient's limbs. One of the individuals restraining said female patient was Defendant Thompson, Unit Director.

11.    Ms. Stoppel informed the Plaintiff that the incident as the worst incident of patient abuse she had witnessed in over 20 years as a nurse.

12.    Per DHSS procedures, Ms. Stoppel reported the incident to her supervisor by filling out an incident report of suspected patient abuse known as a PM46. Ms. Stoppel also called her supervisor about the incident. The Plaintiff instructed Nurses Rhonda Montgomery and E. David Saxton to assess the situation.

13.    Pursuant to its policies, the DHSS is required to conduct its own internal investigation concerning allegations of abuse. The DHSS investigation of the matter was resolved within three to four weeks and ultimately resulted in no adverse action being taken against Unit Director Defendant Thompson or any of the other individuals who restrained the patient. Based on information and belief, PM46 investigations of the kind reported here ordinarily take several months, not weeks to resolve.

14.    Based on information and belief, Defendants Henry and Robinson reviewed the PM46 report and took affirmative steps to promptly dismiss the investigation in an effort to protect Defendant Thompson.

15.    On December 1, 2006, the Plaintiff received an e-mail from Acting K-2 Nurse

Manager Avery Shockley who stated the following:

> Ms. Harrison,
>
> I am not sure what is going on around here but let me try to explain.    The other day I was in the treatment team and Vickie Karoaglanis, the psychology assistant, mentioned that she received as text message on her cell phone requesting that all professional staff come to an urgent meeting being held by [Defendant] Phillip Thompson.   I could not attend as I was extremely busy with unit matters.   I thought I would receive an email though, explaining why we were summoned to the meeting.   Obviously Mr. Thompson did not have me on his list for some reason.   Later, I found out from another professional staff member, who also was not invited to this urgent meeting, that it concerned what could be done to procure your dismissal from DPC.   I was alarmed that this type of thing could actually be called a "professional meeting".   Sounds more like a lynch mob.   Perhaps they should get out the old tar and feathers as well. Anyway, I am forwarding this information to you because I am not only concerned about your welfare but also it troubles me that I have to work in an environment that can be very hostile at times.   Whose [sic] next?   Who is really safe. [sic]   Can't we just come to work and be concerned about taking care of the people that really matter most, the patients. [sic]
> Sincerely Avery Shockley Acting K-2 Nurse Manager.

Exhibit "A".

16.    The Plaintiff questioned Defendant Robinson about the adequacy of the

investigation regarding the November 6 incident and failed to receive any satisfactory response.

The Defendants individually and collectively retaliated against the Plaintiff in response to the

Plaintiff's inquiries regarding the November 6 incident.

17.    Under the guise of union meetings, Defendant Thompson engaged in a calculated

effort to have the Plaintiff removed from her position at DPC; Thompson and others organized at

least three meetings on December 6, 13, and 14, 2006.   Defendant Robinson attended the

December 14, 2006 meeting.   Copies of the meeting minutes for these three meetings are

attached hereto as Exhibits "B", "C" and "D".

4

18.    On May 14, 2007, the Plaintiff filed a grievance against Defendant Robinson according to Merit Rule Section 2.0 Non-Discrimination (2.1 "Non-merit Factors"). Defendant Robinson then informed the Plaintiff that Defendant Robinson had started tape recording personal meetings between the Plaintiff and Defendant Robinson. When confronted, Defendant Robinson admitted to taping a meeting in January 2007. Plaintiff objected to having conversations tape recorded. Defendant Robinson stated that if the Plaintiff refused to allow the meetings to be taped, the Plaintiff would be subject to disciplinary action. Based on information and belief, the Plaintiff was the only executive staff member singled out for taped meetings. Defendant Robinson, who was the subject of the May 14 grievance complaint, designated herself as Hearing Officer for the Step One grievance hearing for the charge against Defendant Robinson herself. The Plaintiff asked the Labor Relations representative Jennifer Copes about the propriety of allowing Defendant Robinson to act as Hearing Officer for the Step One grievance hearing. Not surprisingly, Defendant Robinson concluded that the Plaintiff did not suffer discrimination. The Step Two Grievance decision was scheduled to be released on June 8, 2007, two days *after* the Plaintiff was terminated in connection with her FMLA leave.

19.    Plaintiff at all times relevant to this Complaint was an "eligible employee" as that term is defined by the FMLA in that she had been employed by Defendant DHSS for at least 12 months, and for at least 1,250 hours of service during the previous 12-month period, prior to her exercise of her rights under the FMLA.

20.    In the time leading up to her termination in June 2007, the Plaintiff suffered harassment and retaliation in connection with her inquiries into the November 6 incident.

21.    There have never been any performance deficiencies of any kind on the part of the plaintiff until after the plaintiff's inquiries regarding the November 6 incident. In fact a

performance review from July 2006 indicated that the Plaintiff "has set high standards for the hospital. She has also done an outstanding job in managing recruitment of nursing staff." The State of Delaware Employee Performance Review attached hereto as Exhibit "E". Overall, the Plaintiff's performance before the November 6 incident was designated "Exceeds Expectations". *Id.*

22.     On or about January 23, 2007, the Plaintiff underwent reconstructive surgery for a bunion/hammertoe deformation of her foot. As of January 23, 2007, the Plaintiff had twelve (12) weeks of unused FMLA time available to her. The Plaintiff sought and ultimately received approval for FMLA leave while she recovered from the procedure. *See* Exhibits "F" and "G".

23.     On or about February 20, 2007, the Plaintiff's attending physician Dr. Jason Kline indicated that the Plaintiff could not perform the functions of her assigned position due to her foot surgery at least until March 20, 2007. *See* The State of Delaware FMLA Medical Certification attached hereto as Exhibit "H".

24.     On or about March 2, 2007, the Plaintiff's attending physician prepared a Statement of Continued Disability. Exhibit "I". The Statement of Continued Disability indicated among other things that the Plaintiff was unable to return to work with or without restrictions. *Id.* A copy of the Statement of Continued Disability was faxed to the DPC Human Resources manager on March 2, 2007.

25.     On or about March 12, 2007, Michael Kelleher, Deputy Director to Defendant Henry conducted a pre-decision meeting in connection with the Plaintiff's leave of absence. Based on information and belief, such a pre-decision meeting should have been conducted by an impartial person.

26.     On or about March 13, 2007, Defendant Robinson sent a letter to the Plaintiff demanding that she return to work on March 19, 2007. *See* Exhibit "J". In the March 13 letter, Defendant Robinson demanded that the Plaintiff pursue on of the following remedies:

> 1.     Submit a written request for leave of absence *without pay* no later than March 19, 2007, to cover the period of absences from March 5, 2007 through expected duration along with supporting medical documentation.
> 2.     Receive approval for additional short-term disability benefits through the Hartford.
> 3.     *Resign your position* as Director of Nursing.

*Id.* (emphases added).

27.     The Plaintiff did not receive Defendant Robinson's letter dated March 13, 2007 until March 20, 2007.

28.     Thereafter on or about March 26, 2007, in a letter Defendant Robinson informed the Plaintiff that she was proposing to dismiss the Plaintiff from her position as Nursing Director at the DPC for "failure to follow reasonable supervisory directions, unexcused and unauthorized absences, unavailability for work, and abandonment of [her] position." *See* Exhibit "K". Defendant Robinson also admitted that on March 14, 2007, the Human Resources unit received a fax of an FMLA Medical Certification form indicating the projected duration of the Plaintiff's medical condition was extended until April 13, 2007. *Id.*

29.     On April 2, 2007, the Plaintiff's attending physician executed another FMLA Medical Certification indicating that the Plaintiff could only return to her work duties after three months or until April 23, 2007. Exhibit "L".

30.     On April 3, 2007, Defendant Robinson advised the Plaintiff that she was not permitted to perform her duties as Director of Nursing at the Delaware Psychiatric Center. Specifically, Defendant Robinson stated, "[a]s the time has passed for you to 'return to work' as a normal course of action, you are not permitted to resume any of the duties related to the DPC

Director of Nursing *until you are medically cleared to return to work* and provide me with advanced written notice of when you plan to return." Exhibit "M" (emphasis added).

31.    On May 4, 2007, Defendant Robinson sent another letter to the Plaintiff that indicated the Plaintiff's approved FMLA leave was valid only through March 12, 2007 despite receiving additional FMLA Medical Certifications from the Plaintiff's attending physician extending the Plaintiff's leave until April 2007. *See* Exhibit "N".

> Your absences since March 13, 2007, are unexcused and unauthorized, because you were not granted short-term disability benefits or approved leave or leave of absence for this time. *You have until the close of business on May 22, 2007, to provide accurate, complete, and detailed medical documentation to explain your inability to work from March 13, 2007 until April 3, 2007. This medical documentation must resolve the conflict of the prior medical documentation which indicated you were not able to return to work until April 13, released you to return to work with restrictions, and then released you to return to work full-duty with no restrictions on April 3. You must submit this information directly to me; it is not acceptable to provide it to anyone else.*

Exhibit "N" (emphasis in original).

32.    On May 22, 2007, the Plaintiff's attending physician faxed a letter in response to Defendant Robinson's May 4 demand for further explanation and documents regarding the Plaintiff's medical condition. Exhibit "O". Dr. Kline explained that his original prognosis that the Plaintiff could return to work on March 13, 2007 was confounded by the Plaintiff developing a Vicryl stitch reaction which prevented her from returning to normal shoes. *Id.* Dr. Kline further explained that he originally extended her disability until April 13, 2007 but since the Plaintiff had recovered well from the suture reaction, she was able to comfortably wear shoes and return to work on April 3, 2007 without restrictions. *Id.*

33.    Despite the timely receipt of the medical authorization letter before the DPC's arbitrary May 22, 2007 deadline, which fully justified her absence, on June 6, 2007, at 3:15 pm, the Plaintiff received a letter from Secretary Vincent Meconi who indicated that Dr. Kline's May

22 letter "failed to provide adequate medical documentation to explain your inability to work from March 13, 2007, until April 3, 2007. . . . Your dismissal is effective as of the date of this letter." Exhibit "P".

