IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE TORRENZANO GROUP, LLC, <br> a New York limited liability company, <br> <br> Plaintiff, <br> - against - <br> <br> DORCHESTER CAPITAL MANAGEMENT <br> COMPANY, a Delaware corporation, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No. |

-------------------------------------------------------------------------X

**COMPLAINT FOR BREACH OF CONTRACT**

Now comes Plaintiff, The Torrenzano Group, LLC (sometimes hereinafter referred to as "Plaintiff"), through its undersigned counsel, and for its Complaint, complains and alleges of Defendant, Dorchester Capital Management Company (sometimes hereinafter referred to as "Defendant") as follows:

**JURISDICTION AND VENUE**

1. Plaintiff is a limited liability company organized and existing under the laws of New York with its principal place of business located at 60 East 42nd Street, New York, New York.

2. Plaintiff is informed and believes and thereon alleges that Defendant is a corporation organized and existing under the laws of Delaware with its principal place of business located in Houston, Texas, and having a registered agent with a principal office located in the State of Delaware, County of New Castle.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between parties that are citizens of different states.

4. Venue is appropriate in this Court pursuant to the terms of a written agreement, hereinafter described in further detail.

## GENERAL ALLEGATIONS

5. On or about May 26, 2005, Plaintiff and Defendant entered into a written agreement (the "Agreement") pursuant to which Plaintiff agreed to render certain investor relations and public relations work, labor and services to and on behalf of Defendant, and for which the Defendant agreed to pay Plaintiff.

6. The term of the Agreement was for a minium period of five months, which would thereafter continue until terminated by either party upon not less than 30 days' written notice. A copy of the Agreement is annexed hereto as Exhibit "A" and is made a part hereof.

7. Pursuant to the Agreement, in consideration for the work, labor and services to be performed by Plaintiff, Defendant agreed to pay Plaintiff a minimum fee of $10,000.00 per month, exclusive of out-of-pocket expenses, commencing June, 2005 (the "Minimum Fees").

8. Pursuant to the Agreement, Defendant further agreed to pay Plaintiff its agreed and reasonable staff time charges and expenses incurred on behalf of Defendant in excess of the Minimum Fees (collectively, the "Additional Charges").

9. Pursuant to the Agreement, Defendant agreed to pay Plaintiff's monthly invoices within 30 days of receipt thereof.

10. Pursuant to the Agreement, Plaintiff and Defendant further agreed that in the event a monthly invoice was not paid by Defendant within thirty days of receipt, Plaintiff could

charge, and Defendant would pay, a late payment charge equivalent to two (2%) per cent per month on the undisputed and unpaid balance thereof.

11. Pursuant to the Agreement, the Plaintiff and Defendant further agreed that the failure of Plaintiff to issue any bill or invoice would not excuse or affect Defendant's obligation to pay Plaintiff according to the terms of the Agreement.

12. Plaintiff has performed all parts of the Agreement on its part to be performed.

13. Heretofore, and on or about and between January 18, 2006 and November 7, 2006, Plaintiff billed Defendant for $115,274.53 in Minimum Fees and Additional Charges for services rendered pursuant to the Agreement.

14. Heretofore, Defendant paid Plaintiff $23,939.36 towards the aforementioned sum.

15. Despite due demand, Defendant has failed and refused to pay Plaintiff any other sums due pursuant to the Agreement.

### FIRST CAUSE OF ACTION
(Breach of Contract)

16. Plaintiff incorporates by reference as if fully set forth herein, the allegations contained in paragraphs 1 though 15 above.

17. Defendant's refusal and failure to pay, as set forth above, constitutes a breach of contract.

18. As a result of Defendant's breach of the Agreement with Plaintiff, Defendant owes Plaintiff a balance of $91,335.17 in Minimum Fees and Additional Charges.

