IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SOFTSPIKES, LLC, and PRIDE MANUFACTURING, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| MACNEILL ENGINEERING COMPANY, INC., | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Softspikes, LLC ("Softspikes") and Pride Manufacturing, LLC ("Pride")

(collectively "Plaintiffs") for their Complaint against defendant MacNeill Engineering Company,

Inc. ("MacNeill") allege as follows:

**NATURE OF THE ACTION**

1.      This is an action for infringement of United States Patent Nos. 6,052,923

("the '923 patent") and 6,167,641 ("the '641 patent").  This action is based on the Patent Laws of

the United States, 35 U.S.C § 100 *et seq.*

**THE PARTIES**

2.      Softspikes is a limited liability company organized under the laws of the

State of Delaware, having its principal place of business at 155 Franklin Road, Suite 250,

Brentwood, TN 37027.

3.      Pride is a limited liability company organized under the laws of the State

of Wisconsin, having its principal place of business at 155 Franklin Road, Suit 250, Brentwood,

TN 37027.

4.    On information and belief, defendant MacNeill is a Massachusetts corporation having its principal place of business at 289 Elm Street, Marlborough, MA 01752.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    This Court has personal jurisdiction over MacNeill because, on information and belief, MacNeill has had continuous and systematic contacts within this judicial district.  Moreover, MacNeill has infringed Softspikes' '923 and '641 Patents by selling or offering to sell infringing products in Delaware and/or shipping infringing products into Delaware.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## BACKGROUND

8.    On April 25, 2000, the '923 patent, entitled "Golf Cleat," was duly and legally issued to Softspikes, Inc., the predecessor in interest of Softspikes.  A true and correct copy of the '923 patent is attached hereto as Exhibit A.  Softspikes is the owner of the '923 patent.

9.    On January 2, 2001, the '641 patent, entitled "Athletic Shoe Cleat," was duly and legally issued to Softspikes, Inc., the predecessor in interest of Softspikes.  A true and correct copy of the '641 patent is attached hereto as Exhibit B.  Softspikes is the owner of the '641 patent.

10.    Softspikes has granted an exclusive license under the '923 and '641 patents to Pride, including exclusive rights to use and practice the '923 and '641 patents, and the right to sublicense others under the '923 and '641 patents.

## FIRST CLAIM FOR RELIEF

## INFRINGEMENT OF THE '923 PATENT

11.    Plaintiffs incorporate by reference paragraphs 1 through 10.

12.    On information and belief, MacNeill has been and is infringing the '923 patent by making, using, offering for sale, or selling infringing golf shoe cleats.

13.    On information and belief, MacNeill also has been and is contributorily infringing and/or actively inducing others to infringe the '923 patent.

14.    On information and belief, MacNeill was aware of the existence of the '923 patent and its infringement of the '923 patent has been intentional, deliberate, and willful. This is an exceptional case.

15.    On information and belief, MacNeill will continue to infringe, contributorily infringe, and/or actively induce others to infringe the '923 patent unless and until it is enjoined by this Court.

16.    MacNeill's infringing activities will irreparably harm Plaintiffs unless enjoined by this Court.  Plaintiffs do not have an adequate remedy at law.

## SECOND CLAIM FOR RELIEF

## INFRINGEMENT OF THE '641 PATENT

17.    Plaintiffs incorporate by reference paragraphs 1 through 10.

18.    On information and belief, MacNeill has been and is infringing the '641 patent by making, using, offering for sale, or selling infringing golf shoe cleats.

19.    On information and belief, MacNeill also has been and is contributorily infringing and/or actively inducing others to infringe the '641 patent.

20.    On information and belief, MacNeill was aware of the existence of the '641 patent and its infringement of the '641 patent has been intentional, deliberate, and willful. This is an exceptional case.

21.    On information and belief, MacNeill will continue to infringe, contributorily infringe, and/or actively induce others to infringe the '641 patent unless and until it is enjoined by this Court.

22.    MacNeill's infringing activities will irreparably harm Plaintiffs unless enjoined by this Court.  Plaintiffs do not have an adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A.    A judgment that MacNeill has infringed the '923 and '641 patents;

B.    A permanent injunction, enjoining MacNeill, its officers, agents, servants, employees, and attorneys and other persons who are in active concert or participation with it from infringing the '923 and '641 patents;

C.    An order awarding damages in an amount sufficient to compensate Plaintiffs for MacNeill's infringement of the '923 and '641 patents, but not less than a reasonable royalty;

D.    An order awarding prejudgment interest to Plaintiffs pursuant to 35 U.S.C. §284;

E.    An order awarding increased damages, pursuant to 35 U.S.C. §284.

F.    A declaration that this case is exceptional pursuant to 35 U.S.C. § 285 and an award of attorneys' fees and costs; and

G.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues triable of right by a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com
psaindon@mnat.com

*Attorneys for Softspikes, LLC and
Pride Manufacturing, LLC.*

July 29, 2008

EXHIBIT A

US006052923A

# United States Patent [19]

## McMullin

[11] **Patent Number:** 6,052,923

[45] **Date of Patent:** *Apr. 25, 2000

[54] **GOLF CLEAT**

[75] Inventor: **Faris W. McMullin**, Boise, Id.

[73] Assignee: **Softspikes, Inc.**, Gaithersburg, Md.

[ * ] Notice: This patent is subject to a terminal disclaimer.

[21] Appl. No.: **09/209,252**

[22] Filed: **Dec. 10, 1998**

### Related U.S. Application Data

[63] Continuation of application No. 08/823,901, Mar. 25, 1997, abandoned.

[60] Provisional application No. 60/034,328, Dec. 20, 1996.

[51] **Int. Cl.⁷** ............................... **A43B 5/00; A43C 15/02**

[52] **U.S. Cl.** ............................... **36/127; 36/134; 36/59 R; 36/59 C**

[58] **Field of Search** .......................... 36/127, 134, 67 D, 36/67 R, 59 R, 59 C

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 39,575 | 8/1863 | Hyatt et al. . |
| 180,578 | 8/1876 | Gunsalus . |
| D. 288,262 | 2/1987 | Yokoishi ................................. D2/317 |
| D. 320,882 | 10/1991 | Collins ................................. D2/314 |
| D. 327,975 | 7/1992 | Saito et al. ................................. D2/314 |
| D. 341,479 | 11/1993 | Saito et al. ................................. D2/314 |
| D. 341,480 | 11/1993 | Saito et al. ................................. D2/317 |
| D. 341,704 | 11/1993 | Saito et al. ................................. D2/962 |
| D. 341,705 | 11/1993 | Saito et al. ................................. D2/962 |
| D. 341,938 | 12/1993 | Saito et al. ................................. D2/962 |
| D. 342,151 | 12/1993 | Saito et al. ................................. D2/962 |
| D. 342,152 | 12/1993 | Saito et al. ................................. D2/962 |
| D. 342,373 | 12/1993 | Saito et al. ................................. D2/962 |

(List continued on next page.)

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0 153 136 | 8/1985 | European Pat. Off. . |
| 0 342 232 | 11/1989 | European Pat. Off. . |
| 0 524 861 | 1/1993 | European Pat. Off. . |
| 493748 | 8/1919 | France . |
| 807754 | 1/1937 | France . |
| 185659 | 6/1907 | Germany . |
| 156642 | 7/1939 | Germany . |
| 2529027 | 1/1977 | Germany . |
| 2540426 | 3/1977 | Germany . |
| 3438060 | 6/1985 | Germany . |
| 4316650 | 11/1993 | Germany . |
| 467815 | 12/1951 | Italy . |
| 762928 | 5/1989 | Japan . |
| 7-209 | 1/1995 | Japan . |
| 6877 | 2/1896 | United Kingdom . |
| 2814 | 2/1914 | United Kingdom . |
| 401979 | 11/1933 | United Kingdom . |
| 1 263 960 | 2/1972 | United Kingdom . |
| 1378461 | 12/1974 | United Kingdom . |
| 1434282 | 5/1976 | United Kingdom . |
| 2 053 658 | 2/1981 | United Kingdom . |
| 2223394 | 4/1990 | United Kingdom . |
| 2248762 | 4/1992 | United Kingdom . |
| 2266223 | 10/1993 | United Kingdom . |
| 91/03960 | 4/1991 | WIPO . |

*Primary Examiner*—Ted Kavanaugh
*Attorney, Agent, or Firm*—Fish & Neave; Jeffrey H. Ingerman

[57] **ABSTRACT**

A cleat for providing traction in golf shoes (and shoes for other turf sports) that does not adversely affect turf, but provides a desired level of traction under as many different conditions as possible, and is resistant to being worn down on hard surfaces. The cleat has a flange with an attachment stud for attaching to a receptacle in a shoe sole, a plurality of traction protrusions on the flange to engage grass blades to provide traction without damaging turf, and a bearing portion that bears the wearer's weight, particularly when the wearer walks on a hard surface. The protrusions are thereby less affected by the abrading effects of the hard surface, and last longer before they are worn to the point that they are no longer able to provide traction.

**56 Claims, 10 Drawing Sheets**



**6,052,923**
Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 385,988 | 11/1997 | McMullin | D2/962 |
| D. 387,548 | 12/1997 | McMullin | D2/962 |
| D. 389,299 | 1/1998 | McMullin | D2/962 |
| 416,861 | 12/1889 | Scafe . | |
| 485,459 | 11/1892 | Crocker . | |
| 962,719 | 6/1910 | Pratt . | |
| 982,278 | 1/1911 | Kline . | |
| 1,093,358 | 4/1914 | Schroeder . | |
| 1,243,209 | 10/1917 | Park . | |
| 1,304,616 | 5/1919 | Smith . | |
| 1,355,827 | 10/1920 | Finneran . | |
| 1,422,716 | 7/1922 | Jones . | |
| 1,749,351 | 4/1930 | McQueen . | |
| 1,876,195 | 9/1932 | Youmans . | |
| 2,258,805 | 10/1941 | Phillips | 36/59 |
| 2,336,632 | 12/1943 | Park | 36/59 |
| 2,491,596 | 12/1949 | Zaleski et al. | 36/59 |
| 2,745,197 | 5/1956 | Holt | 36/2.5 |
| 2,803,070 | 8/1957 | Passidomo et al. | 36/59 |
| 2,844,833 | 7/1958 | Odermatt | 12/146 |
| 2,895,235 | 7/1959 | Melchiona | 36/59 |
| 3,487,563 | 1/1970 | Austin | 36/67 |
| 3,512,275 | 5/1970 | Leavitt | 36/59 |
| 3,559,310 | 2/1971 | Kiela | 36/7.3 |
| 3,561,140 | 2/1971 | Ludwig | 36/59 |
| 3,583,082 | 6/1971 | Jordan, Jr. | 36/59 |
| 3,583,083 | 6/1971 | Drew | 36/62 |
| 3,656,245 | 4/1972 | Wilson | 36/67 D |
| 3,672,077 | 6/1972 | Coles | 36/2.5 T |
| 3,747,238 | 7/1973 | Jankauskas | 36/61 |
| 3,818,617 | 6/1974 | Dassler et al. | 36/32 R |
| 3,859,739 | 1/1975 | Dassler | 36/67 D |
| 3,890,725 | 6/1975 | Lea et al. | 36/11.5 |
| 4,004,356 | 1/1977 | Green | 36/134 |
| 4,014,114 | 3/1977 | Jordan et al. | 36/67 D |
| 4,141,158 | 2/1979 | Benseler et al. | 36/32 R |
| 4,180,923 | 1/1980 | Dassler | 36/32 R |
| 4,205,466 | 6/1980 | Collins | 36/67 D |
| 4,233,759 | 11/1980 | Bente et al. | 36/59 R |
| 4,294,024 | 10/1981 | Nab | 36/113 |
| 4,299,038 | 11/1981 | Epple | 36/67 D |
| 4,309,376 | 1/1982 | Ueno et al. | 264/241 |
| 4,330,950 | 5/1982 | Reddien | 36/127 |
| 4,366,632 | 1/1983 | Bente | 36/67 D |
| 4,392,312 | 7/1983 | Crowley et al. | 36/67 R |
| 4,492,047 | 1/1985 | Arff | 36/134 |
| 4,521,979 | 6/1985 | Blaser | 36/29 |
| 4,527,345 | 7/1985 | Lopez Lopez | 36/127 |
| 4,571,852 | 2/1986 | Lamarche et al. | 36/32 R |
| 4,587,748 | 5/1986 | Collins | 36/127 |
| 4,633,600 | 1/1987 | Dassler et al. | 36/134 |
| 4,689,901 | 9/1987 | Ihlenburg | 36/126 |
| 4,723,366 | 2/1988 | Hagger | 36/134 |
| 4,727,661 | 3/1988 | Kuhn | 36/100 |
| 4,777,738 | 10/1988 | Giese et al. | 36/32 R |
| 4,782,604 | 11/1988 | Wen-Shown | 36/127 |
| 4,833,796 | 5/1989 | Flemming | 36/134 |
| 4,837,949 | 6/1989 | Dufour | 36/127 |
| 4,885,851 | 12/1989 | Peterson | 36/127 |
| 5,029,405 | 7/1991 | DeHaitre | 36/134 |
| 5,033,211 | 7/1991 | Latraverse et al. | 36/134 |
| 5,070,631 | 12/1991 | Fenton | 36/127 |
| 5,077,916 | 1/1992 | Beneteau | 36/114 |
| 5,259,129 | 11/1993 | Deacon et al. | 36/127 |
| 5,367,793 | 11/1994 | Deacon et al. | 36/127 |
| 5,483,760 | 1/1996 | Kataoka et al. | 36/134 |
| 5,533,282 | 7/1996 | Kataoka et al. | 36/129 |
| 5,623,774 | 4/1997 | Abbey | 36/134 |
| 5,794,367 | 8/1998 | Carroll | 36/134 |



