## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | |
|---|---|
| Principal Life Insurance Company,<br><br>                Plaintiff,<br><br>v.<br><br>Christiana Bank and Trust Company, as<br>Trustee for the Lawrence Rucker Insurance<br>Trust 8.15.2007<br><br>                Defendant. | No.<br><br>**COMPLAINT FOR DECLARATORY<br>RELIEF**<br><br>Jury Trial Demanded |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Principal Life Insurance Company ("Principal Life"), by and through its attorneys, hereby files this Complaint for Declaratory Judgment, and in support thereof, avers as follows:

1.     This is an action for Declaratory Judgment under 28 U.S.C. § 2201.  Principal Life seeks a declaration relative to its rights and obligations under a policy of life insurance issued on the life of Lawrence Rucker ("Rucker Policy").  Upon information and belief, the Rucker Policy is void or voidable due to a lack of insurable interest at inception and/or material misrepresentations in the application.

## PARTIES

2.     Plaintiff, Principal Life, is an Iowa corporation with its principal place of business in Des Moines, Iowa.

3.     Defendant, Christiana Bank and Trust Company ("Christiana Bank"), is an entity organized and existing under the laws of Delaware.  Christiana Bank is the trustee of the Lawrence Rucker Insurance Trust 8.15.2007 ("Rucker Trust"), which owns and is the beneficiary of the Rucker Policy.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1),

insofar as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs,

and there is complete diversity between Plaintiff and Defendant.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), because a

substantial part of the events giving rise to the claim occurred herein.

## FACTUAL BACKGROUND

### A.    Stranger Originated Life Insurance

6.  .      In recent years, a secondary market has emerged in which speculative investors

seek to obtain pecuniary interests in life insurance policies on individuals with whom they have

no prior relationship.  Although it is permissible for an investor to obtain an interest in a

legitimately procured life insurance policy, it is unlawful to procure a policy for the sole

purpose of transferring it, directly or indirectly, to an investor.  Such arrangements are

commonly referred to as STOLI, which stands for "stranger originated life insurance."

7.      STOLI investors do not acquire an interest in life insurance policies on the lives

of persons with whom they have a familial relationship, or in whose longevity they possess a

legally recognized interest.  Instead, these investors purchase policies that insure the lives of

strangers – or, in many cases, they purchase beneficial interests in insurance trusts or ownership

in shell corporations that own those policies – with the expectation that they will profit by the

death of the insured.

8.      STOLI transactions run afoul of state insurable interest laws, which protect the

integrity of life insurance by requiring that a policy owner have a cognizable interest in the

longevity of the insured at the time the policy is issued.

9.    STOLI investors, who are the true intended owners of STOLI policies, attempt to circumvent these laws by carefully constructing their transactions to hide these impermissible investments.

10.    STOLI investors seek out the highest anticipated rates of return when choosing the life insurance policies. This means the typical life insurance policy to which STOLI investors gravitate insures the life of an individual aged seventy or older, with a net worth in excess of $1 million. These individuals can obtain large value policies, and, actuarially speaking, are expected to have a relatively limited lifespan. For these and other reasons, these individuals are targeted by STOLI investors.

11.    The STOLI investors must also determine the resale value of the policy in the secondary market. This value is based largely upon the life expectancy of the prospective insured. The shorter the expected lifetime of the prospective insured, the more valuable the policy is to those who would gamble on his or her life. At or around the time of the application for insurance, the prospective insured often submits to a life expectancy analysis to determine whether the policy, if issued, would be saleable in the secondary market.

12.    Once the STOLI investors locate an individual who meets their profile, and who will agree to collaborate in the STOLI arrangement, an application is submitted for one or more insurance policies. The STOLI investors typically pay most or all of the prospective insured's costs, including premium payments. STOLI investors also typically agree to pay the prospective insured a fee upon the issuance of the policy.

13.    In many cases, the policy application indicates that a third-party entity, such as a trust, a shell corporation, or a limited partnership, will be the owner and beneficiary of the life insurance proceeds. This permits the STOLI investors to acquire an interest in this holding entity – and, most importantly, in the death benefit that later will be disbursed by the insurer – without disclosing the fact of their ownership to the insurer.

- 3 -

14.     Another way the investors obtain ownership of the policy is to lend the insured the funds to pay the premium for a finite period of time, usually for the two-year contestability period. Once this contestability period has expired, the insured can either repay the loan or assign the policy to the investors, thus completing the transaction. The loan is structured to encourage the insured to assign the policy to the investors by, among other things, lending the funds at a high interest rate.

15.     While there are many other variations, all STOLI programs have one thing in common: their objective is to give investors who have no insurable interest in the life of the insured a stake in the life insurance policy of a complete stranger.

**B.    Procurement of the Rucker Policy**

16.     Upon information and belief, sometime prior to August 16, 2007, Lawrence Rucker was approached by certain STOLI promoters to participate in a STOLI scheme. The plan called for Mr. Rucker to apply for a life insurance policy on his own life to be issued by Principal Life, and to conceal from Principal Life the intent to sell the policy, and /or an interest in the policy, to an investor in the secondary market.

17.     Upon information and belief, the plan also called for Mr. Rucker to create a trust that would be the owner and the beneficiary of the policy. However, neither the trust nor the policy were intended for estate liquidity, financial planning, or other legitimate insurance-related purposes. To the contrary, it was intended from the outset that the policy would be transferred to an investor in the secondary market, and the use of the trust was to conceal this true purpose of the policy.

18.     In accordance with this plan, on August 16, 2007, Mr. Rucker, a Florida resident, applied to Principal Life for a $3.5 million life insurance policy (the "Application").[1] At the time of the Application, Mr. Rucker was seventy-eight years old.[2]

---

[1] A copy of the Application, redacted to protect the confidentiality of Mr. Rucker, is attached to the Policy, which is attached hereto as Exhibit A.

- 4 -

19.    The Application indicated that the purpose of the policy was as follows: "The client is concerned that he doesn't have estate liquidity – financial planning." Upon information and belief, the stated purpose of the policy misrepresented the actual purpose, which was to transfer the policy into the secondary market.

20.    The intended owner of the policy was to be the Rucker Trust, and the trustee of the Rucker Trust was to be Christiana Bank.

21.    The Rucker Trust was created on August 15, 2007, the day before the Application was signed.

22.    The application included the following two questions:

•    Is there an intention that any group of investors will obtain any right, title, or interest in any policy issued on the life of the Proposed Insured(s) as a result of this application?

•    Will you borrow money to pay the premiums for this policy or have someone else pay these premiums for you in return for an assignment of policy values back to them?

23.    These questions were intended to discern whether the Rucker Policy was being sought for purposes of resale in the secondary market.

24.    Mr. Rucker answered "No" to both of these questions.

25.    Based upon the Application and the representations contained therein, Mr. Rucker's application was approved for $3.5 million in coverage, and the Rucker Policy (Policy No. 6084669) was issued with a policy date of September 26, 2007.

26.    Upon information and belief, shortly after the issuance of the Rucker Policy and in accordance with the preconceived plan, Mr. Rucker took all of the steps necessary to

---

[2] Mr. Rucker's date of birth, social security number, and claimed approximate net worth were included on the Application. That information, along with other financial and medical data, has been redacted to protect Mr. Rucker's confidentiality.

effectuate a transfer of the Rucker Policy, or the beneficial interest in the Rucker Policy, to an investor whom Mr. Rucker did not know prior to completing the Application.

27.    Upon information and belief, Mr. Rucker received remuneration for his participation in the STOLI transaction.

28.    Upon information and belief, Mr. Rucker has relinquished or agreed to relinquish any beneficial interest in the proceeds of the Rucker Policy, as well as all interests in the Rucker Trust.

29.    On June 16, 2008, Principal Life sent a letter to Christiana Bank advising that Principal Life was performing an audit of certain life insurance policies, including the Rucker Policy.  Principal Life requested that Christiana Bank provide information concerning the Rucker Policy, including but not limited to (a) the complete Rucker Trust agreement; (b) all documents indicating a change in beneficiaries of the Rucker Trust; (c) all documents indicating a change in the trustee of the Rucker Trust; and (d) the source of funding for the Rucker Trust's payment of premiums.

30.    Christiana Bank failed to respond to Principal Life's requests or otherwise refute that the Rucker Policy was procured for the purpose of transferring it, and/or the beneficial interest in it, to a third party.

31.    On June 16, 2008, Principal Life sent a similar letter to Mr. Rucker.

32.    Mr. Rucker failed to respond to Principal Life's requests or otherwise refute that the Rucker Policy was procured for the purpose of transferring it, and/or the beneficial interest in it, to a third party.

## COUNT I

## DECLARATORY JUDGMENT

33.    Principal Life hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

34.     Upon information and belief, the Rucker Policy was issued to, at the behest of, and/or in accordance with a plan initiated by a party or parties possessing no insurable interest in the life of Mr. Rucker under applicable law.

35.     Upon information and belief, the purpose of transaction was to gamble upon the life of Mr. Rucker.

36.     As such, Principal Life is entitled to a judicial declaration that the Rucker Policy lacked an insurable interest at inception and is therefore void *ab initio*.

