IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVIATION EXCHANGE CORPORATION, INC., a Delaware Corporation,<br><br>                         Plaintiff,<br><br>vs.<br><br>NIGHTCLUB MANAGEMENT AND DEVELOPMENT, LLC; MOUNTAIN AIR PARTNERS, LLC; BIKERS DREAM INTERNATIONAL, LLC; REALTY DEVELOPMENT SERVICES MANAGEMENT, LLC; BROWN CJ2, LLC; SAM GUADAGNOLI; KYLE J. GEDITZ; GREGORY D. TIMM; RAYMOND F. O'SULLIVAN; AND ALLEN BROWN<br><br>    Defendants. | **C.A. No.**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, AVIATION EXCHANGE CORPORATION, INC., a Delaware corporation (hereinafter "Plaintiff") by and through its attorneys of record at Marshall, Dennehey, Warner, Coleman & Goggin, hereby brings forth its complaint against Defendants NIGHTCLUB MANAGEMENT AND DEVELOPMENT, LLC, MOUNTAIN AIR PARTNERS, LLC, BIKERS DREAM INTERNATIONAL, LLC, REALTY DEVELOPMENT SERVICES MANAGEMENT, LLC, BROWN CJ2, LLC all of which are Colorado limited liability companies and SAM GUADAGNOLI, KYLE J. GEDITZ, GREGORY D. TIMM, RAYMOND F. O'SULLIVAN and ALLEN BROWN, all individuals, (hereinafter collectively referred to as "Defendants"), alleging as follows:

## JURISDICTION AND VENUE

1.      Plaintiff is and was at all times relevant a Delaware corporation with its principal place of business in Dover, Delaware.

2.      Defendant, Nightclub Management and Development, LLC, is a Colorado limited liability company, which may be served at Brown CJ2, LLC, 18401 East U.S. Highway 24, Woodland Park, CO  80863 pursuant to an Aircraft Purchase Agreement (hereinafter the "Agreement") entered into on or about June 21, 2007 between Plaintiff and Defendants.

3.      Defendant, Mountain Air Partners, LLC, is a Colorado limited liability company, which may be served at Brown CJ2, LLC, 18401 East U.S. Highway 24, Woodland Park, CO  80863 pursuant to the Agreement entered into on or about June 21, 2007 between Plaintiff and Defendants.

4.      Defendant, Bikers Dream International, LLC, is a Colorado limited liability company, which may be served at Brown CJ2, LLC, 18401 East U.S. Highway 24, Woodland Park, CO  80863 pursuant to the Agreement entered into on or about June 21, 2007 between Plaintiff and Defendants.

5.      Defendant, Realty Development Services Management, LLC, is a Colorado limited liability company, which may be served at Brown CJ2, LLC, 18401 East U.S. Highway 24, Woodland Park, CO  80863 pursuant to the Agreement entered into on or about June 21, 2007 between Plaintiff and Defendants.

6.      Defendant, Brown CJ2, LLC, is a Colorado limited liability company, which may be served at Brown CJ2, LLC, 18401 East U.S. Highway 24, Woodland Park, CO  80863 pursuant to the Agreement entered into on or about June 21, 2007 between Plaintiff and Defendants.

7.      Defendant, Sam Guadagnoli, is and was at all material times, Manager

of Defendant, Nightclub Management and Development, LLC, and is a citizen and resident of the State of Colorado with an address for service of process at 20 North Tejon Street, Colorado Springs, CO 80903.

8.    Defendant, Kyle J. Geditz, is and was at all material times, Manager of Defendant, Mountain Air Partners, LLC, and is a citizen and resident of the State of Colorado with an address for service of process at 3935 Hill Circle, Colorado Springs, CO 80904.

9.    Defendant, Gregory D. Timm, is and was at all material times, Manager of Defendant, Bikers Dream International, LLC, and is a citizen and resident of the State of Colorado with an address for service of process at 3740 Camel Rock Vw, Colorado Springs, CO 80904.

10.    Defendant, Raymond F. O'Sullivan, is and was at all material times, Manager of Defendant, Realty Development Services, LLC, and is a citizen and resident of the State of Colorado with an address for service of process at 25 North Tejon Street, Colorado Springs, CO 80903.

11.    Defendant, Allen Brown, is and was at all material times, Manager of Defendant, Brown CJ2, LLC, and is a citizen and resident of the State of Colorado with an address for service of process at 725 Sun Valley Drive, Woodland Park, CO 80863.

12.    On or about June 21, 2007, Plaintiff, as Purchaser, and Defendants, as Sellers, entered into the Agreement.   A true, accurate, and correct copy of the Agreement is attached hereto as Exhibit 1.

Section 9.20 of the Agreement contains the following jurisdiction clause:

9.20.   **Governing Law.** This Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of Delaware, USA including all matters of construction, validity and performance, without giving effect to its conflict of laws provisions. Each of the parties irrevocably and unconditionally:
a) agrees that any suit, action or legal proceeding

arising out of or relating to this Agreement shall be brought in the courts of the State of Delaware in the District Court of the United States having jurisdiction in Delaware;

b) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts; and,

c) agrees that service of any court paper may be effected on such party by mail, or in such other manner as may be provided under applicable laws or court rules in Delaware.

13.    The jurisdiction of this Court is invoked and is proper pursuant to 28 U.S.C. §§1331 and 1332 and 28 U.S.C. §§ 2201 and 2202 and Section 9.20 of the Agreement.  This Court has jurisdiction over state law based claims pursuant to 28 U.S.C. §1367 and Section 9.20 of the Agreement.  Venue is proper pursuant to 28 U.S.C. §1391 and Section 9.20 of the Agreement.

### THE CONTRACT

14.    On or about June 21, 2007, Plaintiff and Defendants entered into the Aircraft Purchase Agreement attached hereto as Exhibit 1, whereby Plaintiff agreed to purchase from Defendants one (1) Cessna Citation CJ2 Aircraft for the sum of Five Million Two Hundred Fifty Thousand United States Dollars ($5,250,000.00).

15.    Under the terms of said Agreement, the Defendants state that both engines of the aircraft are on an "Engines 100% Paid on Williams TAP Elite" engine program (See Sections 3.1, 4.1.2, 5.3.8 and Aircraft Specifications of Exhibit 1).

16.    Contrary to the terms of the Agreement, the Defendants did not have the aircraft engines on a fully paid TAP Elite engine program.

17.    To place the aircraft engines on a 100% paid Williams Tap Elite engine program current to the time of the closing on the aircraft purchase by Plaintiff will cost the sum of One Hundred One Thousand One Hundred Twenty Five Dollars and Sixty Two Cents ($101,125.62) which sum the Plaintiff contends is the obligation of Defendants to pay in accordance with the terms of the Agreement.

18.    Plaintiff has made demand upon Defendants to make payment of the $101,125.62 to bring the Williams TAP Elite program current as provided in the Agreement, but Defendants have wholly refused and failed to pay such sum despite demands of Plaintiff.

19.    Section 9.13 of the Agreement provides that "In the event it becomes necessary to enforce the terms of this Agreement by litigation or otherwise, the prevailing party shall be entitled to recover its reasonable attorney fees and court costs…"

20.    Plaintiff seeks to recover its attorney fees and costs should they prevail in this cause.

## FIRST CLAIM FOR RELIEF
### Breach of Contract Against Defendants

21.    Plaintiff repeats and realleges each and every allegation contained above and incorporates the same here by reference.

22.    Plaintiff and Defendants entered into a valid Agreement.

23.    Plaintiff satisfied all conditions precedent to the Agreement.

24.    Defendants have materially breached the Agreement by greatly diminishing the value of the aircraft by not having it on a fully paid engine program.

25.    As a direct and proximate cause of the Defendants' breach, Plaintiff has been damaged in an amount in excess of $100,000.00, in an amount to be determined at trial.

26.    Plaintiff has been forced to retain the services of an attorney to prosecute this matter, including this specific claim, and is entitled to receive reasonable costs and attorneys fees incurred herein as special damages.

### SECOND CLAIM FOR RELIEF
**Breach of the Covenant of Good Faith and Fair Dealing Against Defendants**

27.    Plaintiff repeats and realleges each and every allegation contained above and incorporates the same here by reference.