34.    A recent Delaware Online article noted some of the continued problems related to retaliation against nurses at the DPC who report attendants for patient abuse. "Despite a half dozen state and federal probes this year critical of conditions at the Delaware Psychiatric Center, attendants are still retaliating against nurses who report them for patient abuse and neglect, a nurse manager told her state representative in an e-mail sent last week. Marsha Papi, who has worked at DPC for 14 years, told Rep. Bethany Hall-Long that the attendants union [sic] is fostering 'the unprofessional work ethic so prevalent at DPC.' . . . She knows what's at risk by coming forward. Other nurses who reported abuse and neglect at the facility have been threatened, demoted or fired." Exhibit "Q".

## COUNT I – FMLA

35.    The Plaintiff hereby restates and incorporates by reference paragraphs 1 through 34 as if fully stated herein.

36.    The Defendants retaliated against the Plaintiff, wrongfully disciplined her, and wrongfully discharged her, in retaliation for the Plaintiff's exercise of and attempts to exercise her rights under the FMLA.

37.    The Defendants have wrongfully interfered with, restrained and denied the Plaintiff exercise of and attempts to exercise her rights under the FMLA.

38.    The wrongful acts committed by the Defendants, as stated hereinabove, were willful, wanton, and committed in bad faith, and the Defendants have no reasonable grounds for believing that its wrongful acts were not in violation of the FMLA.

39.     As a direct result of the wrongful and discriminatory conduct of the Defendants, the Plaintiff has suffered lost wages and other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for:

(a) Any and all damages provided by 29 U.S.C. §2617(a)(1), including but not limited to lost wages, salary, employment benefits, back pay, front pay, interest, liquidated damages, and any and all other available pecuniary damages;

(b) Pre-judgment interest and post-judgment interest;

(c) Attorneys' fees and costs;

(d) Reinstatement, if feasible, or in the alternative, front pay; and

(e) Any other relief, whether legal or equitable, that this Court deems just and appropriate.

## COUNT II – WHISTLEBLOWERS' PROTECTION, 19 DEL. C. §1701, *et seq.*

40.     The Plaintiff hereby restates and incorporates by reference paragraphs 1 through 39 as if fully stated herein.

41.     The Defendants retaliated against the Plaintiff, harassed her, and subjected her to discriminatory treatment because of her inquiries into allegations of patient abuse during the November 6, 2006 incident described hereinabove.

42.     The Defendants discharged, threatened, and otherwise discriminated against the Plaintiff regarding the Plaintiff's compensation, terms, conditions, location, or privileges of employment because the Plaintiff reported to the Defendants and the Plaintiff's supervisor a violation, which the Plaintiff knew or reasonably believed occurred, and the Plaintiff did not have reason to believe the report of patient abuse was false.

43.    As a direct result of the wrongful and discriminatory conduct of the Defendants, the Plaintiff has suffered lost wages and other damages.

WHEREFORE, Plaintiff demands judgment against the Defendants for:

(a)    Appropriate declaratory relief and actual damages;

(b)    The Plaintiff's injuries and loss caused by each violation of chapter 17 of title 19 of the Delaware Code;

(c)    Any and all damages provided by 19 Del. C. §1704(d), including but not limited to reinstatement, back wages, full reinstatement of fringe benefits and seniority rights, expungement of records relating to the disciplinary action or discharge, actual damages, and all of the costs of litigation, including attorneys fees; and

(d)    Any other relief, whether legal or equitable, that this Court deems just and appropriate.

## COUNT III – CIVIL CONSPIRACY

44.    The Plaintiff hereby restates and incorporates by reference paragraphs 1 through 43 as if fully stated herein.

45.    The Defendants wrongfully engaged in a course of conduct designed to cause the termination of the Plaintiff from the DPC, and agreed to commit such wrongful acts against the Plaintiff.

46.    The Defendants' agreement to terminate the Plaintiff was wrongful and had an unlawful purpose in furtherance of the conspiracy.

47.    As a direct result of the wrongful and discriminatory conduct of the Defendants, the Plaintiff has suffered lost wages and other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for:

(a) Any and all damages, including but not limited to lost wages, salary, employment benefits, back pay, front pay, interest, liquidated damages, and any and all other available pecuniary damages;

(b) Pre-judgment interest and post-judgment interest;

(c) Attorneys' fees and costs;

(d) Reinstatement, if feasible, or in the alternative, front pay; and

(e) Any other relief, whether legal or equitable, that this Court deems just and appropriate.

ARCHER & GREINER, P.C.

Dated: June 10, 2008    By: _____

"J" Jackson Shrum (# 4757)
300 Delaware Avenue, Suite 1370
Wilmington, DE 19801
(302) 777-4350 (telephone)
(302) 777-4352 (fax)
jjshrum@archerlaw.com

*Counsel to Plaintiff Gloria Harrison*

# EXHIBIT
# A

*typo on [...]*
*union members  12/1/06*

**Harrison Gloria M (DHSS)**

| | |
|---|---|
| **From:** | Shockley Avery (DHSS) |
| **Sent:** | Friday, December 01, 2006 7:26 PM |
| **To:** | Harrison Gloria M (DHSS) |
| **Subject:** | The professional meeting |

Ms. Harrison,

I am not sure what is going on around here but let me try to explain. The other day I was in the treatment team and Vickie Karoaglanis, the psychology assistant, mentioned that she received a text message on her cell phone requesting that all professional staff come to an urgent meeting being held by Phillip Thompson. I could not attend as I was extremely busy with unit matters. I thought I would receive an email though, explaining why we were summoned to the meeting. Obviously Mr. Thompson did not have me on his list for some reason. Later, I found out from another professional staff member, who also was not invited to this urgent meeting, that it concerned what could be done to procure your dismissal from DPC. I was alarmed that this type of thing could actually be called a "professional meeting". Sounds more like a lynch mob. Perhaps they should get out the old tar and feathers as well. Anyway, I am forwarding this information to you because I am not only concerned about your welfare but also it troubles me that I have to work in an environment that can be very hostile at times. Whose next? Who is really safe. Can't we just come to work and be concerned about taking care of the people that really matter most, the patients.
Sincerely Avery Shockley Acting K-2 Nurse Manager.

1

# EXHIBIT
# B

      v.     Disrespectful of others (i.e., supervisees, other professionals)
     vi.    Work Ethic (i.e., patient care compromised, abuse of power, discriminatory practices)
    vii.   Demeaning remarks toward others
   viii.   Domineering
     ix.    Racist
     x.     Creates Hostile and Unsafe Work Environment for colleagues and supervisees across disciplines
     xi.    Harassment of others she supervise
    xii.   Abuse of Power
   xiii.   Foster Corruption between disciplines

**Action Suggested:**
1. Create a united front (i.e., Unity of Professionals)
2. Set up a meeting with new hospital administrator and invite her to a friendly forum
   - i. Request above meeting to take place in the Springer Building in one of the Present case to Legislature (P. Blevins)
   - ii. Present case to Legislature (P. Blevins)
3. Inquire about official chain of command for Unit Directors
4. Develop a timeframe for administration to take action or display non-action
5. Follow-up on Grievances
6. Request an open and honest forum
7. Discussion and request action on the PM46 process
8. Ask Hospital Administrator what is her format and direction she wishes to take the hospital

**"Options" Priority Reconsidered:**
- Step (1) – Follow Division Chain of Command
- Step (2) – Present case to Legislature (P. Blevins)
- Step (3) – News Journal
-

# Proposal:
1. Support the Union/Council's position taken re: Gloria
2. Request that Gloria Harrison, RN (Director of Nursing) and Dianne Bingham, Ph.D. (Lead Psychologist) both temporarily be reassigned and relinquished of all their duties and responsibilities while there is a complete and full investigation of complaints.
3. Faith Morris will contact Susan Watson Robinson's secretary or speak with her personally as soon as possible to get a meeting scheduled to present our proposal. The meeting date suggested will be December 13 at 1:30pm or earlier that same day or when both parties agree.

**Attendance of 12-06-06 meeting:**
Phillip Thompson, Gregory Boston, Faith Morris, Katrina Ringgold, Eymorfia (Vikki) Karaoglanis, Stoudemire, Florienda Scott-Cobbs, Deborah Nissley.

# EXHIBIT
# C

## Professionals / Union Meeting
## Minutes of 12-13-06
## @ 1:15pm

- Review of Minutes on 12-6-06
  - o Hospital Administrator out of touch with patient care
  - o Comprises our ability to work with patients
  - o Does her educational background meet requirements for her position

<u>Attendees:</u> Phillip Thompson, Gregory Boston, Alice Coleman, Deborah Nissley, Florienda Scott-Cobbs, Katrina Ringgold, Natalie Harris, Jeff Gopez, Dale Mathews Eymorfia (Viki) Karaoglanis

## *12-13-06 Discussion:*

Targeted Concerns:

1. **Gloria Harrison, RN** – Director of Nursing
   Continues to display same negative behaviors listed in 11-30-06 and 12-6-06 minutes
   Continues to display ineffective leadership
2. **Dianne Bingham, Ph.D.** – Psychology and Programming Coordinator
   - o Continues to have job description redefined
   - o Continues to display same negative behaviors listed in 11-30-06 and 12-6-06 minutes
   - o Continues to display ineffective leadership

Update on Dr. Bingham's Grievances:
   - o Quick action was taken by the administration to hear the grievances put in by two of the merit system staff members (professionals)
   - o Administration states that position can be appointed and created at the pleasure of the Hospital Administration which may last for a period of 30 days and then become posted if desired by Administration.
   - o Semantics are being used to undermine the Grievances put in

Follow-up Questions to Grievance:
   - o Where did the position come from
   - o How did it come along
   - o What's the rationale fro creating the position
   - o What's the criteria that was set to select Dr. Bingham
   - o Does the position require a Ph.D. Psychologist especially when there is a strong need on Sussex 2, Carvel, and Sussex 3
   - o Does the job require a Licensed Psychologist to run the Treatment Mall and / or to oversee and coordinate groups on the units.
   - o Appointed by Marty Boston, Ph.D.