## SECOND CAUSE OF ACTION
**(Breach of Contract - Late Payment Charges)**

19. Plaintiff incorporates by reference as if fully set forth herein, the allegations contained in paragraphs 1 through 18 above.

20. Although duly billed and undisputed, Defendant has failed to timely pay any of Plaintiff's monthly invoices to Defendant since at least April, 2006.

21. More that thirty days have elapsed from the dates of delivery of the aforementioned invoices.

22. Accordingly, pursuant to the Agreement, and as a result of Defendant's breach thereof, through May 31, 2008, Defendant owes Plaintiff late payment charges amounting to $29,893.00.

## THIRD CAUSE OF ACTION

**(Breach of Contract - Attorney Fees and Collection Costs)**

23. Plaintiff incorporates by reference as if fully set forth herein, the allegations contained in paragraphs 1 through 22 above.

24. Pursuant to the Agreement, Defendant further agreed that it would also pay Plaintiff's reasonable attorneys' fees, costs and disbursements incurred in connection with collection of monies past due more than 90 days.

25. More than 90 days have elapsed since Defendant failed to pay the sums due and overdue under the Agreement.

26. As a result thereof, Defendant owes or will owe Plaintiff its reasonable attorneys' fees, costs and disbursements incurred in connection with collection of the sums due it

pursuant to the Agreement, in such sum as may hereinafter be determined, but which, upon information and belief, will be in a sum no less than $5,000.00.

   **WHEREFORE**, Plaintiff prays for judgment as more fully set forth below:

   1. For amounts due and owing under its Agreement with Defendant: $91,335.17 for unpaid Minimum Fees and Additional Charges; $29,893 for unpaid Late Payment Charges; plaintiff's reasonable attorneys' fees, collection costs and disbursements, in such sums as may hereinafter be determined and for which Plaintiff begs leave to prove, but not less than $5,000.00; together with applicable interest, costs and disbursements.

   2. For such other and further relief as this Court may deem just and proper.

| OF COUNSEL: | CROSS & SIMON, LLC |
|---|---|
| Mitchell B. Shenkman<br>The Abramson Law Group, PLLC<br>570 Lexington Avenue, 23rd Floor<br>New York, New York 10022<br>Tel.  (212) 686-4401 | By:  _/ s / Erica N. Finnegan_<br>Erica N. Finnegan (DE # 3986)<br>913 North Market Street, 11th Floor<br>P.O. Box 1380<br>Wilmington, DE 19801<br>Tel: (302) 777-4200<br>Fax: (302) 777-4224<br>Efinnegan@crosslaw.com |

Dated: June 13, 2008

                Attorneys for Plaintiff
                The Torrenzano Group, LLC

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**. Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases**. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

AO 440 (Rev. 03/08) Civil Summons

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

|  |  |  |
|---|---|---|
| _____ Plaintiff<br>v.<br>_____ Defendant | )<br>)<br>)<br>)<br>) | Civil Action No. _____ |

**Summons in a Civil Action**

To: *(Defendant's name and address)*




A lawsuit has been filed against you.

Within \_\_\_ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:




If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


_____
Name of clerk of court

Date: _____         _____
                                      Deputy clerk's signature


(*Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).*)

AO 440 (Rev. 03/08) Civil Summons (Page 2)

**Proof of Service**

I declare under penalty of perjury that I served the summons and complaint in this case on _____,
by:

    (1) personally delivering a copy of each to the individual at this place, _____
_____ ; or

    (2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
who resides there and is of suitable age and discretion; or

    (3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
_____ ; or

    (4) returning the summons unexecuted to the court clerk on _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

Date: _____

    _____
    Server's signature

    _____
    Printed name and title

    _____
    Server's address

# EXHIBIT A



## Agreement

This will serve as the agreement between The Torrenzano Group, a New York corporation, having an office located at 551 Fifth Avenue, Suite 1400, New York, NY 10176 ("Torrenzano"), and Dorchester Capital Management Company, a Delaware corporation, having it's principal place of business at 7026 Old Katy Road, Suite 254, Houston, Texas 77024 ("Dorchester"), pursuant to which Torrenzano will serve Dorchester as investor relations and public-relations counsel.