*FIG.1*



FIG. 2

Case 1:99-mc-09999    Document 121-2    Filed 07/29/2008    Page 6 of 21





*FIG.4*







*FIG.9*





FIG. 11



**FIG. 16**



**FIG. 17**

6,052,923

1

# GOLF CLEAT

## CROSS REFERENCE TO RELATED APPLICATIONS

This is a continuation of U.S. patent application Ser. No. 08/823,901, filed Mar. 25, 1997, now abandoned, which claimed the benefit of U.S. Provisional Application No. 60/034,328, filed Dec. 20, 1996.

## BACKGROUND OF THE INVENTION

This invention relates to cleats for use with shoes worn on turf, and particularly to a golf cleat that provides enhanced traction without adversely affecting the turf, and at the same time is resistant to wear when worn on other surfaces.

The need for improved traction on turf surfaces is well known. Specialized shoes for many different sports—e.g., baseball, football, soccer and golf, among others—have structure provided on their soles to enhance traction. Taking golf as a representative example throughout the remainder of this specification, it has long been known to provide golf shoes with relatively large metal spikes for traction.

For almost as long as they have been in use, golf spikes (and similar structures provided on athletic shoes for other turf sports) have also been known to adversely affect the turf of golf courses (or other playing surfaces), and particularly putting greens. The large spikes tear into the putting green surface, particularly when a golfer drags his or her feet as many do, leaving "spike marks" that disrupt the carefully manicured surface and adversely affect the trajectories of putted golf balls. So well known are spike marks in golf that the rules of the game have been adapted to account for their presence (the rules prohibit repairing spike marks before putting). In addition to affecting players' putting, spike marks also affect groundskeepers, who after a day of play by numerous spike-wearing golfers have to spend hours repairing the various putting greens on their golf courses.

In addition to the annoyance to players and groundskeepers caused by the marks that they leave, traditional golf shoe spikes also affect the health of grass all over the golf course, not only on greens. First, the spikes penetrate a significant distance into the ground, frequently damaging a portion of the grass plant above the roots, known as the "crown." Damage to the crown often kills the plant. Second, the spikes pick up seeds of undesirable plants—including weeds and grasses (e.g., *Poa annua*)—and inoculate those seeds into the greens, causing growth of undesirable plants.

Traditional metal golf spikes are also damaging to the floor surfaces of golf clubhouses, and may actually exacerbate slipping on certain clubhouse floor surfaces such as marble. Traditional metal golf spikes even cause damage to paved outdoor walkways.

One known solution to the problems caused by traditional golf spikes is shown in commonly-assigned U.S. Pat. Nos. 5,259,129 and 5,367,793, which are hereby incorporated by reference in their entirety. Those patents show a golf cleat that attaches to the same golf shoe fittings designed for traditional spikes. The cleat is preferably made from a plastic material having a preferably convex lower surface bearing a plurality of ribs that distribute the golfer's weight to produce a plurality of gripping forces—which are mainly frictional—in a plurality of directions, without puncturing the turf, thereby reducing the adverse affects described above.

Cleats such as those described in the aforementioned patents recently have become increasingly popular. Other

2

nonmetallic alternatives to metal spikes, having different types of ribs or protrusions, have also come into use.

One drawback of nonmetallic spike alternatives has been that, because the cleats are worn not only on the turf portions of the golf course, but also on paved walkways and other hard surfaces, the ribs or protrusions that provide the traction on turf are gradually abraded away by the hard surfaces, much faster than they would be if worn exclusively while walking on turf. As a result, the ability of the cleat to provide traction is reduced or destroyed, and the cleat must be replaced sooner than if it were worn exclusively on turf.

It would be desirable to be able to provide a cleat for providing traction on turf that would not lose its traction providing ability so rapidly when also worn on hard surfaces.

## SUMMARY OF THE INVENTION

It is an object of the present invention to provide a cleat for providing traction on turf that would not lose its traction providing ability so rapidly when also worn on hard surfaces.

In accordance with this invention, there is provided a removable cleat for use with an athletic shoe for providing to a user, or wearer, traction on a turf surface while withstanding abrasion on a surface other than turf. The athletic shoe with which the cleat is used has a sole, and the sole has a plurality of sole attachment means for attachment of removable cleats. The removable cleat includes (a) a flange having an upper surface, an opposing lower surface and an edge, (b) flange attachment means extending from the upper surface of the flange for removably attaching the cleat to one of the sole attachment means of the sole of the shoe, (c) a plurality of traction protrusions arranged on the opposing lower surface such that a clear area of the flange exists between the traction protrusions, each of the traction protrusions having a height sufficient to engage blades of grass in the turf to provide traction substantially without puncturing the turf, and (d) a bearing portion on the opposing lower surface of the flange in the clear area for bearing the weight of the user.

An athletic shoe incorporating such cleats is also provided.

By "substantially without puncturing the turf" is meant that the protrusions extend into and engage the grass blades of the turf, but do not penetrate into the ground or, if they do penetrate into the ground on certain types of turf surfaces (such as closely cropped greens), penetrate into the ground only a negligible amount insufficient to significantly damage the grass plant. What is important is that the crown of the grass plant not be damaged.

## BRIEF DESCRIPTION OF THE DRAWINGS

The above and other objects and advantages of the invention will be apparent upon consideration of the following detailed description, taken in conjunction with the accompanying drawings, in which like reference characters refer to like parts throughout, and in which:

FIG. 1 is a plan view of the underside of an athletic shoe incorporating a first preferred embodiment of the present invention;

FIG. 2 is an exploded bottom perspective view of the athletic shoe of FIG. 1;

FIG. 3 is a side elevational view of an athletic shoe incorporating the first preferred embodiment of the present invention;

6,052,923

3

FIG. 4 is a bottom perspective view of a cleat according to the first preferred embodiment of the present invention;

FIG. 5 is a side elevational view of a cleat according to the first preferred embodiment of the present invention;

FIG. 6 is a side elevational view of a cleat according to a second preferred embodiment of the present invention;

FIG. 7 is a side elevational view of a cleat according to a third preferred embodiment of the present invention;

FIG. 8 is a vertical cross-sectional view of the cleat of FIGS. 4 and 5, taken from line 8—8 of FIG. 5;

FIG. 9 is a bottom perspective view of a cleat according to a fourth preferred embodiment of the present invention;

FIG. 10 is a vertical cross-sectional view of the cleat of FIG. 9, taken from line 10—10 of FIG. 9;

FIG. 11 is a bottom perspective view of a cleat according to a fifth preferred embodiment of the present invention;

FIG. 12 is a bottom view of a cleat according to a sixth preferred embodiment of the present invention;

FIG. 13 is a partial vertical cross-sectional view of the cleat of FIG. 12, taken from line 13—13 of FIG. 12;

FIG. 14 is a bottom view of a cleat according to a seventh preferred embodiment of the present invention;

FIG. 15 is a partial vertical cross-sectional view of the cleat of FIG. 14, taken from line 15—15 of FIG. 14;

FIG. 16 is a bottom view of a cleat according to a eighth preferred embodiment of the present invention; and

FIG. 17 is a partial vertical cross-sectional view of the cleat of FIG. 16, taken from line 17—17 of FIG. 16.

## DETAILED DESCRIPTION OF THE INVENTION

In accordance with the present invention, traction is provided for athletic activities on turf surfaces by providing an athletic shoe having cleats with a plurality of relatively small protrusions, and having a separate load-bearing portion that does not provide traction, but bears the wearer's weight both on turf surfaces, and, more importantly, when the wearer walks on hard surfaces. The traction protrusions are preferably located around the edge of the cleat, with the load-bearing portion in the interior portion of the cleat. The load-bearing portion preferably has a configuration that also serves to prevent the area between the traction protrusions from filling with turf debris, which otherwise may reduce traction.

In one preferred embodiment, for example, each cleat is substantially circular and has between about four and about ten—preferably about eight—traction protrusions. Thus, in place of ten or twelve relatively large metal golf spikes on a golf shoe, there would be a large number—(e.g., about 40 to about 120, and preferably about 80 to about 96)—of relatively small traction protrusions. The traction protrusions of the present invention provide traction by physical interengagement with the grass blades of the turf surface, but they have a low profile so that they do not penetrate the ground or, if they do penetrate, they penetrate only a negligible amount. Therefore, they provide better traction than the cleats described in the aforementioned commonly-assigned patents, but they do not cause the damage associated with traditional large metal spikes, because they do not penetrate the crowns of the grass plants. Moreover, this preferred embodiment preferably has a domed portion in the center, within the circular area bounded by the protrusions. The domed portion has a height low enough to avoid interfering with the ability of the protrusions to provide

4

traction on turf, but high enough that on a hard surface it engages the surface, and spares the protrusions from bearing the wearer's weight against the hard surface. The domed portion bears substantially all of the wearer's weight, minimizing abrading frictional forces between the protrusions and the surface. The domed portion preferably also bears the wearer's weight on turf surfaces, so that the protrusions can provide traction substantially without bearing any of the wearer's weight, so that they substantially do not damage the turf.

The domed portion could be about the same height as the protrusions. Alternatively, the height of the domed portion could be less than that of the traction protrusions, but because of the resilience of the cleat material, the traction protrusions preferably would bend out of the way on a hard surface, so that the domed portion still bears primarily all of the load. The height of the domed portion is preferably not less than 50% of the height of the traction protrusions.

The domed portion could be a solid dome, or it could have portions removed so that the domed surface is no longer smooth but the peak of the dome is still in place to bear the load. The portions could be removed along radial lines, along chords, along arcs or from any other area.