## COUNT II

## DECLARATORY JUDGMENT

37.     Principal Life hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

38.     Upon information and belief, Mr. Rucker made material misrepresentations to Principal Life in the Application concerning his intent to transfer the Rucker Policy into the secondary market.

39.     Upon information and belief, Mr. Rucker knew of the falsity of his representations concerning his intent to transfer the Rucker Policy. Thus, these misrepresentations were intentional.

40.     Principal Life justifiably relied on these misrepresentations. Had Principal Life known of the intent to transfer the Policy into the secondary market, it would not have issued the Rucker Policy. Thus, the misrepresentations were material.

41.     The Rucker Policy is thus void or voidable pursuant to and in accordance with applicable law.

## RELIEF REQUESTED

WHEREFORE, Principal Life respectfully requests the entry of an Order by this Court as follows:

A.    Declaring whether the Rucker Policy is void or voidable due to a lack of insurable interest at the inception of the Rucker Policy;

B.    Declaring whether the Rucker Policy is void or voidable due to material misrepresentations in the Application;

C.    Declaring whether Principal Life may retain some or all of the premiums paid on the Rucker Policy as an off-set to the costs and expenses Principal Life has incurred as a result of the issuance of the policy.

D.    Awarding Principal Life is entitled to attorneys' fees and costs, as determined by the Court; and  associated with seeking this judgment; and

E.    Awarding such further relief as this Court deems appropriate.

Darryl A. Parson (I.D. No. 4134)
David P. Primack (I.D. No. 4449)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street
Suite 1000
Wilmington, DE 19801
Telephone:    (302) 467-4200
Facsimile:    (302) 467-4201

*Of Counsel*
Jason P. Gosselin
Katherine L. Villanueva
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, Pennsylvania  19103-6996

*Attorneys for Plaintiff Principal Life Insurance Company*

August 5, 2008

# EXHIBIT A

**FLEXIBLE PREMIUM UNIVERSAL LIFE INSURANCE POLICY.** Adjustable death benefit. Benefits payable at the earlier of Maturity Date or death of Insured. Flexible premiums payable until the earlier of Maturity Date or death of Insured. NON-PARTICIPATING.

This policy is a legal contract between You, as owner(s), and Us, Principal Life Insurance Company. Your policy is issued based on the information in the application and payment of premiums as shown on the current Data Pages. We will pay the benefits of this policy in accordance with its provisions.

**10-DAY EXAMINATION OFFER.** IT IS IMPORTANT TO US THAT YOU ARE SATISFIED WITH THIS POLICY. IF YOU ARE NOT SATISFIED, YOU MAY RETURN YOUR POLICY TO EITHER YOUR AGENT OR OUR OFFICE WITHIN 10 DAYS OF ITS RECEIPT. IF YOU RETURN THIS POLICY, WE WILL REFUND ANY PREMIUM PAID AND YOUR POLICY WILL BE CONSIDERED VOID FROM ITS INCEPTION. PLEASE READ YOUR POLICY CAREFULLY SO YOU MAY BETTER USE ITS MANY BENEFITS.

This policy starts on the Policy Date and will stay in force until the earlier of the Maturity Date shown on the current Data Pages or death of the Insured so long as You satisfy the requirements outlined in Your policy.

# DUPLICATE
### Policy issued in lieu of Lost or Destroyed
### Policy Bearing the same number.

*Joyce N. Hoffman*

Senior Vice President
and Corporate Secretary

*Larry Zimpleman*

President and Chief Operating Officer

**Principal**
*Financial Group*

**Principal Life**
**Insurance Company**

711 High Street
Des Moines, Iowa 50392-0001

SF 712

6084669

# TABLE OF CONTENTS

| SUBJECT | PAGE |
|---|---|
| DEFINITIONS IN THIS POLICY | 4 |
| PURCHASING AND KEEPING THE POLICY IN FORCE | 5 |
| BENEFITS WHILE POLICY IS IN FORCE | 7 |
| POLICY LOANS | 8 |
| POLICY SURRENDER | 8 |
| POLICY EXPENSES | 9 |
| DEATH PROCEEDS | 10 |
| BENEFIT PAYMENT OPTIONS | 12 |
| ADJUSTMENT OPTIONS | 15 |
| OWNER, BENEFICIARY, ASSIGNMENT | 16 |
| GENERAL INFORMATION | 17 |

A copy of the application and any additional benefits provided by rider follow the last page of this policy.

SF 712                                                    6084669



**Principal Life**
**Insurance Company**
**Des Moines, Iowa 50392-0001**

## DATA PAGES

---

### Flexible Premium Universal Life

---

### POLICY DATA

| | |
|---|---|
| **Policy Number:** | 6084669 |
| **Owner(s):** | Lawrence Rucker Ins Tr 08/15/2007 |

---

| | |
|---|---|
| **Insured's Name:** | Lawrence Rucker |
| **Insured's Risk Class:** | Standard Nonsmoker |
| **Insured's Age and Gender:** | 78 – Male |
| **Policy Date:** | September 26, 2007 |
| **Policy Maturity Date:** | September 25, 2029 |
| **Face Amount:** | $3,500,000 |
| **Death Benefit Option:** | 1 |
| **PLANNED PERIODIC PREMIUM:** | $54,048.77 |
| **Planned Premium Mode:** | Quarterly |
| **Target Premium:** | $237,895.00 |
| **No Lapse Guarantee Monthly Premium:** | $12,605.83 |
| Applicable during the first 5 Policy Years only | |

If sufficient premiums are paid, this policy provides life insurance protection on the Insured until the Policy Maturity Date. YOU MAY HAVE TO PAY OTHER THAN THE PLANNED PERIODIC PREMIUM SHOWN ABOVE TO KEEP THIS POLICY AND COVERAGE IN FORCE TO THAT DATE, and to keep any additional benefit riders in force.

This policy is adjustable. If it is adjusted, we will send you new Data Pages. The Data Pages are to be attached to and made a part of this policy.

Guaranteed Interest Crediting Rate is 3%.

This policy contains a fixed loan interest rate of 8%.

Interest credited on borrowed funds is at a rate of at least 6%.

## RIDER DATA

<u>SF646</u>          <u>Extended Coverage Rider</u>
     Effective Date:          September 26, 2007

## TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES

Monthly Rates Per $1,000.00 of Net Amount at Risk

| Insured's Attained Age | Monthly Rate | Insured's Attained Age | Monthly Rate | Insured's Attained Age | Monthly Rate |
|---|---|---|---|---|---|
| 78 | 6.53917 | 86 | 13.56667 | 93 | 22.63583 |
| 79 | 7.14333 | 87 | 14.73250 | 94 | 24.63750 |
| 80 | 7.80583 | 88 | 15.90750 | 95 | 27.49667 |
| 81 | 8.54333 | 89 | 17.10750 | 96 | 32.04583 |
| 82 | 9.37667 | 90 | 18.34917 | 97 | 40.01667 |
| 83 | 10.31583 | 91 | 19.65333 | 98 | 54.83167 |
| 84 | 11.34250 | 92 | 21.06250 | 99 | 83.33333 |
| 85 | 12.43333 | | | | |

Basis of Values:  Guaranteed maximum cost of insurance rates are based on 1980 CSO Mortality Table, age nearest birthday, with distinction for the insured's gender and smoking status.

## CHARGES AND LIMITS

- **Guaranteed Maximum Premium Expense Charge:** 5.5% of premium received up to Target Premium in each Policy Year; 10% of premium received in excess of Target Premium in each Policy Year.

- The **maximum monthly administration charge**, deducted on a monthly basis, is $10.00.

- Minimum face amount: $50,000

- Minimum face amount increase: $50,000

- The minimum partial surrender or loan amount is $500.

A **surrender charge** will be deducted from Your Accumulated Value if, within the surrender charge period, this policy is surrendered for its Net Surrender Value or it terminates as described in the Grace Period provision. The maximum charge for each Policy Year is shown in the table below.

The table assumes the face amount is never increased, and the policy has not been reinstated.

### Table of Maximum Surrender Charges Per Policy

| Policy Year | Amount |
|---|---|
| 1 | $197,452.85 |
| 2 | 187,382.75 |
| 3 | 177,510.11 |
| 4 | 168,229.83 |
| 5 | 159,147.00 |
| 6 | 150,459.07 |
| 7 | 142,363.50 |
| 8 | 134,662.84 |
| 9 | 127,554.54 |
| 10 | 120,643.69 |
| 11 | 108,599.07 |
| 12 | 96,554.44 |
| 13 | 84,509.82 |
| 14 | 72,465.20 |
| 15 | 60,420.57 |
| 16 | 48,375.95 |
| 17 | 36,331.32 |
| 18 | 24,286.70 |
| 19 | 12,242.08 |
| 20 and later | .00 |

## DEFINITIONS IN THIS POLICY

**ACCUMULATED VALUE** is the sum of Net Premiums paid plus interest, minus Partial Surrenders and Monthly Policy Charges as further described in the Calculation Of Accumulated Value provision.