28.    Every contract contains an implied covenant of good faith and fair dealing.

29.    Given that every contract contains an implied covenant of good faith and fair dealing, the Defendants had an obligation to deal with Plaintiff in good faith in connection with the Agreement.

30.    The Defendants have failed and refused, and continue to fail and refuse, to deal in good faith with Plaintiff by misrepresenting the aircraft and by failing to pay Plaintiff the funds necessary to place the Aircraft engines on the 100% paid Williams TAP Elite engine program.

31.    As a result of this conduct and their fraudulent misrepresentation of the aircraft engine program, the Defendants have breached the covenant of good faith and fair dealing.

32.    As a direct and proximate cause of the Defendants' breach, Plaintiff has been damaged in an amount in excess of $100,000.00, in an amount to be determined at trial.

33.    Plaintiff has been forced to retain the services of an attorney to prosecute this matter, including this specific claim, and is entitled to receive reasonable costs and attorneys fees incurred herein as special damages.

### THIRD CLAIM FOR RELIEF
**Conversion Against Defendants**

34.    Plaintiff repeats and realleges each and every allegation contained above and incorporates the same here by reference.

35.     By failing to act pursuant to the terms of the Agreement, Defendants have substantially interfered with and deprived Plaintiff of its use or enjoyment of property and accordingly have not returned any of the said property to Plaintiff in which Plaintiff had a property interest.

36.     By retaining said property, the Defendants have wrongfully and willfully disposed of and/or possessed and used Plaintiff's property in a manner inconsistent with Plaintiff's rights to possess, use and enjoy said property, which conduct constitutes a conversion.

37.     Defendants have completely and permanently deprived Plaintiff of the use and possession of the property justifying payment of the full value to Plaintiff.

38.     Plaintiff has never consented to the Defendants' possession, disposition or use of the Plaintiff's monies that are currently due and owing to Plaintiff.

39.     As a direct result of the Defendants' conversion, the Plaintiff has lost the benefit and use of its property to the extent that the Plaintiff is justified in seeking payment for the full value of the property of which it has been deprived.

40.     As a direct and proximate cause of the Defendants' conversion, Plaintiff has been damaged in an amount in excess of $100,000.00, in an amount to be determined at trial.

41.     Plaintiff has been forced to retain the services of an attorney to prosecute this matter, including this specific claim, and is entitled to receive reasonable costs and attorneys fees incurred herein as special damages.

## FOURTH CLAIM FOR RELIEF
### Fraudulent Concealment Against Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above and incorporates the same here by reference.

43.     Upon information and belief, Defendants' actions in entering into the

Aircraft Purchase Agreement were undertaken, at least in part, with fraudulent intent and for purposes of denying the Plaintiff the value of an aircraft on a fully paid engine program. Defendants' fraudulent intent is further evidenced by their failure and refusal to repay Plaintiff the sums necessary to place the Aircraft engines on a 100% paid Williams TAP Elite engine program.

44.    On or about April 26, 2005, the Defendants, their agents or assigns or designees entered into an  "Amendment to Total Assurance "Elite" Program" (hereinafter the "Amendment") with Williams-Rolls that required in part that Defendants would only pay a portion of the engine program fee and further that Defendants "… **must disclose the details of this contract to the new prospective owner before actual sale of aircraft"** which Defendants did not disclose to Plaintiff evidencing their fraudulent intent to conceal the type engine program the aircraft was truly on. A true, accurate and correct copy of the Amendment is attached hereto as Exhibit 2.  Defendants deliberately concealed and failed to disclose details of the contract, as required, with the intent to induce Plaintiff's reliance upon this concealment.

45.    As a direct and proximate cause of the Defendants' fraudulent concealment, Plaintiff has been damaged in an amount in excess of $100,000.00, in an amount to be determined at trial.

46.    Plaintiff has been forced to retain the services of an attorney to prosecute this matter, including this specific claim, and is entitled to receive reasonable costs and attorneys fees incurred herein as special damages.

### FIFTH CLAIM FOR RELIEF
### Alter Ego Against Defendants

47.    Plaintiff repeats and realleges each and every allegation contained above and incorporates the same here by reference.

8

48.    At all times relevant hereto, there has been such a unity of ownership between each of the Defendants that one and the other are essentially the same.

49.    Specifically, Defendants actions were taken under corporate action or veil when, in fact, they were one in the same.

50.    To recognize and perpetuate a legal distinction between the Defendants and not pierce the corporate veil would permit them to perpetrate fraud and contravene in the foregoing Agreement and Amendment and applicable common law principles in an unjust manner.

51.    Plaintiff is entitled to an order and/or declaration that each of the Defendants is the alter ego of each other and that all are responsible for the acts complained of herein.

52.    Plaintiff has been forced to retain the services of an attorney to prosecute this matter, including this specific claim, and is entitled to receive reasonable costs and attorneys fees incurred herein as special damages.

### SIXTH CLAIM FOR RELIEF (IN THE ALTERNATIVE)
### Unjust Enrichment Against Defendants

53.    Plaintiff repeats and realleges each and every allegation contained above and incorporates the same here by reference.

54.    Plaintiff provided money and services to the Defendants for an aircraft that was falsely represented by Defendants as being on a fully paid engine program which program would greatly enhance the value of the aircraft.

55.    The Defendants have enjoyed the benefit of Plaintiff's money and services, in circumstances where it is inequitable for them to retain the benefit without payment for the value thereof to Plaintiff.

56.    As a direct and proximate cause of the Defendants' actions, Plaintiff has

been damaged in an amount in excess of $100,000.00, in an amount to be determined at trial.

57.    Plaintiff has been forced to retain the services of an attorney to prosecute this matter, including this specific claim, and is entitled to receive reasonable costs and attorneys fees incurred herein as special damages.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.    For general damages in excess of $100,000.00 against Defendants, in an exact amount to be determined at trial;

2.    For cost and attorneys' fees incurred herein;

3.    For injunctive relief and a declaration that Defendants' acts are in violation of the Agreement and Amendment at issue and Plaintiff's contractual and common law rights;

4.    For interest; and

5.    For such other and further relief as this Court may deem just and necessary.


BY:    */s/ Kevin J. Connors*
**KEVIN J. CONNORS, ESQ. (I.D. #2135)**
**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN & GOGGIN**
**1220 N. Market Street, 5th Floor**
**P.O. Box 8888**
**Wilmington, DE  19899-8888**
***Attorney for Plaintiff,***
***Aviation Exchange Corporation, Inc.***


Dated: August 21, 2008
15/659030.v1

10

**EXHIBIT 1**

**AIRCRAFT PURCHASE AGREEMENT**

Dated as of the __21st___ day of June, 2007

Between

Nightclub Management and Development, LLC
Mountain Air Partners, LLC,
Bikers Dream International, LLC,
Realty Development Services Management, LLC, and
Brown CJ2, LLC, collectively

As Seller,

And

Aviation Exchange Corporation

As Purchaser,

Concerning one Cessna Citation CJ2 aircraft bearing

U.S. registration mark N719WP,

And

Manufacturer's serial number 525A-0202

AIRCRAFT PURCHASE AGREEMENT   This **AIRCRAFT PURCHASE AGREEMENT** (this "Agreement") is made and entered into as of the _21st___ day of June, 2007 (the "Effective Date"), by and between Nightclub Management and Development, LLC, Mountain Air Partners, LLC, Bikers Dream International, LLC, Realty Development Services Management, LLC and Brown CJ2, LLC collectively as ("Seller") and Aviation

Exchange Corporation a Delaware Corporation  ("Purchaser").