Bingham's work ethic:
- Insensitive to other staff members

- Bullies staff members
- Can't relate to workers
- Inappropriate for policy concerns- no experience in area
- No prior administration experience
- Give directives to staff members circumventing their supervision or department director
- Comprises patient care
- Establishes priorities- she confuses everyone with her requests and issues pertaining to work to be completed
- Misrepresented psychology need on units – told new director of professional services that each unit had a psychologist and clinician
- CRT – comprised their functional duties
- Undermines everyone and effecting patient care

# EXHIBIT D

# Professionals / Union / Hospital Administrator Meeting
## Minutes of 12-14-06
## @ 9:30 am
## (Springer Building)

- Attendance:

**Susan Watson Robinson** (Hospital Director), **Faith Morris** (Council 81 President), **Gregory Boston** (Local 640 Union President), **Phillip Thompson** (Unit Director K3/Admissions), **Katrina Ringgold** (Licensed Psychological Assistant/Psych Clinician- III S3), **Alice Coleman** (Director of Social Services), **Pamela Freeman** (Unit Director S1/Admissions), **Chris Stoudemire** (Unit Director K2), **Joanne Bennett** (Nursing/Scheduling), **Susan Jenkins** (Nursing/ ), **Taresa Pittman** (Nurse Preceptor), **Dale Mathews** (Community Resource Team/CRT/SW), **Florienda Scott-Cobbs** (Psych Social Worker Mitchell Bldg), **Eymorfia (Viki) Karaoglanis** (Psychology Clinician-III), **Kelly Holt** (Clinical Operations Specialist/COS), **Natalie Harris**, Psych Social Worker)

*Review of Targeted Concerns:*
Phillip Thompson:
1. Proposal
2. Targets: Gloria Harrison, RN (Director of Nursing) and Dianne Bingham, Ph.D. (Psychology and Programming Coordinator)

Discussion Forum:
Concerns –

- **Proposal –** *All disciplines (* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  - o **Request that Gloria Harrison, RN (Director of Nursing) and Dianne Bingham, Ph.D. (Lead Psychologist/Psychology and Programming Coordinator) both temporarily be reassigned and relinquished of all their duties and responsibilities while there is a complete and full investigation of complaints.**
- o Gloria Harrison's negative behaviors
  - Told a subordinate "sit down, no right here" in a very disrespectful and aggressive tone
  - Discredited the Nursing Assistant's (NA's) by praising all the Certified Nursing Assistant's (CNA's) for an entire week. N/A's stated that they felt slighted because they are the front line staff that take on the majority of the very stringent work.
  - Singles out staff members and target them for intimidation
  - Sent her identified and loyal staff members over to the units to spy on staff and seek out and / or find errors/wrong doing of

the unit staff. Clarification: "I feel like they are spies i.e., Dave
Saxton, Rhonda Montgomery and others)
- Told staff members of her nursing department not to talk to
  someone that was in the capacity of a unit director
- Worked together with Dianne Bingham to have a staff member
  of another discipline kicked out of her office

Consequences of negative behaviors:
- Total morale is down among all staff throughout the hospital (i.e.,
  Kent/Sussex Bldg, Mitchell and Springer Bldg. other campus
  building locations that serve the hospital)
- Staff members are reporting being "Afraid" and mistreated because
  of her perception of them lacking experience ("I feel threatened of
  my job")
- There is a pattern of disruption.

**Dianne Bingham's** negative behaviors
- Insulted Bachelor level staff members "Go back to college and
  work on a Master's Degree or you will not have a job soon" "Your
  job is being eliminated"
- Harass and mistreat subordinates on a daily basis.
- Demeans staff in front of others ("I was humiliated in the nurses
  station by her in front of patients and my peers"
- Treat and talk to professional staff like they are children and
  uneducated.
- Circumvent Social Services Director's authority with her staff ("I
  don't appreciate her putting me in this position time and time again
  by going over or around my director").
- Muscle people by intimidation techniques of authority with
  perception of her administrative backing of Hospital Director.
- Tells everyone that she is our boss, "I am over you the treatment
  mall, all treatment, groups and new AT1 hires").
- Told a subordinate "That's dumb", "Your work is stupid", "You
  people" and attempts to put words in their mouth by incorrectly
  paraphrasing what they have stated.
- Told a subordinate "Get out of your office by Friday" very rudely.
- Master minded and had the initial Acting Director of the Treatment
  Mall removed and kicked out of her office on the mall for no good
  reason. After the individual did the start up, had the mall cleaned,
  coordinated the services to be provided for the patients, created her
  own PMIS system for tracking prior to the hospital's PMIS system
  being ready. Had staff member moved out of her office five times
  since then. Embarrassed her in front of her peers and the entire
  hospital campus.
- Treat the only African American in the Psychology Department
  different then other staff members.

- Creates confusion, has ineffective communication skills which has impacted patient care
- Not consistent in what she say
- Ambiguous and vague all the time
- Mandates are always ASAP or else
- "When I see her name come up on the phone I get nervous and feel I am going to be attacked"
- "She asked me to watch over Katrina and let her know if she is late or not doing her work, and do this secretly"
- Psychology feels that "we have no choices"

## Results of Meeting:

- Ms. Watson Robinson will schedule a meeting around the second week in January for follow up on our concerns.
- It has been acknowledged that Dianne Bingham does not supervise anyone or the treatment mall.

# EXHIBIT
# E



RECEIVED

AUG 0 9 2006

D.P.C. Human Resources



# The State *of* Delaware   Employee Performance Review

**Name, Job Title:  Gloria Harrison, Director of Nursing**
**Department-Division-Section: DHSS, DSAMH,  Delaware Pyschiatric Center**
**Supervisor, Job Title:  Dr. Martha Boston, Hospital Director**
**Date, or time period covered:  June, 2005 – June, 2006**

**Areas where performance is distinguished or exceeds expectations, if any:**

Gloria Harrison has worked hard to correct situations where staff members under her supervision do not perform in a professional manner.  She has set high standards for the hospital.  She has also done an outstanding job in managing recruitment of nursing staff.

**Areas of specific performance deficiencies or unsatisfactory work, if any:**

**Areas where growth or skills/knowledge development is suggested or needed.  If not applicable, please use this space and/or attach summary explanation of how employee met expectations.**

Gloria has worked to have nursing staff perform according to DPC policies and procedures.  She has restructured nursing areas to give more unit supervision where it is needed.  She is an active participant in committee meetings relating to nursing areas.  She works to maintain nursing standards and compliance with accreditation regulations.  She has been a vital part of the DPC Executive Staff.

Gloria needs to ensure that there are regular ongoing vehicles of communication (E.g., routine staff meetings and individual meetings) with areas under her supervision to ensure the smooth running of the hospital.

**Employee documentation of performance events, comments and/or self-review:**

**We have met and discussed this document.  The employee's overall performance is (Distinguished),** **(Exceeds Expectations)**, (Meets Expectations), (Needs Improvement) or is (Unsatisfactory).
*Please circle one*

*Gloria M. Harrison*            *Martha Boston 7-25-06*            *[signature] 8/3/06*
**Employee/date**  7/25/06      **Evaluator/date**            **Reviewer/date**

# EXHIBIT
# F

**DELAWARE HEALTH
AND SOCIAL SERVICES**

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

DELAWARE PSYCHIATRIC CENTER

**HAND DELIVERED (MAILED CERTIFIED/REGULAR)**

January 12, 2007

Ms. Gloria Harrison
148 Stoney Drive
Dover, DE 19904

Dear Ms. Harrison:

The purpose of this correspondence is to advise you of the status of your leave.
You requested medical leave to begin on January 23, 2007. At this point in time, we are
unable to determine conclusively that your leave is covered under the Family and
Medical Leave Act (FMLA). Therefore, based on the information we have, the leave has
tentatively been designated as FMLA. Please see the attached FMLA regulations and
forms pertaining to all the terms and conditions of your current leave.

In order for the FMLA matter to be resolved, you must provide medical
certification and signed leave slips no later than January 29, 2007. Such medical
certifications may be required to be submitted as frequently as every 30 days. If the
circumstances of your leave change and you are able to return to work earlier than the
date indicated, you will be required to notify us prior to the date you wish to return to
work. If you continue to be unable to return to work, you must request an extension of
your leave status and submit the appropriate paperwork prior to the expiration of this
leave.

You will also be required to present a fitness-for-duty certificate prior to being
restored to employment. If such certification is not received, your return to work will be
delayed until the certification is provided. If you are able to return to work in an alternate
duty status, you must request alternate duty pursuant to Policy Memorandum 8 and
submit the required paperwork at least 5 work days before you wish to return to work.
You are not permitted to return to work until your alternate duty is approved.