This agreement is dated this 26th day of May, 2005.

**1. Services**

As investor relations and public relations counsel, Torrenzano will provide investor relations and public relations services to Dorchester ("Services") with budgets for staff time charges established and approved by Dorchester.

**2. Charges**

(a) Charges for the services of Torrenzano will be made at Torrenzano's standard hourly staff rates, as presented in appendix A, for participating executives and staff required to carry out the programs and activities approved by Dorchester. Torrenzano will present quarterly estimated charges to Dorchester for its approval based on 30-60-90 day plans. Torrenzano will use all reasonable efforts to use the least expensive employee who is capable of performing any given service.

(b) In addition to staff time charges, Dorchester will pay Torrenzano the net cost of all materials, services and rights, reasonably obtained by Torrenzano from third party suppliers on Dorchester behalf, plus a 17.65% handling and administrative fee on all such disbursements, such as travel, messengers, overnight delivery services provided, however, with respect to disbursements, or related group of disbursements, over $1,000.00, Torrenzano must obtain the prior authorization of Dorchester.

(c) Unless otherwise instructed by Dorchester, Torrenzano will arrange such third party suppliers, as is practical and possible, to direct bill Dorchester, without any handling and administrative fee.

In obtaining such materials, services and rights, all of which will be within normal professional standards, Torrenzano will act as agent for Dorchester as disclosed principal. Dorchester shall indemnify and hold Torrenzano harmless, including reasonable attorneys' fees, costs and disbursements, in respect to any of the net costs incurred by Torrenzano as stated in paragraph 2(b) this paragraph 2(c) and paragraph 2(d) below.

(d) Dorchester will reimburse Torrenzano for the net cost of all routine out-of-pocket disbursements such as photocopying and ordinary communications, telephone, fax, and postage reasonably incurred by Torrenzano in carrying out the services hereunder. "Net cost" means the costs which are incurred by Torrenzano which would not be incurred but for the Services, reduced by any credits or refunds received by Torrenzano in connection with such costs.

(e) Dorchester shall be responsible for the payment of any and all actual reasonably incurred costs incurred by Torrenzano in the event Torrenzano is required by a demand (by subpoena or otherwise) from a court or regulatory agency to respond to legal proceedings for Dorchester. In the event that Torrenzano is served by a court, regulatory or administrative agency with an order to appear or produce documents, Torrenzano shall promptly notify Dorchester in order for Dorchester, in its sole discretion, to seek an order barring or preventing disclosure or keeping such materials confidential.

   (i) It is understood that the costs shall include, but are not limited to, Torrenzano's reasonable out-of-pocket disbursements, reasonable attorneys' fees, staff time charges and reimbursement of expenses for services rendered to Dorchester or time spent by Torrenzano in connection with any such litigation.

   (ii) This provision 2 (e) shall not apply to litigation between Dorchester and Torrenzano, but otherwise shall survive the expiration or earlier termination of this agreement, and/or in the event this agreement, in whole or in part, is declared null and void.

(f) From time to time, Torrenzano may be called upon to render services that do not fall within the scope of this agreement, requiring an unusual expenditure of time and/effort by Torrenzano personnel.

   (i) If such a situation arises, a separate letter of agreement will be prepared and Torrenzano, in conjunction with Dorchester, will take into consideration such extraordinary factors in determining the rates or fee to be charged.

3. **Billing**

   (a) On or before the 10th day of each calendar month, Dorchester will advance Torrenzano a minimum monthly, non-refundable fee of $10,000.00 ("Minimum Fee"), exclusive of out-of-pocket expenses. The minimum monthly fee, exclusive of out-of-pocket expenses, will be paid on or before the 10th day of each calendar month.