Alternatively, the load bearing portion could be a structure other than a dome. However, the dome configuration is preferred because it tends to push turf debris outward out of the cleat. Such debris might otherwise accumulate in the area between the traction protrusions, to the point that they fill in that space and create a smooth surface, eliminating the ability to provide traction.

As set forth above, the entire cleat, including the flange that carries the protrusions and the load-bearing portion, as well as the attachment stud that screws into a receptacle on a golf shoe, is molded from a resilient polymeric material, preferably a resilient elastomeric material, such as polyurethane. Alternatively, however, the cleat could be a co-molding of two or more different materials. For example, the load-bearing portion might be molded from a harder, somewhat more abrasion-resistant material than the traction protrusions, such as an aramid-reinforced polymer (e.g., aramid-reinforced nylon). In addition, the attachment stud could be metallic, with the flange, dome and protrusions molded (or co-molded as discussed) onto the metallic stud.

The traction protrusion of the invention preferably is a truncated cone. To achieve sufficient column stiffness, the width of the base of each traction protrusion is preferably about the same as the height of the traction protrusion. The width of each traction protrusion preferably varies as one moves along its height, most preferably decreasing continuously from the base toward the tip. The traction protrusion preferably should not come to a point, because a pointed traction protrusion would wear faster than one with a blunt tip. For that reason, as well as to avoid tearing the grass blades, and to avoid injury if a wearer were to accidentally brush his skin or that of another with the tips of the traction protrusions, it is also particularly preferred, though not essential, that the traction protrusions not be made of metal.

However, it is within the present invention for the traction protrusions to have any shape. They can be symmetrical or asymmetrical about their axes. They can have sharp or blunt tips, which may be flat, convex or concave. Each traction protrusion preferably extends from the flange at least about 0.07 inch (about 1.78 mm), but no more than about 0.138 inch (about 3.5 mm), and preferably about 0.130 inch (about 3.3 mm) with the total height of the cleat, from the top of the flange (where it contacts the shoe) to the most downwardly

6,052,923

**5**

extending portion of any protrusion or load-bearing portion, of between about 0.07 inch (about 1.78 mm) and about 0.25 inch (about 6.35 mm), and preferably about 0.21 inch (about 5.33 mm).

The traction protrusions could also be ribs having triangular, arcuate or rectangular cross sections. If the flange is circular, the ribs could lie on radii or chords of the circle, or they could be arranged on the flange along circles on the flange.

The edge of the flange which touches the shoe preferably defines a circle in a plane that coincides with the shoe sole when the cleat is mounted on a shoe, although it could define any regular or irregular shape so long as the entire edge is in one plane. Each traction protrusion has an axis, which extends from the flange at an angle, measured relative to a normal to the plane defined by the edge, between about 5° inward from the edge to about 15° outward from the edge. Preferably, the axis of each protrusion is parallel to the normal (i.e., the angle is 0°).

The traction protrusions are preferably mounted at the edge of the flange, but may be mounted inward of the edge, particularly if the flange is not circular. Regardless of the shape of the flange, each traction protrusion preferably has a thin gusset connected to the flange on the side of the protrusion away from the edge. The gusset, which preferably is thin enough to have no effect on traction, or on the turf, acts as a stabilizer, pulling the protrusion upright after it has been deflected when the wearer is walking on a hard surface.

The invention will now be described with reference to the drawings.

FIGS. 1–3 show a shoe 10 bearing a plurality of cleats 40 according to the present invention. As shown, there are preferably eleven cleats 40, although any other number may be provided. Each cleat 40 preferably has an attachment stud 20, which preferably is threaded for attachment to shoe 10 via one of threaded sockets 21, preferably provided for this purpose. Of course, other types of attachment could be provided.

Cleat 40 is shown in more detail in FIGS. 4, 5 and 8. In addition to stud 20, discussed above, each cleat 40 preferably has a preferably circular flange 41 bearing a plurality of traction protrusions 42 of the type described above, which preferably are truncated cones having substantially flat tips. Traction protrusions 42 provide traction on turf preferably by interengaging with the individual grass blades without penetrating or puncturing the crown of any individual grass plant of the turf, and without penetrating or puncturing the soil.

Flange 41 preferably has an edge 43 designed to fit snugly against sole 22 of shoe 10, and edge 43 thus preferably lies completely within a single plane. Each traction protrusion 42 preferably has a preferred axis, and that preferred axis preferably is perpendicular to the plane defined by edge 43. The preferred axis of each traction protrusion 42 is shown as dashed line 50 in FIGS. 5 and 8. Alternatively, as shown in the preferred embodiment of a cleat 60 FIG. 6, the preferred axis 61 of each traction protrusion 62 could extend outward from a normal 63 to the plane of edge 43 by an angle 64 of up to about 15° as shown. As a further alternative, in the preferred embodiment of a cleat 70 of FIG. 7, the preferred axis 71 of each traction protrusion 72 could extend inward from normal 63 to the plane of edge 43 by an angle 74 of up to about 5° as shown.

Each of embodiments 40, 60 and 70 preferably has a raised central portion 44 for bearing the wearer's weight as discussed above. Preferably, raised portion 44 is dome-

**6**

shaped as discussed above to push aside turf debris and prevent clogging. Any other sloped configuration of raised portion 44 could be used to serve that purpose.

As discussed above, on turf surfaces, portion 44 would preferably bear substantially all of the wearer's weight, freeing protrusions 42, 62, 72 to provide traction by interengaging with the grass blades, substantially without transmitting any of the wearer's weight to the turf, so that they cause substantially no damage to the turf. On hard surfaces, such as paved walkways and clubhouse floors, the vast majority of the wearer's weight would be borne by portion 44. Thus, any abrasion of cleat 40, 60, 70 caused by the hard surface would abrade substantially only portion 44. Whatever weight is transmitted by protrusions 42, 62, 72, preferably would result, instead of in abrasion of protrusions 42, 62, 72, in the bending inward (or possibly outward, especially in cleat 70) of the traction protrusions, allowing portion 44 to bear the weight.

Cleat 40, 60, 70 preferably is made from a resilient polymeric material, particularly a resilient elastomeric material, such as polyurethane. Alternatively, the area of portion 44 within dashed line 80 (FIG. 8) could be co-molded from a harder or more abrasion-resistant material such as an aramid-reinforced polymer, as discussed below in connection with FIGS. 9 and 10. The resilient nature of cleat 40, 60, 70 allows traction protrusions 42, 62, 72 to bend out of the way on hard surfaces as discussed. To better assure that protrusions 42, 62, 72 will spring back into place when removed from the hard surface and/or relieved of the wearer's weight, a gusset 45 preferably is provided between each protrusion 42, 62, 73 and flange 41, preferably in a direction away from edge 43. Gusset 45 preferably is thin enough to prevent damage to the turf when protrusions 42, 62, 72 engage the grass blades, and preferably has a thickness of about 0.02 inch (about 0.51 mm).

A further alternative embodiment 90 is shown in FIGS. 9 and 10. In this embodiment, the central raised portion 94 in not a dome, but another shape such as a cross. Thus, flange 91 preferably is substantially flat. Moreover, cross 94 as shown in FIG. 10 preferably is a co-molding of the harder material, such as an aramid-reinforced polymer, discussed above. Of course, cross 94 could be made of the same material as the remainder of cleat 90.

A still further alternative embodiment 110, shown in FIG. 11, is substantially identical to raised dome portion 40, except that material is removed from raised dome portion 44 in areas 111. Although areas 111 are shown as being arranged radially and feathering smoothly into portion 44, they could be arranged as chords or arcs or in any other configuration, and they could have more abrupt edges. Provision of areas 111 allow cleat 110 to be made with less material, and also provide for the channeling of moisture when they are arranged radially as shown.

A further advantage of cleats according to the present invention is illustrated in FIG. 5. As seen there, upper surface 51 preferably meets lower surface 52 at edge 43. Each traction protrusion 42, measured at edge 43, preferably extends a first distance 53 from upper surface 52. That first distance 53, at the outer edge of cleat 40, is the effective traction dimension presented to grass blades during lateral motion, such as during a golf swing. Weight bearing portion 44, on the other hand, extends a distance 54, less than distance 53, from upper surface 51. Because portion 44 also bears against the turf, the effective height of traction protrusions 42 for the purposes of penetration into the turf is limited to a penetration height 55 substantially equal to the difference between distance 53 and distance 54.

6,052,923

**7**

FIGS. 12–16 show alternative cleat configurations within the present invention. For example, while the flange as shown is circular in FIGS. 1–15, FIG. 16 shows a cleat 160 with a square flange 161. Other rectangular configurations could also be used, as could other polygons or irregular configurations.

Similarly, while truncated cones have been shown as the traction protrusions in FIGS. 1–11, they could also be ribs—i.e., low-profile, elongated elements—as shown in FIGS. 12–16. As seen in FIG. 12, ribs 121 of cleat 120 are arranged radially. As seen in FIG. 14, ribs 141 of cleat 140 are arranged along chords of flange 142. As seen in FIG. 16, ribs 162 of cleat 160 are arranged along concentric circles 163 on flange 161. Note that ribs 162 could be arranged on a single circle, rather than on two circles as shown in FIG. 16. It should be recognized that chordal ribs 141 of cleat 140 also are arranged along a circle, but ribs 162 are on a square flange 161 on which the concept of a chord does not apply; the same may be true of other polygonal or other shaped flanges (not shown) that could be used. It should also be recognized that while ribs 121, 141, 162 are shown as being straight, they could also be curved; ribs 162 could even have a curvature different from the circles 163 on which they lie.

Finally, the cross-sectional shape of the ribs could be arcuate as shown in FIG. 13, rectangular as shown in FIG. 15, or triangular as shown in FIG. 17, or any other shape. Note that the cross-sectional shapes shown in FIGS. 13, 15, 17 are not limited to use with the respective rib configurations of FIGS. 12, 14, 16. Rather, any rib cross-sectional shape could be used with any rib configuration as may be desired.

Thus it is seen that a cleat for providing traction in golf shoes (and shoes for other turf sports) that does not adversely affect turf, but provides a desired level of traction under as many different conditions as possible, and is resistant to being worn down on hard surfaces, has been provided.

What is claimed is:

1. A removable cleat for use with an athletic shoe for providing to a user traction on a turf surface while withstanding abrasion on a surface other than turf, said athletic shoe having a sole, said sole having a plurality of sole attachment means for attachment of removable cleats, said removable cleat comprising:

(a) a flange having an upper surface, an opposing lower surface and an edge;

(b) flange attachment means extending from said upper surface of said flange for removably attaching said cleat to one of said sole attachment means of said sole of said shoe;

(c) a bearing portion on said opposing lower surface of said flange remote from said edge; and

(d) a plurality of traction protrusions arranged on said opposing lower surface solely adjacent said edge, each of said traction protrusions having a height sufficient to engage blades of grass in said turf to provide traction substantially without puncturing said turf, each of said traction protrusions being deflectably resilient, said traction protrusions being located relative to said bearing portion such that said bearing portion substantially bears the weight of said user, substantially without said traction protrusions bearing said weight of said user, both on said turf surface and on said surface other than turf, said traction protrusions deflecting under any weight borne by them; said removable cleat having, when installed in said shoe:

**8**

(e) an overall height measured from said upper surface of said flange to a most downwardly extending point of one of (a) said traction protrusions and (b) said bearing portion, said overall height being between about 0.07 inch (about 1.78 mm) and about 0.25 inch (about 6.35 mm).

2. The removable cleat of claim 1 wherein said overall height is about 0.21 inch (about 5.33 mm).

3. The removable cleat of claim 1 wherein:

each of said protrusions has a protrusion height measured from a first end of said protrusion at said flange to a second end of said protrusion remote from said flange; and

said protrusion height is between about 0.07 inch (about 1.78 mm) and about 0.138 inch (about 3.5 mm).