**ADJUSTMENT DATE** means the Monthly Date on or next following Our approval of a requested adjustment.

**ATTAINED AGE** means the Insured's age on the birthday nearest to the Policy Date, plus the number of complete Policy Years that have elapsed since the Policy Date.

**EFFECTIVE DATE** is the date on which all requirements for issuance of a policy have been satisfied.

**INSURED** means the person named as the Insured on the current Data Pages of this policy. The Insured may or may not be the owner.

**MONTHLY DATE** means the day of the month which is the same as the day of the Policy Date. The Monthly Date will never be the 29th, 30th, or 31st of any month.

**MONTHLY POLICY CHARGE** is the amount subtracted from Your Accumulated Value on each Monthly Date equal to the sum of the cost of insurance and the cost of additional benefits provided by any rider plus the monthly administration charge in effect on the Monthly Date.

**NET PREMIUM** is the gross premium paid less the deductions for the Premium Expense Charge shown on the current Data Pages.

**NET SURRENDER VALUE** is the Surrender Value less any policy loans and unpaid loan interest.

**NOTICE** means any form of communication We receive in Our office providing the information We need, either in writing or another manner that We approve in advance.

**POLICY DATE** is the date shown on the current Data Pages. The Policy Date will never be the 29th, 30th, or 31st of any month.

**POLICY YEAR** means the one year period beginning on the Policy Date and ending one day before the policy anniversary and each subsequent one year period beginning on a policy anniversary.

> Example: If the Policy Date is November 21, 2002, the first Policy Year ends on November 20, 2003. The first policy anniversary falls on November 21, 2003.

**PREMIUM EXPENSE CHARGE** is the charge deducted from premium payments. The Premium Expense Charge is shown on the current Data Pages.

**SURRENDER VALUE** is the Accumulated Value less any surrender charges.

**TARGET PREMIUM** is a premium amount used to determine any applicable surrender charge and Premium Expense Charge under a policy. Your Target Premium is shown on Your current Data Pages.

**WE, OUR, US** means Principal Life Insurance Company.

**YOU, YOUR** means the owner(s) of this policy.

## PURCHASING AND KEEPING THE POLICY IN FORCE

**PREMIUM PAYMENTS**

Your first premium is due on the Policy Date. After that, You may pay premiums at any time while this policy is in force. The amount of Your premiums is subject to the Premium Payment Limits provision. We will give a receipt to You on request.

**PLANNED PERIODIC PREMIUMS**

Preauthorized withdrawals may be set up on a monthly basis to allow Us to automatically deduct premium payments from Your bank or other financial institution account.

You may establish an annual, semiannual, or quarterly premium payment schedule. We send You reminder notices of Your planned periodic premium, including the amount and frequency of premium. These notices serve only as a reminder of Your preference. You may change the amount and frequency of Your planned periodic premiums by providing Notice to Us. Premiums are to be sent to the address We provide in the reminder notices. You may also make unscheduled payments to Us at Our office.

**PREMIUM PAYMENT LIMITS**

You may make premium payments that are greater than the planned periodic premium. However, We will refund any premiums that would disqualify this policy as "Life Insurance" as defined in the Internal Revenue Code, Section 7702, as amended. Unless You provide Us Notice, We will refund any premiums that would make this policy a Modified Endowment Contract as defined in the Internal Revenue Code, Section 7702A, as amended.

If any premium payment increases the policy's death benefit by more than it increases the Accumulated Value, We reserve the right to refund the premium payment. If the premium payment is not refunded, We may require satisfactory evidence of insurability.

**CONTINUATION OF INSURANCE**

If You do not make a planned periodic premium payment or additional premium payments, this policy will not terminate unless the Net Surrender Value is not sufficient to pay the Monthly Policy Charge which is due on the Monthly Date. The Grace Period provision will then apply.

**NO LAPSE GUARANTEE**

If the Net Surrender Value on any Monthly Date is less than the Monthly Policy Charge, We will notify You and a 61 day Grace Period will begin. However, We guarantee this policy will stay in force during the first five Policy Years when [(1) minus (2)] is greater than or equal to (3), where:

    (1) Is the sum of premiums paid;

    (2) Is the sum of all existing loans, loan interest accrued and not paid, and partial surrenders; and

    (3) Is the sum of the no lapse guarantee monthly premiums since the Policy Date to the most recent Monthly Date.

The no lapse guarantee monthly premium is shown on the current Data Pages.

## GRACE PERIOD

On the Policy Date, and each Monthly Date thereafter, We deduct a Monthly Policy charge. During the first 5 Policy Years, when the Net Surrender Value is insufficient to cover the Monthly Policy charge and You have not met the No Lapse Guarantee premium, the 61 day Grace Period begins when We mail a notice of impending policy termination to You. After the first 5 Policy Years, when the Net Surrender Value is insufficient to cover the Monthly Policy Charge, we will mail a notice of impending policy termination to You and a 61-day Grace Period begins. This notice will be sent to You at Your last post office address known to Us.

If by the end of the Grace Period We have not received a payment as calculated in number 7 of the Reinstatement provision, Your policy terminates as of the end of the Grace Period.

If the Insured dies during a Grace Period, We will pay the death proceeds to the beneficiary (ies) subject to the Death Proceeds provision of this policy.

## TERMINATION

All policy privileges and rights of the owner(s) under this policy terminate:

1. When You surrender Your policy;

2. When the death proceeds are paid;

3. When the maturity proceeds are paid; or

4. When the Grace Period ends as described in the Grace Period provision. In this case, the privileges and rights of the owner(s) terminate as of the Monthly Date on which the Grace Period ends.

## REINSTATEMENT

If this policy ends as described in the Grace Period provision, You may reinstate it provided all of the following are met:

1. Such reinstatement is prior to the Maturity Date.

2. You have not surrendered Your policy.

3. Not more than three years have elapsed since the policy terminated.

4. The Insured is alive.

5. You supply evidence which satisfies Us that the Insured is insurable under Our underwriting guidelines then in effect.

6. You either repay or reinstate any policy loans and unpaid loan interest on this policy existing at termination.

7. You make the appropriate payment as defined below:

SF 712                                    6                                    6084669

During the first 5 Policy Years the minimum payment required is the lesser of the Shortfall for the Cumulative Premium Test amount and the Shortfall for the Net Surrender Value Test amount (all tests described below).

Shortfall for the Cumulative Premium Test amount is [(A) minus (B)] plus (C) where:
A.   Is the sum of the No Lapse Guarantee Monthly Premiums since the Policy Date to the second Monthly Date following the beginning of the Grace Period;
B.   Is the sum of premiums paid less sum of all existing loans, loan interest, and partial surrenders;
C.   Is three No Lapse Guarantee Monthly premiums.

Shortfall for the Net Surrender Value Test amount is (A) plus [(B) divided by (C)] where:
A.   Is the amount by which the surrender charge is more than the Accumulated Value less any policy loans, unpaid loan interest, and Monthly Policy Charge due on the Monthly Date at the start of the Grace Period before the Monthly Policy Charge is deducted;
B.   Is three Monthly Policy Charges;
C.   Is 1 minus the maximum Premium Expense Charge.

After the first 5 Policy Years the minimum payment required is (A) plus [(B) divided by (C)] where:
A.   Is the amount by which the surrender charge is more than the Accumulated Value less any policy loans, unpaid loan interest, and Monthly Policy Charge due on the Monthly Date at the start of the Grace Period before the Monthly Policy Charge is deducted;
B.   Is three Monthly Policy Charges;
C.   Is 1 minus the maximum Premium Expense Charge.

Reinstatement will be effective on the Monthly Date on or next following the date We approve it.  Your Policy Date will remain the original Policy Date.  Your Surrender Charges upon reinstatement will be calculated as if the policy had never ended.  You will receive new Data Pages upon reinstatement.

## BENEFITS WHILE POLICY IS IN FORCE

### CALCULATION OF ACCUMULATED VALUE

If Your premium is paid prior to the Policy Date, Your Accumulated Value on the Policy Date is the Net Premium.

On any day other than the Policy Date, Your Accumulated Value equals:

1.   The Accumulated Value on the most recent Monthly Date with interest to the date the Accumulated Value is determined; plus

2.   Any Net Premiums received after the most recent Monthly Date with interest from the date We received those premiums; less

3.   Any reductions due to partial surrenders since the most recent Monthly Date with interest from the date of partial surrender; less

4.   The Monthly Policy Charge on the most recent Monthly Date with interest to the date the Accumulated Value is determined.

SF 712

7

6084669

**ACCUMULATED VALUE INTEREST CALCULATION**

We credit interest separately to the part of the Accumulated Value equal to any existing loan principal and unpaid loan interest and to the balance of the Accumulated Value.

Interest rates will be reviewed whenever interest rates for new policies are changed. However, this will not be less often than annually, nor more often than monthly.

The interest rate applied to the part of the Accumulated Value equal to the sum of the loan principal and unpaid loan interest is the policy loan interest rate reduced by no more than 2%.