### WITNESSETH:

_____

_____

**WHEREAS,** Seller owns the Aircraft described and referred to herein;

**WHEREAS,** Purchaser desires to purchase the Aircraft from Seller;

**NOW, THEREFORE,** in consideration of these premises and the mutual covenants and agreements herein contained, the parties agree as follows:

1.    **DEFINITIONS**

| | |
|---|---|
| **"Aircraft"** | means (i) the Cessna Citation CJ2 aircraft bearing U.S. registration mark N719WP and manufacturer's serial number 525A-0202 (the "Airframe"), together with two (2) Model FJ44-2C engines bearing manufacturers serial numbers 126246 and 126247 (the "Engines"), all avionics, instruments, components and accessories pertaining thereto and installed thereon, the loose equipment and spare parts included on the Inventory Listing, all manufacturer's warranties, and (iv) all Aircraft Documents. |
| **"Aircraft Documents"** | means all airframe, engine, and accessory logbooks, manuals, flight records, weight and balance manuals, tags, technical records, traceability records, task cards, overhaul records, maintenance records, and all issued FAA Form 337's (if any). |
| **"Aircraft Protocol"** | means the official English language text of the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment, adopted on 16 November 2001, at a diplomatic conference in Cape Town, South Africa. |
| **"Aircraft Registration Application"** | means an FAA Aeronautical Center Form 8050-1 Aircraft Registration Application. |
| **"Aircraft Specification"** | means the Aircraft Specification set forth in Exhibit A attached hereto. |

2

| | |
|---|---|
| **"Balance of the Purchase Price"** | means the amount of Five Million Two Hundred Thousand United States Dollars (US$5,200,000.00). |
| **"Business Day"** | means any day of the year in which banks are not authorised or required to close in the State of Delaware. |
| **"Cape Town Convention"** | means, collectively, the Convention and the Aircraft Protocol. |
| **"Closing"** | means the consummation of the purchase and sale transaction contemplated by this Agreement. |
| **"Closing Date"** | means the date the Closing occurs but not later than 3 pm EST, June 28, 2007. |
| **"Convention"** | means the official English language text of the Convention on International Interests in Mobile Equipment, adopted on 16 November 2001, at a diplomatic conference in Cape Town, South Africa. |
| **"Delivery Flight"** | means the flight necessary to relocate the Aircraft from the Inspection Facility to the Delivery Location. |
| **"Delivery Location"** | means Grand Junction, Colorado or another location within the 48 contiguous United States designated by Purchaser and reasonably acceptable to Seller. |
| **"Delivery Receipt"** | means an Aircraft Delivery Receipt in the form of Exhibit C attached hereto. |
| **"Deposit"** | means a purchase money deposit in the amount of Fifty Thousand United States Dollars (US$50,000.00). |
| **"Escrow Agent"** | means Insured Aircraft Title Service, Inc., attention: Kirk Woford, 4848 Southwest 36th Street, Oklahoma City, OK 73179; tel: 405-681-6663; fax: 405-681-5356. |
| **"FAA"** | means the Federal Aviation Administration. |
| **"FAA Bill of Sale"** | means an FAA Aeronautical Centre Form 8050- |

3

2 Aircraft Bill of Sale.

| | |
|---|---|
| **"FAA Civil Aviation Registry"** | means the FAA Civil Aviation registry, Aircraft Registration Branch, Mike Monroney Aeronautical Centre, 6500 South MacArthur Boulevard, Oklahoma City, Oklahoma 73169. |
| **"FAR"** | means the Aeronautics Regulations of Title 14, Parts 1 to 399 of the United States Code of Federal Regulations, as amended. |
| **"Inspection"** | means Purchaser's pre-purchase inspection of the Aircraft in form and scope identified in Clause 4.2. |
| **"Inspection Discrepancy"** | means airworthiness items discovered during the Inspection and/or test flight and identified in the Technical Acceptance Letter that must be corrected or repaired in order for Seller to deliver the Aircraft to Purchaser at Closing in the condition described in Clause 4.1 below as determined by the Inspection Facility. |
| **"Inspection Facility"** | has the meaning given to such term in Clause 4.3. |
| **"International Interest"** | has the meaning given to it in the Convention. |
| **"International Registry"** | means the international registry located in Dublin, Ireland, established pursuant to the Cape Town Convention. |
| **"International Registry Procedures"** | means the official English language text of the Procedures of the International Registry issued by the supervisory authority thereof pursuant to the Cape Town Convention. |
| **"International Registry Regulations"** | means the official English language text of the Regulations of the International Registry issued by the supervisory authority thereof pursuant to the Cape Town Convention. |
| **"Lien"** | means any lien, mortgage, security interest, lease or other charge or encumbrance or claim |

4

|  | or right of others, including, without limitation, rights of others under any engine or parts interchange, loan, lease, or pooling agreement and any International Interests. |
|---|---|
| **"Purchase Price"** | means the amount of Five Million two Hundred Fifty Thousand United States Dollars (US$5,250,000.00). |
| **"Re-positioning Flight(s)"** | means the flight necessary to relocate the Aircraft to the Inspection Facility, which flight shall be at Seller's expense, and which shall be at all times under Seller's possession, command and operational control. |
| **"Technical Acceptance Letter"** | means a Technical Acceptance Letter in the form of Exhibit B attached hereto. |
| **"Warranty Bill of Sale"** | means a Warranty Bill of Sale for the Aircraft in the form of Exhibit D attached hereto. |

## 2.   INTERPRETATION

2.1.   In this Agreement, unless otherwise expressly stated:

2.1.1.   words importing one gender include all genders;

2.1.2.   reference to a person shall include a corporation or unincorporated association;

2.1.3.   the singular includes the plural and vice versa;

2.1.4.   references to:

(a)   any statute includes any amendment, modification, extension, consolidation or re-enactment of it and any statutory instrument regulation or order made under it, which is for the time being in force;

(b)   clauses and Schedules are to clauses and Schedules to this Agreement;

(c)   any document or agreement includes a reference to that document or agreement as varied, amended, supplemented, notated or assigned from time to time; and

(d)   references to any statutory provision shall be deemed to include such provision as amended from time to time;

2.1.5.   the titles and headings are for reference only and shall be ignored when interpreting or construing this Agreement;

2.1.6.   the words "company", "subsidiary" and "holding company" have the meanings given to them by the Companies Act 1985.

2.2.   If there is any conflict between the terms of the main body of this Agreement and those contained in any Schedule or document referred to, the terms of the main body of this Agreement shall prevail to the extent of that conflict.

5

3.   **AGREEMENT TO BUY AND SELL**

    3.1.    For and in consideration of the Purchase Price, on the Closing Date, Seller shall sell and deliver the Aircraft to Purchaser, and Purchaser shall purchase and accept delivery of the Aircraft from Seller, on and subject to the terms and conditions set forth herein.

    3.2.    **Deposit.** Purchaser has transferred Fifty Thousand Dollars (USD$50,000) of the Deposit to the Escrow Agent by wire transfer of immediately available funds. The Deposit shall be held by the Escrow Agent and shall be applied towards the Purchase Price at Closing except as otherwise set forth herein. Upon delivery by Purchaser to Seller of the Technical Acceptance Letter pursuant to Clause 4.4.1 or Clause 4.4.2, the Deposit shall become non-refundable to Purchaser, except as otherwise set forth herein.

4.   **AIRCRAFT CONDITION AND INSPECTION**

    4.1.    **Aircraft Condition.** It shall be a condition to Purchaser's obligation to consummate the transaction contemplated herein that the Aircraft shall be in the following condition on the Closing Date:

        4.1.1.    free and clear of all Liens at the time title is transferred at Closing;

        4.1.2.    equipped as specified in the Aircraft Specification and in the same condition as at the completion of the Inspection, normal wear and tear excepted;

        4.1.3.    in an airworthy condition, with all systems operating in accordance with manufacturers' specifications;

        4.1.4.    current on the manufacturers' recommended maintenance programs and in compliance with all applicable FAA airworthiness directives and mandatory service bulletins (or manufacturer's equivalent) that have been issued with respect to the Aircraft which are due to be completed on or before the Closing Date;

        4.1.5.    with no damage history reflected in the Aircraft Documents (or required to be so reflected); and

        4.1.6.    with all aircraft log books complete and continuous from the date of manufacture to the Closing.

    4.2.    **Inspection Authority.** The Aircraft shall be subjected to a pre-purchase Inspection to determine that the Aircraft is in the condition required by Clause 4.1. The Inspection shall consist of an borescope inspection of both engines , and a test flight under the command and control of Seller of not more than two (2) hours in duration. Purchaser shall have the right to have its technical representative aboard such test flight. Prior to the commencement of the Inspection, Purchaser shall arrange for and pay all costs and expenses of the Inspection and shall deliver to Seller a paid receipt.