Even while on leave, employees who work at hospitals are required to comply
with guidelines regarding PPD testing and Hepatitis vaccinations (if you previously
consented to that series). Therefore, if a test or shot is due while you are on leave, you
are required to schedule it/them.

You are required to notify Human Resources and/or me should you have an address or telephone number change while on leave.

If you normally pay a portion for your health insurance you must continue these payments during the period of FMLA leave. The State share portion of your health insurance premiums will continue during FMLA leave without pay. We will do the same with other benefits while you are on FMLA leave. All benefit premium payments are due as detailed in the correspondence you will receive from Human Resources. While on FMLA leave, you have a 30-day grace period in which to make premium payments. If payment is not made timely, your group health insurance and other benefits may be canceled.

During FMLA, you may be eligible to apply for donated leave. If you wish to pursue donated leave application, when you have medical certification, please contact Kathleen Greer in our Human Resources office at 255-2743.

Finally, please be reminded that your medical documentation and leave slips are due no later than **January 29, 2007. If you have questions, please call me at 255-2705.**

Sincerely,

Susan Watson-Robinson
Hospital Director
Delaware Psychiatric Center


Cc:    Human Resources

# EXHIBIT
# G

**DELAWARE HEALTH
AND SOCIAL SERVICES**
DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

DELAWARE PSYCHIATRIC CENTER

March 13, 2007

**CERTIFIED AND REGULAR MAIL
7003 2260 0006 4489 7141**

Ms. Gloria Harrison
148 Stoney Drive
Dover, DE  19904

Dear Ms. Harrison:

The purpose of this letter is to verify your employment status and explain your obligation to return to work at the Delaware Psychiatric Center (DPC).

On January 23, 2007, you began leave for a medical condition. Your leave was designated a Family and Medical Leave Act (FMLA) leave. You were approved for short-term disability insurance benefits, which ended on March 5, 2007. You are not currently in an approved leave status. Your absences since March 5, 2007, are unauthorized.

Based on this information, you are hereby directed to report for full duty on **Monday, March 19, 2007 at 8:00 am.** Upon your return to work, you are required to report directly to me. You are further directed to bring any and all medical or other documentation to explain your absences since March 5, 2007. You are also required to provide medical documentation certifying your ability to return to full-duty work.

If you are medically unable to return to duty, you must pursue one of the following options:

1. Submit a written request for a leave of absence without pay no later than **March 19, 2007,** to cover period of absence from March 5, 2007 through expected duration along with supporting medical documentation.

2. Receive approval for additional short-term disability benefits through the Hartford.

3. Resign your position as Director of Nursing.

Ms. Gloria Harrison
March 13, 2007
Page Two


In addition, you may wish to actively seek alternative positions consistent with your medical condition. To pursue this option within the State system, you must submit employment applications for posted positions and visit the Human Resources Management Office and speak with a Job Counselor. Listings of positions throughout the state are located at your local Human Resources Office. Human Resources Management can also provide you with information about any posting listed in the state system, as well as advise you on the proper application procedures. An additional resource is Vocational Rehabilitation at Wilmington, 761-8300, New Castle, 326-8930, Newark, 368-6980, or Middletown, 378-5779.

Please be advised that if you fail to return to work as directed or pursue one of the options listed above by **March 19, 2007**, a recommendation will be made that you be dismissed from your position with the Delaware Psychiatric Center. Even if you return to work as directed, we reserve the right to initiate disciplinary and other appropriate action.

Sincerely,

Susan Watson Robinson
Hospital Director


p.c:    Roy Lawler
        Marie Collins

# EXHIBIT
# H

# DELAWARE FOOT & ANKLE GROUP

### Ernest Troisi, D.P.M.
### Jason T. Kline, D.P.M.

Phone #302-834-3575                                      Fax #302-834-4066

DATE: 2/20/07                                  PAGE 1 OF 2

To: Kathy Greer - HR          Fax #: 302-255-4459

From: Amanda

COMMENTS:

RE. G. Harrison

****HIPAA Confidentiality Notice****

This document and any intended attached documents contain confidential information belonging to the sender that is legally privileged. This information is intended only for the use of the individual or entity named above. The authorized recipient of this information is prohibited from disclosing this information to any other party and is required to destroy the information after its stated need has been fulfilled, unless otherwise required by law. If you are not the intended recipient, you are hereby notified that any disclosures, distribution, or action taken in reliance on the contents of these documents or text is strictly prohibited. If you received this document in error, please notify the sender immediately and delete or otherwise destroy this transmission.

# The State *of* Delaware
## FMLA Medical Certification



**For Agency Use**

Approved ☐
Denied ☐
Require More ☐
Information
Reviewed by:

1. Employee Name:  GLORIA HARRISON
2. Patient Name (if other than employee):
3. Does the patient's condition qualify as a "serious health condition" described by any of the categories listed on the reverse side?  If so, please place an X in the applicable box:  1.☐  2.☒  3.☐  4.☐  5.☐  6.☐  None of these ☐

4. Describe the medical facts that support your answer to item 3:

Patient underwent reconstructive forefoot surgery for chronic bunion and hammertoe deformities. Surgery → ® PT metatarsal osteotomy ® digit P arthroplasties 2-5

5. Date Condition Began: 1/23/07
6. Expected Duration: → 3/20/07

G will need rest + gradual transition to the gate

7. Regimen of Prescribed Treatment *(Number of visits, treatment duration/nature, and referral to other health providers. Include visit/treatment schedule if medically necessary that employee work variable or reduced daily schedule or days per week.)*
a. By Physician or Practitioner:

pending - maybe physical therapy

b. By another health provider, if referred by Physician or Practitioner:

N/A

Please place an X in the Yes or No boxes below.
Yes  No

*If certification is for employee's seriously-ill family member; skip items 8 & 9 and go to items 10-14.*

8. ☐☒ Is inpatient hospitalization of employee required?
9. ☐☒ Can employee perform the functions of assigned position? *(First review statement of employee position's essential functions or, if none provided, after discussing with employee.)*
10. ☐☒ Is inpatient hospitalization of family member (patient) required?
11. ☐☒ Does (or will) patient need help for basic medical, hygiene, nutrition, safety or transportation?
12. ☐☒ After reviewing employee's signed statement (Item 14), is employee's presence necessary, or would it be beneficial for care of the patient? *(This may include psychological comfort.)*
13. Estimated time period care is needed, or that employee's presence would be beneficial:  N/A

*Item 14 is to be completed by employee requesting Family Leave.*
14. Employee: For seriously-ill family member, please describe care you will provide, and estimated time period care will be provided, including a schedule if leave will be taken intermittently, or on other basis.

Type of Practice *(Field of specialization, if any)*

Podiatry

Physician or Practitioner Signature & Date

J. T. Uhie  2/20/07

Employee Signature & Date

Provided by
**The Employee Relations Center**
Employment Services ◊ State Labor Relations Services ◊ Merit System Applications

TLF revised 10.30.01

To physician/practitioner ("health provider"): A "Serious Health Condition" means an illness, injury, impairment, or physical/medical condition covering one of the following situations:

1. *Hospital Care.* Inpatient care (i.e., an overnight stay) in a hospital, hospice or residential medical care facility, including any period of incapacity or later treatment involving or consequent to such inpatient care.

2. *Absence Plus Treatment.* A period of incapacity of more than 3 consecutive calendar days (plus any later treatment/period of incapacity for the same condition), that also involves:

    (1) At least 2 treatments by health provider, nurse or physician's assistant under direct supervision of health provider; or health service provider, (e.g., physical therapist) under orders of, or on referral by, health provider;  *or*

    (2) At least one treatment by health provider which results in a regimen of continuing treatment under the supervision of health provider.

3. *Pregnancy.* Any period of incapacity due to pregnancy, or for prenatal care.

4. *Chronic Conditions Requiring Treatment.* A chronic condition which:
    (1) Requires periodic visits for treatment by health provider, nurse or physician's assistant under direct supervision of health provider;
    (2) Continues over extended time period (including recurring episodes of a single underlying condition); and
    (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)

5. *Permanent/Long-term Conditions Requiring Supervision.* A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. Employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, health provider. Examples include Alzheimer's, severe stroke, or terminal stages of a disease.

6. *Multiple Treatments (Non-Chronic Conditions).* Any period of absence to receive multiple treatments (including any period of recovery there from) by health provider, or by provider of health services under orders of, or on referral by, health provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than 3 consecutive calendar days absent medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

*Please Note:* Treatment includes examinations to determine if a serious health condition exists and evaluations of condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., antibiotic) or therapy requiring special equipment to resolve or alleviate condition. A regimen of treatment does not include taking over-the-counter medications such as aspirin, antihistamines or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to health provider.

# EXHIBIT I



Clear Form

**ATTENDING PHYSICIAN'S STATEMENT OF CONTINUED DISABILITY**

Administered by
The Hartford

Patient Name: Gloria M. Harrison _____ DOB: 12/04/1952 Soc. Sec. #: _____ Employer: State of DE

Patient Address: _____ City: _____ State: _____ Zip Code: _____

*I hereby authorize release of information on this form by the below named physician for the purpose of claim processing.*

Signed: _____ Date: _____

> **To be completed by the Attending Physician-Use current information from your patient's most recent examination or office visit to complete this form.**
> (The patient is responsible for the completion of this form without expense to the Company.)