   (b) Following the conclusion of each calendar month, Torrenzano will provide Dorchester with a statement, invoice or bill ("Statement") which will include:

      (i) Actual Staff time and third party charges incurred during such month;

   (ii)   Expenses for purchased materials, services and rights, and reimbursement for routine disbursements for the calendar month following the month to which they relate.

(c) To the extent that the Statement for a particular month exceeds the Minimum Fee, Dorchester shall pay the excess in accordance with this agreement within 30 days of billing. To the extent that fees in a particular month are less than the Minimum Fee, any such shortfalls will be applied to charges in the subsequent month(s) which exceed the Minimum Fee for the month(s) until such shortfall is exhausted, but under no circumstances will any such shortfalls be carried more than ninety (90) days or thirty (30) days past the expiration of this agreement.

(d) The failure of Torrenzano to issue any of the invoices, bills, and/or statements stated in 3(b) shall not excuse or affect Dorchester's obligation to pay Torrenzano according to the terms of this agreement upon presentation of subject invoices. However, Dorchester's obligation to pay the excess over the minimum will be suspended during any prolonged delay in monthly invoicing.

(e) In the event payment is not made within thirty (30) days from receipt of the Statement, Torrenzano will be entitled to charge Dorchester a late payment penalty of two percent (2%) per month on any overdue and unpaid balance, except where there is a legitimate dispute regarding charges. If such dispute is resolved in favor of Torrenzano (i.e., there is no reduction whatsoever in the amount Torrenzano purported was overdue), Dorchester will be subjected the late payment penalty and payment will be made within 15 business days. Any charges not in dispute will be paid promptly.

(f) Dorchester agrees to reimburse Torrenzano for all reasonably incurred expenses including reasonable attorneys' fees, costs and disbursements — incurred in the collection of any undisputed overdue and unpaid Statements past due more than 90 days.

4. **Records**

   (a) Torrenzano will maintain accurate records of all staff-time work and out-of-pocket disbursements incurred on behalf of Dorchester.

   (b) During the term of this agreement and for two years thereafter, Dorchester may examine such records at Torrenzano's offices in New York upon reasonable notice and during normal business hours.

   (c) It is understood that the foregoing does not include Torrenzano's salary data, overheads and other internal non-billable Torrenzano costs.

   (d) If requested within a reasonable time prior to or after Torrenzano's end-of-month Statement is sent, copies of supplier invoices and other back-up materials in support of Torrenzano's out-of-pocket individual disbursements of $100.00 or more will be provided to Dorchester with the subsequent monthly invoice.

5. **Confidentiality**

   (a) Dorchester and Torrenzano acknowledge their respective responsibility, both during and after the term of this agreement, shall preserve the confidentiality of any proprietary or confidential information or data of Dorchester and Torrenzano, or disclosed by either Dorchester or Torrenzano to each other, including any data or information developed by Torrenzano on behalf of Dorchester. All information of each party shall be presumed to be confidential and proprietary unless it is available to the general public from sources other than in conjunction with a breach of this agreement by the other party, provided, however, Dorchester will own and may freely use any materials, information or data prepared by Torrenzano to advance Dorchester's investor or public relations.

   (b) Notwithstanding the above, Dorchester and Torrenzano's obligation to maintain the confidentiality of any such information that they may maintain in their respective possession or control shall not be applicable in the event that Dorchester or Torrenzano, as the case may be, shall be compelled to disclose same pursuant to an order of any court or in response to legal process or subpoena, provided Torrenzano and Dorchester gives the other adequate notice under the circumstance prior to disclosure to allow Torrenzano or Dorchester, in their sole discretion, to seek an order from any court barring or preventing disclosure.