4. The removable cleat of claim 3 wherein said protrusion height is about 0.13 inch (about 3.3 mm).

5. The removable cleat of claim 1 wherein said flange and said traction protrusions are molded from a first resilient elastomeric material.

6. The removable cleat of claim 5 wherein said bearing portion is molded with said flange and said traction protrusions from said first resilient elastomeric material.

7. The removable cleat of claim 5 wherein said bearing portion is co-molded with said flange and said traction protrusions from a second polymeric material having abrasion resistance greater said first resilient elastomeric material.

8. The removable cleat of claim 7 wherein said first resilient elastomeric material comprises polyurethane and said second polymeric material comprises an aramid-reinforced polymer.

9. The removable cleat of claim 5 wherein said first resilient elastomeric material comprises polyurethane.

10. The removable cleat of claim 1 wherein said traction protrusions are arranged adjacent said edge.

11. The removable cleat of claim 10 further comprising a gusset extending between each of said traction protrusions and said flange in a direction away from said edge.

12. The removable cleat of claim 1 wherein each of said traction protrusions comprises a rib.

13. The removable cleat of claim 12 wherein:

said flange is circular; and

said rib lies on a radius of said flange.

14. The removable cleat of claim 12 wherein:

said flange is circular; and

said rib lies on a chord of said flange.

15. The removable cleat of claim 12 wherein:

said ribs lie on at least one circle on said flange; and

each said at least one circle is concentric with any other said at least one circle.

16. The removable cleat of claim 12 wherein said rib has an arcuate cross section.

17. The removable cleat of claim 12 wherein said rib has a triangular cross section.

18. The removable cleat of claim 12 wherein said rib has a rectangular cross section.

19. The removable cleat of claim 1 wherein each of said traction protrusions is substantially conical.

20. The removable cleat of claim 1 wherein said bearing portion is a raised portion of said flange.

21. The removable cleat of claim 20 wherein said raised portion comprises a domed portion.

22. The removable cleat of claim 21 wherein said domed portion comprises at least one depressed portion.

23. The removable cleat of claim 1 comprising between about four and about ten of said traction protrusions.

6,052,923

**9**

24. The removable cleat of claim 1 further comprising a gusset extending between each of said traction protrusions and said flange in a direction away from said edge.

25. The removable cleat of claim 1 wherein:

said edge of said flange defines a plane; and

each said traction protrusions extends from said opposing lower surface along an axis defining an angle with a normal to said plane of between about 5° inward from said edge and about 15° outward toward said edge.

26. The removable cleat of claim 25 wherein said axis is substantially perpendicular to said plane.

27. An athletic shoe for providing to a user traction on a turf surface while withstanding abrasion on a surface other than turf, said athletic shoe comprising:

a sole;

a plurality of sole attachment means on said sole for attachment of removable cleats; and

a plurality of removable cleats, each of said removable cleats comprising:

(a) a flange having an upper surface, an opposing lower surface and an edge,

(b) flange attachment means extending from said upper surface of said flange for removably attaching said cleat to one of said sole attachment means of said sole of said shoe,

(c) a bearing portion on said opposing lower surface of said flange remote from said edge; and

(d) a plurality of traction protrusions arranged on said opposing lower surface solely adjacent said edge, each of said traction protrusions having a height sufficient to engage blades of grass in said turf to provide traction substantially without puncturing said turf, each of said traction protrusions being deflectably resilient, said traction protrusions being located relative to said bearing portion such that said bearing portion substantially bears the weight of said user, substantially without said traction protrusions bearing said weight of said user, both on said turf surface and on said surface other than turf, said traction protrusions deflecting under any weight borne by them, each of said removable cleats having:

(e) an overall height measured from said upper surface of said flange to a most downwardly extending point of one of (a) said traction protrusions and (b) said bearing portion, said overall height being between about 0.07 inch (about 1.78 mm) and about 0.25 inch (about 6.35 mm).

28. The athletic shoe of claim 27 wherein said overall height is about 0.21 inch (about 5.33 mm).

29. The athletic shoe of claim 27 wherein:

each of said protrusions has a protrusion height measured from a first end of said protrusion at said flange to a second end of said protrusion remote from said flange; and

said protrusion height is between about 0.07 inch (about 1.78 mm) and about 0.138 inch (about 3.5 mm).

30. The athletic shoe of claim 29 wherein said protrusion height is about 0.13 inch (about 3.3 mm).

31. The athletic shoe of claim 27 wherein said flange and said traction protrusions are molded from a first resilient elastomeric material.

32. The athletic shoe of claim 31 wherein said bearing portion is molded with said flange and said traction protrusions from said first resilient elastomeric material.

33. The athletic shoe of claim 31 wherein said bearing portion is co-molded with said flange and said traction

**10**

protrusions from a second polymeric material having abrasion resistance greater said first resilient elastomeric material.

34. The athletic shoe of claim 33 wherein said first resilient elastomeric material comprises polyurethane and said second polymeric material comprises an aramid-reinforced polymer.

35. The athletic shoe of claim 31 wherein said first resilient elastomeric material comprises polyurethane.

36. The athletic shoe of claim 27 wherein said traction protrusions are arranged adjacent said edge.

37. The athletic shoe of claim 36 further comprising a gusset extending between each of said traction protrusions and said flange in a direction away from said edge.

38. The athletic shoe of claim 27 wherein each of said traction protrusions comprises a rib.

39. The athletic shoe of claim 38 wherein:

said flange is circular; and

said rib lies on a radius of said flange.

40. The athletic shoe of claim 38 wherein:

said flange is circular; and

said rib lies on a chord of said flange.

41. The athletic shoe of claim 38 wherein:

said ribs lie on at least one circle on said flange; and

each said at least one circle is concentric with any other said at least one circle.

42. The athletic shoe of claim 38 wherein said rib has an arcuate cross section.

43. The athletic shoe of claim 38 wherein said rib has a triangular cross section.

44. The athletic shoe of claim 38 wherein said rib has a rectangular cross section.

45. The athletic shoe of claim 27 wherein each of said traction protrusions is substantially conical.

46. The athletic shoe of claim 27 wherein said bearing portion is a raised portion of said flange.

47. The athletic shoe of claim 46 wherein said raised portion comprises a domed portion.

48. The athletic shoe of claim 47 wherein said domed portion comprises at least one depressed portion.

49. The athletic shoe of claim 27 comprising between about four and about ten of said traction protrusions.

50. The athletic shoe of claim 27 further comprising a gusset extending between each of said traction protrusions and said flange in a direction away from said edge.

51. The athletic shoe of claim 27 wherein:

said edge of said flange defines a plane; and

each of said traction protrusions extends from said opposing lower surface along an axis defining an angle with a normal to said plane of between about 5° inward from said edge and about 15° outward toward said edge.

52. The athletic shoe of claim 51 wherein said axis is substantially perpendicular to said plane.

53. A removable cleat for use with an athletic shoe for providing to a user traction on a turf surface while withstanding abrasion on a surface other than turf, said athletic shoe having a sole, said sole having a plurality of sole attachment means for attachment of removable cleats, said removable cleat comprising:

(a) a flange having an upper surface, an opposing lower surface and an edge;

(b) flange attachment means extending from said upper surface of said flange for removably attaching said cleat to one of said sole attachment means of said sole of said shoe; and

6,052,923

**11**

(c) a plurality of perimeter traction protrusions circumferentially spaced solely around said edge of said flange on said lower surface to provide traction, said traction protrusions being deflectably resilient;

said flange having a central abrasion portion at the center of said lower surface, said central abrasion portion being a weight-bearing surface such as to support the majority of the body weight placed on the cleat and tending to keep weight off said traction protrusions, said traction protrusions deflecting on encountering a hard surface, to prolong the life of said traction protrusions and the golf shoe cleat.

54. A golf shoe cleat comprising:

a flange having an upper surface, an opposing lower surface and an edge;

flange attachment means extending from said upper surface of said flange for removably attaching said cleat to a sole attachment means of a sole of a shoe, and having an attachment axis;

an abrasion portion at the center of said lower surface, said abrasion portion (1) having an abrasion portion axis which is co-linear with said attachment axis, and (2) constituting a weight bearing surface such as to support the majority of the body weight placed on said golf shoe cleat; and

a plurality of perimeter traction protrusions arranged solely in a circular array, solely adjacent said edge, around said abrasion portion, to provide traction, said traction protrusions being deflectably resilient;

said traction protrusions, said lower surface and said abrasion portion being adapted so that body weight is borne substantially only by the center of the cleat, said traction protrusions deflecting under any weight borne by them so that as the cleat wears, said traction protrusions wear in a manner to allow said traction protrusions to continue to provide lateral traction throughout the life of the cleat.

55. A golf shoe comprising:

a sole;

a plurality of sole attachment means on said sole for attachment of golf shoe cleats; and

a plurality of golf shoe cleats, each of said golf shoe cleats comprising:

  (a) a flange having an upper surface, an opposing lower surface and an edge;

  (b) flange attachment means extending from said upper surface of said flange for removably attaching said

**12**

cleat to one of said sole attachment means of said sole of said shoe; and

(c) a plurality of perimeter traction protrusions circumferentially spaced solely around said edge of said flange on said lower surface to provide traction, said traction protrusions being deflectably resilient;

said flange having a central abrasion portion at the center of said lower surface, said central abrasion portion being a weight-bearing surface such as to support the majority of the body weight placed on the cleat and tending to keep weight off said traction protrusions, said traction protrusions deflecting on encountering a hard surface, to prolong the life of said traction protrusions and the golf shoe cleat.

56. A golf shoe comprising:

a sole;

a plurality of sole attachment means on said sole for attachment of golf shoe cleats; and

a plurality of golf shoe cleats, each of said golf shoe cleats comprising:

a flange having an upper surface, an opposing lower surface and an edge;

flange attachment means extending from said upper surface of said flange for removably attaching said cleat to a sole attachment means of a sole of a shoe, and having an attachment axis;

an abrasion portion at the center of said lower surface, said abrasion portion (1) having an abrasion portion axis which is co-linear with said attachment axis, and (2) constituting a weight bearing surface such as to support the majority of the body weight placed on said golf shoe cleat; and

a plurality of perimeter traction protrusions arranged solely in a circular array, solely adjacent said edge, around said abrasion portion, to provide traction, said traction protrusions being deflectably resilient;

said traction protrusions, said lower surface and said abrasion portion being adapted so that body weight is borne substantially only by the center of the cleat, said traction protrusions deflecting under any weight borne by them so that as the cleat wears, said traction protrusions wear in a manner to allow said traction protrusions to continue to provide lateral traction throughout the life of the cleat.

\* \* \* \* \*

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO : 6,052,923                    Page 1 of 2

DATED        : April 25, 2000

INVENTOR(S) : Faris W. McMullin

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

**Title Page**      under "[56] References Cited," after
"5,623,774   4/1997  Abbey ................. 36/134"
should be inserted
-- 5,782,017   7/1998  Ortscheid . --.

Column 3, line 27, "a" (third occurrence) should be
-- an --.

Column 4, line 24, "load bearing" should be
-- load-bearing --.

Column 6, line 37, "94 in" should be -- 94 is --;
           line 61, "Weight bearing" should be
-- Weight-bearing --.

Claim 7, column 8, line 27, after "greater" should be
inserted -- than --.

Claim 33, column 10, line 2, after "greater" should be
inserted -- than --.