We credit the balance of the Accumulated Value with interest at rates declared by Us. These rates will never be less than the guaranteed interest rate shown on Your current Data Pages.

All interest rates stated accrue daily and are effective annual rates. We apply these rates to properly reflect the actual date We receive any premium and any changes You make in loan amounts.

## POLICY LOANS

You may borrow against Your Accumulated Value with this policy as sole collateral. You may borrow up to Your Net Surrender Value less interest payable and Monthly Policy Charges due through the remainder of the Policy Year.

The minimum loan amount is shown on the current Data Pages.

**LOAN INTEREST CHARGE**

Interest charges accrue daily at the annual loan interest rate shown on the current Data Pages. Interest is due and payable at the end of each Policy Year. Any interest not paid when due is added to the loan principal and bears interest at the same rate.

**REPAYMENT**

You may repay all or part of a policy loan as long as the policy is in force. Any policy loans and unpaid loan interest charges not repaid at the Insured's death or at maturity are deducted from the death or maturity proceeds.

YOU SHOULD IDENTIFY THE PURPOSE OF ANY PAYMENT. IF YOU DO NOT, WE WILL APPLY ANY PAYMENT FIRST TO REPAY ANY OUTSTANDING POLICY LOAN.

We will not apply the Grace Period provision of this policy for failure to repay any loan or loan interest until the total amount borrowed, plus interest, equals or exceeds Your Surrender Value.

## POLICY SURRENDER

You may surrender Your Policy for its Net Surrender Value by sending Us Notice.

## SURRENDER CHARGES

A surrender charge will be deducted from Your Accumulated Value if, within the surrender charge period, this policy is surrendered for its Net Surrender Value or it terminates as described in the Grace Period provision. The Table of Maximum Surrender Charges is shown on the current Data Pages. Surrender charges vary based on the Target Premium of the policy, age at issue, smoking status, and gender of the Insured, except for policies issued in connection with employment related insurance and benefit plans not based on the gender of the Insured, and will apply during the Policy Years as shown on the current Data Pages. Any face amount increase has its own surrender charge period which begins on the Adjustment Date. The surrender charge on the policy will be the total of the surrender charges for the face amount at issue and any face amount increase. Decreases in face amount do not decrease surrender charges on the policy.

## PARTIAL SURRENDERS

Each Policy Year after the first Policy Year, You may make up to two partial surrenders from the Net Surrender Value, subject to the following:

1. Each partial surrender must be in an amount not less than the minimum amount shown on the current Data Pages; and

2. The total amount surrendered in any Policy Year may not exceed 75% of the Net Surrender Value as of the date of the first partial surrender in a Policy Year.

Your Accumulated Value is reduced by the amount of the partial surrender.

If Option 1 death benefit is in effect, then the face amount is reduced by the amount of the partial surrender. If there have been previous increases in the face amount, reduction of the face amount will be made on a last in, first out basis. The resulting face amount must be at least the minimum face amount for this policy as shown on the current Data Pages.

If Option 2 death benefit is in effect, then the face amount is not reduced.

If Option 3 death benefit is in effect, then the face amount is reduced by the amount of the partial surrender that exceeds the premiums paid. If there have been previous increases in the face amount, any reduction of the face amount will be made on a last in, first out basis. The resulting face amount must be at least the minimum face amount for this policy as shown on the current Data Pages.

All partial surrenders will be subject to the limits as defined in the Internal Revenue Code Section 7702, as amended. An increase in face amount may be required in order to maintain compliance with the limits.

## POLICY EXPENSES

### MONTHLY POLICY CHARGES

On the Policy Date, and each Monthly Date thereafter, We will deduct a Monthly Policy Charge.

The deduction for the Monthly Policy Charge is the sum of the following amounts:

1. The cost of insurance (described below) and the cost of additional benefits provided by any rider in effect for the policy month; and

2. The current monthly administration charge, which will not exceed the maximum as shown on the current Data Pages.

## COST OF INSURANCE

The cost of insurance on each Monthly Date is:

1. The cost of insurance rate as described in the Cost Of Insurance Rates provision divided by 1,000; multiplied by

2. The net amount at risk.

The net amount at risk is the result of:

1. The death benefit as described in the Death Proceeds provision of this policy at the beginning of the Policy Month, divided by 1.0024663 (the sum of 1.00 (One) plus the monthly guaranteed interest rate); minus

2. The Accumulated Value at the beginning of the policy month calculated as if the Monthly Policy Charge was zero.

## COST OF INSURANCE RATES

The monthly cost of insurance rates at issue and for any face amount increases are based on the age at issue and adjustment, duration since issue and adjustment, risk classification, and smoking status of the Insured. The monthly cost of insurance rates are also based on gender of the Insured, except for policies issued in connection with employment related insurance and benefit plans not based on the gender of the Insured. We determine these rates based on including but not limited to Our expectations as to Our future investment earnings, expenses, mortality and persistency experience. Any change in these rates applies to all individuals of the same class as the Insured. The cost of insurance rates will never be greater than shown in the Table of Guaranteed Maximum Cost of Insurance Rates on the current Data Pages.

## PREMIUM EXPENSE CHARGE

We will deduct a Premium Expense Charge as shown on the current Data Pages from each premium payment. The result will be the Net Premium payment.

## DEATH PROCEEDS

We will pay the death proceeds to the beneficiary(ies) subject to the provisions of the policy, after We receive Notice and proof that the Insured died before the Maturity Date. The death proceeds, determined as of the date of the Insured's death, are (1) minus (2) where:

(1) Is the death benefit described below plus any proceeds from any benefit rider on the Insured's life; and

(2) Is any policy loan and unpaid loan interest and, if the Insured's death occurs during a Grace Period, any overdue Monthly Policy Charges.

Any premium received after the date of death will be paid to the beneficiary and will not be included in the calculation of the death proceeds. The death proceeds will be determined without including any premium received after the date of death.

We will pay interest on death proceeds as required by law.

**DEATH BENEFIT OPTIONS**

This policy provides three death benefit options.  The option in effect is shown on the current Data Pages.

Option 1.

Under Option 1, the death benefit equals the greater of:

1. The face amount; or

2. The amount found by multiplying Your Accumulated Value by the applicable percentage shown below.

Option 2.

Under Option 2, the death benefit equals the greater of:

1. The face amount plus Your Accumulated Value; or

2. The amount found by multiplying Your Accumulated Value by the applicable percentage shown below.

Option 3.

Under Option 3, the death benefit equals the greater of:

1. The face amount plus premiums paid less partial surrenders; or

2. The amount found by multiplying Your Accumulated Value by the applicable percentage shown below.

**TABLE OF APPLICABLE PERCENTAGES***

(For ages not shown, the applicable percentages shall decrease by a pro rata portion for each full year.)

| INSURED'S ATTAINED AGE | % |
|---|---|
| 40 and under | 250 |
| 45 | 215 |
| 50 | 185 |
| 55 | 150 |
| 60 | 130 |
| 65 | 120 |
| 70 | 115 |
| 75 through 90 | 105 |
| 95+ | 101 |

* These percentages will be updated as required by revisions to the Internal Revenue Code.

**CHANGES IN DEATH BENEFIT OPTIONS**

You may change the death benefit option on or after the first policy anniversary.  To request a change in the death benefit option, You must send Us Notice.  A change approved on a Monthly Date will be

effective on that Monthly Date. A change approved on other than a Monthly Date will be effective on the next following Monthly Date. Changes in options are limited to two per Policy Year and are subject to the following conditions:

1. If the change is from Option 1 to Option 2, We will reduce the face amount. The reduction will be equal to the Accumulated Value on the effective date of the change. If there have been previous increases in the face amount, reduction of the face amount will be made on a last in, first out basis. The face amount after any reduction must be at least the minimum face amount required by Our then current underwriting guidelines. We may require proof of insurability which satisfies Us.

2. If the change is from Option 2 to Option 1, We will increase the face amount. The increase will be equal to the Accumulated Value on the effective date of the change. No proof of insurability is required.

3. If the change is from Option 3 to Option 1, We will increase the face amount if the total premiums paid are greater than any partial surrenders to the date of the change. No proof of insurability is required.

4. If the change is from Option 3 to Option 2, We will adjust the face amount. If there is a reduction of the face amount and there have been previous increases in face amount, the reduction will be made on a last in, first out basis. The adjustment will be equal to the total premiums paid less Your Accumulated Value. We may require proof of insurability.

5. You may not change from Option 1 to Option 3 or from Option 2 to Option 3.

6. A Death Benefit Option change will be subject to the limits as defined in the Internal Revenue Code Section 7702, as amended. An additional increase in face amount may be required in order to maintain compliance with the limits.

**MATURITY PROCEEDS**

If the Insured is living on the policy's Maturity Date, We will pay You the policy's maturity proceeds, which are equal to the Net Surrender Value.

## BENEFIT PAYMENT OPTIONS

You may elect a benefit payment option for payment of the death, maturity, or surrender proceeds. If no benefit payment option has been elected before the Insured's death, the beneficiary may apply the death proceeds to a benefit payment option.