4.3. **Inspection Location and Commencement.** The Inspection shall be performed at West Star Aviation located at Grand Junction, Colorado (the "Inspection Facility"). Seller has delivered the Aircraft and the Aircraft Documents to the Inspection Facility for the Inspection. After completion of the Inspection and until Closing or earlier termination of this Agreement, Seller shall not operate the Aircraft for any purpose whatsoever, provided, however, that Seller shall be permitted to fly the Aircraft to the Delivery Location as required.

4.4. **Aircraft Acceptance.** Within two (2) Business Days after completion of the Inspection and receipt by Purchaser of the written report from the Inspection Facility (a copy of which written report shall be provided to Seller), Purchaser shall execute and deliver to Seller a Technical acceptance Letter, and shall therein indicate either.

   4.4.1.   Purchaser's acceptance of the technical condition of the Aircraft "as is"; or

   4.4.2.   Purchaser's acceptance of the technical condition of the Aircraft subject solely to Seller's correction of Inspection Discrepancies.

4.5. **Acceptance and Correction of Discrepancies.** As soon as reasonably practicable after Purchaser's acceptance of the Aircraft subject solely to Seller's correction of all Inspection Discrepancies, Seller shall diligently cause to be corrected at Seller's cost and expense; all inspection Discrepancies. Correction of Inspection Discrepancies shall be evidenced by the Aircraft's return to service through appropriate logbook entries.

5. **CLOSING PROCEDURES**

5.1. **Pre-Closing Obligations.** As soon as practical after the Aircraft is returned to service following the repair and/or correction of the Inspection Discrepancies, but in any event prior to Closing;

   5.1.1.   Seller shall pre-position or cause to be pre-positioned with the Escrow Agent;

   a)    an undated, but otherwise fully executed, FAA Bill of Sale;

   b)    an undated, but otherwise fully executed, Warranty Bill of Sale;

   c)    releases or terminations of all Liens, if any, affecting title to the Aircraft or the engines; and,

   d)    export certificate of airworthiness.

   5.1.2.   Purchaser shall pre-position with the Escrow Agent:

   a)    an undated, but otherwise fully executed, Aircraft Registration Application for the Aircraft; and

b)　　　　the Balance of the Purchase Price, any applicable sales tax and Purchaser's share of the Escrow Agent's escrow fees and expenses.

**THE PRE-POSITIONING OF ANY DOCUMENT OR THE BALANCE OF THE PURCHASE PRICE WITH THE ESCROW AGENT IS FOR THE CONVENIENCE OF THE PARTIES ONLY SO THAT THEY MAY BE RELEASED AT THE ORAL OR WRITTEN DIRECTION OF THE DEPOSITING PARTIES FOLLOWING SATISFACTION OF ANY CONDITIONS CONTAINED HEREIN, AND SHALL NOT BE CONSTRUED AS OR IMPLY ACCEPTANCE OF THE AIRCRAFT OR CONVEYANCE OF TITLE THERETO, WHICH MAY ONLY OCCUR AS SPECIFICALLY PROVIDED IN THIS AGREEMENT.**

5.2.　**Conditions Precedent to Seller's Obligations.** Seller's obligation to sell and deliver the Aircraft to Purchaser on the Closing Date shall be subject to the following conditions precedent:

5.2.1.　at the time of Closing, Purchaser shall not be in breach or default of any of Purchaser's obligations arising under this Agreement;

5.2.2.　at the time of Closing, all of Purchaser's representations set forth in Clause 6.2 shall be true and accurate;

5.2.3.　prior to the Closing, Purchaser shall have delivered the Aircraft Registration Application and the balance of the Purchase Price identified in Clause 5.1 required to be delivered by it;

5.2.4.　Purchaser's obligations set forth in Clause 9.21 shall have been complied with;

5.2.5.　Purchaser shall have performed and complied with all of the terms, conditions and covenants required by this Agreement to be performed or complied with by it prior to, or at, the Closing; and,

5.2.6.　Purchaser shall have positioned with the Escrow Agent the Balance of the Purchase Price, Purchaser's share of the Escrow Agent's escrow fees and expenses, and any applicable sales tax on the Purchase Price (or evidence of an exemption therefore).

5.3.　**Conditions Precedent to Purchaser's Obligations.** Purchaser's obligation to purchase and accept delivery of the Aircraft from Seller on the Closing Date shall be subject to the following conditions precedent:

5.3.1.　at the time of Closing, Seller shall not be in breach or default of any of Seller's obligations arising under this Agreement;

5.3.2.　at the time of Closing, all of Seller's representations set forth in Clause 6.1 shall be true and accurate as of the time of Closing;

5.3.3.　prior to the Closing, Seller shall have delivered the items identified in Clause 5.1 required to be delivered by it;

5.3.4.　prior to the Closing, Seller shall have positioned the Aircraft at the Delivery Location;

5.3.5.  prior to the Closing, Seller shall have corrected or repaired all Inspection Discrepancies for which it is responsible pursuant to Article III;

5.3.6.  at the time of departure to the Delivery Location, the Aircraft shall be in the condition required by Clause 4.1 of this Agreement;

5.3.7.  Seller's obligations set forth in Clause 9.21 shall have been complied with;

5.3.8.  Seller shall have performed and complied with all of the terms, conditions and covenants required by this Agreement to be performed or complied with by it prior to or at the Closing;

5.4.  **Closing.** The Closing shall occur upon arrival of the Aircraft at the Delivery Location and no later than five (5) business days following its return to service after correction or repair of Inspection Discrepancies but no later than 3:00 p.m., E.S.T., June 28, 2007. At the time of the Closing, the parties shall perform the following closing deliveries in the order presented, all of which collectively shall constitute the Closing;

5.4.1.  Seller shall deliver the Aircraft to Purchaser at the Delivery Location;

5.4.2.  Purchaser shall accept delivery of the Aircraft from Seller at the Delivery Location, and shall simultaneously deliver to Seller a fully executed Delivery Receipt;

5.4.3.  Seller and Purchaser shall commence a conference call with Escrow Agent during which:

a)  The Escrow Agent shall confirm that the procedures set forth in Clause 9.21 have been followed, that Priority Search Certificates from the International Registry addressed to Purchaser indicate that there is no International Interest registered on the International Registry with respect to the Aircraft or, if there is, Escrow Agent has been irrevocably authorized to discharge the same contemporaneous with Closing;

b)  The Escrow Agent shall confirm that it is in receipt of the Purchase Price, applicable sales tax and Purchaser's share of the Escrow Agent's fees and expenses:

c)  Purchaser shall, concurrently with Seller's instruction in Clause 5.4.3 d), instruct the Escrow Agent to date and file the Aircraft Registration Application in the FAA Civil Aviation Registry and to release the Purchase Price to Seller;

d)  Seller shall, concurrently with Purchaser's instruction in Clause 4.4.3 c), instruct the Escrow Agent to date and file the FAA Bill of Sale, any Lien releases in the FAA Civil Aviation Registry and to deliver the Warranty Bill of Sale to

9

Purchaser, which instruction by Seller shall confirm to Escrow Agent is subject only to receipt by Seller of a Federal Reference number provided by Escrow Agent evidencing the release of the Purchase Price to Seller; and,

e)      Purchaser and Seller shall authorize Escrow Agent to register the International Interest arising from the contract of sale for the Aircraft and related engines, on the International Registry as set forth in paragraph 9.21 below

## 6.    REPRESENTATIONS AND WARRANTIES

6.1.    **Seller's Representations and Warranties.**  Seller hereby represents and warrants as follows:

6.1.1.    Seller is a corporation duly formed, validly existing, and in good standing under the laws of the State of its organization, having the capacity to sue and be sued in its own name, having full power, legal right and authority to carry on its business as currently conducted, and to execute, deliver and perform the provisions of this Agreement;

6.1.2.    The execution, delivery, and performance by Seller of this Agreement, and the sale of the Aircraft, has been duly authorized by all necessary action on behalf of Seller and do not conflict with or result in any breach of any of the terms or constitute a default under any document, instrument, or agreement to which Seller is a party;

6.1.3.    the person executing this Agreement on behalf of Seller has full power and authority to do so;