**DIAGNOSIS**

Primary Dx: hallux valgus Ⓛ   ICD-9 Code: 735.0   Secondary Dx: hammertoes 2-5 Ⓛ   ICD-9 Code: 735.2

Surgery Performed? ☑Yes ☐No  If Yes, Date: 1/23/07  Procedure: bunion/hammertoe correction   CPT-4 Code: 28296 28285

Hospitalization since last report? ☐Yes ☑No  If Yes, Admission/Discharge Dates: _____

Current Subjective Symptoms: pain & swelling @ forefoot

Current Physical Exam Findings: edema, tenderness over 1st metatarsal osteotomy site

Tests (Not previously reported): n/a   Dates: _____

Results (or enclose copies of test result report): n/a

Medication (Indicate any changes): NA

**FUNCTIONALITY** (This information is required for evaluation of your patient's claim for disability benefits.)

List all restrictions and/or limitations based on medical findings: (Example - No standing over 4 hrs; No lift over 50#; No overhead reaching.)

No standing > 4 hrs
no driving
no lifting over 30 lbs
still wearing surgical shoe

Is your patient able to return to work without restrictions? ☐Yes ☑No If Yes: Date: _____  ☐Full-time ☐Part-time for ___ hours per day

Is your patient able to return to work with restrictions? ☐Yes ☑No If Yes: Date: _____  ☐Full-time ☐Part-time for ___ hours per day

If able to return to work only part-time, on what date will they be able to increase to full-time? NA

How long are these restrictions expected to be in place? 5 weeks from surgery

**TREATMENT**

Changes in Treatment Plan: _____ No Changes ☑ Frequency/Duration _____

Dates of Treatment: 1/23/07, 2/8/07   Last Office Visit: _____  Next Scheduled Office Visit: 3/1/07

Has patient been referred to other physicians? ☐Yes ☑No  If Yes, Date of Referral(s): _____

Referral Physician Name and Phone #: NA   Specialty: _____

Referral Physician Name and Phone #: _____ Specialty: _____

**PHYSICIAN INFORMATION**

Provider's Name: Jason T. Kline   Telephone #: 302-834-3575

Degree: DPM   Specialty: podiatry   Fax #: 302-834-4066

License #: _____ SS # or EIN #: 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

Street Address: 2600 Glasgow Ave Suite 107 City: Newark State: DE Zip Code: 19701

Signature: J. Kline   Date Signed: 3/2/07

LC-7390-0                                                    [std] 11/2006

# EXHIBIT
# J

# DELAWARE HEALTH AND SOCIAL SERVICES

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

DELAWARE PSYCHIATRIC CENTER

March 13, 2007

**CERTIFIED AND REGULAR MAIL**
**7003 2260 0006 4489 7141**

Ms. Gloria Harrison
148 Stoney Drive
Dover, DE  19904

Dear Ms. Harrison:

The purpose of this letter is to verify your employment status and explain your obligation to return to work at the Delaware Psychiatric Center (DPC).

On January 23, 2007, you began leave for a medical condition.  Your leave was designated a Family and Medical Leave Act (FMLA) leave.  You were approved for short-term disability insurance benefits, which ended on March 5, 2007.  You are not currently in an approved leave status.  Your absences since March 5, 2007, are unauthorized.

Based on this information, you are hereby directed to report for full duty on **Monday, March 19, 2007 at 8:00 am.**  Upon your return to work, you are required to report directly to me.  You are further directed to bring any and all medical or other documentation to explain your absences since March 5, 2007.  You are also required to provide medical documentation certifying your ability to return to full-duty work.

If you are medically unable to return to duty, you must pursue one of the following options:

1. Submit a written request for a leave of absence without pay no later than **March 19, 2007,** to cover period of absence from March 5, 2007 through expected duration along with supporting medical documentation.

2. Receive approval for additional short-term disability benefits through the Hartford.

3. Resign your position as Director of Nursing.

Ms. Gloria Harrison
March 13, 2007
Page Two

In addition, you may wish to actively seek alternative positions consistent with your medical condition.  To pursue this option within the State system, you must submit employment applications for posted positions and visit the Human Resources Management Office and speak with a Job Counselor.  Listings of positions throughout the state are located at your local Human Resources Office.  Human Resources Management can also provide you with information about any posting listed in the state system, as well as advise you on the proper application procedures. An additional resource is Vocational Rehabilitation at Wilmington, 761-8300, New Castle, 326-8930, Newark, 368-6980, or Middletown, 378-5779.

Please be advised that if you fail to return to work as directed or pursue one of the options listed above by **March 19, 2007**, a recommendation will be made that you be dismissed from your position with the Delaware Psychiatric Center.  Even if you return to work as directed, we reserve the right to initiate disciplinary and other appropriate action.

Sincerely,

Susan Watson Robinson
Hospital Director

p.c:    Roy Lawler
        Marie Collins

# EXHIBIT
# K

**DELAWARE HEALTH
AND SOCIAL SERVICES**

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

DELAWARE PSYCHIATRIC CENTER

March 26, 2007

**CERTIFIED AND REGULAR MAIL**
**(7004 1350 0004 3599 4183)**

Ms. Gloria Harrison
148 Stoney Drive
Dover, DE  19904

Dear Ms. Harrison:

This letter is to advise you that I am proposing your dismissal from your position as the *Nursing Director* with the Delaware Psychiatric Center (DPC) for failure to follow reasonable supervisory directions, unexcused and unauthorized absences, unavailability for work, and abandonment of your position.  The following information summarizes the basis for this action.

You have been continuously absent from work since January 23, 2007.  You provided a Family and Medical Leave (FMLA) Medical Certification and applied for short-term disability insurance benefits through the Hartford.  You were granted short-term disability benefits until March 12, 2007.

On March 13, 2007, I sent you a letter directing you to return to work on Monday, March 19, 2007.  I advised you to bring any and all medical, and other documentation, to explain your absences; and to provide medical documentation certifying your ability to return to full-duty work upon your return to work.  Further, I notified you that if you failed to return to work or pursued the other options listed in the letter, a recommendation would be made for your dismissal.

You failed to return to work as directed or to contact me to discuss your continuing absence from work.  On March 14, 2007, the Human Resources unit received a fax of a FMLA Medical Certification form indicating the projected duration of your condition was extended until April 13, 2007.  This medical certification was not signed, nor have you made any request for additional paid or unpaid leave.

Ms. Gloria Harrison
March 26, 2007
Page Two

On March 22, 2007, Durae' Johann, Social Service Senior Administrator, Return To Work Coordinator, Statewide Benefits, contacted DPC concerning your ability to return to work. She indicated that your physician placed restrictions on your ability to work, however, you failed to provide this medical documentation to DPC. Specifically, you cannot lift over 30 pounds or stand for more than four hours. The Nursing Director performs primarily sedentary duties. The ability to lift over 30 pounds and stand over four hours are not regularly required duties of this position; accordingly, the limitations provided by your physician are not restrictions which would require the use of alternate duty or restrict your ability to return to work.

Your conduct since March 13, 2007, is unacceptable. You failed to follow reasonable supervisory directions to return to work on March 19, 2007. Your absences since March 13, are unexcused and unauthorized, because you were not granted short-term disability benefits or approved leave or leave of absence for this time. The most recent FMLA Medical Certification you provided indicates you remain unavailability for work until April 13, 2007. Further, you have abandoned your position by failing to contact your supervisor at any time during your absence to request leave or provide updated medical information.

A review of your record revealed no prior disciplinary action. Your disciplinary record was considered when fashioning the discipline in this matter.

Prior to a final decision, you may request a pre-decision meeting to respond to the proposed action and offer any reasons why your dismissal may not be justified or is too severe. To schedule a pre-decision meeting, you must submit a written request to Roy Lawler, Human Resources Specialist IV, within 15 calendar days of the date of this letter.

Sincerely,

Susan Watson Robinson
Hospital Director

pc:    Renata Henry
       Marie Collins
       Jennifer Copes
       Roy Lawler

# EXHIBIT L

# The State *of* Delaware
# FMLA Medical Certification



**For Agency Use**

Approved ☐

Denied ☐

Require More
Information ☐

Reviewed by:

1. Employee Name: *Gloria Harrison*
2. Patient Name (If other than employee): *N/A*
3. Does the patient's condition qualify as a "serious health condition" described by any of the categories listed on the reverse side? If so, please place an X in the applicable box: | 1. | 2. X | 3. | 4. | 5. | 6. | None of these |
4. Describe the medical facts that support your answer to item 3:

   *Patient underwent reconstructive surgery for bunion/hammertoe deformities on 1/23/07. Subsequent development of suture reaction.*

5. Date Condition Began: *1/23/07*
6. Expected Duration: *3 months*

7. Regimen of Prescribed Treatment *(Number of visits, treatment duration/nature, and referral to other health providers. Include visit/treatment schedule if medically necessary that employee work variable or reduced daily schedule or days per week.)*
   a. By Physican or Practitioner:

   *Has been evaluated every 2 weeks postoperatively. Has been limited weightbearing & surgical shoe.*

   b. By another health provider, if referred by Physician or Practitioner:

   *N/A*

Please place an X in the *Yes* or *No* boxes below.
Yes  No.

*If certification is for employee's seriously-ill family member, skip items 8 & 9 and go to items 10-14.*

8. ☐ ☒ Is inpatient hospitalization of employee required?
9. ☒ ☐ Can employee perform the functions of assigned position? *(First review statement of employee position's essential functions or, if none provided, after discussing with employee.)* ~~after~~ 3 months
10. ☐ ☒ Is inpatient hospitalization of family member (patient) required?
11. ☐ ☒ Does (or will) patient need help for basic medical, hygiene, nutrition, safety or transportation?
12. ☐ ☐ After reviewing employee's signed statement (Item 14), is employee's presence necessary, or would it be beneficial for care of the patient? *(This may include psychological comfort.)*  N/A
13. Estimated time period care is needed, or that employee's presence would be beneficial: | N/A |

*Item 14 is to be completed by employee requesting Family Leave.*
14. Employee: For seriously-ill family member, please describe care you will provide, and estimated time period care will be provided, including a schedule if leave will be taken intermittently, or on other basis.