   (c) It is understood and acknowledged by both parties that a breach of the provisions of subparagraph 5(a) shall constitute a material breach of this agreement. In the event that Torrenzano or Dorchester believe that any of the other's actions or inactions have caused or will cause a breach of subparagraph 5(a), said party shall first notify the other party of their belief in writing. The writing must include specific details of what actions or inactions are alleged and information sufficient for the other part to cure or remedy any breach or threatened breach, or to mitigate the effects or damages thereof. Each party shall fully cooperate with the other and take all steps necessary to cause the curing, remedying or mitigation of any breach or threatened breach. In the event that said party reasonably cures or remedies the breach or threatened breach and the other party has not incurred any damages, the other party shall be deemed to have no claim against the other based upon the actions or inactions contained in the letter notice.

   (d) It is agreed that Torrenzano and Dorchester shall enter into mutual agreements of confidentiality should Dorchester or Torrenzano request, the terms of which shall be mutually agreed upon.

   (e) Nothing in this paragraph, including subparagraph 5(b) shall excuse Dorchester's obligation to pay Torrenzano all moneys due pursuant to the terms of this agreement for the actual term of the agreement.

TORRENZANO
THE TORRENZANO GROUP

6. **Indemnity**

    (a) It is acknowledged and agreed that Torrenzano cannot, and has no duty to, undertake to verify facts supplied to it by Dorchester or factual matters included in material prepared by Torrenzano and approved by Dorchester.

    (b) Accordingly, Dorchester agrees to indemnify and hold harmless Torrenzano from and against any and all losses, claims, damages, expenses (including reasonable attorneys' fees, costs and disbursements) or liabilities which Torrenzano may incur:

        (i) as a result of any materials, releases, reports or information supplied to Torrenzano by or on behalf of Dorchester or prepared by Torrenzano and approved by Dorchester in writing prior to its dissemination or broadcast; and

        (ii) except when attributable to Torrenzano's failure to use due care, as a result of disputes between Torrenzano and third parties related to and/or within the scope of this agreement.

    (c) Dorchester shall similarly indemnify and hold Torrenzano harmless in respect to any claims, and/or damages arising out of the nature or use of Dorchester's products or services. This provision 6 shall survive the expiration, rescission, earlier termination of this agreement, and/or in the event this agreement, in whole or in part, is declared null and void.

    (d) This indemnity and hold harmless does not apply to any losses, claims, damages, expenses (including reasonable attorney's fees, costs and disbursements) or liabilities that Torrenzano may incur (i) arising out of the negligence or willful misconduct of Torrenzano or its employees, or (ii) claims between the parties hereto.

    (e) Torrenzano agrees to indemnify and hold harmless Dorchester's from and against any and all losses, claims, damages, expenses (including reasonable attorneys' fees, costs, and disbursements) or liabilities which Dorchester's may incur resulting from the negligence or willful misconduct of Torrenzano or its employees.

7. **Duration of Agreement**

    (a) Torrenzano's appointment under this agreement shall be effective as of June 1, 2005, and continue thereafter until terminated by either party upon not less than thirty (30) days' written notice to the other, provided, however, Dorchester may not provide written notice of termination before October 1, 2005, provided, further, however, in the event the sum of the fees for services through the date of termination is less than the sum of the Minimum Fees that have been paid by Dorchester through that date, Torrenzano shall, upon Dorchester's request, continue to perform Services after the termination until



the sum of such fees and payments are equal, but under no circumstances will this period of time exceed thirty (30) days at Torrenzano's option. During that time, all other provisions of this agreement, other than paragraph 3. above, will apply.

(b) The rights, duties, and responsibilities of Torrenzano and Dorchester shall continue through the thirty-day notice period including Torrenzano's right to receive their fee compensation (if any) for the calendar month occurring during said period.