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO   : 6,052,923                    Page 2 of 2

DATED       : April 25, 2000

INVENTOR(S) : Faris W. McMullin

It is certified that error appears in the above-identified patent and that said Letters Patent are hereby corrected as shown below:

```
Claim 54, column 11, line 24, "weight bearing" should be
-- weight-bearing --.

Claim 56, column 12, line 32, "weight bearing" should be
-- weight-bearing --.
```

Signed and Sealed this

Twenty-seventh Day of March, 2001

*Nicholas P. Godici*

**NICHOLAS P. GODICI**

*Acting Director of the United States Patent and Trademark Office*

*Attest:*

*Attesting Officer*

# EXHIBIT B

US006167641B1

(12) **United States Patent**

McMullin

(10) Patent No.: **US 6,167,641 B1**

(45) Date of Patent: *\*Jan. 2, 2001**

(54) **ATHLETIC SHOE CLEAT**

(75) Inventor: **Faris W. McMullin**, Boise, ID (US)

(73) Assignee: **Softspikes, Inc.**, Gaithersburg, MD (US)

( * ) Notice: Under 35 U.S.C. 154(b), the term of this patent shall be extended for 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/505,573**

(22) Filed: **Nov. 4, 1999**

**Related U.S. Application Data**

(63) Continuation of application No. 09/123,310, filed on Jul. 28, 1998, now Pat. No. 6,023,860.

(60) Provisional application No. 60/070,735, filed on Dec. 11, 1997.

(51) Int. Cl.[7] ............................. **A43B 5/00**; A43C 15/02

(52) U.S. Cl. ............................. **36/127**; 36/134; 36/59 R

(58) Field of Search ........................ 36/127, 134, 59 R, 36/67 R, 67 D

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 39,575 | 8/1863 | Hyatt et al. . |
| 180,578 | 8/1876 | Gunsalus . |
| D. 288,262 | 2/1987 | Yokoishi ............................. D2/317 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 2231216 | 9/1998 | (CA) . |
| 185659 | 6/1907 | (DE) . |
| 156642 | 7/1939 | (DE) . |
| 2529027 | 1/1977 | (DE) . |
| 2540426 | 3/1977 | (DE) . |
| 3438060 | 6/1985 | (DE) . |
| 4316650 | 11/1993 | (DE) . |
| 0 153 136 | 8/1985 | (EP) . |

| | | |
|---|---|---|
| 0 342 232 | 11/1989 | (EP) . |
| 0363217 | 4/1990 | (EP) . |
| 0 524 861 | 1/1993 | (EP) . |
| 493748 | 8/1919 | (FR) . |
| 807754 | 1/1937 | (FR) . |
| 6877 | 2/1896 | (GB) . |
| 2814 | 2/1914 | (GB) . |
| 401979 | 11/1933 | (GB) . |
| 1 263 960 | 2/1972 | (GB) . |
| 1378461 | 12/1974 | (GB) . |
| 1434282 | 5/1976 | (GB) . |
| 2004731 | 4/1979 | (GB) . |
| 2 053 658 | 2/1981 | (GB) . |
| 1587382 | 4/1981 | (GB) . |
| 2223394 | 4/1990 | (GB) . |
| 2248762 | 4/1992 | (GB) . |
| 2266223 | 10/1993 | (GB) . |
| 2322787 | 9/1998 | (GB) . |
| 467815 | 12/1951 | (IT) . |

(List continued on next page.)

OTHER PUBLICATIONS

Softsikes, Inc., advertisement, *Golf Digest*, Dec. 1996, p. 149.

*Primary Examiner*—Ted Kavanaugh

(74) *Attorney, Agent, or Firm*—Fish & Neave; Jeffrey H. Ingerman

(57) **ABSTRACT**

A cleat provides traction in golf shoes (and shoes for other turf sports) without adversely affecting turf, while providing a desired level of traction under as many different conditions as possible, is resistant to being worn down on hard surfaces. The cleat has a hub with an attachment stud for attaching to a receptacle in a shoe sole, and at least one traction element extending substantially laterally from the flange to engage grass blades to provide traction without damaging turf. The traction element is deflectably attached to the hub, preferably by a resilient arm having a turf-engaging portion at the end thereof. The traction element is preferably cantilevered out of the plane of the hub, and in any event preferably deflects when a hard surface is encountered, to protect the turf-engaging portion from abrasion.

**36 Claims, 28 Drawing Sheets**

## US 6,167,641 B1
### Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 320,882 | 10/1991 | Collins ........................... | D2/314 |
| D. 327,975 | 7/1992 | Saito et al. .................... | D2/314 |
| D. 341,479 | 11/1993 | Saito et al. .................... | D2/314 |
| D. 341,480 | 11/1993 | Saito et al. .................... | D2/317 |
| D. 341,704 | 11/1993 | Saito et al. .................... | D2/962 |
| D. 341,705 | 11/1993 | Saito et al. .................... | D2/962 |
| D. 341,938 | 12/1993 | Saito et al. .................... | D2/962 |
| D. 342,151 | 12/1993 | Saito et al. .................... | D2/962 |
| D. 342,152 | 12/1993 | Saito et al. .................... | D2/962 |
| D. 342,373 | 12/1993 | Saito et al. .................... | D2/962 |
| D. 385,988 | 11/1997 | McMullin ...................... | D2/962 |
| D. 387,548 | 12/1997 | McMullin ...................... | D2/962 |
| D. 389,299 | 1/1998 | McMullin ...................... | D2/962 |
| 416,861 | 12/1889 | Scafe . | |
| 485,459 | 11/1892 | Crocker . | |
| 962,719 | 6/1910 | Pratt . | |
| 982,278 | 1/1911 | Kline . | |
| 1,093,358 | 4/1914 | Schroeder . | |
| 1,243,209 | 10/1917 | Park . | |
| 1,304,616 | 5/1919 | Smith . | |
| 1,355,827 | 10/1920 | Finneran . | |
| 1,422,716 | 7/1922 | Jones . | |
| 1,749,351 | 3/1930 | McQueen . | |
| 1,876,195 | 9/1932 | Youmans . | |
| 2,258,805 | 10/1941 | Phillips ........................ | 36/59 |
| 2,336,632 | 12/1943 | Park ............................. | 36/59 |
| 2,491,596 | 12/1949 | Zaleski et al. ............... | 36/59 |
| 2,745,197 | 5/1956 | Holt ............................. | 36/2.5 |
| 2,803,070 | 8/1957 | Passidomo et al. .......... | 36/59 |
| 2,844,833 | 7/1958 | Odermatt ..................... | 12/146 |
| 2,895,235 | 7/1959 | Melchiona ................... | 36/59 |
| 3,487,563 | 1/1970 | Austin ......................... | 36/67 |
| 3,512,275 | 5/1970 | Leavitt ......................... | 36/59 |
| 3,559,310 | 2/1971 | Kiela ........................... | 36/7.3 |
| 3,561,140 | 2/1971 | Ludwig ........................ | 36/59 |
| 3,583,082 | 6/1971 | Jordan, Jr. ................... | 36/59 |
| 3,583,083 | 6/1971 | Drew ........................... | 36/62 |
| 3,656,245 | 4/1972 | Wilsom ........................ | 36/67 D |
| 3,672,077 | 6/1972 | Coles ........................... | 36/2.5 T |
| 3,747,238 | 7/1973 | Jankauskas .................. | 36/61 |
| 3,766,670 | 10/1973 | Nakajima ..................... | 36/67 B |
| 3,818,617 | 6/1974 | Dassler et al. ............... | 36/32 R |
| 3,859,739 | 1/1975 | Dassler ....................... | 36/67 D |
| 3,890,725 | 6/1975 | Lea et al. ..................... | 36/11.5 |
| 4,014,114 | 3/1977 | Jordan et al. ................ | 36/67 D |
| 4,141,158 | 2/1979 | Benseler et al. ............. | 36/32 R |
| 4,180,923 | 1/1980 | Dassler ....................... | 36/32 R |
| 4,205,466 | 6/1980 | Collins ......................... | 36/67 D |
| 4,233,759 | 11/1980 | Bente et al. .................. | 36/59 R |
| 4,299,038 | 11/1981 | Epple .......................... | 36/67 D |
| 4,309,376 | 1/1982 | Ueno e al. .................... | 264/241 |
| 4,330,950 | 5/1982 | Reddien ....................... | 36/127 |
| 4,366,632 | 1/1983 | Bente .......................... | 36/67 D |
| 4,375,728 | 3/1983 | Dassler ....................... | 36/32 R |
| 4,392,312 | 7/1983 | Crowley et al. .............. | 36/67 R |
| 4,492,047 | 1/1985 | Arff ............................. | 36/134 |
| 4,521,979 | 6/1985 | Blaser ......................... | 36/29 |
| 4,527,345 | 7/1985 | Lopez .......................... | 36/127 |
| 4,571,852 | 2/1986 | Lamarche et al. ............ | 36/32 R |
| 4,587,748 | 5/1986 | Collins ......................... | 36/127 |
| 4,633,600 | 1/1987 | Dassler et al. ............... | 36/134 |
| 4,689,901 | 9/1987 | Ihlenburg .................... | 36/126 |
| 4,723,366 | 2/1988 | Hagger ........................ | 36/134 |
| 4,727,661 | 3/1988 | Kuhn ........................... | 36/100 |
| 4,777,738 | 10/1988 | Giese et al. .................. | 36/32 R |
| 4,782,604 | 11/1988 | Wen-Shown ................. | 36/127 |
| 4,833,796 | 5/1989 | Flemming .................... | 36/134 |
| 4,837,949 | 6/1989 | Dufour ........................ | 36/127 |
| 4,885,851 | 12/1989 | Peterson ...................... | 36/127 |
| 5,029,405 | 7/1991 | DeHaitre ...................... | 36/134 |
| 5,033,211 | 7/1991 | Latraverse et al. ........... | 36/134 |
| 5,070,631 | 12/1991 | Fenton ......................... | 36/127 |
| 5,077,916 | 1/1992 | Beneteau ...................... | 36/114 |
| 5,259,129 | 11/1993 | Deacon et al. ............... | 36/124 |
| 5,367,793 | 11/1994 | Deacon et al. ............... | 36/127 |
| 5,483,760 | 1/1996 | Kataoka et al. .............. | 36/134 |
| 5,533,282 | 7/1996 | Kataoka et al. .............. | 36/129 |
| 5,623,774 | 4/1997 | Abbey ......................... | 36/134 |
| 5,791,071 | 8/1998 | Rosdail ........................ | 36/134 |
| 5,794,367 | 8/1998 | Carroll ........................ | 36/134 |
| 5,887,371 | 3/1999 | Curley, Jr. ................... | 36/127 |
| 5,901,472 | 5/1999 | Adam .......................... | 36/134 |
| 6,023,860 | 2/2000 | McMullin . | |
| 6,041,526 | 3/2000 | Collins . | |
| 6,052,923 | 4/2000 | McMullin . | |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 57-30003 | 7/1980 | (JP) . |
| 762928 | 5/1989 | (JP) . |
| 7-209 | 1/1995 | (JP) . |
| 3027022 | 5/1996 | (JP) . |
| 9-168405 | 6/1997 | (JP) . |
| WO91/03960 | 4/1991 | (WO) . |
| WO94/28750 | 12/1994 | (WO) . |
| WO97/18724 | 5/1997 | (WO) . |
| WO98/35575 | 8/1998 | (WO) . |



*FIG.I*



*FIG. 2*



*FIG.3*



*FIG. 4*



FIG. 5



FIG.6



*FIG. 7*



FIG. 8



*FIG. 9*

Case 1:99-mc-09999    Document 121-3    Filed 07/29/2008    Page 13 of 37



FIG. 10





FIG. 12



FIG. 13



FIG. 14



*FIG. 15*



FIG. 16



*FIG. 17*



*FIG. 18*



FIG. 19



*FIG. 20*



*FIG. 21*

Case 1:99-mc-09999    Document 121-3    Filed 07/29/2008    Page 25 of 37



*FIG. 22*



FIG.23



*FIG. 24*



FIG.25



FIG. 26



FIG. 27

Case 1:99-mc-09999    Document 121-3    Filed 07/29/2008    Page 31 of 37



*FIG. 28*

US 6,167,641 B1

**1**

## ATHLETIC SHOE CLEAT

### CROSS REFERENCE TO RELATED APPLICATION

This is a continuation of commonly-assigned U.S. patent application Ser. No. 09/123,310, filed Jul. 28, 1998, now U.S. Pat. No. 6,023,860, which claims the benefit of commonly-assigned U.S. Provisional Application No. 60/070,735, filed Dec. 11, 1997.