Once the proceeds are applied under a benefit payment option, this policy must be exchanged for a supplementary contract.

**BENEFIT PAYMENT CONDITIONS**

Election of any benefit payment option is subject to the following conditions:

1. Any amount payable to an assignee will be paid in one lump sum. Any remaining proceeds will then be applied to the elected benefit payment option.
2. No changes may be made to the benefit payment option once a supplementary contract is issued.
3. The proceeds applied must be at least $5,000.00.

4. Benefit payment options are restricted if the recipient of benefits is not a natural person.
5. We reserve the right to require evidence of age, gender where applicable, and continuing survival.
6. Under Options B and C, one of the persons on whose life payments are based must be the owner, insured, or beneficiary.

## DESCRIPTION OF BENEFIT PAYMENT OPTIONS

OPTION A, CUSTOM BENEFIT ARRANGEMENT: A customized benefit option can be designed with Our approval.

OPTION B, LIFE INCOME: We will pay an income during a person's lifetime. You may elect a minimum guaranteed period. Payments will be in an amount We determine but not less than guaranteed by this section. As an example of what the guaranteed minimum monthly life income is for an elected 10-year guaranteed period, see Option B Table below. If the person dies after payments begin but before the end of any minimum guaranteed period, the remaining payments will be paid to named beneficiary(ies) under the benefit payment option.

OPTION C, JOINT AND SURVIVOR LIFE INCOME: We will pay an income during the lifetime of two persons. Payments will continue until the death of the survivor. You may elect a minimum guaranteed period. Payments will be in an amount We determine but not less than guaranteed by this section. As an example of what the guaranteed minimum monthly joint and 100% survivor life income is for an elected 10-year guaranteed period, see Option C Table below. If both persons die after payments begin but before the end of any minimum guaranteed period, the remaining payments will be paid to named beneficiary(ies) under the benefit payment option.

Benefit payment Options B and C are based on the Annuity 2000 Mortality Table with mortality projected 40 years by projection Scale G and 3.0% interest. Benefit payment options are also based on the gender of the payee except for policies issued in states that require unisex tables or in connection with benefit plans not based on the gender of the Insured.

**OPTION B TABLES**

This table provides an example of the minimum monthly life income with 10-year guaranteed period for each $1,000 of proceeds applied. We will make the first payment on the Effective Date of the supplementary contract. Male, Female and Unisex tables are provided.

| Age of Male Payee | 10-Year Guaranteed Period | Age of Female/Unisex Payee | 10-Year Guaranteed Period |
|---|---|---|---|
| 55 | 4.01 | 55 | 3.77 |
| 56 | 4.08 | 56 | 3.82 |
| 57 | 4.15 | 57 | 3.88 |
| 58 | 4.22 | 58 | 3.94 |
| 59 | 4.30 | 59 | 4.01 |
| 60 | 4.38 | 60 | 4.08 |
| 61 | 4.46 | 61 | 4.15 |
| 62 | 4.55 | 62 | 4.23 |
| 63 | 4.65 | 63 | 4.31 |
| 64 | 4.75 | 64 | 4.39 |
| 65 | 4.85 | 65 | 4.48 |
| 66 | 4.96 | 66 | 4.58 |
| 67 | 5.08 | 67 | 4.68 |
| 68 | 5.20 | 68 | 4.79 |
| 69 | 5.32 | 69 | 4.90 |
| 70 | 5.46 | 70 | 5.02 |
| 71 | 5.59 | 71 | 5.15 |
| 72 | 5.73 | 72 | 5.28 |
| 73 | 5.88 | 73 | 5.42 |
| 74 | 6.03 | 74 | 5.57 |
| 75 | 6.18 | 75 | 5.72 |
| 85 | 7.88 | 85 | 7.53 |
| 95 | 9.19 | 95 | 9.01 |

## OPTION C TABLES

These tables provide an example of the minimum monthly joint and 100% survivor life income with 10-year guaranteed period for each $1,000 of proceeds applied.  We will make the first payment on the Effective Date of the supplementary contract.  Male, Female and Unisex tables are provided.

| Age of Male Payee | Age of Female Payee | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 55 | 60 | 62 | 65 | 70 | 75 | 85 | 95 |
| 60 | 3.58 | 3.75 | 3.81 | 3.91 | 4.05 | 4.17 | 4.31 | 4.37 |
| 62 | 3.61 | 3.79 | 3.86 | 3.97 | 4.14 | 4.29 | 4.47 | 4.54 |
| 65 | 3.65 | 3.85 | 3.94 | 4.07 | 4.28 | 4.47 | 4.73 | 4.83 |
| 70 | 3.69 | 3.93 | 4.04 | 4.21 | 4.50 | 4.78 | 5.22 | 5.41 |
| 75 | 3.72 | 3.99 | 4.11 | 4.31 | 4.68 | 5.08 | 5.76 | 6.10 |
| 85 | 3.76 | 4.05 | 4.20 | 4.44 | 4.92 | 5.51 | 6.79 | 7.62 |
| 95 | 3.77 | 4.07 | 4.22 | 4.48 | 5.01 | 5.69 | 7.38 | 8.70 |

| Age of Older Unisex Payee | Age of Younger Unisex Payee | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 55 | 60 | 62 | 65 | 70 | 75 | 85 | 95 |
| 60 | 3.53 | 3.67 | | | | | | |
| 62 | 3.57 | 3.72 | 3.78 | | | | | |
| 65 | 3.61 | 3.79 | 3.86 | 3.97 | | | | |
| 70 | 3.67 | 3.89 | 3.98 | 4.13 | 4.37 | | | |
| 75 | 3.71 | 3.96 | 4.08 | 4.26 | 4.59 | 4.92 | | |
| 85 | 3.75 | 4.05 | 4.19 | 4.42 | 4.89 | 5.44 | 6.60 | |
| 95 | 3.76 | 4.07 | 4.22 | 4.47 | 5.00 | 5.67 | 7.31 | 8.56 |

## ADJUSTMENT OPTIONS

### ADJUSTING THE FACE AMOUNT

While Your policy is in force You may request an increase or decrease in the face amount. Decreases may not be made during the first Policy Year. Any adjustment request is subject to Our approval.

The request for a decrease in the face amount will be subject to the limits as defined in the Internal Revenue Code Section 7702, as amended.  A decrease may not be allowed if the decrease would cause a refund of premium and/or the distribution of the Accumulated Value in order to maintain compliance with the limits.

### APPROVAL OF AN ADJUSTMENT

Any increase in face amount will be in a risk classification We determine, and will be approved if:

1.  The insured is alive; and

2.  The Attained Age of the insured is 90 or less; and

3.  The amount of the face amount increase is at least the minimum face amount increase shown on the current Data Pages; and

4. You supply evidence which satisfies Us that the Insured is insurable under Our underwriting guidelines then in effect.

No adjustment will be approved if:

1. Your policy is in a Grace Period; or

2. The face amount after adjustment would be less than the minimum face amount shown on the current Data Pages; or

3. Your Monthly Policy Charges are being waived under any rider.

## REQUESTING AN ADJUSTMENT

You must send Us Notice for an adjustment. The Insured and owner(s) must sign a Notice requesting a face amount increase. The Notice must show the face amount desired after adjustment. An adjustment is effective on the Adjustment Date.

## OWNER, BENEFICIARY, ASSIGNMENT

### OWNERSHIP

The owner(s) is as named in the application unless You change ownership as provided below. As owner(s), You may exercise every right and privilege provided by Your policy, subject to the rights of any irrevocable beneficiary(ies). These rights and privileges continue while Your policy is in force, and end at the Insured's death. If an owner dies before the policy terminates, the surviving owner(s), if any, shall succeed to that person's ownership interest, unless otherwise specified. If all owners die before the policy terminates, the policy will pass to the estate of the last surviving owner. With Our consent, You may specify a different arrangement for contingent ownership.

### BENEFICIARY

The beneficiary(ies) named in the application will receive the death proceeds unless You change the beneficiary designation as provided below. If any beneficiary dies before the Insured, We will pay the death proceeds to any surviving beneficiary(ies) according to their designated percentages, unless changed as described below. If no beneficiary(ies) survives the Insured's death, the death proceeds will be paid to the owner(s) or to the owner's estate in equal percentages unless otherwise specified.

### CHANGE OF OWNER OR BENEFICIARY

You may change the owner(s) or beneficiary(ies) of this policy by sending Us Notice. Our approval is needed and no change is effective until We approve it. Once approved, the change is effective as of the date You signed the request. We may require that You send Us this policy so We can record the change.

### BENEFIT INSTRUCTIONS

While the Insured is alive, You may send Us instructions for the payment of the death proceeds under one of the benefit payment options. Such instructions, or change of instructions, must be in a format We specify. We must approve the arrangement chosen before any payment is made. If You change beneficiary(ies), prior benefit instructions are revoked.