6.1.4.    this Agreement constitutes the legal, valid and binding obligations of Seller and is enforceable against Seller in accordance with its terms subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization moratorium and similar laws affecting the enforceability of contractual obligations and creditors' rights generally and by the application of equitable principles by courts of competent jurisdiction, sitting at law or in equity;

6.1.5.    Seller at the time of Closing, shall own good, and marketable title to the Aircraft, free and clear of all Liens;

6.1.6.    at the time of the Closing, Seller shall convey to Purchaser good and marketable title to the Aircraft, free and clear of all Liens, and Seller will warrant and defend such title forever against all claims and demands whatsoever;

6.2.    **Purchaser's Representations and Warranties.**  Purchaser hereby represents and warrants as follows;

6.2.1.   Purchaser is a corporation duly formed, validly existing, and in good standing under the laws of the State of its organization, having the capacity to sue and be sued in its own name, having full power, legal right and authority to carry on its business as currently conducted, and to execute, deliver and perform the provisions of this Agreement;

6.2.2.   The execution, delivery, and performance by Purchaser of this Agreement, and the acquisition of the Aircraft, has been duly authorized by all necessary action on behalf of Purchaser and do not conflict with or result in any breach of any of the terms or constitute a default under any document, instrument, or agreement to which Purchaser is a party;

6.2.3.   the person executing this Agreement on behalf of Purchaser has full power and authority to do so;

6.2.4.   this Agreement constitutes the legal, valid and binding obligations of Purchaser and is enforceable against Purchaser in accordance with its terms subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting the enforceability of contractual obligations and creditors' rights generally and by the application of equitable principles by courts of competent jurisdiction, sitting at law or in equity; and

6.2.5.   Upon acceptance by Purchaser at Closing, Purchaser acknowledges that the Aircraft is being purchased at Closing in its "AS-IS, WHERE IS", "WITH ALL FAULTS" condition (except as to title and freedom from Liens), as described in Clause 7 below;

## 7.   **DISCLAIMER**

7.1.   **DISCLAIMER AND LIMITATION OF LIABILITY.** EXCEPT AS TO TITLE AND FREEDOM FROM LIENS OR ENCUMBRANCES, THE AIRCRAFT AND EACH PART THEREOF IS BEING SOLD AND DELIVERED TO PURCHASER IN   "AS IS, WHERE IS, WITH ALL FAULTS" CONDITION ON THE CLOSING DATE, WITHOUT ANY REPRESENTATION, WARRANTY OR GUARANTY OF ANY KIND BEING MADE OR GIVEN BY SELLER, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, MANAGERS, OFFICERS, AGENTS, EMPLOYEES, ATTORNEYS OR ASSIGNS, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE AND   SELLER DISCLAIMS   ALL EXPRESS   OR IMPLIED WARRANTIES WHETHER ARISING IN LAW, IN EQUITY, IN CONTRACT, OR IN TORT, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, AIRWORTHINESS, DESIGN, CONDITION, OR FITNESS FOR A PARTICULAR USE. PURCHASER HEREBY WAIVES, RELEASES AND RENOUNCES ANY CLAIM (INCLUDING, WITHOUT LIMITATION, INCIDENTIAL OR CONSEQUENTIAL DAMAGES) OR EXPENSE CAUSED BY THE AIRCRAFT OR BY PURCHASER'S LOSS OF USE THEREOF FOR ANY REASON WHATSOEVER, EXCEPT FOR ANY CLAIM ARISING OUT OF SELLER'S  COVENANT OF   TITLE AND FREEDOM FROM LIENS OR ENCUMBRANCES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING,   SELLER  SHALL NOT BE LIABLE OR RESPONSIBLE TO PURCHASER FOR ANY DEFECTS, EITHER PATENT OR

LATENT IN THE AIRCRAFT, OR FOR ANY DIRECT OR INDIRECT DAMAGE TO PERSONS OR PROPERTIES RESULTING THEREFROM OR FOR PURCHASER'S LOSS OF USE OF OR A DIMINUTION IN VALUE OF THE AIRCRAFT OR FOR ANY INTERRUPTION IN PURCHASER'S BUSINESS CAUSED BY PURCHASER'S INABILITY TO USE THE AIRCRAFT FOR ANY REASON WHATSOEVER.

7.2.    UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE FOR LOST PROFITS, LOSS OF BUSINESS, LOSS OF USE OR ANY OTHER INCIDENTAL, INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES ARISING OUT OF OR RELATED TO THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DELAY IN CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED HEREBY, AND EACH PARTY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO SUCH DAMAGES.

## 8.    TERMINATION

8.1.    **Seller's Default.** This Agreement may be terminated by Purchaser in the event of a breach by Seller of any provision of this Agreement which breach is not cured within five (5) Business Days of the delivery to Seller of written notice thereof from Purchaser or which breach by its nature cannot be cured prior to Closing. If Purchaser elects to terminate his Agreement under this Clause 8.1, the Deposit shall be immediately refunded to Purchaser, and thereafter neither party shall have any obligation on liability to the other with respect to the subject matter of this Agreement. Purchaser's rights to receive the amounts expressly set forth in this Clause 8.1 shall be the sole remedy available to Purchaser in the event Seller defaults on Seller's obligations under this Agreement, and Purchaser waives any other remedies that may be available to Purchaser at law or in equity;

8.2.    **Purchaser's Default.** This Agreement may be terminated by Seller in the event of a breach by Purchaser of any provision of this Agreement which breach is not cured within five (5) Business Days of the delivery to Purchaser of written notice thereof from Seller or which breach by its nature cannot be cured prior to Closing. If Seller elects to terminate this agreement under this Clause 8.2, Escrow Agent shall pay the Deposit to Seller as liquidated damages upon notification thereof, and thereafter neither party shall have any obligation or liability to the other with respect to the subject matter of this Agreement (except that Purchaser shall remain liable for the cost of the Inspection, excluding the cost of any repairs or improvements made to the Aircraft). Seller acknowledges and represents that the liquidated damages amount provided for in this Clause 8.2 is a reasonable estimate of the damages that would be incurred by Seller in the event Purchaser defaults on Purchaser's obligations under this Agreement. Seller's rights to receive the Deposit as liquidated damages shall be the sole remedies expressly set forth in this Clause 8.2 available to Seller in the event Purchaser defaults on Purchaser's obligations under this Agreement, and Seller waives any other remedies that may be available to Seller at law or in equity;

## 9.    MISCELLANEOUS

9.1.   **Taxes.** Purchaser shall bear (and shall indemnify Seller for and against) all sales, use, and other similar taxes that may be imposed by any United States federal, state, county, local, or other governmental authority as a result of the sale, delivery, or transfer of the Aircraft to Purchaser, except for any taxes imposed on or measured by Seller's income.   In the event Seller receives notice or otherwise becomes aware of any audit, claim, assessment or proposed assessment of any tax for which Purchaser is alleged to be responsible under this Clause, Seller shall immediately notify Purchaser thereof, and Purchaser shall have the right to control, manage or defend any such audit, claim, assessment or   proposed assessment; provided, however, that Purchaser shall have retained counsel reasonably satisfactory to Seller within ten (10) days of such notification to Seller and Seller shall have the right to participate in such process at its own cost and expense.     Except with the prior written consent of Seller, which consent shall not be unreasonably withheld, Purchaser shall not have the authority to settle or compromise any action for which it has assumed the defense hereunder if such settlement or compromise provides for injunctive or other equitable relief against Seller or otherwise provides for any continuing obligations of any nature against Seller or loss of rights of Seller. Seller's failure to provide Purchaser such notice in a timely manner shall not relieve Purchaser of its obligation to pay any such tax, or any associated interest or penalties, except to the extent Purchaser's rights have been impaired by Seller's failure. The parties agree to provide each other with all information on a continuing basis that they reasonably request relating to any matters covered by this Clause 9.1.