Type of Practice *(Field of specialization, if any)*
*PODIATRY*

Physician or Practitioner Signature & Date
*J.T. Ule @ 4/2/07*

Employee Signature & Date
*Gloria M. Herman*

Produced by
The Employee Relations Cent...
Employment Services • State Labor Relations Services • M...

AB – Amanda Blicker staff

# The State *of* Delaware
# FMLA Medical Certification



| For Agency Use | |
|---|---|
| Approved | ☐ |
| Denied | ☐ |
| Require More Information | ☐ |
| Reviewed by: | |

1. Employee Name: *Gloria Harrison*
2. Patient Name *(If other than employee):*
3. Does the patient's condition qualify as a "serious health condition" described by any of the categories listed on the reverse side? If so, please place an X in the applicable box:  1. ☐  **2. ☒**  3. ☐  4. ☐  5. ☐  6. ☒  ☐ None of these

4. Describe the medical facts that support your answer to item 3:
   *Hallux Valgus (L)   (Hammertoe 2-5 (L)*
   *Bunion  Hammertoe  surgical Correction*
   *CPT 28296*
   *28285*

5. Date Condition Began: *1/23/07*
6. Expected Duration: *3/...*
   *4/13/07*   *Changed(R)*

7. Regimen of Prescribed Treatment *(Number of visits, treatment duration/nature, and referral to other health providers. Include visit/treatment schedule if medically necessary that employee work variable or reduced daily schedule or days per week.)*
   a. By Physician or Practitioner:  *Pending .— possibly Physical therapy*

   b. By another health provider, if referred by Physician or Practitioner:
   *N/A*

Please place an X in the *Yes* or *No* boxes below.

*If certification is for employee's seriously-ill family member, skip items 8 & 9 and go to items 10-14.*

Yes  No
8. ☐ ☒  Is inpatient hospitalization of employee required?
9. ☐ ☒  Can employee perform the functions of assigned position? *(First review statement of employee position's essential functions or, if none provided, after discussing with employee.)*
10. ☐ ☒  Is inpatient hospitalization of family member (patient) required?
11. ☐ ☒  Does (or will) patient need help for basic medical, hygiene, nutrition, safety or transportation?
12. ☐ ☒  After reviewing employee's signed statement (Item 14), is employee's presence necessary, or would it be beneficial for care of the patient? *(This may include psychological comfort.)*
13. Estimated time period care is needed, or that employee's presence would be beneficial: *N/A*

*Item 14 is to be completed by employee requesting Family Leave.*
14. Employee: For seriously-ill family member, please describe care you will provide, and estimated time period care will be provided, including a schedule if leave will be taken intermittently, or on other basis.

Type of Practice *(Field of specialization, if any)*
*Podiatry*

Physician or Practitioner Signature & Date

Employee Signature & Date

Produced by
The Employee Relations Cen
Employment Services o State Labor Relations Services o Merit System Ad

TLF revised 10.30.01

# EXHIBIT
# M

**DELAWARE HEALTH
AND SOCIAL SERVICES**

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

DELAWARE PSYCHIATRIC CENTER

April 3, 2007

**HAND DELIVER**

Ms. Gloria Harrison
148 Stoney Drive
Dover, DE  19904

Dear Ms. Harrison:

This letter is to advise you that at this time, you are not permitted to perform Director of Nursing duties at the Delaware Psychiatric Center.

You have been continuously absent from work since January 23, 2007.  You provided a Family and Medical Leave Act (FMLA) Medical Certification and applied for short-term disability insurance benefits through the Hartford.  You were granted short-term disability benefits until March 12, 2007.

On January 23, 2007, you started a leave of absence covered by FMLA, specifically you were absent from work to have surgery on your foot. At that time, you submitted leave requests to cover your absence until February 21, 2007.  From January 22, 2007 until April 2, 2007, you did not contact DSAMH/DPC administration, including the Hospital Director and the Acting Director of Nursing, to discuss your condition or expected time of return.

On March 13, 2007, I sent you a letter directing you to report to work on Monday, March 19, 2007.  I advised you to bring any and all medical and other documentation, to explain your absences; and to provide medical documentation certifying your ability to return to full-duty work upon your return to work.  Further, I notified you that if you failed to return to work or pursue the other options listed in the letter, a recommendation would be made for your dismissal. You did not comply with this request. On March 26, 2007, I sent you a letter to inform you that I was recommending your dismissal from your position as the Director of Nursing.

On April 2, 2007, you returned to work before 7:00 AM, without notice to me or anyone else. This was despite our conversation of the previous day when you made no mention of a return to work date. Further, you submitted another FMLA Medical Certification form which indicated you would be unable to return to work until approximately April 23, 2007. Upon your return, you began making requests of staff who were unaware and unprepared for your return.

Roy Lawler and I met with you at approximately 8:50AM to discuss the morning's events. At our meeting, you were asked for your return to work documentation, but you stated that you did not have any. Roy explained that you needed to provide this documentation before you return to work to ensure that you and the hospital are not at risk. The Hospital requires a return to work note for employees who are absent for an extended period of time. You did not provide return to work documentation, so you were relieved from duty until you provide the appropriate release and continue to remain in an unauthorized leave status.

The absence and lack of any communication from you resulted in your duties being reassigned to various staff in order to meet critical patient and operational needs in a timely manner. It is extremely unprofessional in your position as the Director of Nursing, to abandon your position, provide no communication with any member of administration, and then present for work without any notice or organized transition plan.

As the time has passed for you to "return to work" as a normal course of action, you are not permitted to resume any of the duties related to the DPC Director of Nursing until you are medically cleared to return to work and provide me with advanced written notice of when you plan to return. Prior to your return you must schedule a meeting with me and a member of human resources to plan for an organized transition of duties and responsibilities. Please contact Howard Swiggett at 302-255-2710 to schedule this meeting.

Sincerely,

Susan Watson Robinson
Hospital Director


pc:    Renata Henry
       Marie Collins
       Jennifer Copes
       Roy Lawler

# EXHIBIT
# N

**DELAWARE HEALTH
AND SOCIAL SERVICES**

DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

DELAWARE PSYCHIATRIC CENTER

May 4, 2007

**HAND DELIVER**

Ms. Gloria Harrison
148 Stoney Drive
Dover, DE  19904

Dear Ms. Harrison:

The purpose of this letter is to follow-up on the status of your pre-decision meeting and offer you a final opportunity to provide additional information.

On March 26, 2007, I advised you that I was recommending your dismissal from your position as the *Nursing Director* with the Delaware Psychiatric Center (DPC) for failure to follow reasonable supervisory directions, unexcused and unauthorized absences, unavailability for work, and abandonment of your position. I also advised you of your right to a pre-decision meeting, provided you submitted a timely, written request for such a meeting.

At your request, Michael Kelleher, Deputy Director, Division of Substance Abuse and Mental Health, conducted a pre-decision meeting on April 12, 2007. During the meeting, you provided limited explanation of your conduct. Regarding your failure to follow reasonable supervisory directions by failing to return to work as directed, you stated you did not accept the return to work letter until after you received the proposed dismissal letter.

You were continuously absent from work from January 23, 2007, to April 3, 2007. You provided a Family and Medical Leave (FMLA) Medical Certification form (Form) and applied for short-term disability insurance benefits through the Hartford. You were granted short-term disability benefits and FMLA-protected leave until March 12, 2007.

You were unable to explain the issues of unexcused and unauthorized absence, unavailability for work, and abandonment of your position. You were unable to reconcile the incomplete and inconsistent medical information provided to DPC. Before making a final determination concerning this proposed action, I am offering you one additional opportunity to explain your absence since March 13, 2007.

Ms. Gloria Harrison
May 4, 2007
Page Two

You provided a Family and Medical Leave Act Medical Certification form dated January 22, 2007. This Form indicated you were scheduled for surgery and would be absent from work for at least six weeks [circa March 6] post surgery. This Form was signed and dated by both you and your doctor.

Another FMLA Medical Certification form was submitted on February 20, 2007, indicating you underwent reconstructive forefoot surgery for chronic bunions and hammertoe deformities. This Form estimated your return to work date as March 20, 2007, indicating you needed rest and gradual transition to shoes [indecipherable]. It also indicated you may need physical therapy. You did not sign or date the Form.

On March 12, 2007, the Hartford ended your disability payments, because you no longer met the definition of disability. On March 13, 2007, I sent you a letter directing you to return to work on Monday, March 19, 2007. I advised you to bring any and all medical, and other documentation, to explain your absences; and to provide medical documentation certifying your ability to return to full-duty work upon your return to work. Further, I notified you that if you failed to return to work or pursued the other options listed in the letter, a recommendation would be made for your dismissal. You failed to return to work as directed or to contact me to discuss your continuing absence from work.

On March 14, 2007, the DPC Human Resources Unit received a fax of an FMLA Medical Certification form indicating the projected duration of your absence was extended (by a cross-out) until April 13, 2007 (approximately four additional weeks). No explanation of the additional need for leave was written except, "possibly physical therapy. The Form was not dated by the doctor and not signed or dated by you. You did not make any request for additional paid or unpaid leave.