(c) Dorchester and Torrenzano agree that during the term of this Agreement their financial and business operations will at all times be in compliance with applicable Federal and State laws, including without limitation the rules and regulations of the Securities and Exchange Commission and appropriate self-regulatory organizations subject to the Commission's jurisdiction, and, where applicable, the Foreign Corrupt Practices Act. Dorchester and Torrenzano further agree that a breach of this covenant shall be a material breach of this Agreement and Dorchester or Torrenzano shall have the right to immediately terminate this agreement and any extension thereof in any instance when Dorchester or Torrenzano has breached a material term of this Agreement. Such termination shall not excuse Dorchester's obligation to pay Torrenzano all moneys due pursuant to the terms of this Agreement up to the date of its termination.

(d) Upon termination of this agreement, provided that there is not outstanding indebtedness then owing by Dorchester to Torrenzano, Torrenzano shall transfer, assign and make available to Dorchester all property and materials and all related intellectual property rights in its possession or control relating to the services performed by Torrenzano for Dorchester under this agreement. Torrenzano may maintain at is own expense for record purposes copies in its files.

## 8. Non-Solicitation of Employees

Dorchester and Torrenzano agree that during the term of this agreement and any successor agreement, and for two years thereafter, neither will solicit the employment or services for any employee of the other unless the following conditions are first met: (i) if at the time of the solicitation, in the case of a solicitation by Dorchester only, this agreement or any successor agreement shall still be in effect the parties shall execute a minimum one-year extension of this agreement (or the successor agreement then in effect) on all of the same covenants, terms and conditions, adjusted, if necessary, to reflect a minimum one-year term, and (ii) in the case of any such solicitation, whether or not this, or a successor agreement is in effect, the hiring party shall pay the other party a finder's fee equal to two times the other party's annualized expenses for the employee solicited for all compensation, benefits and payroll expense, provided that no more than two years have elapsed since the term of the last such agreement had expired.

TORRENZANO
THE TORRENZANO GROUP

9. Severability

If any provision or part of a provision of this agreement shall be invalid or unenforceable, the remainder of the provisions shall remain binding and enforceable to the fullest extent permitted by law.

10. Choice of Counsel

Torrenzano shall be entitled to choose, at its sole and absolute discretion and expense, its legal representation concerning any matters pertaining to this agreement. The parties agree to reasonably cooperate with each other's counsel with respect to any such matters.

11. Governing Law

This agreement will be governed and construed in accordance with the laws of the State of Delaware, USA exclusive of the principles of conflicts or choice of laws. The venue for all legal actions, proceedings or claims, whether in equity or under law, shall be in any court located in the State of Delaware.

12. Supersedes Prior Agreements

This agreement supersedes all prior agreements, whether oral or written.

If you are in agreement with the above, would you kindly sign all copies of this agreement in the space provided for that purpose below and return four copies to The Torrenzano Group, where two copies will be kept for the Torrenzano records and two copies, signed by the appropriate Torrenzano officer, will be returned to Dorchester for its records.

| | |
|---|---|
| The Torrenzano Group<br>551 Fifth Avenue<br>Suite 1400<br>New York, NY 10176 | Dorchester Capital Management Company<br>7026 Old Katy Road<br>Suite 254<br>Houston, TX 77024 |
| (212) 681-1700<br>(212) 681-6961 Fax | (713) 862-8888<br>(713) 868-2187 Fax |
| By: _____<br>Richard Torrenzano<br>Chairman and Chief Executive<br>Date: 5/12/05 | By: _____<br>Warren Schmalenberger<br>Founder & Chief Executive<br>Date: May 26 2005 |

TORRENZANO
THE TORRENZANO GROUP

## Appendix A: Billing Rates (2005)

| | |
|---|---|
| Administrative | $ 55 |
| Research | $150 |
| Associate | $175-$190 |
| Senior Associate | $205 |
| Account Manager | $225 |
| Financial Analyst | $225 |
| Account Director | $235 |
| Senior Financial Analyst | $235 |
| Senior Account Director | $250 |
| Group Account Director | $265 |
| Managing Director | $300-350 |
| Chief Operating Officer | $375 |
| Chief Executive Officer | $500 |

TORRENZANO
THE TORRENZANO GROUP