### BACKGROUND OF THE INVENTION

This invention relates to cleats for use with shoes worn on turf, and particularly to a golf cleat that provides enhanced traction without adversely affecting the turf, and at the same time is resistant to wear when worn on other surfaces.

The need for improved traction on turf surfaces is well known. Specialized shoes for many different sports—e.g., baseball, football, soccer and golf, among others—have structure provided on their soles to enhance traction. Taking golf as a representative example throughout the remainder of this specification, it has long been known to provide golf shoes with relatively large metal spikes for traction.

For almost as long as they have been in use, golf spikes (and similar structures provided on athletic shoes for other turf sports) have also been known to adversely affect the turf of golf courses (or other playing surfaces), and particularly putting greens. The large spikes tear into the putting green surface, particularly when a golfer drags his or her feet as many do, leaving "spike marks" that disrupt the carefully manicured surface and adversely affect the trajectories of putted golf balls. So well known are spike marks in golf that the rules of the game have been adapted to account for their presence (the rules prohibit repairing spike marks before putting). In addition to affecting players' putting, spike marks also affect groundskeepers, who after a day of play by numerous spike-wearing golfers have to spend hours repairing the various putting greens on their golf courses.

In addition to the annoyance to players and groundskeepers caused by the marks that they leave, traditional golf shoe spikes also affect the health of grass all over the golf course, not only on greens. First, the spikes penetrate a significant distance into the ground, frequently damaging a portion of the grass plant above the roots, known as the "crown." Damage to the crown often kills the plant. Second, the spikes pick up seeds of undesirable plants—including weeds and grasses (e.g., *Poa annua*)—and inoculate those seeds into the greens, causing growth of undesirable plants.

Traditional metal golf spikes are also damaging to the floor surfaces of golf clubhouses, and may actually exacerbate slipping on certain clubhouse floor surfaces such as marble. Traditional metal golf spikes even cause damage to paved outdoor walkways.

One known solution to the problems caused by traditional golf spikes is shown in commonly-assigned U.S. Pat. Nos. 5,259,129 and 5,367,793, which are hereby incorporated by reference in their entirety. Those patents show a golf cleat that attaches to the same golf shoe fittings designed for traditional spikes. The cleat is preferably made from a plastic material having a preferably convex lower surface bearing a plurality of ribs that distribute the golfer's weight to produce a plurality of gripping forces—which are mainly frictional—in a plurality of directions, without puncturing the turf, thereby reducing the adverse affects described above.

Cleats such as those described in the aforementioned patents recently have become increasingly popular. Other

**2**

nonmetallic alternatives to metal spikes, having different types of ribs or protrusions, have also come into use.

One drawback of nonmetallic spike alternatives has been that, because the cleats are worn not only on the turf portions of the golf course, but also on paved walkways and other hard surfaces, the ribs or protrusions that provide the traction on turf are gradually abraded away by the hard surfaces, much faster than they would be if worn exclusively while walking on turf. As a result, the ability of the cleat to provide traction is reduced or destroyed, and the cleat must be replaced sooner than if it were worn exclusively on turf.

One solution to this wear problem is shown in copending, commonly-assigned U.S. patent application Ser. No. 08/823,901, filed Mar. 25, 1997. The cleat shown there has a flange with an attachment stud for attaching to a receptacle in a shoe sole, a plurality of traction protrusions on the flange to engage grass blades to provide traction without damaging turf, and a bearing portion that bears the wearer's weight, particularly when the wearer walks on a hard surface. In the preferred embodiment shown, the bearing portion is a dome-shaped central portion. The protrusions are thereby less affected by the abrading effects of the hard surface, and last longer before they are worn to the point that they must be replaced.

In all of the foregoing cleats, however, if one of the traction elements encounters a hard surface, it will be abraded. It would be desirable to be able to provide an athletic shoe cleat having traction elements whose abrasion when worn on hard surfaces is minimized.

It would also be desirable to provide such a cleat having enhanced traction.

### SUMMARY OF THE INVENTION

It is an object of this invention to provide an athletic shoe cleat having traction elements whose abrasion when worn on hard surfaces is minimized.

It is also an object of this invention to provide such a cleat having enhanced traction.

In accordance with the present invention, there is provided a removable cleat for use with an athletic shoe for providing to a user traction on a turf surface. The athletic shoe has a sole, and the sole has a plurality of sole attachment means for attachment of removable cleats. Each removable cleat comprises a hub having a first side facing the sole and a second side facing away from the sole. A hub attachment means extends from the first side for attaching the hub to one of the sole attachment means. At least one traction element extends substantially laterally from the hub. The traction element has a turf-engaging portion projecting away from the second side of the hub for engagement with turf blades to provide traction without puncturing turf. The traction element is deflectably attached to the hub so that the turf-engaging portion deflects when it encounters a hard surface, to minimize wear of the turf-engaging portion by the hard surface.

An athletic shoe incorporating such cleats is also provided.

By "substantially without puncturing the turf" is meant that the turf-engaging portion extends into and engages the grass blades of the turf, but does not penetrate into the ground or, if it does penetrate into the ground on certain types of turf surfaces (such as closely cropped greens), penetrates into the ground only a negligible amount insufficient to significantly damage the grass plant. What is important is that the crown of the grass plant not be damaged.

US 6,167,641 B1

3

## BRIEF DESCRIPTION OF THE DRAWINGS

The above and other objects and advantages of the invention will be apparent upon consideration of the following detailed description, taken in conjunction with the accompanying drawings, in which like reference characters refer to like parts throughout, and in which:

FIG. 1 is a plan view of the underside of an athletic shoe incorporating a first preferred embodiment of a cleat according to the present invention;

FIG. 2 is an exploded bottom perspective view of the athletic shoe of FIG. 1;

FIG. 3 is a side elevational view of the athletic shoe incorporating the first preferred embodiment of the cleat according to the present invention;

FIG. 4 is a bottom perspective view of a first preferred embodiment of a cleat according to the present invention;

FIG. 5 is a side elevational view of the cleat of FIG. 4;

FIG. 6 is a side elevational view of the cleat of FIGS. 4 and 5 compressed against a hard surface;

FIG. 7 is a bottom perspective view of a second preferred embodiment of a cleat according to the the present invention;

FIG. 8 is a bottom plan view of the cleat of FIG. 7;

FIG. 9 is a side elevational view of the cleat of FIGS. 7 and 8;

FIG. 10 is a bottom perspective view of a third preferred embodiment of a cleat according to the present invention;

FIG. 11 is a bottom plan view of the cleat of FIG. 10;

FIG. 12 is a side elevational view of the cleat of FIGS. 10 and 11;

FIG. 13 is a bottom perspective view of a fourth preferred embodiment of a cleat according to the present invention;

FIG. 14 is a bottom plan view of the cleat of FIG. 13;

FIG. 15 is a side elevational view of the cleat of FIGS. 13 and 14;

FIG. 16 is a bottom perspective view of a fifth preferred embodiment of a cleat according to the present invention;

FIG. 17 is a bottom plan view of the cleat of FIG. 16;

FIG. 18 is a side elevational view of the cleat of FIGS. 16 and 17;

FIG. 19 is a bottom perspective view of a sixth preferred embodiment of a cleat according to the present invention;

FIG. 20 is a bottom plan view of the cleat of FIG. 19;

FIG. 21 is a side elevational view of the cleat of FIGS. 19 and 20;

FIG. 22 is a bottom perspective view of a seventh preferred embodiment of a cleat according to the present invention;

FIG. 23 is a bottom plan view of the cleat of FIG. 22;

FIG. 24 is a side elevational view of the cleat of FIGS. 22 and 23;

FIG. 25 is a bottom perspective view of an eighth preferred embodiment of a cleat according to the present invention;

FIG. 26 is a side elevational view of the cleat of FIG. 25;

FIG. 27 is a bottom perspective view of an ninth preferred embodiment of a cleat according to the present invention; and

FIG. 28 is a side elevational view of the cleat of FIG. 25.

## DETAILED DESCRIPTION OF THE INVENTION

In accordance with the present invention, traction is provided for athletic activities on turf surfaces by providing

4

an athletic shoe having cleats, each of which has a hub with at least one traction element extending substantially laterally from the hub. The cleat also preferably includes a threaded stud or shaft or other attachment device which may be integral with, or removable from, the central hub, for attaching the cleat to a corresponding threaded or other socket in the sole of an athletic shoe. Each traction element preferably acts substantially independently from other traction elements, if any, although adjacent traction elements, if any, may cooperate to provide traction.

Each traction element preferably has a turf-engaging portion for engagement with grass blades in the turf to provide traction. Further, each traction element preferably is deflectably mounted to the hub, so that on a hard surface, the turf-engaging portion of the traction element is deflected, to reduce wear of the traction-engaging portions. Although the entire cleat, including the hub, may be made from a single material capable of deflection, the turf-engaging portion could be made from a more abrasion-resistant material. For example, most of the cleat could be made of polyurethane or another flexible, durable elastomer, while the turf-engaging portion is made from a "filled elastomer"—i.e., an elastomer (such as the same elastomer as the remainder of the cleat) filled with, e.g., particulate material, to make it more abrasion-resistant. The two materials could, for example, be co-molded to form the cleat. Similarly, the hub could be made from yet another material.

The traction element preferably extends substantially laterally from the hub—i.e., the projection of the traction element into the plane of the hub, which when the cleat is attached to a shoe is parallel to the plane of the shoe sole, is larger than the projection of the traction element into a plane perpendicular to that of the shoe sole. Indeed, in some embodiments, the traction element may lie substantially in the plane of the hub, so that it lies substantially along the sole when the cleat is attached to the shoe.

It is preferred that the traction element include a preferably substantially resilient arm extending from the hub, and a turf-engaging portion at the end of the arm, although the turf-engaging portion could begin at the hub, or could be integral with the arm rather than being a distinct portion. The turf-engaging portion would preferably extend generally perpendicularly to the plane of the hub, so that it extends downward between the grass blades when the cleat is attached to a shoe being worn on turf, although it may extend at some other angle. In an embodiment where the arm lies substantially against the shoe sole, the arm is preferably at least torsionally resilient, so that the turf-engaging portion can deflect away from a hard surface by "rolling" onto its side as the arm twists when a hard surface is encountered. Alternatively, when the arm lies substantially against the shoe sole, the turf-engaging portion can fold against the sole when it encounters a hard surface, by virtue of the resilient nature of the material from which it is made.

In a more particularly preferred embodiment, the traction element does not lie substantially in the plane of the hub. Rather, while the projection of the traction element into the plane of the hub is larger, the traction element nevertheless has a significant projection perpendicular to that plane. In other words, when the cleat is attached to a shoe, the traction element is cantilevered away from the shoe sole, with the turf-engaging portion extending from the end of the traction element substantially perpendicularly to the shoe sole. It is particularly preferred that in the cantilevered embodiment, the traction element include the aforementioned arm, with the turf-engaging portion attached to the end of the arm.

Although it is within the invention for each cleat to have a single traction element with a single turf-engaging portion,

US 6,167,641 B1

| 5 | 6 |

as described below, it is preferred that there be a plurality of traction elements, each having a turf-engaging portion.