SF 712                                    16                                    6084669

## ASSIGNMENT

You may assign Your policy as collateral for a loan. The assignment must be in writing and filed in Our office. We assume no responsibility for any assignment's validity. An assignment as collateral does not change the owner(s). The rights of beneficiaries, whenever named, except irrevocable beneficiaries, become subordinate to those of the assignee.

## GENERAL INFORMATION

### THE CONTRACT

This policy, the attached application(s) and riders, any amendments to the application(s), any adjustment and reinstatement application(s), and the current Data Pages make up the entire contract. Any statements made in the application(s), an adjustment application(s) or any amendments to the application(s) will be considered representations and not warranties. No statement, unless made in an application(s), or amendments thereto, will be used to void Your policy (or void an adjustment in case of an adjustment application(s)) or to defend against a claim.

### ALTERATIONS

This policy may be altered by mutual agreement, but any alterations must be in writing and signed by one of Our corporate officers. No one else, including the agent, may change the contract or waive any provisions.

### INCONTESTABILITY

With respect to statements made in the initial application(s) for this policy, We will not contest this policy after the Insured has been alive for two years after the Policy Date. With respect to statements made in any subsequent application(s) for additional coverage or reinstatement application(s), We will not contest the additional coverage or reinstated coverage resulting from such application(s) after the Insured has been alive for two years after the date of the adjustment or reinstatement. The time limits in this Incontestability provision do not apply to fraudulent misrepresentations.

### MISSTATEMENT OF AGE OR GENDER

If the age or gender, where applicable, of the Insured has been misstated, the death benefit will be that which would be purchased by the most recent cost of insurance rate charge at the correct age or gender, where applicable, of the Insured.

### DEFERMENT

We have the right to defer payment of policy loans or surrenders for up to 6 months after We receive the written loan or surrender request, except when the loan is made to pay premiums to Us.

### SUICIDE

This policy's death proceeds will not be paid if the Insured dies by suicide, while sane or insane, within 2 years of the Policy Date. Instead, We will return all premiums paid, less any policy loans and unpaid loan interest, less any partial surrenders. This amount will be paid to the beneficiary(ies).

Any face amount increase made under the Adjustment Options section will not be paid if the Insured dies by suicide, while sane or insane, within 2 years of the Adjustment Date. Instead, We will return the sum of

SF 712                                    17                                    6084669

the cost of insurance charges for the increased amount of protection. This amount will be paid to the beneficiary(ies).

**BASIS OF VALUES**

Guaranteed maximum cost of insurance rates are based on the mortality table referred to on the current Data Pages.

Where required, We filed a detailed statement of the method of calculating values and benefits with the insurance department of the state in which this policy is written. The guaranteed values are greater than or equal to those required by any state law.

**STATEMENT OF VALUE**

You will receive a statement once each Policy Year until the policy terminates. The statement will show:

1.   The current death benefit;

2.   The current Accumulated Value and Surrender Value;

3.   All premiums paid since the last statement;

4.   The interest credited by Us since the last statement;

5.   All charges since the last statement;

6.   Any policy loans and unpaid loan interest;

7.   Any partial surrenders since the last statement.

**CURRENT ILLUSTRATION**

After the first Policy Year, You may annually request, without charge, a current illustration of Your policy. We may charge a reasonable fee for any additional requests.

# EXTENDED COVERAGE RIDER

This rider is part of Your policy. All policy definitions, provisions, and exceptions apply to this rider unless changed by this rider. The Effective Date of this rider is the same as the Policy Date unless another date is shown on the current Data Pages.

## ELIGIBILITY

*The provisions described below will only be applicable if the insured is living on the Maturity Date shown on the current Data Pages and You have not elected to be paid the maturity proceeds under the Maturity Proceeds provision of the policy.*

## RIDER PROVISIONS

This rider provides that after the Maturity Date shown on the current Data Pages:

1. Your policy will continue in force, and the Maturity Date will be the date of the insured's death.

2. The Monthly Policy Charge will be zero.

3. We will continue to credit interest to the Accumulated Value, as described in the Accumulated Value Interest Calculation provision, until the date of the Insured's death.

4. No additional premium payments will be allowed.

5. No adjustment options will be available.

6. Loan payments will be allowed and interest on any unpaid loans will continue to accrue.

7. Your policy will automatically change to death benefit Option 1 and no future death benefit option changes will be allowed.

8. We will pay the beneficiary(ies) the death proceeds as described in Your policy, as of the date of the Insured's death.

## TERMINATION

This rider ends on:

1. Termination of Your policy;

2. Our receipt of Your Notice to cancel this rider. Cancellation will be effective on the Monthly Date on or next following the date We receive the request. We may require that You send Your policy to Our office to record the cancellation.

*Larry Zimpleman*

President and Chief Operating Officer

**Principal**
*Financial Group*

Principal Life
Insurance Company
Des Moines, Iowa 50392-0001



**Principal**
*Financial Group*

Principal Life
Insurance Company
Des Moines, Iowa 50392-0001

Principal Life | **Amendment To**
Insurance Company | **Application**
Mailing Address: Des Moines, IA 50392-0001

NOTE  This form MUST be returned to the Home Office fully signed and dated.

Policy No.    6084669    Insured    Lawrence Rucker

The Application for the above Policy (or for its adjustment or reinstatement) is hereby amended as follows:
With beneficiary designation amended as follows: Lawrence Rucker 2007
Insurance Trust dated 8/15/2007

By signing below, I agree that all amendments to the Application listed above are part of the Application, and the Application and the amendments are to be taken as a whole.  It is agreed that the above Policy is issued (or adjusted or reinstated, as applicable) on the basis of the statements in the Application and in this Amendment to Application form.

To be signed by the person(s) indicated below:
*Lawrence Rucker 2007 Insurance Trust by Christiana Bank & Trust Company*
*as Trustee*

☐ Policyowner   *Cedric L. Struthers*          ☐ Proposed Insured  *Lawrence Rucker*

Signed at   Greenville,  DE                on    SEP 2 6 2007
City                      State
AA 873

RECEIVED
2007 OCT -5  AM 10: 42
IDPC-#13

60846669



**Principal Life Insurance Company**
P.O. Box 10431
Des Moines, IA 50306-0431

Life Insurance
Application

## PART A

### 1. PERSONAL INFORMATION ABOUT THE PROPOSED INSURED

| Name (First, Middle, Last) | Sex | Date of Birth |
|---|---|---|
| Lawrence Rucker | ☒ Male  ☐ Female | REDACTED |

| Street Address | Social Security Number | Birthplace (State, or Country if not U.S.) |
|---|---|---|
| REDACTED | REDACTED | N.Y. |

| City, State, Zip Code | Driver's License Number | State Issued |
|---|---|---|
| REDACTED | REDACTED | R |

| Home Phone Number | Occupation |
|---|---|
| REDACTED | Retired |

| Work Phone Number | Workplace Zip Code |
|---|---|
| (   ) | |

### 2. BASIC COVERAGE APPLIED FOR

Product  Universal Life 3

Policy Planned Premium $  54,048.77

Face Amount (excluding riders)
$ 3,500,000

Premium Frequency: (choose one)
☐ Annual  ☐ Semi Annual ☒ Quarterly  ☐ Single Pay

Death Benefit Option if applicable:
- ☒ Option 1:  Level Face Amount
- ☐ Option 2:  Face + Accumulated/Policy Value
- ☐ Option 3:  Face + Premiums Paid Less Partial Surrenders

☐ EFT (complete EFT form + attach sample check)

List Bill Number _____
☐ Annual  ☐ Semi Annual  ☐ Quarterly  ☐ Monthly

Unscheduled Premium $ _____

### 3. BENEFITS/RIDERS (Some riders are not available with all products)

- ☐ Accidental Death — Amount $ _____
- ☐ Accounting Benefit
- ☐ Alternate Cash Surrender Value
- ☐ Charge of Insured
- ☐ Children Term — Amount $ _____
- ☐ Four Year Term
- ☐ 20 Year Premium Guarantee

- ☐ Policy Split Option
- ☐ Salary Increase — Amount $ _____
- ☐ Single Life Term — Amount $ _____
- ☐ Waiver of Premium/Specified Premium
- ☐ Waiver of Monthly Deductions/Monthly Policy Charges
- ☐ _____
- ☐ _____

### 4. BENEFICIARY INFORMATION

| Primary Beneficiary | Relationship to Proposed Insured |
|---|---|
| Same as owner | Trust |

| Contingent Beneficiary | Relationship to Proposed Insured |
|---|---|
| | |

| Single Life Term Rider Beneficiary | Relationship to Proposed Insured |
|---|---|
| | |

AA 2000-2     This completed document is furnished to and shall only be copied or disclosed with the consent of The Principal.     Page 1

Proposed Insured Name _____

**5. OWNERSHIP INFORMATION**

| Owner Name (if trust, provide name of trust*) | Relationship to Proposed Insured |
|---|---|
| Laurence Baker 2007 Insurance Trust | Trust |
| Address c/o Christiana Bank & Trust Company | Taxpayer Identification Number |
| 3801 Kennett Pike | ~~(redacted)~~ |
| City, State, Zip Code | Date of Birth (if trust, provide date of trust*) |
| Greenville, DE 19807 | 8/15/2007 |
| Joint Owner Name | Relationship to Proposed Insured |
| Address | Taxpayer Identification Number |
| City, State, Zip Code | Date of Birth |
| Contingent Owner Name | Relationship to Proposed Insured |

\* Submit copy of trust with this application.