9.2.   **Warranties   and   Maintenance   Program   Contracts.**     To   the extent   that   any   warranties   from   manufacturers, service providers or suppliers with respect to the Aircraft are still in effect and are assignable, all rights under such warranties are hereby assigned and transferred to Purchaser effective at the time of the Closing.   Seller shall assist Purchaser in maintaining continuity of and transferring any such warranties, and shall execute whatever documents or agreements may be necessary or convenient to vest all rights under such warranties in Purchaser and to permit Purchaser to assert or process claims there under. Without limiting the generality of the foregoing, effective upon the Closing, Seller hereby assigns to Purchaser.

   9.2.1.   all rights to enforce or compel performance under any such warranty;

   9.2.2.   all rights to receive any services, property, or moneys accruing or becoming due after the Closing Date pursuant to any such warranty, and to receive proceeds of any indemnity, guaranty, or collateral security with respect to any such warranty;

   9.2.3.   all claims for damages arising out of or for breach or default under any such warranty, and all rights to exercise any remedy for breach or default under any such warranty that may be available under such warranty, at law, or in equity;

13

9.3.  **Pre-Existing Warranty Claims.** Notwithstanding the foregoing, Seller reserves the right to assert claims under any such warranties to the extent that the same relates to facts and circumstances arising prior to the Closing Date.

9.4.  **Risk of Loss, Damage or Destruction of Aircraft.**

    9.4.1.  **Risk of Loss.** Title to, and risk of loss, injury, destruction or damage to the Aircraft, shall pass from Seller to Purchaser on the later to occur of the time that (i) the FAA Bill of Sale is filed with the FAA Civil Aircraft Registry and (ii) the Purchase Price is released to Seller;

    9.4.2.  **Destruction or Damage.** Notwithstanding any contrary provision of this Agreement, if at any time prior to the Closing the Aircraft is destroyed or damaged, the Deposit shall immediately refunded to Purchaser, Seller shall reimburse Purchaser the flat rate cost of the Inspection paid by Purchaser in connection with the Inspection (and not otherwise reimbursed by the Inspection Facility), and this Agreement shall terminate and be of no further force or effect. For purposes of this Clause 9.4.2 the word "damaged" shall mean if (i) the total costs of properly repairing such damage prior to Closing, as determined by the Inspection Facility, would exceed the sum of $250,000, (ii) such damage if properly repaired would materially and/or adversely affect the value or marketability of the Aircraft, and (iii) after repair, such damage will result in operational limitations or adverse changes to the inspection or maintenance program for the Aircraft;

9.5.  **Amendments.** The provisions of this Agreement may not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by both parties hereto.

9.6.  **Severability.** Any provision of this Agreement that may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

9.7.  **Assignment.** This Agreement may not be assigned by any party without the prior written consent of the other party; provided, however, the (i) Purchaser shall have the right to assign this Agreement to a wholly owned affiliate upon prior written notice to Seller or otherwise with the prior written consent of Seller, which consent shall not be unreasonably withheld (where the Seller acknowledges that it hereby consents to the assignment of this Agreement by the Purchaser or Purchasers rights under this Agreement to such entity as may be designated in writing by European Business Jets Plc), (ii) Purchaser shall have the right to assign its rights under this Agreement to a financial institution providing lease or mortgage financing of the Purchase Price and (iii) either party shall have the right to

14

assign this Agreement to a qualified intermediary or other accommodating title holder as set forth in Clause 9.8 in connection with the consummation of a 1031 tax deferred exchange upon written notice to the other party; provided, however, in the case of any such assignment, the assignor shall remain primarily obligated for its assignee's payment and performance of assignor's obligations hereunder.

9.8.    **1031 Exchange.**  Seller or Purchaser may desire to exchange other aircraft of like kind and qualifying use within the meaning of Section 1031 of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations that make reference to it for the aircraft which is the subject of this contract.  Such party expressly reserves the right to assign its rights and interests, but not its obligations, hereunder to a qualified intermediary as provided in Reg. 1.1031 (k)-1(g)(4) on or before the Closing Date and the other party hereby assents to any such assignment. The parties agree to cooperate with each other or its assignee in order to complete a qualifying like kind exchange for the benefit of such party, provided that the other party shall incur no liability, cost or expense in connection therewith;

9.9.    **Successor and Assigns.**  This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective successors and permitted assigns;

9.10.    **Headings and References.** The division of this Agreement into Clauses, and the insertion of headings, are for convenience of reference only and shall not affect the construction or interpretation of this Agreement;

9.11.    **Counterparts.** This Agreement may be fully executed in two or more counterparts by each of the parties hereto, such counterparts together constituting but one and the same instrument. Such counterparts may be exchanged via facsimile or other electronic transmission.

9.12.    **Notices.** All communications, declarations, demands, consents, directions, approvals, instructions, requests and notices required or permitted by this Agreement shall be in writing and shall be deemed to have been duly given or made when delivered personally or transmitted electronically by facsimile, receipt acknowledged, or in the case of documented overnight delivery service or registered or certified mail, return receipt requested, delivery charge or postage prepaid, on the date shown on the receipt therefore, in each case at the address set forth below.

If to Purchaser:        Aviation Exchange Corporation
                        Attention: Thomas Pence
                        President
                        In Care Of: Tim R McElmore
                        105 South Broadway Suite 460
                        Wichita, Kansas 67202
                        Telephone 316-613-2000

15

If to Seller:         C/O Brown CJ2, LLC
                      18401 East US Highway 24
                      Woodland Park, CO 80863
                      Allen Brown, Manager

If to Escrow Agent:   Insured Aircraft Title Service, Inc.
                      4848 SW 36th Street
                      Oklahoma City, OK
                      73179 Attention:
                      Kirk Woford
                      Telephone (405) 681-
                      6663 Telefax:  (405)
                      681-7545

9.13.  **Attorney Fees.** In the event it becomes necessary to enforce the terms of this Agreement by litigation or otherwise, the prevailing party shall be entitled to recover its reasonable attorney fees and court costs, including any such fees or costs arising from subsequent appeals and efforts to execute on any judgment.

9.14.  **Non-Waiver.** Any failure at any time of either party to enforce any provision of this Agreement shall not constitute a waiver of such provision or prejudice the right of such party to enforce such provision at any subsequent time.

### 9.15. Entire Agreement And Understanding

      9.15.1.  This Agreement supersedes all prior agreements, arrangements and understandings between the parties in respect of the Aircraft and constitutes the entire agreement between the parties relating to the sale of the Aircraft.

      9.15.2.  Nothing in this Agreement operates to limit or exclude any liability for fraudulent misrepresentation.

      9.15.3.  No variation, supplement, deletion or replacement of or from this Agreement is to be effective unless it is made in writing and signed by or on behalf of each party with the intention to vary, supplement, delete or replace being clearly expressed.

9.16.  **Transaction Costs and Expenses.** Except as otherwise set forth herein, each party to this Agreement shall bear its own transaction costs and expenses, including, without limitation, any brokers' commissions and/or attorneys' fees. The fees, if any, of Premier Jet Aviation, shall be borne by Seller. Each party hereto agrees to indemnify and hold the other harmless from and against any claims made by any broker or other party claiming an interest in the Aircraft or the purchase price arising from an actual or alleged relationship or agreement with the indemnifying party. Purchaser and Seller shall each pay one-half (½) of Escrow Agent's escrow fees and expenses relating to the transactions contemplated hereby.

16

9.17. **Survival.**  The representations, warranties, and indemnification obligations of Purchaser and Seller shall survive the Closing in perpetuity; provided, however, that any of the same pertaining to the condition of the Aircraft, if any, shall terminate at Closing.

9.18. **Time is of the Essence.** Time shall be of the essence for all events contemplated hereunder.

9.19. **Further Assurances.**  Each of the parties hereto covenants and agrees to execute such other and further documents relating to the matters set forth herein and to take or cause to be taken such other and further actions, as may be reasonably necessary or appropriate to carry out the purposes and intent of this Agreement, and to consummate the transactions contemplated hereby.

9.20. **Governing Law.**  This Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of Delaware, USA including all matters of construction, validity and performance, without giving effect to its conflict of laws provisions. Each of the parties irrevocably and unconditionally:

   a)   agrees that any suit, action or legal proceeding arising out of or relating to this Agreement shall be brought in the courts of the State of Delaware in the District Court of the United States having jurisdiction in Delaware;
   b)   waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts; and,
   c)   agrees that service of any court paper may be effected on such party by mail, or in such other manner as may be provided under applicable laws or court rules in Delaware.