On March 22, 2007, Durae' Johann, Social Service Senior Administrator, Return To Work Coordinator, Statewide Benefits, contacted DPC concerning your ability to return to work. She indicated that your physician placed restrictions on your ability to work, however, you failed to provide this medical documentation to DPC. Specifically, you cannot lift over 30 pounds or stand for more than four hours. The Nursing Director performs primarily sedentary duties. The ability to lift over 30 pounds and stand over four hours are not regularly required duties of this position; accordingly, the limitations provided by your physician are not restrictions which would require the use of alternate duty or restrict your ability to return to work.

On April 3, 2007, you returned to full-duty work unannounced. On April 4, 2007, you provided a medical document from the Delaware Foot and Ankle Group releasing you to return to work without any restrictions.

Ms. Gloria Harrison
May 4, 2007
Page Three

Your absences since March 13, 2007, are unexcused and unauthorized, because you were not granted short-term disability benefits or approved leave or leave of absence for this time. *You have until the close of business Tuesday, May 22, 2007, to provide accurate, complete, and detailed medical documentation to explain your inability to work from March 13, 2007 until April 3, 2007. This medical documentation must resolve the conflict of the prior medical documentation which indicated you were not able to return to work until April 13, released you to return to work with restrictions, and then released you to return to work full-duty with no restrictions on April 3. You must submit this information directly to me; it is not acceptable to provide it to anyone else.*

If you provide accurate, complete and detailed medical documentation, which explains your inability to return to work from March 13, 2007 to April 3, 2007, and resolves the contradictions of the previous documentation, Mr. Kelleher will consider this information prior to making a recommendation concerning the proposed dismissal action. If you fail to do so, Mr. Kelleher will make a recommendation based on the information provided to date.

Sincerely,

Susan Watson Robinson
Hospital Director

pc:    Renata Henry
       Michael Kelleher
       Marie Collins
       Jennifer Copes
       Roy Lawler

# EXHIBIT
# O

GLASGOW MEDICAL CENTER
2600 GLASGOW AVE., STE. 107
NEWARK, DE 19702

*Delaware Foot and Ankle Group*

ERNEST TROSI, D.P.M.*+
JASON T. KLINE, D.P.M.++

2900 PENNSYLVANIA AVE.
SUITE 3C
WILMINGTON, DE 19806

HEALTHCARE CENTER
200 HYGEIA DR., STE. 1175
NEWARK, DE 19713

(302) 834-3575
Fax (302) 834-4066
www.defootandanklegroup.net

MIDDLETOWN CARE CENTER
124 SLEEPY HOLLOW ROAD, STE. 202
MIDDLETOWN, DE 19709

Re: Gloria Harrison
DOB: 12/4/1952
5/22/07

To Whom It May Concern:

This letter is in regards to my patient Gloria Harrison who underwent left bunion correction and hammertoe repair of digits 2, 3, 4, and 5 on January 23, 2007 at Glasgow Surgery Center. Normally, this procedure requires approximately two months of recovery to allow for bone healing. I originally anticipated a return of work for Ms. Harrison on 3/13/07.

Unfortunately in March Ms. Harrison developed a Vicryl stitch reaction which prevented her from returning to normal shoes, therefore we had to extend her time off from work. I originally extended the length of disability to 4/13/07. Fortunately, she recovered well from the suture reaction and was able to comfortably wear shoes before this date. Therefore I released Ms. Harrison to return to work full duty on April 3, 2007 without any restrictions.

If there are any questions regarding the care of this patient, please do not hesitate to contact my office.

Sincerely,

*Jason T Kline DPM*
Jason T. Kline DPM

*BOARD CERTIFIED AMERICAN BOARD OF PODIATRIC SURGERY
+FELLOW AMERICAN COLLEGE OF FOOT AND ANKLE SURGEONS

# EXHIBIT
# P



**DELAWARE HEALTH
AND SOCIAL SERVICES**
OFFICE OF THE SECRETARY

RECEIVED

JUN 1 1 2007

D.P.C. Human Resources

June 6, 2007

**HAND DELIVER**

Ms. Gloria Harrison
148 Stoney Drive
Dover, DE 19904

Dear Ms. Harrison:

On March 26, 2007, Susan Watson Robinson, Hospital Director, advised you that she was recommending your dismissal from your position as the Nursing Director with the Delaware Psychiatric Center (DPC) for failure to follow reasonable supervisory directions, unexcused and unauthorized absences, unavailability for work, and abandonment of your position. Ms. Robinson also advised you of your right to a pre-decision meeting, provided you submitted a timely, written request for such a meeting.

At your request, Michael Kelleher, Deputy Director, Division of Substance Abuse and Mental Health, conducted a pre-decision meeting on April 12, 2007. During this meeting, you provided a limited explanation of your conduct. As a follow-up to the pre-decision meeting, and as a result of your request, you were given until the close of business on May 22, 2007, to provide documentation to explain your inability to work from March 13, 2007, until April 3, 2007.

On May 22, 2007, you submitted a letter from Jason T. Kline, DPM. Dr. Kline wrote that in March, you developed a reaction, which prevented you from returning to normal shoes. Therefore, he extended your time off from work until April 13, 2007. You recovered well from the reaction and were able to comfortably wear shoes before this date. Dr. Kline then released you to return to work, full-duty on April 3, 2007.

The medical documentation you provided on May 22, 2007, failed to provide adequate medical documentation to explain your inability to work from March 13, 2007, until April 3, 2007. In order for your absence to be protected under the Family and Medical Leave Act (FMLA), the absence must result from a serious health condition that makes you unable to perform the functions of your job.

Ms. Gloria Harrison
June 6, 2007
Page Two

Your inability to comfortably wear normal shoes did not preclude you from performing the sedentary functions of your job. You also failed to notify DPC of the reason that you were purportedly unable to work. Had you done so, DPC would have permitted you to wear appropriate footwear upon your return to work. Further, your short-term disability benefits ended on March 12, 2007, because you no longer met the definition of disabled. Accordingly, your absence is not protected by the FMLA or covered by short-term disability insurance benefits.

Even if the medical documentation you provided on May 22, 2007, demonstrated your inability to work, it raised additional issues and inconsistencies with medical documentation that you submitted on March 14, 2007, and March 22, 2007. Documentation submitted on March 14, 2007, did not indicate that you were unable to comfortably wear shoes as referenced in the May 22, 2007, letter, but indicated that you were unable to perform your essential job functions due to possible physical therapy. Medical documentation provided to the State Return to Work Coordinator, dated March 22, 2007, indicated that you could return to work with restrictions on lifting and standing. Due to the sedentary nature of your duties as Director of Nursing, the restrictions listed did not apply to your position.

None of the medical limitations alone or in aggregate, rendered you unable to perform the functions of your position. Further, your absence was not covered by approved leave, short-term disability, or FMLA. For all these reasons, your absence between March 13, 2007, and April 3, 2007, remains unexcused and unauthorized. You also failed to follow reasonable supervisory instructions, made yourself unavailable for work, and abandoned your position from March 13, 2007, to April 2, 2007.

After careful consideration of Mr. Kelleher's recommendation and the reasons set forth in Ms. Robinson's letter of March 26, 2007, I have concluded that your dismissal is appropriate. The basis for this decision is summarized below.

You were continuously absent from work from January 23, 2007, to April 2, 2007. You provided FMLA Medical Certification and applied for short-term disability insurance benefits through the Hartford. You were granted short-term disability benefits until March 12, 2007.

On March 13, 2007, Ms. Robinson sent you a letter directing you to return to work on Monday, March 19, 2007. She advised you to bring any and all medical and other documentation, to explain your absences; and to provide medical documentation certifying your ability to return to full-duty work upon your return to work. Further, she notified you that if you failed to return to work or pursued the other options listed in the letter, a recommendation would be made for your dismissal.

Ms. Gloria Harrison
June 6, 2007
Page Three

You failed to return to work as directed or to contact Ms. Robinson to discuss your continuing absence from work. On March 14, 2007, the Human Resources unit received a fax of an FMLA Medical Certification form indicating the projected duration of your condition was extended until April 13, 2007. This medical certification was not signed, nor have you made any request for additional paid or unpaid leave.

On March 22, 2007, Durae' Johann, Social Service Senior Administrator, Return To Work Coordinator, Statewide Benefits, contacted DPC concerning your ability to return to work. She indicated that your physician placed restrictions on your ability to work, however, you failed to provide this medical documentation to DPC. Specifically, you cannot lift over 30 pounds or stand for more than four hours. The Nursing Director performs primarily sedentary duties. The ability to lift over 30 pounds and stand for four hours are not regularly required duties of this position; accordingly, the limitations provided by your physician are not restrictions which would require the use of alternate duty or restrict your ability to return to work.

Your conduct since March 13, 2007, is unacceptable. You failed to follow reasonable supervisory directions to return to work on March 19, 2007. Your absences since March 13, 2007, are unexcused and unauthorized, because you were not granted short-term disability benefits, approved leave or leave of absence for this time. The most recent FMLA Medical Certification you provided indicated that you remained unavailable for work until April 13, 2007. Further, you are considered to have abandoned your position from March 13, 2007 to April 2, 2007, by failing to contact your supervisor at any time during your absence, requesting leave or providing updated medical information.

A review of your record revealed no prior disciplinary action. Your disciplinary record was considered when determining the appropriate disciplinary sanction to address this matter.

Your dismissal is effective as of the date of this letter.

Sincerely,

Vincent P. Meconi
Secretary

pc:    Susan Watson Robinson
       Roy Lawler
       Jennifer Copes
       file

# EXHIBIT Q



PRINT FORMAT
SPONSORED BY    

# Nurse says retaliation continues at DPC

By LEE WILLIAMS, The News Journal
Posted Sunday, December 30, 2007

Despite a half dozen state and federal probes this year critical of conditions at the Delaware Psychiatric Center, attendants are still retaliating against nurses who report them for patient abuse and neglect, a nurse manager told her state representative in an e-mail sent last week.