When a user wears the cantilevered embodiment in deep grass or turf, the traction elements can extend deeply into the turf for better traction, while still not penetrating the ground or the crowns of grass plants, and yet on a closely-cropped green, the cantilevered arms can deflect against the shoe sole to minimize the projection of the traction elements, thereby minimizing puncturing of the ground and reducing marking on the green. Moreover, on hard surfaces, the deflection of the arms against the sole dissipates energy that otherwise would go into erosion or abrasion of the turf-engaging portions, and at the same time provides traction on the hard surface, minimizing slippage.

Preferably, gussets are provided between the turf-engaging portions and the arms of the traction elements. The gussets, which are preferably resilient, preferably act as springs to pull the turf-engaging portions back into their upright positions when the arms resume their cantilevered position as the user lifts his or her foot from the hard surface or returns to a turf surface. In addition, each gusset preferably acts as a wear surface when the arms are deflected against the shoe sole, so that even the sides of the turf-engaging portions are substantially protected from abrasion. For this reason, the gussets preferably are provided on the side of the turf-engaging portion facing the hub.

The turf-engaging portions preferably are small prisms, cones, etc., which hang down between the grass blades and provide traction by interacting with the blades to resist lateral motion relative to the blades. However, the cleat according to the present invention may also provide traction by the cooperation of each pair of adjacent traction elements, as the V-shaped "notch" between them traps grass when the user's foot moves through the grass. Moreover, in the particularly preferred cantilevered embodiment, traction may also be provided as grass blades are trapped between the shoe sole and the cantilevered arm as the arm bends toward the sole (even on grass this bending will occur to some degree), mechanically locking the shoe to the grass. As the user lifts his or her foot, the arms spring outward, releasing the hold on the grass blades just at the time that the user no longer desires to be locked in place.

Finally, in the cantilevered embodiment, the continual flexing of the arms preferably results in a self-cleaning action that removes debris that otherwise could clog the cleat and reduce its ability to provide traction. In addition, a clogged cleat would be more likely to leave an undesirable indentation in the turf, especially on golf greens. The self-cleaning action thus further minimizes the damage to greens by the cleats of the invention.

The invention will now be described with reference to FIGS. 1–25.

FIGS. 1–3 show a shoe 10 bearing a plurality of cleats 40 according to the present invention. As shown, there are preferably eleven cleats 40, although any other number may be provided. Each cleat 40 preferably has an attachment stud 20, which preferably is threaded for attachment to shoe 10 via one of threaded sockets 21, preferably provided for this purpose in shoe sole 22. Of course, other types of attachment could be provided.

Cleat 40 is shown in more detail in FIGS. 4–6. In addition to stud 20, discussed above, each cleat 40 preferably has a preferably circular hub 41 bearing a plurality of traction elements 42 of the type described above, which preferably extend substantially laterally from hub 41—i.e., their projections in the plane of hub 41 are larger than their projec-

tions in a plane perpendicular to the plane of hub 41. As shown in FIGS. 1–6, each traction element 42 preferably includes an arm 43 and a turf-engaging portion 44. Traction elements 42 are preferably mounted deflectably to hub 41, so that traction elements 42 can deflect when they encounter a hard surface such as a curved surface or even a closely cropped golf green or other closely cropped grass surface. Where, as in FIGS. 1–6, traction elements 42 include arms 43 separate from the turf-engaging portions 43, preferably at least the arms are deflectably mounted to hub 41. Most preferably, arms 43 are made from a resilient material such as polyurethane or other flexible elastomer. Turf-engaging portions 44 can be made from the same material as arms 43, provided that the material is sufficiently durable, or at least a portion, such as tip 61, of turf-engaging portions 44 can be made from a more abrasion-resistant material such as a filled elastomer as described above. When turf-engaging portions 44 are made from a different material than arms 43, turf-engaging portions 44 preferably are co-molded with arms 43. Similarly, hub 41 could be made from the same material as arms 43, or could be a different material. Preferably, however, cleat 40 is made entirely from a single material such as polyurethane or other flexible, durable elastomer, from which it is preferably made by injection molding.

Traction elements 42 provide traction on turf preferably by the interengagement of turf-engaging portions 44 with the individual grass blades without penetrating or puncturing the crown of any individual grass plant of the turf, and without penetrating or puncturing the soil. Turf-engaging portions 44 preferably extend down between the grass blades and preferably are restrained by the grass blades themselves against lateral motion, thereby providing traction. Because of the deflectable mounting of traction elements 42, turf-engaging portions 44 can be allowed to protrude further into the grass blades than previously known non-penetrating athletic shoe cleats, while nevertheless avoiding or minimizing damage to the turf.

Another component of the traction provided by cleat 40 is the result of the trapping or jamming of grass blades into the substantially V-shaped notches 45 between traction elements 42. Still another component is the result of the trapping or jamming of grass blades into the V-shaped spaces 46 between traction elements 42 and the sole of shoe 10. This latter mechanism also provides enhanced traction on closely cropped grass surfaces as described below in connection with FIG. 6.

FIG. 6 shows how the "cantilevered" embodiment of FIGS. 1–6 both provides enhanced traction on closely-cropped surfaces while reducing turf damage, and also avoids excessive wear when worn on hard surfaces. As seen in FIG. 6, when a hard surface 60 is encountered, arms 43 preferably deflect until they are substantially parallel to the plane of hub 41 and the sole of shoe 10. This deflection minimizes the abrasion of tips 61 of turf-engaging portions 44, maximizing their useful life. Moreover, the deflection of traction elements 42 absorbs energy that otherwise would go into abrasion of tips 61.

A respective gusset 62, preferably of the same resilient material as arm 43, preferably is provided between arm 43 and turf-engaging portion 44 to act as a spring to help return turf-engaging portion 44 to its upright position once it is removed from hard surface 60. By placing each gusset 62 preferably on the side of turf-engaging portion 44 facing hub 41, the gusset 62 can be made to function as a wear surface 63, protecting even the sides of turf-engaging portions 44 and thus further extending their life. In addition, because traction elements 42 are urged against hard surface 60 as

US 6,167,641 B1

7                                                                                      8

they attempt to spring back, then assuming an appropriately resilient material, they, or the edges of gussets 62 if provided, could provide traction against the hard surface

The position assumed by traction elements 42 in FIG. 6 can also be the result of encountering a closely cropped grass surface such as a golf green. As turf-engaging portions 44 begin to encounter the ground under the grass blades, traction elements 42 deflect as shown, minimizing penetration of the turf and damage to the grass plants and the manicured surface of the green. In addition, a further component of traction is provided as grass blades are trapped between the shoe sole and traction elements 42. The blades are released when the user picks up his or her foot, just when the traction is no longer desired. This component of traction may occur on other grass surfaces as well, to the extent that there may be some deflection of traction elements 42 even on those surfaces.

Cleat 40 as shown in FIGS. 1–6 includes threaded stud 20 as an integral part of the cleat. However, the threaded attachment may be provided as a separate element—e.g., a conventional screw—with a suitable hole provided in hub 41 through which the screw may be inserted into threaded socket 21 in shoe sole 22. The embodiments shown in FIGS. 7–24 are of the latter type. However, it should be understood that just as cleat 40 of FIGS. 1–6 could be provided with a separate threaded attachment, so too can the embodiments of FIGS. 7–24 be provided with an integral threaded stud.

Cleat 70, shown in FIGS. 7–9, has a hub 741 and plurality of traction elements 742 extending substantially in the plane of hub 741, so that when cleat 70 is installed in a shoe, traction elements 742 would lie substantially against the shoe sole (not shown), rather than being cantilevered. Hub 741 has a hole 71 therein for insertion of a threaded attachment, such as a screw; as set forth above, an integral threaded stud could also be provided. In addition to being of the type that is not cantilevered, each traction element 742 lacks a separate arm and turf-engaging portion. Rather, each traction element 742 is a unitary traction element that is substantially rectangular, and is twisted out of the plane of hub 741. The leading edge 744 of each traction element 742 serves as the turf-engaging portion. Although traction elements 742 lie against the sole of the shoe to which cleat 70 is attached, each traction element 742 nevertheless can deflect torsionally when a hard surface is encountered, to reduce wear of leading edge 744 and to minimize the penetration of leading edge 744 into the turf. It will be understood that traction elements like traction elements 742, which are not separated into an arm and a turf-engaging portion, also can be used in a cleat (not shown) in which the traction elements are cantilevered out of the plane of the hub.

FIGS. 10–12 are, respectively, top perspective, top plan, and side elevational views of a third preferred embodiment 100 of a cleat according to the present invention in which traction elements 1042 include turf-engaging portions 1044 resembling triangular or trapezoidal prisms having a substantially isosceles triangular cross section. Each turf-engaging portion 1044 preferably is attached to central hub 1041 by a preferably flexible arm 1043. A threaded stud or shaft (not shown), for attachment to a suitable receptacle in an athletic shoe, is formed either integrally with, or separately from but attached to, cleat 100, or a screw may be inserted through hole 101 to attach cleat 100 to a shoe.

FIGS. 13–15 are, respectively, top perspective, top plan, and side elevational views of a fourth preferred embodiment 130 of a cleat according to the present invention in which

traction elements 1342 include turf-engaging portions 1344 resembling triangular or trapezoidal prisms having a substantially equilateral triangular cross section. Each turf-engaging portion 1344 preferably is attached to central hub 1341 by a preferably flexible arm 1343. A threaded stud or shaft (not shown), for attachment to a suitable receptacle in an athletic shoe, is formed either integrally with, or separately from but attached to, cleat 130, or a screw may be inserted through hole 131 to attach cleat 130 to a shoe.

FIGS. 16–18 are, respectively, top perspective, top plan, and side elevational views of a fifth preferred embodiment 160 of a cleat according to the present invention in which turf-engaging portions 1644 of traction elements 1642 are substantially frustoconical. Each turf-engaging portion 1644 preferably is attached to central hub 1641 by a preferably flexible arm 1643, reinforced by gusset 1662 between turf-engaging portion 1644 and arm 1643. A threaded stud or shaft (not shown), for attachment to a suitable receptacle in an athletic shoe, is formed either integrally with, or separately from but attached to, cleat 160, or a screw may be inserted through hole 161 to attach cleat 160 to a shoe.

FIGS. 19–21 are, respectively, top perspective, top plan, and side elevational views of a sixth preferred embodiment 210 of a cleat according to the present invention, which is similar to cleat 160, but in which arms 2143 do not angle away as much from the plane of hub 2141 as do arms 1643 from the plane of hub 1641. A threaded stud or shaft (not shown), for attachment to a suitable receptacle in an athletic shoe, is formed either integrally with, or separately from but attached to, cleat 190, or a screw may be inserted through hole 191 to attach cleat 190 to a shoe.

FIGS. 22–24 are, respectively, top perspective, top plan, and side elevational views of a seventh preferred embodiment 240 of a cleat according to the present invention in which turf-engaging portions 2444 of traction elements 2442 are substantially semicylindrical at their tips 242. Each turf-engaging portion 2444 preferably is attached to central hub 2441 by a preferably flexible arm 2443 that preferably is substantially curved out of the plane of hub 2441. It will be noted that in this embodiment portion 2444 is integral with arm 2443 rather than being a distinct portion. A threaded stud or shaft (not shown), for attachment to a suitable receptacle in an athletic shoe, is formed either integrally with, or separately from but attached to, cleat 240, or a screw may be inserted through hole 241 to attach cleat 240 to a shoe.

Like cleat 40, each of cleats 70, 100, 130, 160, 190 and 240 is preferably molded as a unitary body (either with or without the threaded stud or shaft), preferably from a flexible, durable elastomeric material such as polyurethane. Alternatively, however, again like cleat 40, each of cleats 70, 100, 130, 160, 190 and 240 could be molded as two or more separate parts (not shown), which are then fastened together, preferably in such a way that they cannot be separated. As a further alternative, like cleat 40, each of cleats 70, 100, 130, 160, 190 and 240 could be a comolding of two separate materials.