**6. CHANGE OF OWNERSHIP**

(a) Is there an intention that any group of investors will obtain any right, title, or interest in any policy issued on the life of the Proposed Insured(s) as a result of this application?............. ☐ Yes ☒ No
If yes, explain.

(b) Will you borrow money to pay the premiums for this policy or have someone else pay these premiums for you in return for an assignment of policy values back to them?............. ☐ Yes ☒ No
If yes, explain and complete premium financing acknowledgment form.

**7. OTHER INSURANCE**

(a) Is there other life insurance or annuities in force or applied for?......................................... ☐ Yes ☒ No
(If yes, list all other life insurance or annuities in force or currently being applied for, even if sold, assigned, or vindicated.)

| Insured's Name | Company | Amount | Policy Number | Check if Pending | Year Issued | Primary Purpose |
|---|---|---|---|---|---|---|
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |

(b) If coverage is pending, will all pending coverage be accepted?.................. N/A ☐ Yes ☐ No
If no, explain.

(c) Have you transferred or assigned any right, title, or interest in any life insurance or annuity contract other than absolute assignment for Internal Revenue Code 1035 exchange?......... ☐ Yes ☒ No
If yes, explain.

**8. REPLACEMENT**

(a) Will the insurance applied for with this application replace or affect any of the owner's other life or annuity contracts (including pending coverage provided with a binding receipt)?......... ☐ Yes ☒ No
If yes, list company name(s) and policy number(s) and provide necessary forms:

(b) Is this an Internal Revenue Code section 1035 exchange?.................................................. ☐ Yes ☒ No

AA 2000-2      *This unexpired document is not validated unless only. No part may be copied nor disclosed without prior consent of The Principal.*      Page 2

Proposed Insured Name Lawrence Puckes

**8. MEDICAL QUESTION**

Within the last ten years, has the Proposed Insured been treated for, or diagnosed as having a heart condition, chest pain, stroke, cancer, diabetes, alcohol abuse or drug dependency? ........ REDACTED
(If yes, explain below.)

Details (including dates and healthcare provider's name/address)

(Continue to next page)

**Principal Financial Group**

Mailing Address:
Des Moines, IA 50392-0001

Principal Life
Insurance Company

Insurance
Application

Proposed Insured    Lawrence Rucker

D.O.B. REDACTED    Policy Number (if known) _____

**PART B**

All references to "you" mean the Proposed Insured.

**ACTIVITIES/HEALTH HABITS**

1. In the last five years have you, or do you have plans to:
   a. be a member of any armed forces or military unit? ............................................... Yes    No
   b. pilot any type of aircraft? ........................................................................... Yes    No
   c. engage in scuba/skin diving, motor vehicle racing, skydiving or any other hazardous
      sporting activity? ...................................................................................... Yes    No
   d. live outside the United States or Canada? (if yes, explain below) ............................ Yes    No
   e. travel outside the United States or Canada? (if yes, explain below) .......................... Yes    No

2. In the last five years have you:
   a. been in a motor vehicle accident, been charged with driving while intoxicated or had
      more than one moving violation? (if yes, explain below) ...................................... Yes    No
   b. been on parole or probation or charged with a felony or misdemeanor?
      (if yes, explain below) ............................................................................... Yes    No

3. In the last ten years have you used any tobacco or nicotine products? ............................ Yes    No
   (Indicate date last used and amount per day)

   a. ☐ cigarettes _____    d. ☐ pipe _____
   b. ☐ cigars _____    e. ☐ chewing tobacco/snuff _____
   c. ☐ nicotine patch/gum _____    f. ☐ other _____

4. In the last ten years have you consumed alcoholic beverages? ........................... ☐ Yes  ☒ No
   If yes, date last used? _____    Number of drinks per week _____

5. In the last ten years have you used cocaine, marijuana, methamphetamines, barbiturates
   or other controlled substances? ............................................................. ☐ Yes  ☒ No

6. Have you ever been advised to limit or discontinue the use of alcohol or drugs; or sought
   or received treatment because of your alcohol or drug use? ............................. ☐ Yes  ☒ No

**DETAILS TO QUESTIONS 1-6**

Quest. # Include dates and details as requested above.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

AA 1800    Page 4

**Principal**

*Financial Group*

| | Mailing Address: Des Moines, IA 50392-0001 | Principal Life Insurance Company | Insurance Application |
|---|---|---|---|

Proposed Insured   **Lawrence Rucker**

D.O.B. **REDACTED** Policy Number (if known) _____

PART B – (Continued)

## INCOME/OCCUPATION

For Life, complete questions 7 and 8. For DI, complete questions 8-17. In all cases, Part B continues on the next page.

7. Annual income from occupation $ _____    Other Income $ _____
   Source of other income _____    Net Worth (Assets – Liabilities) $ _____

8. Primary occupation   **Retired**    Employer _____

9. Current Employment Information
   a. Type of business or industry _____
   b. Job title _____
   c. What are your job activities and percentage of time spent in each? _____
   _____
   _____
   d. How many hours do you usually work per week in your primary job? _____
   e. Total number of employees: Full-time _____ Part-time _____ Sub-contracted _____
   f. How many employees do you supervise? _____

10. How long have you been employed by your current employer? _____ (If less than three years, provide details below, e.g., employers, occupations and dates for last five years.)

11. Do you work out of your home? (If yes, how many hours per week? _____ )   ☐ Yes ☐ No

12. Do you have any other part-time or full-time jobs? (If yes, explain below) ..........   ☐ Yes ☐ No

13. Are you actively at work on a full-time basis without medical restriction?
    (If no, explain below) ................................................   ☐ Yes ☐ No

14. Do you intend to change jobs or employment in the next 6 months? (If yes, explain below) ..................................................   ☐ Yes ☐ No

15. Have you ever requested or received any type of disability benefits (including workers' compensation and state disability) for an injury or illness? (If yes, explain below) ..........   ☐ Yes ☐ No

16. Do you have an ownership interest in any business you work for? ........................   ☐ Yes ☐ No
    If yes, ownership percentage _____ length of ownership _____
    Type of business: ☐ C Corporation ☐ S Corporation ☐ Partnership
    ☐ Sole Proprietorship ☐ Limited Liability Company ☐ Other _____

17. Have you, or any business owned in whole or part by you, ever been in bankruptcy or any similar proceedings? (If yes, provide date discharged, type and chapter) ...........   ☐ Yes ☐ No

## DETAILS TO QUESTIONS 7-17

| Quest. # | Include dates and details as requested above. |
|---|---|
| | |
| | |
| | |
| | |
| | |

AA 1800         

**Principal**

**Financial Group**

Mailing Address:
Des Moines, IA 50392-0001

Principal Life
Insurance Company

Insurance Application

Proposed Insured  *Laurence Rucker*

D.O.B. REDACTED (F#?) Number (if known) _____

PART B – (Continued)

**MEDICAL HISTORY (Provide details to yes answers, questions 18-20 below).**

18. In the last ten years, have you had, been treated for or been diagnosed as having:

| | | Yes | No |
|---|---|---|---|
| a. | high blood pressure, heart attack, chest pain, heart murmur, irregular heart beat, stroke, or any other disease or disorder of the heart or blood vessels? | Yes | No |
| b. | cancer or a tumor, cyst or growth? | Yes | No |
| c. | asthma, bronchitis, emphysema, tuberculosis or any other disease or disorder of the lungs or respiratory system? | Yes | No |
| d. | seizure, paralysis, headaches, multiple sclerosis or any other disease or disorder of the brain or nervous system? | Yes | No |
| e. | chronic fatigue, stress, depression, anxiety or any other emotional or psychological disorder? | Yes | No |
| f. | hepatitis, colitis, ulcer, cirrhosis, irritable bowel or any other disease or disorder of the liver, gallbladder, pancreas or digestive tract? | Yes | No |
| g. | diabetes, borderline diabetes, sugar in the urine, thyroid disorder or any other disease or disorder of the glandular system? | Yes | No |
| h. | kidney stones, nephritis, any blood or protein in the urine, sexually transmitted disease, prostate disorder, breast disease or any other disease or disorder of the urinary or reproductive system? | Yes | No |
| i. | back or neck pain, disc problems, spinal sprain or strain, sciatica, arthritis, carpal tunnel syndrome, or any other disease or disorder of the bones, joints, or muscles? | Yes | No |
| j. | any disease or disorder of the eyes, ears, nose, throat or skin? | Yes | No |

19. (DI Only) Are you currently pregnant or have you had complications of pregnancy in the last ten years? .................... Yes  No

20. In the last ten years, have you had, been treated for or been diagnosed as having HIV (Human Immunodeficiency Virus) infection, positive HIV (Human Immunodeficiency Virus) test or AIDS (Acquired Immunodeficiency Syndrome)? .................... Yes  No