9.21. **Cape Town Convention**

   9.21.1.   Prior to the closing, Purchaser and Seller shall each become a "transacting user entity" with the International Registry. Each of Purchaser and Seller shall bear its own expense in doing so.

   9.21.2.   Each party shall provide to the other, as a condition to closing, evidence that it has been approved by the International Registry as a "transacting user entity" or "special purpose entity" as the case may be and has duly registered with, is authorized to make filings with and has received all approvals from the International Registry, and has appointed an "administrator" (as such term is defined and used in the International Registry Procedures and International Registry regulations).

   9.21.3.   Each party shall, as a condition to Closing, authorize Escrow Agent to act as, and shall designate Escrow Agent as, a "professional user entity" (as such term is defined and used in the International Registry Procedures and International Registry Regulations) to effect, amend, discharge and consent to registrations with respect to the Aircraft (including the airframe and the related engines) on

17

its        behalf.        Neither        Seller        nor Purchaser shall revoke such authorization until after the earlier to occur of (i) registration of a Contract of Sale of the Aircraft with the International Registry following the filing with the FAA of the Bill of Sale conveying the Aircraft from Seller to Purchaser or (ii) termination of this Agreement in accordance with its terms. Without Seller's prior written consent, Purchaser and Purchaser's lender        shall        not        effect        or        cause        to effect a prospective International Interest on the Aircraft including the airframe and the related engines) and shall upon such registration of any such prospective International Interest take all necessary actions to discharge or cause to discharge such registration.

9.21.4.   Purchaser and Seller shall cooperate to cause Escrow Agent, as a professional user entity, to register a Contract of Sale of the Aircraft with the International Registry immediately after filing of the FAA Bill of Sale with the FAA.  Escrow Agent shall prepare and cause to be filed with the FAA an AC Form 8050-135 in form reasonably satisfactory to Purchaser and Seller. Seller and Purchaser each hereby expressly consents to the registration of the International Interest arising from the Contract of Sale with respect to the Aircraft (including the airframe and related engines).

9.21.5.   Immediately prior to Closing, the Escrow Agent shall obtain a Priority Search Certificate (as such term is defined and used in the International Registry Procedures and the International Registry Regulations) from the International Registry with respect to the Aircraft (including the airframe and related engines) confirming that no prior International Interest exists that will not be otherwise discharged at Closing with respect to the Aircraft (including the airframe and related engines).   Where any prior International Interest does exist that remains uncured by Seller the Purchaser shall be entitled to receive back all funds already paid to both the Seller and/or the Escrow agent immediately and may terminate this Agreement at his option. Any Priority Search Certificate obtained by the Escrow Agent from the International Registry with respect  to the Aircraft shall identify the Purchaser and the Seller as having the benefit of the search.

**IN WITNESS WHEREOF,** the undersigned parties have caused this Aircraft Purchase Agreement to be executed, delivered and effective as of the date first above written:

**Purchaser:**

AVIATION EXCHANGE CORPORATION.

By: *Thomas Pence*

Thomas Pence
President

18

**Escrow Agent:**
INSURED AIRCRAFT TITLE
SERVICE, INC.

**Seller:**

By:_____
Kirk Woford, Escrow Agent

Nightclub Management and Development, LLC

By:_____
Name: Sam Guadagnoli
Title: Manager

Mountain Air Partners, LLC

By:_____
Name: Kyle J Geditz
Title: Manager

Bikers Dream International, LLC

By:_____
Name: Gregory D. Timm
Title: Manager

Realty Development Services, LLC

By:_____
Name: Raymond F. O'Sullivan
Title: Manager

Brown CJ2, LLC

By:_____
Name: Allen Brown
Title: Manager

19

## Exhibit A

## AIRCRAFT SPECIFICATION

### CESSNA CITATION CJ2
### SERIAL NUMBER 525A-0202
### REGISTRATION N719WP

**Airframe TT/Landings: 1166/764**

**Engines TT L/R: 1166 /1166**

**No Damage History**
**Engines 100% Paid on Williams TAP Elite**
**Aircraft enrolled on Cessna Cescom Computerized Maintenance Tracking Service**

### Avionics

Avionics Package: Collins Pro Line 21 w/ 3-screen EFIS
Autopilot: Collins Pro Line 21 IFCS
FMS: Universal UNS-1L w/Permanent DTU
Communication Radios: Dual Garmin GNS-530As
Navigation Radios: Dual Garmin GNS-530As
Transponders: Dual Garmin GTX-330D
ADF: King KF-87
DME: King KN-63 DME
Radar: Collins Collins RTA 800
TCAS: BF Goodrich Skywatch HP
GPS: Dual Garmin GNS-530As plus Universal UNS-1L
EGPWS: Honeywell MK VIII
Graphical Weather: WSI weather uplink displayed on Garmin 530As
Fan Speed Computer: Safeflite N1 Fan Computer

### Additional Equipment

Cockpit Monorail Sunvisor RH
Cockpit 110 Volt AC Outlet 50
cubic ft. oxygen Provisions for HF
and CVR

### Interior:

6 passenger seats and the flushing belted toilet are finished in fog grey leather. The carpet
is medium grey. Dual executive writing tables coupled with 2 110 volt AC power outlets. A
maroon and grey patterned lower sidewall, dark rosewood cabinetry, and mirrored aft
dividers.

### Exterior:

The exterior is tastefully designed in an overall snow white finish with grey metallic, pumice
metallic, and cayenne red accent stripes in the traditional paint scheme. The original finish
is in exceptional condition.

**Exhibit B**
**TECHNICAL ACCEPTANCE LETTER**

Date: ........ ........................

TO:     Mountain Air Partners, LLC
        Bikers Dream International, LLC
        Night Club Management and Development, LLC
        Realty Development Services Management, LLC
        In C/O  Brown CJ2, LLC
        18401 East Highway 24
        Woodland Park, CO 80863

        **Re:    Completion of Pre-Purchase Inspection**

Gentlemen:

        Pursuant to that certain Aircraft Purchase Agreement (the "Agreement") dated as of the ........... day of June, 2007, by and between Aviation Exchange Corporation ("Purchaser") and Brown CJ2, LLC, et al ("Seller"), pertaining to that certain Cessna Citation CJ2 aircraft bearing U.S. registration mark N719WP and manufacturer's serial number 525A-0202 (the "Aircraft"), this letter confirms that Purchaser has completed its Inspection (as such term is defined in the Agreement) of the Aircraft.

CHECK ONE:

...........  The technical condition of the Aircraft is hereby accepted "as is".

.. ..       Subject to correction or repair by Seller, at Seller's sole cost and expense, of all Inspection Discrepancies (as such term is defined in the Agreement) listed on Annex "A" hereto, the technical condition of the Aircraft is hereby accepted in accordance with the terms of the Agreement.

SINCERELY,

AVIATION EXCHANGE CORPORATION

By:     ..............................................................
Name:   .. .. .. .. ... ...... ... .. .. ... .........
Title:  ..............................................................

21

**ANNEX A**
**INSPECTION DISCREPENCIES TO BE IDENTIFIED AND CORRECTED**

## Exhibit C
## AIRCRAFT DELIVERY RECEIPT

Aviation Exchange Corporation ("Purchaser") hereby acknowledges acceptance of delivery of that certain Cessna Citation CJ2 aircraft bearing U.S. registration mark N719WP and manufacturer's serial number 525A-0202 (the "Airframe"), together with two (2) Model FJ44-2C engines bearing manufacturers serial numbers 126246 and 126247 from Brown CJ2, LLC, et al ("Seller"), at _____ o'clock (am / pm) Eastern Time on the _____ day of _____, 2007, at _____ airport, in the State of _____, in accordance with the terms and conditions of that certain Aircraft Purchase Agreement dated June ____, 2007, between Purchaser and Seller (the "Purchase Agreement") Purchaser hereby acknowledges that the Aircraft satisfies all of the requirements, terms and conditions of the Purchase Agreement. By reason of the execution and delivery by Purchaser of this Aircraft Delivery Receipt, (i) it is conclusively presumed that Purchaser has approved and accepted the Aircraft "as is, where is" in its then-current condition and state of repair, with all faults, limitations and defects (whether hidden or apparent), regardless of cause; and (ii) Purchaser shall have no claim against Seller for breach of any representation or warranty regarding the Aircraft, whether express or implied, other than the warranty of title set forth in Section 6.1.5 of the Purchase Agreement.