Marsha Papi, who has worked at DPC for 14 years, told Rep. Bethany Hall-Long that the attendants union is fostering "the unprofessional work ethic so prevalent at DPC." Papi is one of six nurse managers in charge of the seven units at DPC. Her state nursing license shows no disciplinary information.

She knows what's at risk by coming forward. Other nurses who reported abuse and neglect at the facility have been threatened, demoted or fired.

"This is the union that so vigorously defends staff who, at the very least, put our patients at risk, demean them or neglect them, and at the worst actually do physical harm," Papi wrote.

After she began reporting problem attendants in the Sussex 3 unit for abuse and neglect, Papi said, the attendants retaliated by circulating a petition calling for her removal from the unit.

"I came to a point where I stopped giving verbal warnings about not doing their duty and following policy, and started writing them up," Papi said. "It's not so much abuse as neglect lately. It could be because people are working so many hours, they don't have the energy to devote to the patients."

As part of its ongoing series about conditions at DPC, The News Journal revealed an alarming use of overtime at the state hospital. One attendant, who was averaging nearly 90 hours per week, earned more than the governor.

Papi told the newspaper she sent her e-mail to Hall-Long -- dated Dec. 19 -- "out of frustration."

"I'm not looking for any personal gain. Since the articles started coming out about retaliation against nurses and patient abuse, I thought it was something to add to that," she said.

Papi has seen first-hand how facts surrounding incidents of patient abuse she has reported are frequently muddied during grievance hearings brought by the attendants union.

"It can take a year or so, going through all the steps," she said. "The union questions everything you say until they blur the facts."

One hearing involved an attendant she had reported for abusing a male patient. Her allegations were supported with photos of the man's injuries.

"The patient had bruises and scrapes all over him," she said. "It was obvious what happened. The attendant was vindicated. They found there was no evidence although I thought there was plenty of evidence. The union presented it as though we were picking on them, and that you can't believe the patients."

Hall-Long, a Middletown Democrat, serves on the House DPC investigative committee and is an associate professor of nursing and public policy at the University of Delaware. She was not willing to be interviewed for this story.

"I am not comfortable commenting on the personnel situation of a specific employee," she said in an e-mail. "I and others are working on recommendations that include the expansion of anti-retaliation measures and improvements to the professional training/education of those at the bedside."

Hall-Long hopes the recommendations will be accepted by the House committee at the group's next meeting.

**Petition handed over to HR**

Rather than citing any specific incidents of misconduct, Papi said the petition cites a half-dozen nebulous issues.

"They said I was being rude, unprofessional and picking on them," she told The News Journal. "The staff we have, some are wonderful but some will do anything to get out of work."

Three attendants in her unit, Papi told the lawmaker, "admitted that they were coerced into signing the petition by being advised that if physically threatened by a patient, always a concern on our unit populated by aggressive male patients, they would not be supported by their peers."

Most troublesome for Papi is that management actually acted on the petition, which she said was presented to former acting Director of Nursing Earl Robinson, who gave it to Human Resources.

"The HR department looked at it and approached my supervisor," Papi said. "They asked her what discipline she will use to address it."

Carl S. Wexler, labor relations manager for the Department of Health and Social Services, said he was not able to address the matter. He referred further inquiries to DHSS spokesman Jay Lynch.

In an e-mail sent late Friday, Lynch said there are specific policies that dictate the process state employees may use to address concerns about work-force issues, including those involving management and supervision.

"Concerns must be presented individually and DHSS management does not condone the concept or act of organized petitions against fellow employees," he wrote in the e-mail.

Lynch would not say why, given these "specific policies," hospital management acted upon the petition. He would not say what, if any, steps were taken to ensure that other nurses don't receive similar retaliation for reporting patient abuse.

Rather than coming after her, Papi said, she had hoped labor relations would have questioned the 20 staffers who signed the petition.

"These people should have been confronted and asked for specifics. They should have gotten exact dates and times, and if there were things that needed to be dealt with, they should have been," she said.

Neither Department of Health and Social Services Secretary Vince Meconi nor any member of his leadership team were willing to be interviewed for this story.

Local 640 president Gregory Boston did not return calls seeking comment.

David Saxton, president of the nurses union, Local 2305, said state merit rules and hospital policy do not sanction the use of petitions against his members or anyone else.

"We feel petitions are an inappropriate way to resolve labor disputes," he said. "A cooperative effort with management normally has better results."

**Nurses say they're ostracized**

This isn't the first time petitions have been circulated or unofficial groups have been formed to target nurses at DPC.

After reporting patient abuse that occurred Nov. 3, former nurse Karen Stoppel said she was ostracized by attendants in the admissions unit. She also was demoted. Her car was also vandalized and she received a threatening note.

A petition circulated within the hospital's admissions unit asking to have her permanently removed as a charge nurse.

For the first time in Stoppel's career, managers began writing her up for infractions, one of which included giving a sandwich to a hungry patient.

Late last year, another unofficial group formed for the purpose of getting then-Director of Nursing Gloria Harrison fired.

The group included Philip Thompson, the former director of the admissions unit who has since resigned, and Boston. It met several times, and even took minutes of what was discussed.

According to these documents, the group considered Harrison a "target." They claimed she was "domineering," displayed a "lack of professionalism" and had "poor relationships with her staff and across disciplines."

Harrison's nurses, however, adored her.

Harrison was fired in June for alleged misuse of short-term disability leave. Some of her nurses insist she was terminated for reporting patient abuse, for backing her nurses and for her unwillingness to play politics.

Susan Watson Robinson, who recently stepped down to become deputy hospital director, acknowledged meeting with the unofficial group, "because as leadership of the hospital, we encourage everyone to bring issues to the forefront."

Robinson said the group played no role in Harrison's termination, but declined to discuss her reasons for firing Harrison, a decorated Army and Air Force veteran with distinguished nursing credentials.

Papi misses her former DON.

"I really respected Gloria. She was there for the patients," Papi said. "She was very outspoken, no nonsense and she supported her nurses -- something we haven't had in a long time."

**Copyright © 2008, The News Journal.** Users of this site agree to the Terms of Service and Privacy Policy/Your California Privacy Rights (Terms updated March 2007). Questions?

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GLORIA M. HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. |
| v. | ) | |
| | ) | |
| RENATA J. HENRY, individually and in her official | ) | JURY TRIAL DEMANDED |
| capacity as Director of the Division of Alcoholism, | ) | |
| Drug Abuse and Mental Health of the Delaware | ) | |
| Department Health and Social Services, SUSAN | ) | |
| WATSON ROBINSON, individually and in her | ) | |
| official capacity as Hospital Director of the Delaware | ) | |
| Department of Health and Social Services, PHILIP | ) | |
| THOMPSON, individually and in his capacity as | ) | |
| Unit Director of the Delaware Department of Health | ) | |
| and Social Services, DELAWARE DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES and THE | ) | |
| DELAWARE PSYCHIATRIC CENTER, and John | ) | |
| Does 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AFFIDAVIT OF PLAINTIFF

STATE OF DELAWARE        :
                         : ss
COUNTY OF NEW CASTLE     :

I hereby verify that the facts contained in the attached Complaint are true and correct to the best of my knowledge, information and belief. If any statement made therein is willfully false, I understand that I am subject to punishment under penalties of perjury.

_Gloria M. Harrison_
GLORIA M. HARRISON

Sworn to and subscribed before me
this 5th day of _June_ , 2008.

_Mary A. Warren_
Notary Public

3312248v1

MARY A. WARREN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires June 4, 2009

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

GLORIA M. HARRISON,                  )

             Plaintiff,           )

                        )     C.A. No.

v.                        )

                        )

RENATA J. HENRY, individually and in her official  )     JURY TRIAL DEMANDED
capacity as Director of the Division of Alcoholism,  )
Drug Abuse and Mental Health of the Delaware  )
Department Health and Social Services, SUSAN  )
WATSON ROBINSON, individually and in her  )
official capacity as Hospital Director of the Delaware  )
Department of Health and Social Services, PHILIP  )
THOMPSON, individually and in his capacity as  )
Unit Director of the Delaware Department of Health  )
and Social Services, DELAWARE DEPARTMENT  )
OF HEALTH & SOCIAL SERVICES and THE  )
DELAWARE PSYCHIATRIC CENTER, and John  )
Does 1-20,  )

                        )

             Defendants.      )

                        )

## AFFIDAVIT OF KAREN STOPPEL

STATE OF DELAWARE        :
                           : ss

COUNTY OF NEW CASTLE    :

       I hereby verify that the facts contained in the attached Complaint are true and correct to

the best of my knowledge, information and belief.  If any statement made therein is willfully

false, I understand that I am subject to punishment under penalties of perjury.

                                           _Karen Stoppel_
                                         KAREN STOPPEL

Sworn to and subscribed before me
this _29_ day of _May_, 2008.

_Cheryl A. Carey_
Notary Public

**CHERYL A. CAREY**
**NOTARY PUBLIC**
**STATE OF DELAWARE**
My commission expires March 28, 2012

3312250v1

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Gloria M. Harrison

## DEFENDANTS
Renata J. Henry, Susan Watson Robinson, Philip Thompson, Delaware Department of Health & Social Services, The ☐

**(b)** County of Residence of First Listed Plaintiff   **New Castle**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **New Castle**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
"J" Jackson Shrum, Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1370 Wilmington, DE  19801 302-777-4350

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§ 1331, 1343(a)(3) & 4, 1367 and 29 U.S.C. §2617
Brief description of cause:
Improper termination under FMLA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $   1,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE
06/11/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____