While each of the cleats shown in FIGS. 1–24 has a plurality of traction elements, an eighth preferred embodiment 250 of a cleat according to the present invention is shown in FIGS. 25 and 26. Cleat 250 has a single cantilevered traction element in the form of a preferably continuous flange 251 cantilevered from hub 2541. Flange 251 preferably has the appearance of a truncated cone, and may further have a depending skirt (not shown), preferably substantially perpendicular to hub 2541. Flange 251 preferably is made

US 6,167,641 B1

9

from a material sufficiently resilient to allow all of flange 251 to be deflected toward the plane of hub 2541 without damaging flange 251. Moreover, flange 251 may be cut radially (not shown) to form a plurality of separate, but contiguous, traction elements. In addition, flange 251 may extend less than completely around hub 2541, and there may be other embodiments within the invention having only a single traction element.

A ninth preferred embodiment 270 of a cleat according to the present invention is shown in FIGS. 27 and 28. Cleat 270 is derived from cleat 250 by removing substantially triangular portions 271 from flange 251, creating a plurality of non-contiguous traction elements 272 extending from hub 2741, as opposed to merely cutting flange 251 as described (but not shown) above to create contiguous traction elements.

Thus it is seen that an athletic shoe cleat having traction elements whose abrasion when worn on hard surfaces is minimized, yet which provides enhanced traction, has been provided. One skilled in the art will appreciate that the present invention can be practiced by other than the described embodiments, which are presented for purposes of illustration and not of limitation, and the present invention is limited only by the claims which follow.

What is claimed is:

1. A removable cleat for use with an athletic shoe for providing to a user traction on a turf surface, said athletic shoe having a sole, said sole having a plurality of sole attachment means for attachment of removable cleats, said removable cleat having a relaxed configuration in absence of outside force on said cleat and being deflectable out of said relaxed configuration under action by outside force on said cleat, said cleat comprising:

a hub having a perimeter, a first side facing said sole and a second side facing away from said sole;

hub attachment means extending from said first side for attaching said hub to one of said sole attachment means; and

at least one traction element extending when in said relaxed configuration substantially laterally substantially from said perimeter of said hub and having a turf-engaging portion projecting when in said relaxed configuration away from, and substantially perpendicularly to, said second side of said hub for engagement with turf blades to provide traction without puncturing turf, said traction element being deflectably attached substantially to said perimeter of said hub so that said turf-engaging portion deflects when it encounters a hard surface, to minimize wear of said turf-engaging portion by said hard surface.

2. The removable cleat of claim 1 wherein said at least one traction element comprises a plurality of traction elements.

3. The removable cleat of claim 2 wherein:

each of said traction elements comprises an arm extending substantially laterally from said perimeter of said hub; and

said turf-engaging portion is attached to said arm.

4. The removable cleat of claim 3 wherein said arm is resilient, said turf-engaging portions being deflectably attached substantially to said perimeter of said hub by virtue of said arm being resilient.

5. The removable cleat of claim 3 wherein said arm extends away from said second side of said hub, such that when said removable cleat is attached to a shoe sole, said arm is cantilevered away from said shoe sole.

6. The removable cleat of claim 5 wherein said arm is substantially resilient, whereby when said removable cleat is used on a hard surface, said arm deflects toward said shoe sole.

10

7. The removable cleat of claim 3 wherein said hub, said arm and said turf-engaging portion are made from a single material.

8. The removable cleat of claim 7 wherein said single material is substantially resilient.

9. The removable cleat of claim 3 wherein said hub and said arm are made from a first material and at least a portion of said turf-engaging portion is made from a second material more resistant to abrasion than said first material.

10. The removable cleat of claim 9 wherein said turf-engaging portion has a tip for engaging said turf blades and said tip is made from said second material.

11. The removable cleat of claim 10 wherein said turf-engaging portion is made substantially entirely from said second material.

12. The removable cleat of claim 1 further comprising a gusset extending from said traction.

13. The removable cleat of claim 12 wherein said gusset is resilient.

14. The removable cleat of claim 1 wherein said hub and said at least one traction element are made from a single material.

15. The removable cleat of claim 14 wherein said single material is substantially resilient.

16. The removable cleat of claim 1 wherein said hub is made from a first material and at least a portion of said at least one traction element is made from a second material more resistant to abrasion than said first material.

17. The removable cleat of claim 16 wherein said at least one traction element has a tip for engaging said turf blades and said tip is made from said second material.

18. The removable cleat of claim 17 wherein said at least one traction element is made substantially entirely from said second material.

19. An athletic shoe comprising:

a sole;

a plurality of sole attachment means on said sole for attachment of removable cleats; and

a plurality of removable cleats for use with said athletic shoe for providing to a user traction on a turf surface, said removable cleat having a relaxed configuration in absence of outside force on said cleat and being deflectable out of said relaxed configuration under action by outside force on said cleat, said cleat comprising:

a hub having a perimeter, a first side facing said sole and a second side facing away from said sole, hub attachment means extending from said first side for attaching said hub to one of said sole attachment means, and

at least one traction element extending when in said relaxed configuration substantially laterally substantially from said perimeter of said hub and having a turf-engaging portion projecting when in said relaxed configuration away from, and substantially perpendicularly to, said second side of said hub for engagement with turf blades to provide traction without puncturing turf, said traction element being deflectably attached substantially to said perimeter of said hub so that said turf-engaging portion deflects when it encounters a hard surface, to minimize wear of said turf-engaging portion by said hard surface.

20. The athletic shoe of claim 19 wherein said at least one traction element comprises a plurality of traction elements.

21. The athletic shoe of claim 20 wherein:

each of said traction elements comprises an arm extending substantially laterally from said perimeter of said hub; and

said turf-engaging portion is attached to said arm.

US 6,167,641 B1

**11**

22. The athletic shoe of claim 21 wherein said arm is resilient, said turf-engaging portions being deflectably attached substantially to said perimeter of said hub by virtue of said arm being resilient.

23. The athletic shoe of claim 21 wherein said arm extends away from said second side of said hub, such that when said removable cleat is attached to said shoe sole, said arm is cantilevered away from said shoe sole.

24. The athletic shoe of claim 23 wherein said arm is substantially resilient, whereby when said removable cleat is used on a hard surface, said arm deflects toward said shoe sole.

25. The athletic shoe of claim 21 wherein said hub, said arm and said turf-engaging portion are made from a single material.

26. The athletic shoe of claim 25 wherein said single material is substantially resilient.

27. The athletic shoe of claim 21 wherein said hub and said arm are made from a first material and at least a portion of said turf-engaging portion is made from a second material more resistant to abrasion than said first material.

28. The athletic shoe of claim 27 wherein said turf-engaging portion has a tip for engaging said turf blades and said tip is made from said second material.

**12**

29. The athletic shoe of claim 28 wherein said turf-engaging portion is made substantially entirely from said second material.

30. The athletic shoe of claim 19 further comprising a gusset extending from said traction element.

31. The athletic shoe of claim 30 wherein said gusset is resilient.

32. The athletic shoe of claim 19 wherein said hub and said at least one traction element are made from a single material.

33. The athletic shoe of claim 30 wherein said single material is substantially resilient.

34. The athletic shoe of claim 19 wherein said hub is made from a first material and at least a portion of said at least one traction element is made from a second material more resistant to abrasion than said first material.

35. The athletic shoe of claim 34 wherein said at least one traction element has a tip for engaging said turf blades and said tip is made from said second material.

36. The athletic shoe of claim 35 wherein said at least one traction element is made substantially entirely from said second material.

\* \* \* \* \*

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Softspikes, LLC and Pride Manufacturing, LLC | MacNeill Engineering Company, Inc. |

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Maryellen Noreika, MORRIS, NICHOLS, ARSHT & TUNNELL LLP,
1201 North Market Street, P.O. Box 1347,
Wilmington, DE 19899-1347, (302) 658-9200

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |

| | PERSONAL INJURY | | |
|---|---|---|---|
| | ☐ 362 Personal Injury - Med. Malpractice | | |
| | ☐ 365 Personal Injury - Product Liability | | |
| | ☐ 368 Asbestos Personal Injury Product Liability | | |
| | **PERSONAL PROPERTY** | | |
| | ☐ 370 Other Fraud | | |
| | ☐ 371 Truth in Lending | | |
| | ☐ 380 Other Personal Property Damage | | |
| | ☐ 385 Property Damage Product Liability | | |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | |
|---|---|---|---|---|
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | ☐ 891 Agricultural Acts |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | ☐ 892 Economic Stabilization Act |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | ☐ 893 Environmental Matters |
| | | | | ☐ 894 Energy Allocation Act |
| | | | | ☐ 895 Freedom of Information Act |
| | | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 271

Brief description of cause: Patent infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  7/29/08

SIGNATURE OF ATTORNEY OF RECORD  *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**      Example:          U.S. Civil Statute: 47 USC 553
                                                 Brief Description: Unauthorized reception of cable service

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOFTSPIKES, LLC and PRIDE
MANUFACTURING, LLC,

             Plaintiffs,

      v.

MACNEILL ENGINEERING COMPANY, INC.,

             Defendant.

C.A. No. _____

## PLAINTIFF PRIDE MANUFACTURING, LLC'S RULE 7.1 STATEMENT

Pursuant to Fed. R. Civ. P. 7.1(a), plaintiff Pride Manufacturing, LLC states that it has no publicly traded parent corporation and that no publicly traded corporation owns 10% or more of its stock.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com
psaindon@mnat.com

*Attorneys for Softspikes, LLC and*
*Pride Manufacturing, LLC*

July 29, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SOFTSPIKES, LLC and PRIDE
MANUFACTURING, LLC,

     Plaintiffs,

   v.

MACNEILL ENGINEERING COMPANY, INC.,

     Defendant.

)
)
)
)
)
)
)
)
)
)

C.A. No. _____

## PLAINTIFF SOFTSPIKES, LLC'S RULE 7.1 STATEMENT

  Pursuant to Fed. R. Civ. P. 7.1(a), plaintiff Softspikes, LLC states that it has no publicly traded parent corporation and that no publicly traded corporation owns 10% or more of its stock.

      MORRIS, NICHOLS, ARSHT & TUNNELL LLP

      _Maryellen Noreika_

      Jack B. Blumenfeld (#1014)
      Maryellen Noreika (#3208)
      Paul Saindon (#5110)
      1201 North Market Street
      P.O. Box 1347
      Wilmington, DE  19899-1347
      (302) 658-9200
      jblumenfeld@mnat.com
      mnoreika@mnat.com
      psaindon@mnat.com

      *Attorneys for Softspikes, LLC and*
      *Pride Manufacturing, LLC*

July 29, 2008

✎AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of _____ Delaware _____

Softspikes, LLC and
Pride Manufacturing, LLC,
                    Plaintiffs,                    **SUMMONS IN A CIVIL CASE**
          V.

MacNeill Engineering Company, Inc.,               CASE NUMBER:
                    Defendant.

TO: (Name and address of Defendant)
    MacNeill Engineering Company, Inc.
    c/o Secretary of State
    Division of Corporations
    John G. Townsend Building
    401 Federal Street - Suite 4
    Dover, DE  19901

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

    Maryellen Noreika
    Morris, Nichols, Arsht & Tunnell LLP
    1201 North Market Street
    P.O. Box 1347
    Wilmington, DE  19899

an answer to the complaint which is served on you with this summons, within ___twenty (20)___ days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

_____
CLERK                                              DATE

_____
(By) DEPUTY CLERK

✎AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[(1)] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

  I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
               *Date*                              *Signature of Server*


               _____
               *Address of Server*

_____

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.