**DETAILS TO QUESTIONS 18-20**

| Quest. # | For yes answers, include dates, details, diagnosis, types and results of treatment, healthcare provider's full name and address. |
|---|---|
| | REDACTED |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

AA 1800

Page 6

**Principal**
**Financial Group**

Mailing Address:
Des Moines, IA 50392-0001

Principal Life
Insurance Company

Insurance
Application

Proposed Insured  Lawrence Rucker

D.O.B. ~~REDACTED~~     Policy Number (if known) _____

PART B – (Continued)

MEDICAL HISTORY (Provide details to yes answers, questions 21-26 below)

21. Who is your Primary Physician?  ☐ None

a. Name     ~~REDACTED~~     Phone Number _____

Street _____   City _____   State ____   Zip ____

b. Date last seen, reason and details     ~~REDACTED~~

22. In the last ten years:

a. have you had any medical tests, hospitalization, illness or injury not provided in
response to a previous question? (If yes, explain below)....................................  Yes  No

b. have you consulted a doctor, chiropractor, psychiatrist, psychologist, counselor,
therapist or other healthcare provider not provided in response to a previous
question? (If yes, explain below) ......................................................................  ☐ Yes  ☐ No

23. Are you taking or have you been advised to take any medication or treatment not
provided in response to a previous question? (If yes, explain below) ......................  ☐ Yes  ☐ No

24. Current Ht. _____ Wt. _____  Have you lost more than 10 lbs. in the last year?.....  ☐ Yes  ☒ No

If yes, _____ lbs./kgs., indicate reason _____

25. a. Has either of your natural parents lived to at least age 60? ..............................  Yes  No

b. Do any of your natural parents or siblings have a history of ~~REDACTED~~  Yes  No

If yes, provide details (i.e., relationship, type of disease, age diagnosed, current age or age at death):
_____
_____

26. Have you ever had any life, health or disability insurance rated, ridered or declined?
(If yes, explain below) ............................................................................................  ☐ Yes  ☒ No

DETAILS TO QUESTIONS 21-26

| Quest. # | Include dates and details as requested above. |
|----------|-----------------------------------------------|
| 25A      | ~~REDACTED~~                                  |
| 25B      |                                               |
|          | 0                                             |

AA 1800                                                                     Page 7

**Principal**
**Financial**
**Group**

Principal Life Insurance Company
P.O. Box 10431
Des Moines, IA 50306-0431

Life Insurance
Application

## PART C – AGREEMENT/AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

("Company" means Principal Life Insurance Company)

**AGREEMENT**

**Statements in Application:** I represent that all statements in this application are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in the application, including statements by the Proposed Insured in any medical questionnaire that becomes a part of this application, shall be the basis of any insurance issued. I also understand that misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Policy Coverage Becomes Effective:** I understand and agree that if a policy is issued as applied for with a premium deposit paid, policy coverage will become effective as of issuance. The Company agrees to pay any proceeds pursuant to policy terms subject to the acceptance of the proposed owner and signing of Part D, if applicable.

I understand and agree that if a policy is issued as other than applied for or without a premium deposit (C.O.D.), then policy coverage is not effective and the Company shall incur no policy liability unless:

1) A policy issued on this application has been physically delivered and accepted by the owner and the first premium paid; and

2) At the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in this application, medical questionnaire, or amendment that becomes a part of this application; and

3) The Part D or the Acknowledgment of Delivery form is signed by me and the Proposed Insured (if different than me) and dated at delivery.

If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy date pages.

**Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application and on any medical questionnaire that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner or other persons shall be considered knowledge of the Company unless such fact is stated in the application.

If my employer is the owner and beneficiary on this application: I agree to allow my employer to purchase insurance on my life. I understand that my employer will have all present and future rights of ownership and will also be the beneficiary of the policy. There is no obligation, on my part, to pay the policy premiums. I acknowledge that as an employee, the employer has an insurable interest in my life. I understand and agree that my administrators, estate, heirs and assignees have no rights to any policy proceeds. I further authorize my employer to increase the amount of insurance on my life in the future without another consent from me and without further notice to me as long as I am employed by the employer. I consent to and authorize my employer or its successors to continue to be the owner and beneficiary of this policy(s) indefinitely including after the end of my employment by the employer.

**AUTHORIZATION**

I authorize any insurance (or reinsuring) company, consumer reporting agency, governmental agency, insurance agent, broker, licensed representative, or any other organization, institution or person having personal information (including physical, mental, drug or alcohol use history) regarding me, the named proposed insured, to provide to the Company, its representatives or reinsurers, any such data. I authorize the Company to conduct a telephone interview in connection with my application for insurance.

I understand and agree to sign any authorization that is required to authorize any doctor, hospital, clinic, health care provider, laboratory, pharmacy benefit manager or any other institution having personal information (including physical, mental, drug or alcohol use history) regarding the named proposed insured to provide the Company, its representatives or reinsurers any such data. I understand that if I refuse to sign an authorization to release my complete medical record, Principal Life may not be able to process my application for life insurance coverage.

I authorize the Medical Information Bureau (MIB, Inc.) to furnish the above data to the Company or its reinsurers. I authorize the Company to release any such data to MIB, Inc. or as required by law. Notwithstanding any other provision in this form, the authorization to release data to the MIB, Inc. shall survive the termination of this form to the extent necessary to confirm, correct or update previously supplied data to the MIB, Inc. Data released may include results of my medical examination or tests requested by the Company. I understand that the data obtained by use of this authorization will be used by the Company to determine eligibility for insurance.

I agree that this authorization shall be valid for 24 months from the date of this application. I may revoke this authorization for information not then obtained. Such revocation must be in writing. It will not be effective until received at the Company's Home Office. I agree a photocopy of this authorization is as valid as the original. I have received a copy of this authorization. I have received a copy of the "Notice of Insurance Information Practices," which includes notice required by any Fair Credit Reporting Act. It also describes MIB, Inc.

AA 2000-2

This completed document is for restricted use only, no part may be copied nor disclosed without prior consent of The Principal".

Page 8

**PART G – AGREEMENT/AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION (CONTINUED)**

*C.O.D. or Advance Premium Paid:*

☒ This application is C.O.D. and I have not been given any Conditional Receipt with this application.

☐ I have paid $_____ as an advance premium with this application which is no less than one month's advance premium and I have been given the Life Insurance Conditional Receipt. In return I have read, understand, and agree to its terms.

☐ I have submitted an Absolute Assignment form with this application and I have been given the Life Insurance 1035 Conditional Receipt. In return I have read, understand, and agree to its terms.

**Warning:** It is a crime to provide false, misleading, or incomplete information to an insurance company for the purpose of defrauding the company or any other person. Penalties include imprisonment and/or fines and denial of insurance benefits.

**OWNER TAXPAYER IDENTIFICATION NUMBER CERTIFICATION:** As proposed owner of this contract, I certify under penalties of perjury: (1) The taxpayer identification number shown on this application is correct, (2) I am not subject to IRS backup withholding, and (3) I am a U.S. person (which includes a U.S. resident alien). If subject to backup withholding complete W-9. If not a U.S. person complete W-8. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Signatures – Please read all of the above Agreements, Authorizations, and Certification before signing below.

| Signatory of Proposed Insured (if age 15 or over) | | |
|---|---|---|
| X _____ | | |

| Signature of Parent (if Proposed Insured is under age 16 and Parent has not signed as Owner) | | |
|---|---|---|
| X | | |

Signature of Owner(s), if other than Proposed Insured. If corporation, an officer other than the Proposed Insured must sign and include officer's title. If joint ownership or Trust, all joint owners/trustees must sign. If signing as a Trustee include 'Trustee' as title.

| | Title | |
|---|---|---|
| X _____ | | **Trust Officer** |
| X | Title | |
| X | Title | |

| Signed at: City | State | Date | Signature of Licensed Agent/Broker Representative | License Number |
|---|---|---|---|---|
| Greenville | SC | 8/6/07 | X _____ | |
| Cosignature by resident Licensed Agent/Broker Representative, if applicable in your state | | | Date | License Number |
| X | | | | |

AA 2000-2        *This compiled document is for restricted use only, its part may be copied nor disclosed without prior consent of The Principal.*        Page 8

**FLEXIBLE PREMIUM UNIVERSAL LIFE INSURANCE POLICY.** Adjustable death benefit. Benefits payable at the earlier of Maturity Date or death of Insured. Flexible premiums payable until the earlier of Maturity Date or death of Insured. NON-PARTICIPATING.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Principal Life Insurance Company

**DEFENDANTS**
Christiana Bank & Trust Company, as Trustee for
Lawrence Rucker Insurance Trust 8.15.2007

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant New Castle County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Drinker Biddle & Reath LLP 1100 N. Market St.
Suite 1000 Wilmington, DE 19801-1254

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability   ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability   ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability   **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability   ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury   ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |   ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting   ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment     Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare   ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment   ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other   ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights   ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 USC Section 1332(a)(1)

Brief description of cause: Declaratory Judgment Action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____