TOTAL TIME AIRFRAME AT DELIVERY: _____ hours

TOTAL TIME ENGINES AT DELIVERY:
      Left Engine: _____ hours/cycles
      Right Engine: _____ hours/cycles

TOTAL LANDINGS AT DELIVERY: _____

**PURCHASER:**

AVIATION EXCHANGE CORPORATION

By: _____
Name: _____
Title: _____

STATE OF _____ )
                           ) ss:
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of _____, 2007,
by _____ _____, _____ _____ [title] of _____, a
_____ on behalf of the company.  He/she is personally known to me or who has
produced _____ (type of identification) as identification.

_____
NOTARY PUBLIC, STATE

**Exhibit D**

**WARRANTY BILL OF SALE**

## KNOW ALL PERSONS BY THESE PRESENTS:

THAT BROWN CJ2, LLC, MOUNTAIN AIR PARTNERS, LLC, BIKERS DREAM INTERNATIONAL, LLC, NIGHT CLUB MANAGEMENT AND DEVELOPMENT, LLC, AND REALTY DEVELOPMENT SERVICES, LLC ("Seller"), is the lawful owner of the full legal and beneficial title to the following tangible personal property:

> that certain Cessna Citation CJ2 aircraft bearing U.S. registration mark N719WP and manufacturer's serial number 525A-0202 (the "Airframe"), together with  two (2) Model FJ44-2C engines bearing manufacturers serial numbers 126246 and 126247, the "engines" and all loose equipment and spare parts pertaining to the Airframe and Engines which are included on the Inventory Listing attached hereto (collectively, the "Aircraft"); and

> all airframe, engine, and accessory logbooks, manuals, flight records, weight and balance manuals, tags, technical records, traceability records, task cards, overhaul records, maintenance records, and all issued FAA Form 337's (collectively, the "Aircraft Documents).'

THAT, for good and valuable consideration, receipt and adequacy of which is hereby acknowledged, Seller does as of the date provided below, grant, convey, transfer, deliver and set over all right, title and interest in and to the Aircraft and the Aircraft Documents unto Aviation Exchange Corporation ("Purchaser"), and unto Purchaser's successors and assigns forever.

THAT, Seller hereby warrants to Purchaser, its successors and assigns, that there is hereby conveyed to Purchaser on the date hereof good and marketable title to the Aircraft and the Aircraft Documents free and clear of any and all mortgages, liens, claims, encumbrances and rights of others, and Seller will warrant and defend such title forever against all claims and demands whatsoever.

EXCEPT AS TO THE COVENANT OF TITLE AND FREEDOM FROM LIENS OR ENCUMBRANCES SET FORTH ABOVE, THE AIRCRAFT AND EACH PART THEREOF IS BEING  SOLD AND DELIVERED TO PURCHASER IN "AS IS, WHERE IS, WITH ALL FAULTS" CONDITION, WITHOUT ANY REPRESENTATION, WARRANTY OR GUARANTY OF ANY KIND BEING MADE  OR GIVEN BY SELLER, ITS OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, MANAGERS, OFFICERS, AGENTS, EMPLOYEES, ATTORNEYS OR ASSIGNS, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE AND SELLER DISCLAIMS ALL EXPRESS OR IMPLIED WARRANTIES WHETHER ARISING IN LAW, IN EQUITY, IN CONTRACT, OR IN TORT, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, AIRWORTHINESS, DESIGN, CONDITION, OR FITNESS FOR A PARTICULAR USE.

IN WITNESS WHEREOF, Seller has caused this instrument to be executed and delivered by its duly authorized signatory as of this ____ day of _____ , 2007.

BROWN CJ2, LLC

By:

Name: _Allen Brown_

Title:

MOUNTAIN AIR PARTNERS, LLC

Page 26

By: _____
Name: _____ Kyle J. Gaditz _____
Title: _____ Manager _____

BIKERS DREAM INTERNATIONAL, LLC
By: _____
Title: _____ Manager _____

NIGHT CLUB MANAGEMENT AND DEVELOPMENT,
LLC
By: _____
Title: _____ Manager _____

REALTY DEVELOPMENT SERVICES MANAGEMENT,
LLC
By: _____ DF O'Sullivan _____
Title: _____ Manager _____

Page 27

## Exhibit E

## SCOPE OF INSPECTION

The "Inspection" to be conducted by West Star Aviation on Cessna Citation CJ2, Serial Number 525A-0202 and Federal Aviation Number N719WP, shall consist of the following:

1. An engine borescope inspection, and

2. A test flight under the command and control of Seller of not more than two (2) hours in duration.

**EXHIBIT 2**

  FJ44 

## Amendment to Total Assurance "Elite" Program
between
Williams-Rolls and Mountain Air Partners LLC
(Citation Jet 525A-0202)

This amendment is incorporated as part of the basic Total Assurance Program (TAP) contract, and is in addition to agreements made in the basic TAP contract. This amendment does not alter any rights, obligations or remedies of this TAP contract except as stated below.

The parties agree that 1050 engine hours (525 hours each engine) exist on the engines upon execution of this contract. Williams-Rolls is allowing 200 hours of "Demonstrator" credit (100 hours per engine). Fifteen percent of the remaining back-hours (425 hours each engine) must be paid upon execution of this contract or $11,461.74   ((((1050 hrs -200 hours) X 15% X $105.76)) – 15% discount)

Further, thirty-three percent (33%) of the engine total back hours (.33 x 425 hours) or 140.3 hours times the published North American fee at the time of payment, for the "Elite" program for each engine will be due and payable anytime prior to Hot Section Inspection of either engine.

Additionally, Sixty-seven percent (67%) of the total engine back hours (.67 X 425 hours) or 284.8 hours times the published North American fee at the time of payment, for the "Elite" program for each engine will be due and payable anytime prior to Core Section Inspection of either engine.

In the event the aircraft is sold prior to HSI or CSI, Mountain Air Partners LLC must disclose the details of this contract to the new prospective owner before actual sale of aircraft. The new owners will have the option of continuing the program with the same deferred back-hour requirements (140.3 hours due at HSI, and 284.8 hours due at CSI for each engine)

Williams-Rolls reserves the right to demand payment of the balance owed of the above-described back-hours in the event of a major unscheduled maintenance occurrence. A major unscheduled maintenance occurrence is defined as any unscheduled event that is equal to or greater than the cost of a Hot Section Inspection.

This amendment, to be valid must bear the following:
1. The witnessed signature of the aircraft owner
2. The witnessed signature of an authorized representative of Williams-Rolls

The Parties hereto have signed this amendment, which is finally executed at Walled Lake Michigan, U.S.A, in duplicate.

Owner or designee:

_____          _____
Signature                                   Print Name

Date: 4 - 26 - 0 5

Williams- Rolls: _____

Bruce Crew
Vice President, Programs, Materials, Product Support
Date: 5 / 25 / 05

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Aviation Exchange Corporation, Inc.

## DEFENDANTS

Nightclub Management and Development, LLC, et al.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Teller County, CO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Kevin J. Connors, Esq., Marshall, Dennehey, Warner, Coleman &
Goggin, 1220 N. Market St., 5th Fl. PO Box 8888, Wilm., DE 19899

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** |
| ☐ 195 Contract Product Liability | | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 861 HIA (1395ff) |
| ☐ 196 Franchise | | | | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 864 SSID Title XVI |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | | ☐ 865 RSI (405(g)) |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 891 Agricultural Acts |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 465 Other Immigration Actions | | ☐ 893 Environmental Matters |
| | | | | | ☐ 894 Energy Allocation Act |
| | | | | | ☐ 895 Freedom of Information Act |
| | | | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332; 28 U.S.C. Section 2201 and 2202; 28 U.S.C. Section 1367; 28 U.S.C. Section
Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
08/21/2008

SIGNATURE OF ATTORNEY OF RECORD
/s/ Kevin J. Connors

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____